**In The United States District Court for the Western District of Texas Austin Division**

FILED

2023 APR -6  PM 3: 40

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| Randall Kelton , Kara Bell **Plaintiffs** Vs. Gregory Abbott, Nordstrom, Kelsie Fucci, Kenton Johnson, Sam Bassett, Lynn Carter, Officer Eller, Officer Gill, Tyler Earley, Audrey Guthrie, Sara Donovan,  Sharon Keller, Barbara Hervey, Bert Richardson, David Newell, Mary Lou Keel, Scott Walker, Michelle Slaughter, Jesse F. McClure III, Megan LaVoie, Thea Whalen, Deadra Stark, Kelly R,. Damphousse, PH.D., Megan LaVoie, Thea Whalen, Deadra Stark, Kelly R. Damphousse, PH.D., Mr. Nathan Cradduck, Gail Bel, Nordstrom Rack, Kelsie Fucci, Unknown Travis County Courthouse Deputy, Sam Bassett, **Defendants** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No: 23-CV-395-LY-SH |

**PETITION FOR DECLARATORY JUDGMENT AND SUIT FOR**

**DAMAGES**

**PLAINTIFFS ORIGINAL PETITION**

Now comes Randall Kelton and Kara Bell, Plaintiff's in the above action and sues on behalf of themselves and all others similarly situated. While all parties are public officials in one capacity or another, Plaintiff's herein sue each in their personal capacity.

The Texas Court of Criminal Appeals, acting in concert and collusion with the Texas Office of Court Administration, developed training for magistrates and others in Texas that was then implemented by Texas State University. The practices and procedures taught to magistrates around Texas had the effect of circumventing the Constitution and laws of the State of Texas and lead directly to the current state of mass incarceration which is now costing the State of Texas on the order of $1 Billion every year.

# 1   PLAINTFF WILL SHOW

Plaintiffs will show that Plaintiff's were not singled out for special persecution but worse, Plaintiffs were treated just like everyone else accused of crime in Texas. Plaintiffs will show that Plaintiffs were subjected to an ongoing criminal enterprise designed and implemented by the Texas Court of Criminal Appeals, in conjunction with the directors of the Texas Office of Court Administration, Megan LaVoie, the Texas Justice Court Training Center, Thea Whalen, the Texas Municipal Courts Education Center, Deadra Stark, Texas State University, the Texas Association of Counties, Mr. Nathan Cradduck, the Texas Center for the Judiciary, Gail Bell , and similar entity entities to be named subsequent to discovery.

The Texas Legislature, on passage of Texas Code of Criminal Procedure 17.024, directed the Texas Court of Criminal Appeals and the Texas Office of Court Administration, as follows:

> Art. 17.024. TRAINING ON DUTIES REGARDING BAIL. (a) The Office of Court Administration of the Texas Judicial System shall, in consultation with the court of criminal appeals, develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases. The courses developed must include:
>
> > (1) an eight-hour initial training course that includes the content of the applicable training course described by Article 17.0501; and
> >
> > (2) a two-hour continuing education course.
>
> (b) The office shall provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to the office.
>
> (c) A magistrate is in compliance with the training requirements of this article if:

**PLAINTIFFS ORIGINAL PETITION**                                    2 of 159

(1)  not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);

(2)  the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and

(3)  the magistrate demonstrates competency as provided by Subsection (b).

(c-1)  Notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022.  This subsection expires May 1, 2023.

(d)  Any course developed or approved by the office under this article may be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity. (b)  A personal bond is not required to contain the oath described by Subsection (a)(3) if:

(1)  the magistrate makes a determination under Article 16.22 that the defendant has a mental illness or is a person with an intellectual disability, including by using the results of a previous determination under that article;

(2)  the defendant is released on personal bond under Article 17.032; or

(3)  the defendant is found incompetent to stand trial in accordance with Chapter 46B.

Instead of instruction magistrates in the rule of law, the Texas Court of Criminal Appeals and Texas Office of Court Administration, instructed magistrates, the police, and others in a set of practices and procedures which had the effect of denying every person accused of crime in the due course of the laws and converted Texas into the worst police state the world has ever seen.

Through a series of seemingly minor adjustments toward administrative convenience and adjudicative expediency, the Texas Court of Criminal Appeals and Texas Office of Court Administration have so perverted the legal system such that, every step, from arrest to trial, is not only wrong, but very specifically against particular law.  Plaintiffs will show how each step has been carefully crafted to totally disenfranchise the public from their right to the due course of the laws.

## 1.1  ONGOING CRIMINAL ENTERPRISE

By the following, Plaintiffs will show that the criminal justice system in Texas has been carefully crafted such that, every person accused of crime will not exercise their rights, but rather, will enter into a plea agreement with the State.  Plaintiffs will show how this criminal cabal has developed into a culture of corruption such that public officials are no longer bound by their oaths of office and officials are able to act with absolute impunity in the face of black letter law. In the process of implementing the above referenced improper practices, Texas public officials have turned Texas into the worst police state the world has ever seen.

## 1.2  FULLY FUNCTIONING POLICE STATE

Communist China imprisons approximately 121 persons per 100,000, Russia  imprisons 331, the United States 639, while Texas imprisons 840 at last count and climbing fast.  Texas spends $3.5 billion on state prisons and Texas Counties, another $10 billion for pre-trial detainment with another 254 million for court appointed counsel. According to FBI statistics, crime is down across the board in all categories and has been on a steady decline for the last 40 years while the Texas jail population has skyrocketed.  The single largest budget item for counties is not longer education, but county jails and we need to fix that.

The problem that exists in the criminal justice system exists from no lack of law.  The problem exists because otherwise good and right-minded people were improperly trained based on wrongful readings of the black letter law.

Plaintiffs will show that they were not singled out for special persecution but worse, Plaintiffs were treated just like everyone else accused of crime in Texas.  Plaintiffs will show that Plaintiffs were subjected to an ongoing criminal enterprise designed and implemented by the Texas Court of Criminal Appeals, in conjunction with the Texas Office of Court Administration, the Texas Justice Court Training Center, Texas Municipal Courts Education Center, Texas State University, Texas Association of Counties, Texas Center for the Judiciary, Texas State University and various and sundry similar entity entities both governmental and private, to be named subsequent to discovery.

By the following, Plaintiffs will ask this court to issue a declaration of the intent of the Constitutional Framers and subsequent legislators under Chapter 37 of the Texas Civil Practice and Remedies Code, known as: The Texas Declaratory Judgment Act as follows:

### 1.2.1  Nearest Magistrate

Plaintiffs, will further show that the Texas Court of Criminal Appeals and Texas Office of Court Administration crafted a criminal connivance wherein they trained magistrates to ignore the procedural due process mandate contained in  Texas Code of Criminal Procedure 14.06, 15.16, and Texas Transportation Code 543.002, directing police to take persons arrested directly to the nearest magistrate.

### 1.2.2  Mass Incarceration

Plaintiffs will show how the police have been trained and directed to take persons arrested in Texas directly to jail instead of to the nearest magistrate.  Plaintiffs will show how this practice is the key underlying cause of the current mistrust of the police and the mass incarceration issue.

### 1.2.3  Jurisdiction

Plaintiffs will show how, in most every criminal case in Texas for the last 40 years, citizens have been prosecuted without subject matter jurisdiction.

### 1.2.3.1   Magistrate a Pre-requisite to Incarceration

Plaintiffs will show how the law commands every person arrested in Texas, with or without a warrant, to be brought before some magistrate for an examining trial, prior to being imprisoned.

### 1.2.3.2   Jurisdictional Pre-requisite

Plaintiffs will show that, police have jurisdiction to arrest a citizen based on an existing warrant or reasonable belief that a crime has been committed and the accused committed said crime. However, that jurisdiction evaporates if the accused is not taken directly to the nearest magistrate for a proper determination of probable cause.

### 1.2.3.3   Jurisdiction of Magistrate

Plaintiffs will show how, magistrates have jurisdiction based on being presented with a criminal complaint complete in accordance with Texas Code of Criminal Procedure 15.05.  Said

jurisdiction is for the limited purpose of convening an examining court in accordance with Chapter 16 Texas Code of Criminal Procedure Chapter 16.

### 1.2.3.4   Section 16.17 Order

Plaintiffs will show how, an examining trial must culminate with an order by the magistrate issued in accordance with Texas Code of Criminal Procedure 16.17. Said order must then be forwarded to the court of original jurisdiction in accordance with Texas Code of Criminal Procedure 17.30. It is the magistrate's order which imbues the trial court with jurisdiction.

### 1.2.3.5   Grand Jury Jurisdiction

Plaintiffs will show that, after an examination into the sufficiency of the allegation and a finding of probable cause by a magistrate, the above referenced order is directed to the grand jury by Texas Code of Criminal Procedure 17.30.

### 1.2.3.6   Article 5 Indictment

Plaintiffs will further show how, after a determination of probable cause by a magistrate, the Texas Constitution at Article 5, Section 17, grants jurisdiction to the grand jury to sit for the purpose of, on the finding of a true bill, said true bill is made known to the court in accordance with Texas Code of Criminal Procedure 20A.051.

### 1.2.3.7   True Bill

Plaintiffs will show that, after a true bill is brought and presented to the grand jury, the clerk will create a cause of action by making notes in the minutes of the court of the existence of a criminal claim in accordance with Texas Code of Criminal Procedure 20A.304.

### 1.2.3.8   Notice to Trial Court

Plaintiffs will show how, after an indictment has been brought and presented to the court, the District Court, the District Court must certify the indictment and give notice to the trial court in accordance with Texas Constitution at Article 5, Section 17.

## 1.2.4  Procedural Due Process

There is case law out there which asserts that a person only has a right to an examining trial after indictment. Plaintiffs will show that a citizen never has a direct right to an examining trial. This

is not about "rights." The above is about procedural due process and the due course of the laws is a covenant of the contract which every public official is bound to by virtue of their sworn oath.

### *1.2.5 TCCP 15.09*

Plaintiffs, by the following, will how the above referenced criminal enterprise trained magistrates to ignore the administrative duty specified by Texas Code of Criminal Procedure 15.09. Plaintiff Kelton will show how Plaintiff has filed repeatedly presented criminal complaints to magistrates and all were summarily trashed, regardless of who they charged. Magistrates simply refused to accept criminal complaints from private citizens and by so doing failed to perform an administrative duty imposed upon them by Texas Code of Criminal Procedure 2.10, 2.11 Chapters 16 and 17 as addressed in more detail below.  The proceeding refusal on the par of magistrates in Texas, had the effect of disenfranchising every person from the remedies contained in the Texas Constitution and laws of the State of Texas.

## 1.3   SPEEDY TRIAL

Plaintiffs will further move the court to declare, all judges and prosecutors in Texas are commanded by the Texas Constitution to provide every person accused of crime in a speedy trial and a trial shall be presumed speedy if said trial is held within the time limits specified by the Legislature in the abstract to Bill 1043 of the 83rd Legislature.

## 1.4   LIMITATIONS ON POWER OF GOVERNOR

Plaintiffs will show that the Governor of the State of Texas took it upon himself to pre-empt the Texas Legislature by issuing orders which directly affected the rights of the citizens of the State of Texas.  Plaintiff will show that the Texas Governor is limited in his capacity by the Texas Constitution Article 2.

## 1.5   JUDICIAL NOTICE

Plaintiffs move this court to take judicial notice of the Texas Constitution, the laws of the State of Texas as cited herein.

# 2   TABLE OF CONTENTS

# Contents

1   Plaintff Will Show ................................................................................................ 2

   1.1   Ongoing Criminal Enterprise ................................................................. 4

   1.2   Fully Functioning Police State ............................................................... 4

      1.2.1   Nearest Magistrate ...................................................................... 5

      1.2.2   Mass Incarceration ...................................................................... 5

      1.2.3   Jurisdiction .................................................................................. 5

      1.2.4   Procedural Due Process .............................................................. 6

      1.2.5   TCCP 15.09 ................................................................................. 7

   1.3   Speedy Trial ............................................................................................ 7

   1.4   Limitations on Power of Governor ........................................................ 7

   1.5   Judicial Notice ........................................................................................ 7

   Table of Contents .......................................................................................... 7

2   7

3   Discovery Control Plan ...................................................................................... 16

4   PARTIES ............................................................................................................. 16

   4.1   Plaintiff/s ............................................................................................... 16

   4.2   Respondents .......................................................................................... 17

5   Venue ................................................................................................................... 17

6   Kelton Statement of Facts .................................................................................. 17

   6.1   Criminal Complaints Filed ................................................................... 18

      6.1.1   Governor Abbott ........................................................................ 18

      6.1.2   Travis County Grand Jury .......................................................... 19

      6.1.3   Justice Hetch .............................................................................. 20

      6.1.4   Jose Garza .................................................................................. 20

   6.2   Travis County District Courthouse ..................................................... 20

      6.2.1   Some Deals Bigger Than Others ................................................ 22

      6.2.2   The Big Deal About Guns .......................................................... 22

      6.2.3   Official Gun Slingers ................................................................. 22

**PLAINTIFFS ORIGINAL PETITION**

| | | |
|---|---|---|
| 6.3 | Travis County District Judges | 23 |
| 7 | Bell Statement of Facts | 23 |
| 7.1.1 | Mask Confrontation | 23 |
| 7.1.2 | Personal Agenda | 23 |
| 7.1.3 | Assault and Battery | 24 |
| 7.1.4 | Aggravated Assault | 24 |
| 7.1.5 | Serious Bodily Injury | 24 |
| 7.1.6 | Illegal Search | 25 |
| 7.1.7 | Solicitation of Complaint | 25 |
| 7.1.8 | Intimidation | 25 |
| 7.1.9 | Improper Press Release and Release of Body Cam Video | 26 |
| 7.1.10 | Showing of Malice | 26 |
| 7.1.11 | Denied Examining Trial | 26 |
| 7.1.12 | Subjected To Ongoing Criminal Enterprise | 26 |
| 7.1.13 | Ineffective Assistance of Counsel | 26 |
| 7.1.14 | Dismissed for Lack of Evidence | 27 |
| 8 | Statement of Claim | 28 |
| 8.1 | No Lack of Law | 28 |
| 8.1.1 | Corruption By Design | 29 |
| 8.1.2 | Magistrates as Key to Kingdom | 29 |
| 8.1.3 | Prosecutorial Impersonation | 29 |
| 8.2 | Due Course of Standing Law | 30 |
| 8.2.1 | Masters of the Servants | 30 |
| 8.2.2 | Official Constitutional Duty | 31 |
| 8.2.3 | Constitutional Perscriptions | 31 |
| 8.2.4 | Duties of Peace Officers | 32 |

**PLAINTIFFS ORIGINAL PETITION**

8.3    Due Course of Law .................................................................................. 32

   8.3.1    Federal Constitution Applies .......................................................... 32

   8.3.2    Examining Trial (Preliminary Hearing) As Due Process ................... 33

   8.3.3    Arrest in County of Jurisdiction ..................................................... 34

   8.3.4    Reasonable Delay ........................................................................... 35

   8.3.5    Diligent Effort to Locate Magistrate ............................................... 36

   8.3.6    Any Magistrate in Texas ................................................................. 36

   8.3.7    One Magistrate as Close as Another ................................................ 36

   8.3.8    Duties of Magistrates ..................................................................... 37

   8.3.9    Order Under 16.17 .......................................................................... 37

   8.3.10   Forward to Clerk 17.30 ................................................................... 37

8.4    15.09 Acces to Courts ............................................................................. 38

   8.4.1    Set the Hounds Upon Us ................................................................. 38

   8.4.2    Statutory Prescription on Arrest ..................................................... 39

8.5    Police Mis-direction ................................................................................ 40

   8.5.1    Police Officer Directive .................................................................. 40

   8.5.2    Prosecuting Officer Directive ......................................................... 40

   8.5.3    Magistrates Ignore Statutory Mandate ............................................ 41

   8.5.4    Must Issue Warrant ........................................................................ 41

   8.5.5    Remedy Denied .............................................................................. 41

   8.5.6    Cases in Point ................................................................................ 42

   8.5.7    Victoria County .............................................................................. 43

   8.5.8    Wise County ................................................................................... 44

   8.5.9    Travis County ................................................................................. 45

8.6    The grain of Sand that Released the bolder ............................................... 45

   8.6.1    Magistration Abomination .............................................................. 45

**PLAINTIFFS ORIGINAL PETITION**

8.6.2    Statutory Construction Violation ............................................................... 45

8.6.3    Objective Reasonableness ....................................................................... 46

8.6.4    Nearest Magistrate ................................................................................. 47

8.6.5    High Court Mis-interpretation ................................................................ 47

8.7    No Right To Examining Trial ......................................................................... 47

8.7.1    Statutory Perscription .............................................................................. 48

8.7.2    Constitutional Commandments On Demand ......................................... 48

8.7.3    Statutory Construction Act ...................................................................... 48

8.7.4    Constitutional Speedy Trial Trashed ...................................................... 49

8.8    Intent of The Texas Legislature ..................................................................... 50

8.9    Speedy Trial Unconstitutional ....................................................................... 50

8.10    Legislative Definition Remains .................................................................... 51

8.10.1    Prosecutor Coup .................................................................................. 51

8.10.2    Policing Persecution With Impunity .................................................... 51

8.10.3    No Indictment of Police ....................................................................... 52

8.10.4    Defenseless Council ............................................................................. 52

9    Points and Authorities ....................................................................................... 52

9.1.1    Limitations on Power of Governor ......................................................... 53

9.1.2    Limits On Exercise of Power .................................................................. 59

9.1.3    GA – 29 .................................................................................................. 65

9.1.4    Mask Requirement Ultra Vires .............................................................. 67

9.2    Right to Probable Cause Determination ......................................................... 67

9.2.1    800 Years of Service .............................................................................. 67

9.2.2    Duties Upon Arrest ................................................................................. 67

9.2.3    No Examining Trial in Misdemeanor Nonsense .................................... 68

9.2.4    Article 15.17 Confusion .......................................................................... 68

9.2.5    Authority To Hold Evaporates ............................................................... 69

9.2.6    Examining Trial Even After Indictment ................................................... 70

9.2.7    Indictment Terminates Nothing ........................................................... 71

9.2.8    We See No Error ................................................................................. 71

9.3    Bond As Option v Bail As Right ...................................................................... 74

9.3.1    Probable Cause as Prosecutorial Pre-requisite ................................... 74

9.3.2    Standards for Arrest .......................................................................... 75

9.4    4th Amendment Protections ............................................................................ 75

9.4.1    Maximum Protection of Individual Rights ........................................ 76

9.4.2    Point of Fourth Amendment ............................................................. 76

9.5    On Scene Assessment ..................................................................................... 77

9.5.1    The Courts Granted and Inch ............................................................ 78

9.5.2    Constitutional Consequences of Pre-trial Confinement ..................... 78

9.5.3    Historical Support ............................................................................. 79

9.5.4    Habeas Corpus Available ................................................................... 79

9.5.5    Arrest for On-sight Offense ............................................................... 79

9.5.6    Arrest on Warrant ............................................................................. 79

9.5.7    Traffic Arrest .................................................................................... 80

9.6    Magistrate Jurisdiction and Duty .................................................................. 81

9.6.1    Keep the Peace. ................................................................................. 81

9.6.2    Must Convene an Examining Court ................................................... 82

9.6.3    Jurisdiction ...................................................................................... 82

9.6.4    Sufficiency of Complaint ................................................................... 82

9.6.5    Must Issue an Order .......................................................................... 83

9.6.6    17.30 Forward Order to Clerk ........................................................... 83

9.6.7    Constitution on Demand ................................................................... 83

9.6.8    Magistration ..................................................................................... 84

**PLAINTIFFS ORIGINAL PETITION**

9.7     Bail v Bond...................................................................................................84

  9.7.1    When "Bail" My Be Denied .................................................................84

  9.7.2    No Bail Setting Outside Statutory Examining Trial ............................86

9.8     Due Course in an Examining Trial...............................................................86

10   Constitutional Speedy Trial ..............................................................................86

10.1    Legislative Intent .......................................................................................87

10.2    Speedy Trial Act  Unconstitutional............................................................87

10.3    Distinguish Barker Wingo Test...................................................................88

10.4    Crime Rate Down ........................................................................................89

  10.4.1    This Is Not A War ...............................................................................89

  10.4.2    Carefully Crafted Criminal Connivance ............................................89

  10.4.3    No Speedy Trial Protection .................................................................89

  10.4.4    Administrative Inconvenience ............................................................90

  10.4.5    Delay and Obfuscation........................................................................90

  10.4.6    Prohibitions Apply .............................................................................90

10.5    Separation of Powers....................................................................................91

  10.5.1    Time As A Malignant Calculus ..........................................................91

  10.5.2    Delay as Hinge Pin..............................................................................92

  10.5.3    Delay Inconsistent With Legislative Intent.........................................92

  10.5.4    Fundamental to Founders....................................................................93

  10.5.5    No Waiver of Constitutional Prohibition............................................94

  10.5.6    State Distinguished From Fed.............................................................94

  10.5.7    No Harm No Foul Nonsense................................................................94

  10.5.8    Constitutional Duty.............................................................................95

  10.5.9    Speedy Trial is Vested Right ..............................................................95

  10.5.10    Delay Beyond Scope .........................................................................95

  10.5.11    No Immunity .....................................................................................96

10.5.12    Constitutional Calculation..................................................................... 96

10.5.13    Constitutional Speedy Trial Commandment..................................... 97

10.5.14    Burden on Prosecutor ........................................................................ 98

10.5.15    Demand Unnecessary ......................................................................... 98

10.5.16    Constitution Does Not Speak To Citizens ........................................ 99

10.5.17    The Constitution Always Applies ...................................................... 99

10.5.18    PROSECUTORIAL DELAY ............................................................ 100

10.6    Simulating a Legal Process ......................................................................... 101

10.6.1    Article 26.01 Restriction in Class C Misdemeanor ......................... 102

10.6.2    Lack of Jurisdiction........................................................................... 102

10.6.3    16.17 Requirement............................................................................. 102

10.6.4    Delay As Am Illegal Artifice ............................................................ 103

10.7    Ongoing Criminal Enterprise ..................................................................... 103

10.7.1    Duty to Develop Training .................................................................. 103

10.7.2    Ongoing Criminal Enterprise ............................................................ 104

10.7.3    Everything is Wrong.......................................................................... 105

10.7.4    At Least 40 Years of Abuse ............................................................... 105

10.7.5    Magistrate Bypass.............................................................................. 105

10.7.6    Setting Bail......................................................................................... 106

10.7.7    There is no Lack of Law .................................................................... 106

10.7.8    Misfeasance In Office........................................................................ 106

10.7.9    Blanket Denial of a Preliminary Hearing.......................................... 106

10.7.10    Denial of Speedy Trial as Malignant Calculus................................ 107

10.8    Criminal Street Gang................................................................................... 107

10.8.1    Engaging In Organized Crime ........................................................... 107

10.8.2    All Are Disqualified........................................................................... 108

**PLAINTIFFS ORIGINAL PETITION**

10.8.3    Petition for Court of Inquiry .................................................. 109

11    Criminal Accusations ............................................................................ 110

11.1    Assault  Plaintiff Kelton ................................................................ 110

11.1.1    Travis County Court House ..................................................... 110

11.1.2    Combat Veteran ...................................................................... 111

11.1.3    911 Call .................................................................................. 111

11.1.4    Governors Edict ...................................................................... 111

11.1.5    Plaintiff Bell ........................................................................... 111

11.1.6    Subject Matter Jurisdiction Challenge .................................... 117

11.1.7    Discharged for Lack of Evidence ............................................ 118

11.1.8    Shyster Shenanigan ................................................................ 118

11.1.9    Refusal To Yield ..................................................................... 119

12    Challenge to Subject Matter Jurisdiction .............................................. 119

12.1    Challenge Timely Raised .............................................................. 119

12.2    Challenge Negates Jurisdiction ..................................................... 120

13    Torts and Causes of Action ................................................................... 120

13.1    Plaintilff Kelton ........................................................................... 120

13.1.1    1st Degree Felony Aggravated Assault .................................... 121

13.1.2    Interfering With 911 Call ........................................................ 121

13.1.3    Special Conditions .................................................................. 121

13.1.4    Proximate Cause ..................................................................... 121

13.1.5    Assisting ................................................................................. 122

Aggravated Assault 22.02(b)(2)(A) ...................................... 122

13.1.6 ...................................................................................................... 122

13.1.7    Special Legislation .................................................................. 123

13.1.8    Legal Duty .............................................................................. 124

13.1.9    Legal Reform Activist ............................................................. 125

13.2    Plaintiff Bell ................................................................................................ 125

    13.2.1    Nordstrom Assault ........................................................................ 125

    13.2.2    Public Official Abuse ..................................................................... 134

    13.2.3    False Imprisonment ....................................................................... 137

    13.2.4    Criminal Conspiracy ..................................................................... 138

    13.2.5    Denial of Due Process .................................................................... 141

    13.2.6    Negligence ...................................................................................... 148

    13.2.7    Negligence Per Se ........................................................................... 141

    13.2.8    Denial of Due Process .................................................................... 142

    13.2.9    Continuing abuse ........................................................................... 144

    13.2.10    Intentional Infliction of Emotional Distress .............................. 144

    13.2.1    Liable and Slander ......................................................................... 148

14    Jury Demand ................................................................................................... 155

15    Special Prayer .................................................................................................. 155

    15.1    Plaintiff Bell ............................................................................................ 155

    15.2    Plaintiff Kelton ....................................................................................... 155

16    General Prayer ................................................................................................. 156

# 3    DISCOVERY CONTROL PLAN

Plaintiff intends to conduct discovery under Level 3 of Texas Rules of Civil Procedure 190.3.

# 4    PARTIES

## 4.1    PLAINTIFF/S

*Randall Kelton*
*PO Box 1*
*113 S. Allen ST.*
*Boyd, TX 76023*
*940 399 9922*
*randy@ruleoflawradio.com*

**PLAINTIFFS ORIGINAL PETITION**                                                16 of 159

*Kara Bell*
*P.O. Box 341703*
*Lakeway, TX 78734*

## 4.2 RESPONDENTS

*Gregory Abbott,*
*Nathan Hetch,*
*Sharon Keller,*
*Barbara Hervey,*
*Bert Richardson,*
*Kevin Yeary,*
*David Newell,*
*Mary Lou Keel,*
*Scott Walker,*
*Michelle Slaughter,*
*Jesse F. McClure III,*
*Nordstrom Rack,*
*Nordstrom Security Officer Fucci,*
*Unknown Travis County courthouse Security officer,*
*Sunset Officer*
*Sunset Valley Offier Gil*
*Sunset Valley Mayor,*
*Sunset Valley Municipal Judge,*
*Sunset Valley Municipal prosecutor,*
*Sunset Valley Defense counsel*

# 5   VENUE

All the controversy in the instant case arises in Austin, Texas and the amount in controversy exceeds the minimum jurisdiction of the court.

# 6   KELTON STATEMENT OF FACTS

In an attempt to correct problems with the criminal justice system, Plaintiff Kelton filed criminal complaints with various magistrates in Texas. Plaintiff Kelton is a radio talk show host who does a show on legal reform. After over 30 years of research into problems with the criminal justice system in Texas, Plaintiff Kelton learned a few thing and does a radio show to try to teach others what little he knows.

**PLAINTIFFS ORIGINAL PETITION**

## 6.1   CRIMINAL COMPLAINTS FILED

In an effort to correct some perceived problems with the system, Plaintiff Kelton has attempted to do his duty as a citizen and report crime by filing verified criminal affidavits with various magistrates expecting them to do their duty as prescribed by Texas Code of Criminal Procedure 15.09 supra.

### *6.1.1   Governor Abbott*

On or about the 15th day of October 2020, Plaintiff Kelton filed criminal complaints with the Chief Justice of the Texas Supreme Court, Nathan Hetch, against Gregory Abbott, for his actions in issuing executive orders which had the effect of infringing on the rights of citizens and subjected the people of Texas to Sedition, Official Oppression and other high crimes and misdemeanors.. The above referenced complaints were complete in accordance with Texas Code of Criminal Procedure 15.05 which reads as follows:

> Art. 15.05. REQUISITES OF COMPLAINT. The complaint shall be sufficient, without regard to form, if it have these substantial requisites:
>
> 1. It must state the name of the accused, if known, and if not known, must give some reasonably definite description of him.
>
> 2. It must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.
>
> 3. It must state the time and place of the commission of the offense, as definitely as can be done by the affiant.
>
> 4. It must be signed by the affiant by writing his name or affixing his mark.

Said complaints were filed with the Chief Justice of the Texas Supreme Court, Nathan Hetch, in his capacity as the highest level magistrate in the State of Texas. Justice Hetch failed to perform his duty as a magistrate in Texas as stipulated by Texas Code of Criminal Procedure 15.09 which reads as follows:

> Art. 15.09. COMPLAINT MAY BE FORWARDED. A complaint in accordance with Article 15.05, may be forwarded as provided by Article 15.08 to any magistrate in the State; and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused; and the accused, when arrested, shall be dealt with as provided in this Chapter in similar cases.

To the knowledge of Plaintiff Kelton, as of the writing of this document, Justice Hetch, failed to perform a duty he was required to perform and in the process, denied Plaintiff Kelton in the due

**PLAINTIFFS ORIGINAL PETITION**

course of the laws while acting to shield Governor Abbot from prosecution in violation of Texas Penal Code 38.05 which reads in pertinent part as follows:

> Sec. 38.05. HINDERING APPREHENSION OR PROSECUTION. (a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:
>
>> (1) harbors or conceals the other;
>>
>> (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or
>
> (3) warns the other of impending discovery or apprehension

Liberty began with the Magna Carta over 800 years ago and was instituted to prevent precisely the condition we now experience in Texas.

### 6.1.2 Travis County Grand Jury

On or about the 8th day of October 2020, Plaintiff Kelton filed criminal charges with the Travis County Grand jury by personally serving said complaints with the grand jury at the address of the grand jury which happens to be the address of the Travis County District Attorney.

Said documents were delivered to the Ron Earl Building in Austin, Texas in, a sealed envelope addressed to the foreman of the Travis County Grand Jury, and put in the hands of Lisa Morell, an investigator for the Travis County District Attorney. Plaintiff Kelton requested and got assurance from Lisa Morell that the folder would be delivered to the foreman of the grand jury.

Said filing was made in consideration of Texas Code of Criminal Procedure 20A.51 which reads as follows:

> Art. 20A.051. DUTIES OF GRAND JURY. The grand jury shall inquire into all offenses subject to indictment of which any grand juror may have knowledge or of which the grand jury is informed by the attorney representing the state or by any other credible person.

In the envelope delivered to the Grand Jury were complaints against Jose Garza accusing District Attorney Garza of secreting criminal complaints against himself from the grand jury. There was also a cover letter to the foreman of the grand jury asking him/her to initial the document and return it to me in the included stamped, self-addressed envelope. Plaintiff Kelton did not receive

**PLAINTIFFS ORIGINAL PETITION**                                    19 of 159

the cover letter which gives Plaintiff Kelton reason to believe Jose Garza secreted criminal complaints against himself from the Travis County Grand Jury.

### *6.1.3  Justice Hetch*

On or about the 9th day of November 2020, Plaintiff Kelton filed criminal charges against Justice Hetch with the presiding judge of the Texas Court of Criminal Appeals, Sharon Keller, who also refused to issue a warrant in accordance with Texas Code of Criminal Procedure 15.09 supra.

### *6.1.4  Jose Garza*

On or about the 14th day of October 2021, Plaintiff Kelton filed a set of criminal complaints with the Travis County Grand Jury. Said documents were delivered to the Ron Earl Building in Austin, Texas in, a sealed envelope addressed to the foreman of the Travis County Grand Jury, and put in the hands of Lisa Morell, and investigator for the Travis County District Attorney. Plaintiff Kelton requested and got assurance from Lisa Morell that the folder would be delivered to the foreman of the grand jury.

Said envelope contained a cover letter to the foreman of the grand jury asking the foreman to email Plaintiff Kelton at the address provided and to let Plaintiff Kelton know that the grand jury actually received the complaints contained in the envelope. As of the writing of this complaint, Plaintiff Kelton has not received an email from the foreman of the grand jury.

Plaintiff Kelton cautioned Investigator Morell to warn Jose Garza not to open the folder. Plaintiff Kelton did not reveal that the envelope contained complaints against Jose Garza and others alleging that the Travis County District Attorney impersonated a magistrate by making a judicial determination that the District Attorney did not have jurisdiction to pursue the complaints which were filed with his office.

Plaintiff Kelton has reason to believe and does believe that Jose Garza opened the folder and found criminal complaints against him in there and, consequently, secreted same from the foreman of the grand jury.

## 6.2  TRAVIS COUNTY DISTRICT COURTHOUSE

On or about the 13th day of October 2021, Plaintiff Kelton went to the Travis County Courthouse and attempted to enter the building but was not comfortable wearing a mask as Plaintiff Kelton, at 71, was having some lung issues. The bailiff guarding the door told Plaintiff Kelton that the

**PLAINTIFFS ORIGINAL PETITION**                                          20 of 159

pistol he was prominently displaying on his hip was loaded and he was prepared to use the pistol if necessary to prevent Plaintiff Kelton from entering the building without a mask.

Plaintiff then asked the deputy to go up to the District Clerk's office and have a clerk come down and talk to Plaintiff Kelton. Plaintiff Kelton had just left the County Courthouse and a Sargent there did just exactly that. Well, at the district courthouse, when Plaintiff asked the deputy to go to the clerks office and ask a specific clerk who, was suggested by the county clerk, to come down and talk to Plaintiff the deputy asked if that was an order. Plaintiff thought a moment then responded, "Yes, as a matter of fact, it is."

The deputy then asked: "How has that worked out for you?"

Plaintiff Kelton responded, "Pretty good. Do you want to test it?"

The deputy said, "Yes."

Plaintiff Kelton was busy and had not intended to take on the issue of the loaded pistol and the depravation of the right to access to the courthouse, but with the officer's stance it was clear he did not intend to provide reasonable accommodation, as the Sargent at the County Courthouse did. So, Plaintiff Kelton took out his cell phone with the intent of calling 911 to ask for an officer to take Plaintiff Kelton's criminal complaint of 1st Degree Felony Aggravated Assault in violation of Texas Penal Code 22.02(b)(2)(A) which reads as follows:

Sec. 22.02. AGGRAVATED ASSAULT.

(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:

(2) regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

(A) by a public servant acting under color of the servant's office or employment;

The bailiff stepped around the counter he had been behind, put his hand on his pistol, and told plaintiff that he could not use a cell phone in the courthouse. When Plaintiff Kelton asked the officer if he intended to interfere with a 911 call, another deputy came to pulled the officer away.

Plaintiff Kelton promptly called 911 to secure an officer to take his complaint of first degree felony aggravated assault, in violation of Texas Penal Code 22.02(b)(2)(A), against the bailiff. Apparently, in protest of the de-funding of the police by the City of Austin, the 911 operator

**PLAINTIFFS ORIGINAL PETITION**

refused to dispatch an officer and Plaintiff Kelton was denied access to the courthouse at constructive gunpoint.

### 6.2.1  Some Deals Bigger Than Others

Some may think that this is not such a big deal. Plaintiff Kelton, has a different perspective. I was a soldier once and still carry the memory of standing at the bottom of a ramp leading up to that 707 jet poised to take off from Travis Airbase and ferry me and a plane load of others to war. I walked up that ramp with the lyric of "The Last Train To Clarksville" ringing in my ears. The lyrics that said: "I don't know if I am every coming home." I almost did not, unlike my twin brother, who was in theater at the same time. He did not come home, well, not alive that is. I was given the honor and privilege of holding his hand as his soul left him, eaten away by gangrene, in the Third Field Hospital in Saigon, South Vietnam. Like him, I have been on the sharp end of those deadly weapons and came away with a serious perspective. Just what are these rights worth anyway?

### 6.2.2  The Big Deal About Guns

I was a weapons specialist in the service but now own no guns. I believe people should have them but I simply cannot bring myself to put my hand on one. I spent too much time on the sharp end and saw, up close and personal, smelled and tasted what they do to human beings. Now, back in the USA, I have had more guns pointed at me by police in my home country than I did in combat.

### 6.2.3  Official Gun Slingers

When Texas put pistols on police officer's hips, they place a grave responsibility on them by the passage of Texas Penal Code 22.02(b)(2)(A). With the current state of lawlessness in the ranks of our public officials, we are all at risk of having those guns slung at us. Yes, I take them on but, better they point those pistols at me than my wife, my children, your wife, or your children. I swore on my oath, I would protect this country from all enemies, foreign and domestic so, it is my job to ensure the police follow the law to the letter. I now call every public official to their duty and do so as well.

That is my story and I am sticking to it.

## 6.3  TRAVIS COUNTY DISTRICT JUDGES

On or before the 30th day of November 2021, Plaintiff Kelton sent a set of criminal complaints against Jose Garza to every District Judge in Travis County, accusing Garza of secreting criminal complaints against himself from the Travis County Grand Jury.  As of the date of this writing, Plaintiff Kelton has reason to believe and does believe that not one District Judge in Travis County issued a warrant against Jose Garza and commanded by Texas Code of Criminal Procedure 15.09 supra.

# 7  BELL STATEMENT OF FACTS

This suit arises out of a gross failure of the legal system in Texas.  Plaintiff Bell, during the panic of the Covid 19 pandemic, simply wanted to go shopping at Nordstrom Rack on April 7, 2021. However, due to the Governor's executive order requiring face masks, Plaintiff called Nordstrom Rack Corporate and notified them that she had some autoimmune issues that affected he ability to withstand a lowered oxygen level and could not safely wear a mask.  Plaintiff was told that there would be no problem as the store honored the medical exemption and to enjoy her shopping. Upon her arrival at the store located in Sunset Valley, Texas, Plaintiff explained her medical situation as it pertained to her ability to wear a mask to the employees that approached her. Plaintiff was told she could shop without a mask by these store employees.

### 7.1.1  Mask Confrontation

After shopping and selecting some clothes to try on, she was confronted about a mask at the changing by Kelsie Fucci, Plaintiff noticed had been hanging around in her vicinity while she shopped. At the changing room the unidentified woman confronted Plaintiff and demanded that she don a mask.  Plaintiff explained that she had a medical condition and had contacted Nordstrom Corporate and spoke to employees at the store upon her arrival and was assured by them she could shop without a mask.

### 7.1.2  Personal Agenda

The unidentified employee did not like this. She was clearly agitated and wanted to enforce her personal agenda that Plaintiff Bell, in fact, wear a mask regardless of her medical condition or what she had previously stated. The unidentified employee started acting aggressive. Bell then asked why the woman behind her was able to shop without a mask but she could not.  Fucci

**PLAINTIFFS ORIGINAL PETITION**                                      23 of 159

turned to look at the other unmasked woman behind her. While she was looking the other way, Bell made her way toward the first dressing room on the left which had an open door. At this moment, the unidentified employee turned back toward Bell, saw her entering an empty dressing stall, and proceeded to hip-check Bell so hard that she fell back into the door frame of the dressing room.

### 7.1.3 Assault and Battery

Bell then stumbled back into the dressing room and at this time, the unidentified employee escalated her assault and battery and grabbed Bell's right arm and tried to pull her out of the dressing room. Fucci grabbed Bell's arm so tightly that Fucci left finger mark bruises on Bell's arm. Extremely frightened, Bell instinctively dropped the clothes that she was holding in her left arm and jerked herself free. Bell then closed and locked the door and called 911. At this point, Bell's post-traumatic stress disorder had been triggered and her mental state had been severely impacted.

### 7.1.4 Aggravated Assault

Two Sunset Valley Police officers arrived and instead of addressing the assault and battery against Plaintiff Bell, committed by Fucci, the police detained Bell even though Fucci stated that she did not want to file charges and only wanted Plaintiff Bell removed from the building. The police ignored Bell's claims of assault and refused to do an unbiased investigation, threw Bell to the ground, ripped her cell phone out of her hands, took her purse from her body, illegally searched her purse, took her car keys, accessed her car, and put Bell in a baking hot patrol car, while the car was turned off and the windows rolled up.

### 7.1.5 Serious Bodily Injury

The actions by Sunset Valley Police almost killed Bell from heat prostration. Bell would have died if not for a bystander calling 911 to report police brutality and then another bystander alerting the police that I was thrashing around in the overheated police car and then forcing the police to get Bell out of the car. After paramedics arrived, Bell's temperature was still 101 degrees even after the windows and doors of the patrol car had been opened to provide Bell with air. After Bell had a chance to cool down and complete a medical assessment by Travis County EMS, the police officers asked Bell if she wanted to press charges against the Nordstrom Rack employee. Of course, Bell wanted to press charges…she was attacked and then almost killed!!!

**PLAINTIFFS ORIGINAL PETITION**                                      24 of 159

#### 7.1.5.1   Hot Boxing

Plaintiff's physical condition including her affliction with PTSD and other ailments impacting her ability control her body temperature sent Plaintiff into a panic as she could feel her temperature rising.  She was handcuffed with her hands behind her and could only signal for help by banging her head on the window of the patrol vehicle.

#### 7.1.5.2   Saved by Bystander

A passerby saw her distress and went over and ordered the police to get Plaintiff out of the hot patrol car.  By this time Plaintiff was getting incoherent and was beginning to suffer a heat stroke.  An ambulance was called and by the time Travis County EMS took Plaintiff's temperature, it was still 101 and her vitals indicated her heart rate was off the charts.

It turns out, this practice is so common, the police call it "hot boxing" and they use it to force otherwise "difficult" people into submission (regardless of their medical condition).

### 7.1.6   Illegal Search

While Plaintiff was in the patrol car the police searched her purse, found her car keys and accessed her car when the bystander demanded they get plaintiff out of the sweltering patrol car. Plaintiff has no doubt, but for the assistance of a bystander, Plaintiff would have died in that car.

### 7.1.7   Solicitation of Complaint

After the medical scare, the officers told Plaintiff that the Nordstrom employee did not want to pursue criminal charges against Plaintiff and asked Plaintiff if she wanted to pursue criminal charges against the Nordstrom employee.  When Plaintiff indicated that she did, the officers went back into Nordstrom Rack, informed the employee that Plaintiff intended to pursue criminal charges then solicited a criminal complaint against Plaintiff.  This despite the fact the investigating officers themselves had concluded that there "was no assault" by Plaintiff and stated as much to each other at the scene.

### 7.1.8   Intimidation

While the male officer was in Nordstrom soliciting a criminal complaint against Plaintiff, the female officer searched Plaintiff's purse and pulled out a card showing that Plaintiff was running for the local school board then said to Plaintiff:  "You don't want this getting out."

**PLAINTIFFS ORIGINAL PETITION**

### 7.1.9 Improper Press Release and Release of Body Cam Video

Shortly after the arrest of Plaintiff, the Sun Valley Chief of police issued a press release about the arrest. He also released body cam footage to a television station that the prosecution secreted from Plaintiff Bell. Upon being called and asked about the press release the Chief of Police stated that he would not have people coming into his town without masks.

### 7.1.10 Showing of Malice

This was the second press release issued by Sunset Valley Police in the entire history of the department. The prior press release involved [a shooting by a SVPD officer]. The Police Chief also intentionally leaked body-cam video to the media which soon went viral. The release of the body cam footage to the media by the Sunset Valley Chief of Police was in direct violation of Texas Occupations Code Title 10. Occupations Related to Law Enforcement and Security Chapter 1701. Law Enforcement Officers, Subchapter N Body Worn Camera Program, Section 1701.661(f) which reads as follows:

> *Texas Occupations Code 1701.661* (f)  A law enforcement agency may not release any portion of a recording made in a private space, or of a recording involving the investigation of conduct that constitutes a misdemeanor punishable by fine only and does not result in arrest, without written authorization from the person who is the subject of that portion of the recording or, if the person is deceased, from the person's authorized representative.

### 7.1.11 Denied Examining Trial

Plaintiff was given a citation and commanded to appear at court, which she did. However, when plaintiff appeared and asked the court to examine into the sufficiency of the allegations, the court refused.

### 7.1.12 Subjected To Ongoing Criminal Enterprise

Plaintiff Bell was commanded to come to court repeatedly to meet with the prosecutor so that he could pressure Plaintiff Bell to accept a plea bargain. This continued for eighteen months while there was a Challenge to Subject Matter Jurisdiction before the court and a motion to dismiss for denial of a speedy trial.

### 7.1.13 Ineffective Assistance of Counsel

Plaintiff Bell had filed with the court a Challenge to Subject Matter Jurisdiction of the Court and an motion to dismiss for denial of speedy trial. The court refused to set the motions for hearing

**PLAINTIFFS ORIGINAL PETITION**                                    26 of 159

and repeatedly ordered Plaintiff to court to meet with the prosecutor what the prosecutor and Plaintiff Bell's hired counsel pressured Plaintiff Bell to enter a guilty plea. Plaintiff Bell's counsel repeatedly refused to petition to set the motions and pleadings filed by Plaintiff Bell for a hearing.

### 7.1.14 Dismissed for Lack of Evidence

On the November 14, 2022, the case was dismissed for "Insufficient Evidence to Sustain a Conviction", a determination that was required to be made the first day at an examining trial held under Chapter 16 Texas Code of Criminal Procedure.

### 7.1.14.1 Subject Matter Jurisdiction Challenge

On or about October 10, 2022, Plaintiff filed a challenge to the subject matter jurisdiction of the court for failure to hold a proper examining trial and for denying Plaintiff a speedy trial. The court refused to set either petition for hearing but had already set set numerous hearings for the purpose of giving the prosecutor opportunity to improper pressure Plaintiff Bell to enter a guilty plea.

### 7.1.14.2 Denied Access to Court

The court refused to set the petition for hearing but set numerous hearings for the purpose of giving the prosecutor opportunity to improper pressure Plaintiff Bell to enter a guilty plea.

The court pursued prosecution of Plaintiff for eighteen months until it dismissed the case for lack of evidence, an outcome that would have become immediately apparent had the court acted in accordance with law and held an examining trial.

Had the court acted in accordance with Texas Code of Criminal Procedure 2.11 and convened an examining court, the lack of evidence would have been evident and the prosecution would have ended before it started.

### 7.1.14.3 Unnecessary Lawyer Fees

As it was, Plaintiff had to hire an attorney who did nothing and charged Plaintiff approximately $5,000 only to act in concert and collusion with the State of Texas in the improper treatment of Plaintiff. As of the date of this pleading.

#### *7.1.14.4 Conspiracy Against Civil Rights*

By the following, Plaintiff will show that Nordstrom Rack, the Sunset Valley Police, the municipal judge, the prosecuting attorney and Plaintiff's counsel acted in concert and collusion, one with the other to obstruct justice and deny Plaintiff, and all others prosecuted in Texas in the due course of the laws of the State of Texas.

# 8   STATEMENT OF CLAIM

Plaintiffs will show, by the following, that the Judges of the Texas Court of Criminal Appeals, acting in concert and collusion with the Texas Office of Court Administration, developed a curriculum to train magistrate in practices and procedures which had the effect of eliminating Texas Code of Criminal Procedure Chapter 16, denying citizens accused of crime in their Constitutional protections and the due course of the laws.  Plaintiffs then contracted with Texas State University, a law school, to train magistrates in these flawed practices.  This ongoing criminal conspiracy to undermine the Texas legal system created our current catastrophe which, according to the Texas Office of Court Administration, costs Texas Counties on the order of $990,000,000 every year for pre-trial incarceration and another $254,000,000 in court appointed counsel.

According to Texas statistics, approximately 60% of persons incarcerated in Texas have not been convicted of the crime for which they are jailed but rather, have only been accused and are not being subjected to prosecutorial and judicial misconduct in furtherance of an ongoing criminal enterprise in violation of Texas Penal Code Chapter 72.  Plaintiffs will show that the above criminal connivance is the produce of a malignant calculus designed and intended to ease the prosecutorial burden on prosecutors and judges.  The above has been, and continues to be perpetrated, in order to coerce every person accused of a crime, into accepting a plea bargain in lieu of trial.  All this so that prosecutors and judges can avoid doing their jobs.

## 8.1   NO LACK OF LAW

The above referenced problem exists from no lack of law, but rather, from the refusal of public officials to follow the law as written.  Instead of following the law as written, they follow the training provided by the Court of Criminal Appeals and as a result, are on the verge of bankrupting Texas Counties.  Everyone charged with a crime in Texas, is going to take a deal.

**PLAINTIFFS ORIGINAL PETITION**                                        28 of 159

Every step, as presently practiced in the Texas Criminal Justice System, has been carefully crafted by the Texas Court of Criminal Appeals and Office of Court Administration to ensure the above outcome.  This criminal cabal has been so effective they have achieved an average conviction rate for all crimes in Texas, across the board, of 99.6%.

### 8.1.1  Corruption By Design

Police have been trained to take persons arrested, with or without a warrant, directly to jail with no consideration for the availability of a magistrate.  Magistrates have been trained to perform an aborted hearing called a "Magistration."   Neither this term, nor the hearing which it refers to exist in Texas law.  It is a corrupted practice taught to magistrates which has the effect of nullifying Texas Code of Criminal Procedure Chapter 16 and removes a bedrock practice which has been in law and served justice very well since the passing of the Magna Carta Libertatum in 1215 A.D.

### 8.1.2  Magistrates as Key to Kingdom

It was the intent of our founders that no freeman be subjected to criminal prosecution except by way of an examining trial by an elected local magistrate, one of their peers.  The Texas Court of Criminal Appeals an Office of Court Administration have trained otherwise right minded and well meaning magistrates in practices and procedures which routinely deny citizens in this primary protection and, as a result, police are put in a position to where their judgment, upon making an arrest, is seldom if ever questioned.  They can arrest a citizen for any reason, with our without cause, throw the in jail and their actions are never questioned.

### 8.1.3  Prosecutorial Impersonation

  Prosecutors routinely fail to act in accordance with their duty as prescribed by Texas Code of Criminal Procedure 2.01 which reads in pertinent part as follows:

> Art. 2.01. DUTIES OF DISTRICT ATTORNEYS.  It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.  They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.

When complaints are filed with prosecutors against public officials, they routinely exercise "prosecutorial discretion."  Prosecutorial discretion is another term they made us that describes a concept never intended by the Legislature.  The Legislature considered prosecutors carefully and

absolutely forbad them from acting in the capacity of a magistrate, in every case, but more specifically in matters of criminal allegations against public officials.

> Art. 2.03. NEGLECT OF DUTY. (a) It shall be the duty of the attorney representing the State to present by information to the court having jurisdiction, any officer for neglect or failure of any duty enjoined upon such officer, when such neglect or failure can be presented by information, whenever it shall come to the knowledge of said attorney that there has been a neglect or failure of duty upon the part of said officer; and he shall bring to the notice of the grand jury any act of violation of law or neglect or failure of duty upon the part of any officer, when such violation, neglect or failure is not presented by information, and whenever the same may come to his knowledge.

A prosecuting attorney was never intended to act as anything other than a lawyer for the state and was given no magisterial powers to make a determination of probable cause, especially in the matter of allegations against another public official.

A prosecutor is merely a lawyer hired by the state to act as a lawyer for the state. Once

## 8.2   DUE COURSE OF STANDING LAW

It is, and always has been, the intent of the Texas Legislature that the law be followed to the benefit of the people.

### 8.2.1  *Masters of the Servants*

Texas is a republic and, as such, the citizen is the ultimate check to the operation of bad law. The primary provision of law which empowers citizens to control their governmental instruments.

> Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people…The people insist on remaining informed so that they may retain control over the instruments they have created. Texas Government Code 552.001.

The above follows from Article 1 Section 2 of the Texas Constitution which reads as follows:

> Sec. 2. INHERENT POLITICAL POWER; REPUBLICAN FORM OF GOVERNMENT. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think

**PLAINTIFFS ORIGINAL PETITION**                                    30 of 159

expedient.

### 8.2.2 Official Constitutional Duty

The Texas Constitution proscribes process designed and intended to insure that all citizens are provided the due course of standing law starting with the Texas Constitution Article 1 Section 10 which reads as follows:

> Sec. 10.  RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS.  In all criminal prosecutions the accused shall hav† a speedy public trial by an impartial jury.  He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof.  He shall not be compelled to give evidence against himself† and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense.† unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penetentiary†, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

### 8.2.3 Constitutional Perscriptions

The notion that the above describes rights of the people is misplaced.  The above stands as commandments to public officials as no official may take on any official capacity until such time as that official has entered into a contract with the state by way of an oath of office taken in accordance with Texas Constitution Article 16 which reads as follows:

> Sec. 1.  OFFICIAL OATH OF OFFICE.  (a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:
>
> > "I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."
>
> (b)  All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:
>
> > "I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or

**PLAINTIFFS ORIGINAL PETITION**                                    31 of 159

promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God."

(c) Members of the Legislature, the Secretary of State, and all other elected and appointed state officers shall file the signed statement required by Subsection (b) of this section with the Secretary of State before taking the Oath or Affirmation of office prescribed by Subsection (a) of this section. All other officers shall retain the signed statement required by Subsection (b) of this section with the official records of the office.

The above is a contract, the covenants of which are contained in the Texas Constitution and the laws passed by the Texas Legislature.

### 8.2.4  Duties of Peace Officers

In every case, where someone has reason to believe that a crime has been committed, the only official authorized to receive a criminal allegation is some magistrate. A police officer is given no special powers concerning criminal allegations. When an officer gives notice of crime, s/he is commanded to give said notice by Texas Code of Criminal Procedure 2.13(b)(3) to some magistrate as follows:

> Art. 2.13. DUTIES AND POWERS.
>
> > (b) The officer shall:
> >
> > > (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law; and

You will notice, the laws of Texas in this regard, says nothing about a prosecutor.

### 8.3   DUE COURSE OF LAW

> 22. The Constitution of the State of Texas, Article 1, Section 19
>
> guarantees all citizens the following:

> **Sec. 19.  DEPRIVATION OF LIFE, LIBERTY, PROPERTY, ETC. BY DUE COURSE OF LAW.** No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

### 8.3.1  Federal Constitution Applies

The people of the State of Texas have a right to the due course of the law under the Constitution of the United States, Fourteenth Amendment, Section 1 which reads as follows:

**PLAINTIFFS ORIGINAL PETITION**                                              32 of 159

Section 1: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, with-out due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Constitution of the State of Texas, Article 1, Section 1 likewise binds the State of Texas to the due process provisions of the Constitution of the United States as follows: .

Sec. 1. FREEDOM AND SOVEREIGNTY OF STATE. Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States.

### 8.3.2  Examining Trial (Preliminary Hearing) As Due Process

Texas Code of Criminal Procedure 14.06(a)supra and Texas Code of Criminal Procedure 15.16supra are clear in that an arrested person is to be immediately taken to a magistrate.

"The law must be given a practical and reasonable application. Accordingly, the word `immediately' is very generally held to Defendant and with due diligence. The accused has the right to be presented without delay, but the question of what delay is must be determined by all the facts and circumstances. . .. While courts must safeguard the rights of individuals, they should not impose liability upon peace officers for delays which are reasonable under all the circumstances." Hicks v. Matthews, 1954, 153 Tex 177, 266 S.W.2d 846,849.  Roberts v. Bohac, 574 F.2d 1232 (5th Cir. 06/13/1978)

Defendant has a right to a proper determination of probable cause by a neutral magistrate in accordance with the decision of the Federal Courts in GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602, which reads in pertinent part as follows:

Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, at 96; Wong Sun v. United States, 371 U.S. 471, 479-482 (1963),

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside,

**PLAINTIFFS ORIGINAL PETITION**                                          33 of 159

the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., 18 U. S. C. 3146 (a)(2, (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish Defendant meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. **3. Nearest Magistrate**

### 8.3.3  Arrest in County of Jurisdiction

Where an individual is arrested in the county of original jurisdiction, the arresting officer has a duty, absent extenuating circumstances such as storm, flood, or intervening emergency, to immediately take Defendant to the nearest magistrate.  It can hardly be construed that, during normal business hours, with no intervening emergency clear from the public record, no magistrate was available.  Surely, there were magistrates in the county who would have been available considering all the officials designated as magistrates under Texas Code of Criminal Procedure Article 2.09 which reads as follows:

> Art. 2.09. WHO ARE MAGISTRATES. Each of the following officers is a magistrate within the meaning of this Code: The justices of the Supreme Court, the judges of the Court of Criminal Appeals, the justices of the Courts of Appeals, **the judges of the District Court**, the magistrates appointed by the judges of the district courts of Bexar County, Dallas County, or Tarrant County that give preference to criminal cases, the criminal law hearing officers for Harris County appointed under Subchapter L, Chapter 54, Government Code, the criminal law hearing officers for Cameron County appointed under Subchapter BB, Chapter 54, Government Code, the magistrates or associate judges appointed by the judges of the district courts of Lubbock County, Nolan County, or Webb County, the magistrates appointed by the judges of the criminal district courts of Dallas County or Tarrant County, the associate judges appointed by the judges of the district courts and the county courts at law that give preference to criminal cases in Jefferson County, the associate judges appointed by the judges of the district courts and the statutory county courts of Brazos County, Nueces County, or Williamson County, the magistrates appointed by the judges of the district courts and statutory county courts that give preference to criminal cases in Travis County, the criminal magistrates appointed by the Brazoria County Commissioners Court, the criminal magistrates appointed by the Burnet County Commissioners Court, the magistrates appointed by the El Paso Council of Judges, the county judges, the judges of the county courts at law, judges of the county criminal courts, the judges of statutory probate courts, the associate judges

**PLAINTIFFS ORIGINAL PETITION**

appointed by the judges of the statutory probate courts under Chapter 54A, Government Code, the associate judges appointed by the judge of a district court under Chapter 54A, Government Code, the magistrates appointed under Subchapter JJ, Chapter 54, Government Code, the magistrates appointed by the Collin County Commissioners Court, the magistrates appointed by the Fort Bend County Commissioners Court, the justices of the peace, and the mayors and recorders and the judges of the municipal courts of incorporated cities or towns.(emphasis added)

Even if there were no magistrates in the county, surely there was at least one magistrate in Texas that could make him/herself available considering that examining trials can be conducted electronically in Texas.

### 8.3.4  Reasonable Delay

While delays can be expected in certain circumstances, simple failure to seek the authority envisioned by Gerstien v Pugh(supra), may not be construed as a proximate cause of reasonable delay.  This issue was addressed in the seminal case on this is Heath v. Boyd, 175 S.W.2d 214 (Tex. 1943).

> "Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd.  There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by telephone as to what to do, in the face of a plain statutory command as to [***13] what must be done in all cases of arrest without warrant.  Art. 217, C.C.P., 1925, provides, "Defendant each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested * * before the nearest magistrate where the arrest was made without an order." Substantially the same requirement appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925.  Presumably, there was a magistrate in Mertzon, the county seat.  Yet Boyd offers no reason why he did not take Heath before that official.  Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon.  If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone.  He was under no obligation to seek advice or aid from Johnson.  He was under a positive duty immediately to seek a magistrate.  That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities.  Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [**14] al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.);  [**218]  Karner et al v. Stump (Civ. App.), 34 S.W. 656; **Petty v. Morgan** et al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31Heath v. Boyd, 175 S.W.2d 214 (Tex. 1943)

### 8.3.5  Diligent Effort to Locate Magistrate

> 23. The arresting officer in this case made no due diligent effort to locate a magistrate.

"Although the failure to take the plaintiff before a magistrate would have been excused if good grounds had existed for the belief that a magistrate was not available, such was not the case since the Defendant **officers made no attempt to determine whether the magistrate was or would make himself available."** Roberts v Bohac, 574 F2d 1232

### 8.3.6  Any Magistrate in Texas

Irrespective of any other states, Texas has specific legislation concerning this requirement to take the accused before a magistrate.  In Texas, if a magistrate is not available in the county, the consideration of the availability of a magistrate must be extended to include every county in the state (see Texas Code of Criminal Procedure Article 14.06 supra).

> The record offers, as the government's only justification, evidence that the magistrate, who issued the warrants, advised of his unavailability after the early evening of Friday, September 8, 1989. There are three other magistrates in the District. The record is bereft of any evidence as to their availability. Likewise, the record is bereft of any evidence as to the availability of any of the district Judges. n5 Absent evidence of other than the unavailability of the duty magistrate (the propriety of which is not here questioned), there is no basis to find that the delay for the entire period from [*20] the arrest to presentment was necessary. To be sure, it was a weekend. The court was closed. But those facts do not entitle the government to presume the absence of an obligation to try to arrange the appearance of an arrestee before one of the other possible judicial officers. The law remains a force in life even outside usual business hours and all judicial officers have the obligation to respond to the needs of parties as they are mandated by the law. Defendant to their reasonable non-judicial activities, all judicial officers stand ready to fulfill that obligation. Here, the government has not shown the unavailability of all the possible judicial officers. The obligation of complying with the law lies with the government, which thus has the burden of proving that an arrestee was brought before a judicial officer without unnecessary delay. Its proof of the unavailability of one judicial officer does not prove that the delay to the next regular business hours, some sixty to sixty-five hours later, did not constitute unnecessary delay if it does not exhaust the possibility of an appearance before one of the other judicial officers in the district. See United States v. Colon, 835 [*21] F.2d 27, 30-31 (2d Cir. 1987).

### 8.3.7  One Magistrate as Close as Another

With the current technology and law, it is not unreasonable to consider every magistrate in the State of Texas as any one magistrate can be reached by phone as any other magistrate in the

state.  Distance is no longer an impediment to seeking permission of a magistrate before taking a citizen to jail.

### 8.3.8  Duties of Magistrates

When a magistrate is given notice of crime said magistrate is to convene an examining court in accordance with Texas Code of Criminal Procedure 2.11 which reads as follows:

> Art. 2.11. EXAMINING COURT.  When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.

### 8.3.9  Order Under 16.17

An examining trial must be held under Texas Code of Criminal Procedure Chapter 16 and after a determination is made, an order is to be issued by the magistrate in accordance with Texas Code of Criminal Procedure 16.17 which reads as follows:

> Art. 16.17. DECISION OF JUDGE.  After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require.  Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

### 8.3.10 Forward to Clerk 17.30

Once an order is issued, the magistrate is directed to forward the order and all other documents had in the case to the court of jurisdiction in accordance with Texas Code of Criminal Procedure 17.30, the court of jurisdiction is then directed by Texas Code of Criminal Procedure 17.31 as follows:

> Art. 17.30. SHALL CERTIFY PROCEEDINGS.  The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope.  The voluntary statement of the defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.

The clerk, upon receiving documents from the magistrate is directed by Texas Code of Criminal Procedure 17.31 as follows:

> Art. 17.31. DUTY OF CLERKS WHO RECEIVE SUCH PROCEEDINGS.  If the proceedings be delivered to a district clerk, he shall keep them safely and deliver the

**PLAINTIFFS ORIGINAL PETITION**                                        37 of 159

same to the next grand jury.  If the proceedings are delivered to a county clerk, he shall without delay deliver them to the district or county attorney of his county.

The above is in keeping with the Constitutional requirements in the Texas Constitution Article 5 Section 17 which reads as follows:

> Sec. 17. COUNTY COURT: TERMS, PROSECUTIONS, AND JURIES. The County Court shall hold terms as provided by law. Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law. Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; and if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit. A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee.Forward to Grand Jury

## 8.4   15.09 ACCES TO COURTS

The Texas Court of Criminal Appeals acting in concert and collusion with the Texas Office of Court Administration, and others, have been trained and directed to deny citizens access to the court for redress of criminal grievance by refusing to act on criminal complaints by citizens in direct violation of Texas Code of Criminal Procedure 15.09.

This had the effect of taking control of the government from the people and turning Texas into the worst police state the world has ever seen.

### 8.4.1  *Set the Hounds Upon Us*

Police have been trained to arrest citizens with no regard for the right of things or probable cause and take them directly to jail in direct violation of Texas Code of Criminal Procedure 14.06, 15.16, and Texas Transportation Code 543.002.  Since there will be no proper examining trial, a police officer can arrest anyone and not be required to immediately explain himself.

It was not intended that the police hold the key to the jailhouse door.  That key was left in the hand of magistrates whose job it was to stand between the police and the public, to act as a buffer to the exuberance of law enforcement, but that buffer has been artfully removed.

### 8.4.2  Statutory Prescription on Arrest

In every case where a citizen is arrested in Texas, with or without an existing warrant, the arresting officer is commanded to take the accused directly to the nearest magistrate as follows:

### 8.4.2.1  Arrest for Onsite Offense

Where a person (hereinafter referred to as "Defendant," is arrested [detained?] for an alleged onsite offense, the person making the arrest shall take the person directly to the nearest magistrate by the most direct route in accordance with Texas Code of Criminal Procedure 14.06(a) which reads as follows:

> Art. 14.06(a) MUST TAKE OFFENDER BEFORE MAGISTRATE.
>
> (a)  Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.

Without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 8.4.2.2  Arrest on Warrant

Where a person is arrested on an existing warrant, the person making the arrest is commanded by Texas Code of Criminal Article 15.16 which reads as follows:

> Art. 15.16.  HOW WARRANT IS EXECUTED.  (a)  The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant if the magistrate is in the same county where the person is arrested.  If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.
>
> (b)  Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may, as permitted by that article, take the person arrested before a magistrate in a county other than the county of arrest.

**PLAINTIFFS ORIGINAL PETITION**

As above, without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 8.4.2.3   Traffic Arrest

Even if a person were to be arrested for a traffic violation the arresting officer is directed to take the person arrested directly to the nearest magistrate under Texas Transportation Code 543.002 which reads as follows:

> Sec. 543.002. PERSON ARRESTED TO BE TAKEN BEFORE MAGISTRATE.
> (a) A person arrested for a violation of this subtitle punishable as a misdemeanor shall be immediately taken before a magistrate if:
>
>> (1) the person is arrested on a charge of failure to stop in the event of an accident causing damage to property; or
>>
>> (2) the person demands an immediate appearance before a magistrate or refuses to make a written promise to appear in court as provided by this subchapter.
>
> (b) The person must be taken before a magistrate who:
>
>> (1) has jurisdiction of the offense;
>>
>> (2) is in the county in which the offense charged is alleged to have been committed; and
>>
>> (3) is nearest or most accessible to the place of arrest.

## 8.5   POLICE MIS-DIRECTION

Police officers in Texas are trained and directed to take persons arrested, with or without a warrant, directly to jail where they are booked and held until someone claiming to be a magistrate will hold an abomination called a "Magistration."

### 8.5.1  Police Officer Directive

When a police officer has it made known to him/her that a crime has been committed that officer is directed by Texas Code of Criminal Procedure 2.13(a)(3) as follows:

> Art. 2.13. DUTIES AND POWERS.  (b) The officer shall:
>
>> (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

### 8.5.2  Prosecuting Officer Directive

Prosecuting attorneys are directed by Texas Code of Criminal Procedure 2.05 as follows:

**PLAINTIFFS ORIGINAL PETITION**                                        40 of 159

> Art. 2.05. WHEN COMPLAINT IS MADE. If the offense be a misdemeanor, the attorney shall forthwith prepare an information based upon such complaint and file the same in the court having jurisdiction; provided, that in counties having no county attorney, misdemeanor cases may be tried upon complaint alone, without an information, provided, however, in counties having one or more criminal district courts an information must be filed in each misdemeanor case. If the offense be a felony, he shall forthwith file the complaint with a magistrate of the county.

By the following, we will show how the above reference to prosecution by information alone is unconstitutional and that all complaints must be presented to some magistrate else, the trial court cannot accrue jurisdiction.

### 8.5.3  Magistrates Ignore Statutory Mandate

Magistrates were apparently instructed to ignore the mandate contained the Texas Code of Criminal Procedure 15.09 which reads as follows:

> Art. 15.09. COMPLAINT MAY BE FORWARDED. A complaint in accordance with Article 15.05, may be forwarded as provided by Article 15.08 to any magistrate in the State; and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused; and the accused, when arrested, shall be dealt with as provided in this Chapter in similar cases.

Plaintiffs will show, by the facts alleged below, that magistrates across Texas, from the highest to the lowest, routinely ignore their duty when it comes to responding to their Constitutional masters.

### 8.5.4  Must Issue Warrant

In Texas, unlike some other states, when a criminal complaint is presented to a magistrate, the magistrate is commanded to issue a warrant forthwith. There is nothing in Texas law to indicate the Legislature intended magistrates to hold and examining trial ex parte, with only the accuser present. It was clearly intended that the examination into the sufficiency of the allegation, beyond the requirements of Texas Code of Criminal Procedure 15.05 pre-requisites, only be held when both parties were present as will be shown in greater detail below.

### 8.5.5  Remedy Denied

The above had the effect of denying the public access to the remedy contemplated by Texas Constitution Art 13 which reads as follows:

> Sec. 1. FREEDOM AND SOVEREIGNTY OF STATE. Texas is a free and independent State, subject only to the Constitution of the United States, and the

maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States.

### 8.5.6 Cases in Point

As a case in point, Plaintiff Kelton filed a 151 page criminal complaint against Gregory Abbott consequent to his executive orders related to the Covid epidemic. The complaint was filed with Supreme Court Chief Justice Nathan Hetch in his capacity as a magistrate in the State of Texas. It seemed appropriate in as much as Plaintiff Kelton was filing against the highest official of the Executive Branch of Texas Government, that Plaintiff Kelton file the complaint with the highest level magistrate in the State of Texas and indicated by Texas Code of Criminal Procedure 2.09 which reads as follows:

> Art. 2.09. WHO ARE MAGISTRATES. Each of the following officers is a magistrate within the meaning of this Code: The **justices of the Supreme Court**, the judges of the Court of Criminal Appeals, the justices of the Courts of Appeals, the judges of the District Court, the magistrates appointed by the judges of the district courts of Bexar County, Dallas County, or Tarrant County that give preference to criminal cases, the criminal law hearing officers for Harris County appointed under Subchapter L, Chapter 54, Government Code, the criminal law hearing officers for Cameron County appointed under Subchapter BB, Chapter 54, Government Code, the magistrates or associate judges appointed by the judges of the district courts of Lubbock County, Nolan County, or Webb County, the magistrates appointed by the judges of the criminal district courts of Dallas County or Tarrant County, the associate judges appointed by the judges of the district courts and the county courts at law that give preference to criminal cases in Jefferson County, the associate judges appointed by the judges of the district courts and the statutory county courts of Brazos County, Nueces County, or Williamson County, the magistrates appointed by the judges of the district courts and statutory county courts that give preference to criminal cases in Travis County, the criminal magistrates appointed by the Brazoria County Commissioners Court, the criminal magistrates appointed by the Burnet County Commissioners Court, the magistrates appointed by the El Paso Council of Judges, the county judges, the judges of the county courts at law, judges of the county criminal courts, the judges of statutory probate courts, the associate judges appointed by the judges of the statutory probate courts under Chapter 54A, Government Code, the associate judges appointed by the judge of a district court under Chapter 54A, Government Code, the magistrates appointed under Subchapter JJ, Chapter 54, Government Code, the magistrates appointed by the Collin County Commissioners Court, the magistrates appointed by the Fort Bend County Commissioners Court, the justices of the peace, and the mayors and recorders and the judges of the municipal courts of incorporated cities or towns. **(emphasis added)**

In as much as Justice Hetch is the Chief Justice of the Supreme Court, it seemed appropriate. However, Justice Hetch did not seem impressed and refused to perform his duty as prescribed by

**PLAINTIFFS ORIGINAL PETITION**                                                    42 of 159

Texas Code of Criminal Procedure 15.09 supra. Subsequently, Plaintiff Kelton filed a criminal complaint against Justice Hetch with the presiding judge of the Texas Court of Criminal Appeals, Judge Sharon Keller. Judge Keller also refused to perform her duty under Texas Code of Criminal Procedure 15.09 supra.

By the following, Plaintiffs will show how magistrates across Texas engage in an ongoing criminal enterprise whereby they regularly deny citizens access to the courts for redress of criminal grievance in matters of complaints against public officials then regularly prosecute those same citizens in gross violation of the clear letter of the laws of the State of Texas.

### 8.5.7  Victoria County

Plaintiffs was engaged in some business in Victoria County which lead him to file some criminal complaints. What follows is typical.

### 8.5.7.1  Robert Whitaker

On or about the 25th day of October 2021, Plaintiff Kelton presented a set of criminal complaints to Justice of Peace Robert Whitaker. When Judge Whitaker found that Plaintiff Kelton was not a lawyer he threw the complaints down on the counter stating that: "Since you are not a lawyer I am not even going to read them." He then stormed out in a huff.

### 8.5.7.2  Joel Johnson

In a hearing on the lawsuit Plaintiff Kelton filed against Judge Whitaker, retired judge Joel Johnson, when presented with criminal complaints against Robert Whitaker for refusing to perform his statutory duty which required him to issue warrants under Texas Code of Criminal Procedure 15.09, appointed Judge Joel Johnson also refused to even read the complaints.

### 8.5.7.3  Eli Garcia

Plaintiff took a set of criminal complaints against Robert Whitaker, and Joel Johnson to District Judge Eli Garcia. The judge was presiding over a trial and during a recess Plaintiff Kelton noticed the bailiff that Plaintiff Kelton had business with the court. When the bailiff asked the nature of the business Plaintiff Kelton handed the bailiff the complaints and directed the bailiff to give them to Judge Garcia, which he promptly did.

Judge Garcia looked at them then asked Plaintiff Kelton what they were. Plaintiff Kelton responded that they were criminal affidavits.

**PLAINTIFFS ORIGINAL PETITION**                                43 of 159

Judge Garcia then asked Plaintiff Kelton what Plaintiff Kelton wanted him to do with them. Plaintiff Kelton told the judge that he wanted the judge to have his clerk swear Plaintiff Kelton in then certify Plaintiff's verification of the veracity of the statements in the complaints then do precisely what Article 15.09 Texas Code of Criminal Procedure commanded him to do.

Judge Garcia gave a one word response: "Denied."

Plaintiff has filed criminal complaints against public officials in Tarrant, Travis, Dallas, Henderson, Hays, Cheorkee and a number of other counties in Texas, all with the same result.

Plaintiff Kelton now comes to the court seeking remedy.

### 8.5.8  Wise County

On or around the 15th day of November, 2020, Plaintiff Kelton went to the Wise County Courthouse to file criminal complaints against the County Judge for refusing to act on criminal complaints against Justice Hetch and Judge Keller.  Plaintiff was blocked by bailiffs at the direction of District Judge Brock Smith as Judge Smith did not want to hear Plaintiff Kelton's complaint.

After being threatened with arrest if Plaintiff Kelton attempted to file criminal complaints with Judge Smith's clerk Plaintiff went to the District Attorney's office and while having a private conversation with the then district attorney, Greg Lowery, Plaintiff Kelton was arrested by Sgt's Riggs and Woods for disorderly conduct on the allegation that Plaintiff Kelton softly said, "Damn" and "SOB."  Plaintiff was within 30 ft of the magistrate Plaintiff came to see and demanded that the bailiffs open the door to the courtroom and take me to the nearest magistrate.

I guess they missed the irony of the situation and took Plaintiff Kelton across town and processed me into the county jail where I spent the night and got bitten on the head by a brown recluse spider that was apparently in the blanket they gave me.

It took 6 weeks to get a probable cause statement where Sgt Riggs effectively threw the District Judge under the bus.  Plaintiff Kelton filed a motion to dismiss and the case was dismissed immediately.  Had Plaintiff Kelton been taken before a magistrate, the case would have been dropped immediately.

### 8.5.9 Travis County

Plaintiff Bell was arrested by City of Sunset Valley Police and charged with a class C misdemeanor, cited, and released then spent 2 years being ordered to one hearing after another where the prosecutor tried to coerce Plaintiff Bell into entering a guilty plea. Eventually the case was dropped for lack of evidence. Has an examining trial been held at the first appearance the case would have been dropped immediately.

## 8.6   THE GRAIN OF SAND THAT RELEASED THE BOLDER

The Texas Court of Criminal Appeals in concert and collusion with the Office of Court Administration develop training for magistrates and police which created this horrible mess we have in Texas today. They directed police to arrest people and take them directly to jail where they could be subjected to the abomination called a "Magistration."

### 8.6.1 Magistration Abomination

When a person, who has been arrested, is brought before a magistrate, magistrates have been trained to perform an abomination referred to as a "Magistration." The term is highlighted in read as, when the term is typed into Microsoft Word, Word puts a red line under it as Word does not recognize it as a legitimate term in the English language. In point of fact, it is not a proper word and it refers to a set of practices and procedures taught to magistrates by Texas State University as approved by the by the Office of Court Administration and the Texas Court of Criminal Appeals.

### 8.6.2 Statutory Construction Violation

In 1965, the Legislature saw fit to add a subordinate clause to Texas Code of Criminal Procedure 14.06(a) which reads as follows:1

> Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, **or, to provide more expeditiously to the person arrested the warnings described by** Article 15.17 **of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in** Article 15.17 **of this Code. (emphasis added)**

**PLAINTIFFS ORIGINAL PETITION**                                    45 of 159

At the same time a sub-paragraph to Texas Code of Criminal Procedure 15.16.  as paragraph (b) which reads as follows:

Art. 15.16.  HOW WARRANT IS EXECUTED.

(b)  Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county **other** than the county of arrest.

### 8.6.3  Objective Reasonableness

In the interest of being objectively reasonable, on careful examination of the corpus juris (body of Texas law), this addition could only refer to a person arrested near a county line.  In Heath v. Boyd the court are clear tin hat a person arrested is to be taken directly to the nearest magistrate as follows:

Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd.  There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by tele-phone as to what to do, in the face of a plain statutory command as to [***13]  what must be done in all cases of arrest without warrant.  Art. 217, C.C.P., 1925, pro-vides, "I each case enumerated in this chapter, the per-son making the arrest shall immediately take the person arrested * * before the nearest magistrate where the ar-rest was made without an order." Substantially the same requirement appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925. Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official.  Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon.  If he had taken Heath to that offi-cial, he could have gotten the information and assis-tance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson.  He was under a positive duty immediately to seek a magistrate.  That such failure, unexcused, makes a case of false im-prisonment, as a matter of law, is held by all the authori-ties.  Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [***14] al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.); [**218] Karner et al v. Stump (Civ. App.), 34 S.W. 656; Petty v. Morgan et al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31

### 8.6.4  Nearest Magistrate

Where Boyd arrested Heath and did not take him to the nearest magistrate, Boyd was found liable. Had the nearest magistrate been in another county, this created a question: Can the arresting officer exit the county of jurisdiction in order to seek the nearest magistrate?

The above addition to the code answers this question by authorizing the arresting officer to take the accused to any county "other" than the county of jurisdiction if that magistrate is closer. In that instance, and only that instance, the out of county magistrate could administer the warnings in Texas Code of Criminal Procedure 15.17. Then, when the person was returned to the county of original jurisdiction, a proper examining trial must be held.

### 8.6.5  High Court Mis-interpretation

In 1970, the courts ruled that a person only had a right to an examining trial in a felony case. This was based on a bastardized reading of Texas Code of Criminal Procedure 16.01 which reads as follows:

> Art. 16.01. EXAMINING TRIAL. When the accused has been brought before a magistrate for an examining trial that officer shall proceed to examine into the truth of the accusation made, allowing the accused, however, sufficient time to procure counsel. In a proper case, the magistrate may appoint counsel to represent an accused in such examining trial only, to be compensated as otherwise provided in this Code. **The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case.** If the accused has been transferred for criminal prosecution after a hearing under Section 54.02, Family Code, the accused may be granted an examining trial at the discretion of the court. **(emphasis added)**

The courts somehow construed from the above that a citizen only had a right to an examining trial in the matter of a felony.

### 8.7   NO RIGHT TO EXAMINING TRIAL

Somehow the courts came to the conclusions that an examining trial was a matter or "right." It is no such thing. All public officials are commanded by the Texas Constitution to ensure the due course of the laws of the State of Texas. The laws of Texas command, to include Texas Code of Criminal Procedure 14.06, and 15.16 as well as Texas Transportation Code 345.002, require every person who makes an arrest, with or without a warrant, to take the accused directly to the

**PLAINTIFFS ORIGINAL PETITION**                                    47 of 159

nearest magistrate and the magistrate is commanded by Texas Code of Criminal Procedure 2.11 to convene an examining court. Examining courts are held under Texas Code of Criminal Procedure Chapter 16 supra.

### 8.7.1 Statutory Perscription

This is not about "rights" granted to the people. This is about a statutory prescription in the form of a commandment to public officials which they bound themselves to when the entered into a contract with the state by swearing on their oath they would support the Constitution and uphold the laws of the State of Texas.

The courts speak to "rights" as if they are come sort of gift granted to the people by the Constitution. That is nonsense. The Texas Constitution, in Article 1 grants the people nothing. The Texas Constitution, by said article, placed a contractual covenant on public officials and commands them to provide an examining trial on arrest with or without a warrant.

### 8.7.2 Constitutional Commandments On Demand

The courts have ruled that a citizen must demand their right to an examining trial. Plaintiffs will show this to be utter nonsense. Public officials are commanded to hold an examining trial in the due course of the laws of the State of Texas. This is not a right granted to the people. Citizens do not have a right to be arrested, to be thrown in jail, to be prosecuted or to an examining trial. An examining trial is a statutory prescription which goes to the due course of the laws and that is something the people do have a right to. Plaintiffs assert and alleges, the laws apply without regard to the wants or wishes of the accused. The police and public officials are commanded to take each arrested person directly to "some magistrate" whether the person wants to be brought before a magistrate or not.

### 8.7.3 Statutory Construction Act

Because of the above, prosecutors started interpreting Texas Code of Criminal Procedure 14.06(a) and Texas Code of Criminal Procedure 15.16(b) to mean they could simply ignore Chapter 16 of the Texas Code of Criminal Procedure. The verbiage of the statutory adjustments were not as clear as they might have been and prosecuting attorneys, being lawyers, did what lawyers tend to do. They word-crafted the meanings and used them to completely do away with the due course of the laws in the state of Texas which had secondary effects no one foresaw, the mass incarceration crisis which is in the process of bankrupting Texas counties.

**PLAINTIFFS ORIGINAL PETITION**

The above treatment interpreted a statute in such a way that it had the effect of nullifying Texas Code of Criminal Procedure Chapter 16. According to the Texas Code Construction Act at 311.021 the intent of statutes must be construed as follows:

Sec. 311.021. INTENTION IN ENACTMENT OF STATUTES. In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

As a result shyster word crafting, Texas Criminal Justice has been converted into a street gang as the term is defined by Texas Code of Criminal Procedure 71.01(d) which reads as follows:

Sec. 71.01. DEFINITIONS. In this chapter.

(d) "Criminal street gang" means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.

### 8.7.4 Constitutional Speedy Trial Trashed

The speedy trial act was ruled unconstitutional on technical grounds that had little or nothing to do with the Constitutional commandment that public officials accord any accused in a speedy trial. Once the act was overturned prosecutors treated the Constitutional commandment as it if no longer existed and they were free to hold people as long as needed to force a plea agreement from them.

In the instant case, Plaintiff Bell had a class C misdemeanor held over her head for two years because she would not be strong-armed into entering a guilty plea. Finally, the case was dismissed for lack of evidence. Had an examining trial been timely held, the lack of evidence would have been apparent to any magistrate and the case would have been dismissed immediately.

This issue will be addressed in more detail below as this introduction is getting a bit long.

## 8.8  INTENT OF THE TEXAS LEGISLATURE

While that may be the case in the United States Generally, in Texas the Legislature stated specifically what it considered a reasonable delay in the abstract contained in Senate Bill 1043. The abstract of the bill reads as follows:

> IN DETERMINING WHETHER A DELAY AFTER ARREST HAS VIOLATED A DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHT TO A SPEEDY TRIAL, THE U.S. SUPREME COURT HAS ARTICULATED A BALANCING TEST. FROM THE DECISION IN BARKER V. WINGO (1972), COURTS MUST LOOK AT THE LENGTH OF THE DELAY, THE REASON FOR THE DELAY, THE DEFENDANT'S ASSERTION OF HIS RIGHT, AND PREJUDICE TO THE DEFENDANT. UNDER THE TEXAS SPEEDY TRIAL ACT THERE IS NO REQUIREMENT OF A SHOWING OF PREJUDICE, AND ALTHOUGH A MOTION FOR DISCHARGE MUST BE MADE BEFORE TRIAL, THE INTERVAL WHICH WILL SHIFT TO THE PROSECUTOR THE BURDEN JUSTIFYING THE DELAY IS MUCH SHORTER THAN THE CONSTITUTIONAL THRESHOLD OF 1 YEAR. ALL FELONIES MUST BE BROUGHT TO TRIAL WITHIN 120 DAYS OF THE COMMENCEMENT OF THE CRIMINAL ACTION. IF A MISDEMEANOR IS PUNISHABLE BY IMPRISONMENT FOR MORE THAN 180 DAYS, THE STATE MUST BE READY WITHIN 90 DAYS OF THE COMMENCEMENT OF THE PROSECUTION; IF THE PUNISHMENT IS LESS THAN 180 DAYS THE STATE HAS ONLY 60 DAYS TO PREPARE. IF THE OFFENSE IS PUNISHABLE BY FINE ONLY, THE PROSECUTOR HAS A 30 DAY PERIOD TO BRING ACTION. THE LAW IS INTENDED NOT ONLY TO PROTECT DEFENDANT'S RIGHTS, BUT ALSO TO REDUCE THE PROBLEM OF OVERCROWDED JAILS. PROBLEMS WITH THE STATUTE CENTER AROUND THE NUMEROUS EXCEPTIONS TO THE TIME LIMITS, INCLUDING REASONABLE DELAYS WHILE THE STATE OBTAINS EVIDENCE. ALTHOUGH THERE ARE WAYS FOR COURTS TO EXCLUDE TOO MUCH TIME, AND FOR PROSECUTORS TO SEEK UNJUSTIFIED EXCLUSIONS, THIS STATUTE SHOULD ENCOURAGE A MORE REASONALBE FLOW OF CASES. APPENDED MATERIALS INCLUDE THE FORM FOR DEFENDANT'S MOTION FOR DISCHARGE UNDER THE ACT. FOOTNOTES ARE PROVIDED. (TWK).

## 8.9  SPEEDY TRIAL UNCONSTITUTIONAL

The State, in Fred MESHELL, Appellant, v. The STATE of Texas, Appellee. No. 1339-85 overturned the Speedy Trial Act on the following grounds:

> The State would show that the caption of said bill [Acts 1977, 65th Leg., Ch. 787, pg. 1970] is defective in that it does not and did not contain sufficient information as to inform members of the Legislature as to its content and therefore violates the caption requirement and Art. III, Sec. 35 of The Texas Constitution.

**PLAINTIFFS ORIGINAL PETITION**                                            50 of 159

> The State would further show that the Texas Speedy Trial Act is a violation of the
> separation of powers doctrine, Art. II, Sec. 1, and also is a violation of The Texas
> Constitution, Art. V, Sec. 8, Art. V, Sec. 16, Art. V, Sec. 19, and any other
> applicable provisions of the Texas Constitution.

While the act itself was declared unconstitutional, it was so declared on grounds that did not
invalidate the clearly stated Legislative intent that trials must be held within specifically stated
time limits. This is as clear a statement of Legislative intent as can be had.

## 8.10 LEGISLATIVE DEFINITION REMAINS

The intent of the Legislature in the preamble to the bill, as quoted above, stated the clear intent of
the Legislature as to the amount of delay that would constitute a constitutional violation of the
right to a speedy trial. Police and prosecutors in the State of Texas have taken the fact that the
Speedy Trial Act was overturned as license to violate the Constitutional right to a speedy trial
and has used that to create a police state in Texas that has led to our current mass incarceration
issue that is decimating the Texas Economy. Out of Control Prosecution

### 8.10.1 Prosecutor Coup

The above resulted in a situation to where prosecutors were able to take control of the
prosecutorial process. Without examining trials, prosecutors were at liberty to prosecute anyone
and everyone. Consequently, prosecutors in Texas no longer prosecute cases. They simply
harangue and harass the accused until they take a deal. The police were allowed to arrest anyone
for any reason with no concern for the right of things or the rule of law as the accused almost
never made it to court. Every step in the prosecutorial process was carefully crafted to force
anyone accused of crime to take a deal without regard to the sufficiency of the charges against
them. As a result, at present in Texas, the average conviction rate for all crimes, across the
board, is 99.6%. We should be ashamed of ourselves.

### 8.10.2 Policing Persecution With Impunity

This has led the police to absolute impunity when making arrests. At this point, a police officer
can arrest anyone for any reason and the arrest will never be questioned. Neither the prosecutor
nor defense counsel care if the person is guilty or innocent. Prosecutors know, if they delay
justice long enough and put enough pressure on the accused, they will take a deal. Defense
counsel knows this as well and they need only delay and do nothing as the prosecutor will secure

a deal. With the magistrates neutral judgment and probable cause determinations eliminated, the police set loose to hound the public to the point the public is rising up against them.

Probable cause determinations were a mainstay of proper juris-prudence for the last 800 years, since the original signing of the Magna Carta Libertatum in 1215, then prosecutors, through Texas State University and the Texas Court of Criminal Appeals, adopted training procedures which virtually eliminated the due course of the laws in Texas, rendered Texas Code of Criminal Procedure Chapter 16 void, and set the police hounds upon us.

### 8.10.3 No Indictment of Police

The above should not be construed as an indictment of the police. They are not expected to be lawyers. They are required to follow policy. The policies put before police forced them to horribly mistreat the public and to justify their existence by making multiple arrests. So, whether they had cause or not, they would justify their existence as they knew they could arrest anyone at any time with relative impunity, with or without cause.

Once the perception of persecution was established, it made no difference if the police were exceptionally professional or not, every act was viewed in the worst light which has lead to nationwide protests and de-funding of police.

### 8.10.4 Defenseless Council

Plaintiff Bell secured learned counsel, _____, to act in her defense. Instead of actively adjudicating Plaintiff's rights, Defense counsel repeatedly advised Plaintiff Bell to take a plea bargain. Plaintiff Bell filed a challenge to the subject matter jurisdiction of the court and directed Defense Counsel to adequately adjudicate the legal issues brought in the pleading. Defense Counsel refused to have the motion set or hearing and, by so doing, denied Plaintiff Bell in her right to an adequate defense in the case.

## 9   POINTS AND AUTHORITIES

The 4th amendment to the United States Constitution guarantees citizens of the United States in the due course of the laws as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life,

liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### 9.1.1 Limitations on Power of Governor

The people of the State of Texas are not frightened children quaking and quivering before the prospect of a pandemic or public cirsis.  We are men and women of good conscious, buttressed by the wisdom of our predecessors, and blessed with a binding Constitution.  We already have a savior and do not need another, no matter how benevolent the aspiring dictator.

#### 9.1.1.1 Position of Founders

In reference to the Military Occupation of Santa Fe, and in defense of Texas and the Texan Volunteers in the Mexican War, from the floor of the United States Senate on June 29, 1850, Sam Houston (1793-1863), said:

> "I will say, without vaunting, that Texas has yet to learn submission to any oppression, come from whatever source it may."

In Sam Huston's honor I assert, it is as true today as it was 153 years ago.  The Governor forgets himself when he elects to decide for the citizens of Texas that they need to be guided in their private affairs by the benevolent dictates of their governor.  But then, it is in the nature of those in positions of political power to extend that power as far as the public will allow.

H.G. Wells, in his Outline of History, addressed this eloquently when, on speaking to the corruption of the Pope's during the "dark age" very aptly observed,

> "The giver of the law most owes the law allegiance.  He of all beings should behave as though the law compels him.  But it is the universal failure of mankind that, what we are give to administer we promptly presume we own."  H.G. Wells – Outline of History

#### 9.1.1.2 Blessed With A Republic

Texas is a land of laws and the responsibility for those laws lay on the citizen as the master of the servant. Fortunately, our founders, in their wisdom, blessed us with a this republic and the statutory power to protect it.  The Texas Legislature, on adopting the **Open Government; Ethics Act** stated their philosophy very succinctly in the first sentence at Section 552.001 which reads in pertinent part as follows:

> "Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the "people…"

**PLAINTIFFS ORIGINAL PETITION**                                                                              53 of 159

We are all familiar with the pavement leading to hell so we will not address good intentions here. Whatever the reasons and rationalizations the Governor may offer as justifications for his actions, to the degree his actions exceed his authority, good faith or alleged "just cause" is not relevant.

### 9.1.1.3   Plaintiffs Will Show

Plaintiffs will show that Defendant, **Greg Abbott**, acting under the color of an authority he did not have as Governor of the State of Texas, took it upon himself to issue proclamations and edicts intended to bind the people who employ him, and to whom he has sworn fidelity on his oath.  Plaintiffs will show that the acts of the Governor, no matter how well intentioned, were outside the scope of the authority of the Governor of the State of Texas, any official acts toward enforcing same, are in criminal violation of the laws of the State of Texas, and where they deny any citizen in the full and free access to or enjoyment of a right, amount to the denial of the due course of the laws.

### 9.1.1.4   Land of Laws

Our founders carefully crafted the Texas Constitution with the intent that it stand sacrosanct in perpetuity, as demonstrated by Texas Constitution Bill of Rights at Article 29 which reads as follows:

> Sec. 29. BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

It is the assertion of Plaintiffs that, the phrase "transgressions of the high powers herein delegated" was a reference to the one official they feared the most, the governor.

With so many lives expended securing freedom for Texas, our funders intended those lives be well and honorably spent.  Our founders intended the constitution as a barrier to bad behavior, that laws be difficult to enact and, more difficult still, to change.

### 9.1.1.5   Sanctify The Corpus Juris

In order to ensure the sanctity of the corpus juris (body of law), our founders created a Legislature for the exclusive purpose of issuing orders and edicts which effect the rights of the

**PLAINTIFFS ORIGINAL PETITION**

people. This Legislature was broken into two separate branches, one with local affiliation and the other with more general constituency. They intended vigorous interchange of ideas and agendas between law makers of varying backgrounds. It was intended that the Texas Legislature, and no other power, be dedicated creating and maintaining a body of law relatint directly to the citizen and that the law be resistant to immediate political passions and pork barrel politics.

### 9.1.1.6  Enforcement Authority

While the Legislature creates the laws, it does not enforce them. That power was given to the executive branch headed by the Governor, as follows:

> Texas Constitution Article IV. Section. 10. He shall cause the laws to be faithfully executed; and shall conduct, in person, or in such manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States.

The Governor was charged with the duty of executing the intent of the Legislature, and holds in trust, the affairs of the State. It is inherent in the office of Governor that he has authority to issue orders, edicts, and proclamations to governmental agencies under his control and it is the custom to call certain orders "executive orders" even though any order given to a governmental agency by the head executive officer would be an order of the executive.

Nowhere in the Constitution was the Governor given, and neither is there any indication our founders intended that the Governor have, law making powers.

### 9.1.1.7  Primary Political Protection

Knowing the tendency of power to corrupt, our founders, through our Constitution, in delegating operational authority to the Governor, placed strict limits on that authority. The limit being that the Governor could issue orders to public agencies and employees, but not to the public itself. The intent of our founders in this regard can hardly be misconstrued on reading the Texas Constitution Bill of Rights as Section 28 which reads as follows:

> Sec. 28. SUSPENSION OF LAWS. No power of suspending laws in this State shall be exercised except by the Legislature.

It should be noticed that the Texas Constitution says nothing about the Governor abolishing or creating, or amending law.

### 9.1.1.8   Founder's Supreme Law

The founder's law, in the form of the Texas Constitution, is the supreme law of the land. All legislation flows from and is governed by the Texas Constitution. It should be remembered that the Texas Constitution grants no rights to the people, but rather, creates governmental instruments then strictly defines the limits of the powers granted. By way of Texas Constitution Article 1, our founders forbad public officials from infringing upon certain enumerated freedoms. Four justices on the Texas Supreme Court just fired a shot across the bow of government official's arbitrary restrictions on the people of Texas. In a concurring opinion, Justices Blacklock, Guzman, Boyd, and Devine cautioned public officials as follows:

> "Constitution is not suspended when the government declares a state of disaster."

> "As more becomes known about the threat and about the less restrictive, more targeted ways to respond to it," the opinion continued "burdens on constitutional liberties may not survive judicial scrutiny." IN RE SALON A LA MODE, ET AL

This opinion was a message—the Constitution still applies, and the courts shall enforce it.

### 9.1.1.9   Warring Against the Constitution

Governor Abbott, by his pronouncements and proclamations, issued by edict, purporting to abolish some laws and create others, declared war against the Constitution and the people of the State of Texas. The Governor purported to commandeer the Department of Public Safety and convert it to his personal militia. The Governor then intended to use their armed authority to enforce the extent of the Governor's unconstitutional proclaimed purpose. By this the Governor warred with the Constitution in an act of sedition in violation of Texas Government Code Section 557.001 which reads in pertinent part as follows:

> Sec. 557.001. SEDITION. (a) A person commits an offense if the person knowingly:

> (1) commits, attempts to commit, or conspires with one or more persons to commit an act intended to overthrow, destroy, or alter the constitutional form of government of this state or of any political subdivision of this state by force or violence;

> (2) under circumstances that constitute a clear and present danger to the security of this state or a political subdivision of this state, advocates, advises, or teaches or conspires with one or more persons to advocate, advise, or teach a person to commit or attempt to commit an act described in Subdivision (1); or

> (3) participates, with knowledge of the nature of the organization, in the management of an organization that engages in or attempts to engage in an act

intended to overthrow, destroy, or alter the constitutional form of government of this state or of any political subdivision of this state by force or violence.

### 9.1.1.10 Powers of Governor

Below are the powers of the Governor as specified in Article 4 of the Texas Constitution:

SEC. 7. **He shall be commander-in-chief of the military forces of the State,** except when they are called into actual service of the United States. He shall have power to call forth the militia to execute the laws of the State, to suppress insurrections, repel invasions, and protect the frontier from hostile incursions by Indians or other predatory bands.

SEC. 8. **The Governor may, on extraordinary occasions, convene the Legislature** at the seat of government, or at a different place in case that should be in possession of the public enemy or in case of the prevalence of disease thereat. His proclamation therefor shall state specifically the purpose for which the Legislature is convened.

SEC. 9. The Governor shall at the commencement of each session of the Legislature, and at the close of his term of office, give to the Legislature information, by message, of the condition of the State; and **he shall recommend to the Legislature such measures as he may deem expedient**. He shall account to the Legislature for all public moneys received, and paid out by him for any funds subject to his order, with vouchers; and shall accompany his message with a statement of the same. And at the commencement of each regular session he shall present estimates of the amount of money required to be raised by taxation for all purposes.

SEC. 10. **He shall cause the laws to be faithfully executed;** and shall conduct, in person, or in such manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States.

SEC. 11. **In all criminal cases**, except treason and impeachment, **he shall have power, after conviction, to grant reprieves, commutations of punishment and pardons**; and under such rules as the Legislature may prescribe he shall have power to remit fines and forfeitures. With the advice and consent of the senate, he may grant pardons in cases of treason, and to this end he may respite a sentence therefor, until the close of the succeeding session of the Legislature; provided, that in all cases of remissions of fines and forfeitures, or grants of reprieve, commutation of punishment or pardon, he shall file in the office of the secretary of state his reasons therefor.

SEC. 12. **All vacancies in State or district offices**, except members of the Legislature, **shall be filled**, unless otherwise provided by law, by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the senate present. If made during the recess of the senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no

**PLAINTIFFS ORIGINAL PETITION**                                    57 of 159

confirmation during the session of the senate, the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the senate; but may appoint some other person to fill the vacancy until the next session of the senate or until the regular election to said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter.

SEC. 13. **During the session of the Legislature the Governor shall reside where its sessions are held,** and at all other times at the seat of government, except when by act of the Legislature, he may be required or authorized to reside elsewhere.

SEC. 14. **Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval.** If he approve he shall sign it; but if he disapprove it, he shall return it with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal, and proceed to reconsider it. If, after such reconsideration, two-thirds of the members present agree to pass the bill, it shall be sent, with the objections, in the other house, by which likewise it shall be reconsidered; and, if approved by two-thirds of the members of that house, it shall become a law; but in such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journal of each house respectively. If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return; in which case it shall be a law, unless he shall file the same, with his objections, in the office of the secretary of state, and give notice thereof by public proclamation within twenty days after such adjournment. If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. If the Legislature be in session he shall transmit to the house in which the bill originated a copy of such statement and the times objected to shall be separately considered. If, on reconsideration, one or more of such items be approved by two-thirds of the members present of each house, the same shall be part of the law, notwithstanding the objections of the Governor. If any such bill, containing several items of appropriation, not having been presented to the Governor ten days (Sundays excepted) prior to adjournment, be in the hands of the Governor at the time of adjournment, he shall have twenty days from such adjournment within which to file objections to any items thereof and make proclamation of the same, and such item or items shall not take effect.

SEC. 15. **Every order, resolution or vote** to which the concurrence of both houses of the Legislature may be necessary, except on questions of adjournment, **shall be presented to the Governor**, and before it shall take effect, shall be approved by him; or, being disapproved, shall be repassed by both houses; and all the rules, provisions and limitations shall apply thereto as prescribed in the last preceding section in the case of a bill. **(emphasis added)**

**PLAINTIFFS ORIGINAL PETITION**                                         58 of 159

You will find nothing in the above which asserts or implies our founders intended the Governor should have power to issue edicts, orders, or proclamations which have the force of law.

### 9.1.1.11 No Power to Nullify Law

Greg Abbott, during his tenure as Governor of the State of Texas has issued 31 executive orders. GA – 01,03, 04, 05, 07, and 10 appear to be issued within the scope of the authority granted to the Governor.  The rest, EO GA 02, 06, 08, 09, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29,30, and 31are in direct and blatant violation of the specific prohibition of the Texas Constitution which, though quoted above, bears repeating:

> Sec. 28. SUSPENSION OF LAWS. No power of suspending laws in this State shall
> be exercised except by the Legislature.

It is clear, our founders contemplated a situation where the high powers of government would be inclined to adjust or abridge the law to suit a consideration or concern of the moment and took steps to prevent it.  Rather than abolish law, the Governor was specifically commanded by Article IV, Section X  as follows:

> SECTION X. He shall take care that the laws be faithfully executed…

The above can hardly be construed as a polite request.  The Constitution of the State of Texas is the highest law of the land and all governmental powers flow from it's authority and are limited thereby.  In the instant case, the governor had no delegated authority for the above referenced executive orders.

### 9.1.2  Limits On Exercise of Power

Plaintiffs will not address whether the executive orders complained of are rational, reasonable, or would well serve the public in this time of crisis.  Mens rea does not go to intent to do good or harm, it goes to the intent of the result of a person's actions.  While good intentions may be raised as a defense, perhaps the Governor can carve out an exception to the Constitution.  Good luck with that.

### 1.1.1.1  Governor May Suspend Rules and Regulations

In an emergency, the Texas Legislature purported to grant extraordinary powers to the Governor by the passage of Texas Disaster Act of 1975.  Said statute purports to give the Governor the power to suspend certain rules and regulations during an emergency as follows:

**PLAINTIFFS ORIGINAL PETITION**                                    59 of 159

> Sec. 418.0155. SUSPENSION LIST. (a) The Governor's office, using existing resources, shall compile and maintain a comprehensive list of regulatory statutes and rules that may require suspension during a disaster.
>
> (b) On request by the Governor's office, a state agency that would be impacted by the suspension of a statute or rule on the list compiled under Subsection (a) shall review the list for accuracy and shall advise the Governor's office regarding any statutes or rules that should be added to the list.

To the degree the above would purport to allow the governor to suspend statutes, the above would exceed the limitations included in the Constitution.

### 9.1.2.1  Agencies Only

It should be clear to a reasonable person of ordinary prudence that the above only goes to regulatory rules promulgated by regulatory agencies.

> Sec. 418.016. SUSPENSION OF CERTAIN LAWS AND RULES. (a) The Governor may suspend the provisions of any if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.

By the above, Sec. 418.0155. SUSPENSION LIST must be construed as being limited to the following:

> regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency…

### 9.1.2.2  Only the Legislature May Suspend of Laws

Here, the statute is clear that the governor may only suspend "any regulatory statute." The Governor, as the highest power within the Executive branch of Texas government should be vested with the above power. However, when that power is extended to the suspension of any law affecting the rights and immunities of the general public, the Governor runs afoul of Chapter 39 Texas Penal Code titled Official Oppression.

### 9.1.2.3  Suspension of Law Restricted to Legislature

While it may be theoretically possible to suspend some law in such a way that it did not impinge upon Constitutionally protected rights, the consideration is irrelevant as, the Texas Constitution Article 1 Section 28 supra.

It was the clear intent of our founders that no power to suspend laws was to be exercised by any person or entity other than the Texas Legislature.

**PLAINTIFFS ORIGINAL PETITION**                                    60 of 159

#### 9.1.2.4    *Violates Separation of Powers*

In the Republic of Texas, laws are adopted through the legislature in accordance with Texas Constitution Article III, not 'proclaimed' by the Governor or by local officials.

> "In Europe, charters of liberty have been granted by power. America has set the example … of charters of power granted by liberty. This revolution in the practice of the world, may, with an honest praise, be pronounced the most triumphant epoch of its history, and the most consoling presage of its happiness." – James Madison, Essays for the National Gazette, 1792

#### 9.1.2.5    *May Call Special Sessions*

The Constitution is relatively silent on the issue of pandemics (aside from a brief mention empowering the Governor to call special sessions of the Legislature). However, they have addressed other, equally immediate crisis. Our founders, who had recently fought for their freedom from Mexico, warned that, even in times of enemy attack, the continuity of government is to be maintained as provided for by Article III, Sec. 62 of the Texas Constitution as follows:

> Sec. 62. CONTINUITY OF STATE AND LOCAL GOVERNMENTAL OPERATIONS FOLLOWING ENEMY ATTACK. (a) The Legislature, in order to ensure continuity of state and local governmental operations in periods of emergency resulting from disasters caused by enemy attack, shall have the power and the immediate duty to provide for prompt and temporary succession to the powers and duties of public offices, of whatever nature and whether filled by election or appointment, the incumbents of which may become unavailable for carrying on the powers and duties of such offices. Provided, however, that Article I of the Constitution of Texas, known as the "Bill of Rights" shall not be in any manner affected, amended, impaired, suspended, repealed or suspended hereby.

The above is in para materia with Texas Constitution Bill of Rights at Article 29.

#### 9.1.2.6    *Bill of Rights Cannot Be Suspended*

Even in extreme circumstances, the Texas Constitution explicitly states that the Bill of Rights cannot be suspended see .

> "Without liberty, law loses its nature and its name, and becomes oppression. Without law, liberty also loses its nature and its name, and becomes licentiousness." – James Wilson, Of the Study of the Law in the United States, 1790

### 9.1.2.7  *Current Law Was Sufficient*

The measures instituted by the Governor through proclamation edict were simply unnecessary as ample law existed to deal with the current crisis.  Shelter in place and mask orders all originate from a concern for expectorant and there are laws in place to cover this issue.

### 9.1.2.8  *Simple Assault as a Deterrent*

In fact, no new law was needed.  All that was needed was for the Governor to give notice to the public of existing law on the matter and direct law enforcement officers to Texas Penal Code Article 22.01 which reads in pertinent part as follows:

> Sec. 22.01.  ASSAULT.  (a)  A person commits an offense if the person:
>
> (1)  intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2)  intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;  or
>
> (3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

### 9.1.2.9  *Intentional or Careless Contamination*

The act of coughing or spitting on another person in order to expose them (jokingly or not) to COVID-19 has already been the cause of multiple arrests around the U.S. In Pennsylvania, a man was arrested after coughing in the face of a recovering pneumonia patient while repeatedly claiming to be infected with the coronavirus. A Tennessee man was charged with assault and a New York woman was charged with making a terroristic threat after coughing and spitting on people in Walmart claiming they had COVID-19.

### 9.1.2.10 *Denial of Liberty*

Governor Abbott, in the above declaration acts forbidding citizens from visiting their loved ones who are confined to extended healthcare facilities acts as a dictate by the servant binding the master.

With specific intent to deny the people of the State of Texas in their liberty the Governor has exerted, or purported to exert an authority he does not have and in the process, denied the people of the State of Texas in the full and free exercise or enjoyment of their rights  guaranteed under the Texas Constitution.

**PLAINTIFFS ORIGINAL PETITION**                                                 62 of 159

### 9.1.2.11 No Power Over Citizens

The Governor issued orders directed at every citizen in the State of Texas in restriction preceded with, "every person in Texas shall."

The office of Governor is created by Texas Constitution Article IV. Section 7-15 specifies the powers of the Governor. An examination of Article IV will show that there is no power granted which would allow the Governor to exercise power over an individual citizen.

> "It will not be denied that power is of an encroaching nature and that it ought to be effectually restrained from passing the limits assigned to it." Federalist 48, 1788 – James Madison

Plaintiffs does not challenge or doubt the good faith of the Governor in this regard. Best intentions and good faith are not the issue. Whether the above restrictions are rational and reasonable, is not the issue. The issue is: *"Does the Governor have the power to institute by fiat a proclamation which abridges any right guaranteed to the people?"*

Under current law, the only branch of Texas Government with the power to invoke control over the people is the Legislature through the enactment of law.

### 9.1.2.12 Legislative Option

In the matter of a novel crisis where statutory direction seems insufficient, it is not the place of the Governor to rest the powers of government from the various branches and act unilaterally.

> "An elective despotism was not the government we fought for; but one in which the powers of government should be so divided and balanced among the several bodies of magistracy as that no one could transcend their legal limits without being effectually checked and restrained by the others." – FEDERALIST 84, 1788 BY JAMES MADISON

### 9.1.2.13 Other Remedies Available

With the above in mind, it should be considered that it was hardly necessary for the Governor to take unilateral action that violated the Texas Constitution when he had other remedies available. Specifically, Article IV Section 8 which reads as follows:

> **The Governor may, on extraordinary occasions, convene the Legislature** at the seat of government, or at a different place in case that should be in possession of the public enemy or in case of the prevalence of disease thereat. His proclamation therefor shall state specifically the purpose for which the Legislature is convened.

**PLAINTIFFS ORIGINAL PETITION**                                      63 of 159

I will leave it to the reader to fathom why the Governor chose to take the personal risk of acting outside the scope of his office and issue proclamations that affect the full and free exercise of rights of the citizens of the State of Texas instead of acting under his Constitutional authority by convening the Legislature in emergency session to deal with this crisis.

### 9.1.2.14 Remedy Is Already In Law

While we may have to endure a crisis, we need not endure oppression. The Governor, in his capacity as a public servant, owed a degree of deference to the wisdom and maturity of his masters.

> "I have no fear that the result of our experiment will be that men may be trusted to govern themselves without a master." -- From Thomas Jefferson to David Hartley, 2 July 1787

The act of coughing or spitting on another person in order to expose them (jokingly or not) to a known contagion has already been the cause of multiple arrests around the U.S. In Pennsylvania, a man was arrested after coughing in the face of a recovering pneumonia patient while repeatedly claiming to be infected with the coronavirus. A Tennessee man was charged with assault and a New York woman was charged with making a terroristic threat after coughing and spitting on people in Walmart claiming she had COVID-19.

In fact, no new law was needed. All that was needed was for the Governor to give notice to the public of existing law on the matter and direct law enforcement officers to Texas Penal Code Article 22.01 which reads in pertinent part as follows:

> Sec. 22.01. ASSAULT. (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

### 9.1.2.15 Reckless Behavior

A proclamation asserting that, carelessness and disregard on the part of the public, where that carelessness can be shown to be the cause of the spreading of contamination by one person to others by failure to exercise minimum standards of care as recommended by the President of the

United States and the Governor of the State of Texas can be construed as reckless behavior as contemplated by Texas Penal Code Section 22.01. ASSAULT(a). Such a proclamation would have been within the power of the Governor to issue and would not have violated any constitutional provision.

This is not to suggest that the Governor should have made the above recommendation. It is only offered as a demonstration that there were alternatives open to the Governor that did not involve trashing our Constitution.

### 9.1.3 GA – 29

On the 2nd day of July, 2020 Governor Abbot issued an executive order Relating to the use of face coverings during the COVID-19 disaster (coronavirus/masks) which reads in pertinent part as follows:

> NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective at 12:0 1 p.m. on July 3, 2020: **Every person in Texas shall wear a face covering** over the nose and mouth when inside a commercial entity or other building or space open to the public, or when in an outdoor public space, wherever it is not feasible to maintain six feet of social distancing from another person not in the same household; provided, however, that this face-covering requirement **does not apply to the following:**
>
> 1. any person **younger than 10 years** of age;
>
> 2. any person with a **medical condition** or disability that prevents wearing a face covering; 3. any person while the person is consuming food or drink, or is seated at a restaurant to eat or drink;
>
> 4. any person while the person is
>
> (a) **exercising outdoors** or engaging in physical activity outdoors, and
>
> (b) **maintaining a safe distance** from other people not in the same household;
>
> 5. any person while the person is **driving alone** or with passengers who are part of the same household as the driver;
>
> 6. any person obtaining a **service that requires temporary removal** of the face covering for security surveillance, screening, or a need for specific access to the face, such as while visiting a bank or while obtaining a personal care service involving the face, but only to the extent necessary for the temporary removal;
>
> 7. any person while the person is in **a swimming pool,** lake, or similar body of water;

**PLAINTIFFS ORIGINAL PETITION**                                                    65 of 159

8. any person who is **voting,** assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

9. any person who is actively providing or obtaining access to **religious worship**, but wearing a face covering is strongly encouraged;

10. any person while the person is giving a speech for a broadcast or to an audience; or

11. any person in a county

(a) that **meets the requisite criteria** promulgated the Texas Division of Emergency Management (TDEM) regarding minimal cases of COVID-19, and

(b) whose **county judge has affirmatively opted-out of this face-covering require**ment by filing with TDEM the required face-covering attestation form—provided, however, that wearing a face covering is highly recommended, and every county is strongly encouraged to follow these face-covering standards.

Not excepted from this face-covering requirement is any person attending **a protest or demonstration involving more than 10 people** and who is not practicing safe social distancing of six feet from other people not in the same household.

TDEM shall maintain on its website a list of counties that are not subject to this face-covering requirement pursuant to paragraph number 11. The list can be found at: www.tdem.texas.gov/ga29.

Following **a verbal or written warning** for a first-time violator of this face covering requirement, a person's second violation shall be punishable by a **fine not to exceed $250**. Each subsequent violation shall be punishable by a fine not to exceed $250 per violation.

Local **law enforcement and other local officials, as appropriate, can and should enforce this executive order,** Executive Order GA-28, and other effective executive orders, as well as local restrictions that are consistent with this executive order and other effective executive orders. But **no law enforcement or other official may detain, arrest, or confine in jail any person for a violation of this executive order** or for related non-violent, non-felony offenses that are predicated on a violation of this executive order; provided, however, that any official with authority to enforce this executive order may act to enforce trespassing laws and remove violators at the request of a business establishment or other property owner.

This executive order hereby **prohibits confinement in jail as a penalty** for the violation of any face-covering order by any jurisdiction.

Executive Order GA-28 is hereby amended to delete from paragraph number 15 the phrase: ", but no jurisdiction can impose a civil or criminal penalty for failure to wear a face covering."

**PLAINTIFFS ORIGINAL PETITION**                                    66 of 159

The governor may by proclamation amend this executive order or add to the list of people to whom this face-covering requirement does not apply.

This executive order does not supersede Executive Orders GA-b, GA-13, GA-17, GA 19, GA-24, GA-25, GA-27, or GA-28 as amended. This executive order shall remain in effect and in full force until modified, amended, rescinded, or superseded by the governor.

### 9.1.4  Mask Requirement Ultra Vires

Plaintiff is sorely tempted to launch into the science  which shows that the above referenced masks worthless as a prophylactic against Covid 19 and how they put users at risk of other negative effects.  It is enough that the Governor had no power to issue such an order.

## 9.2   RIGHT TO PROBABLE CAUSE DETERMINATION

Plaintiff Bell was arrested without cause.  After eighteen months and numerous appearances at court, the charge was dropped for "lack of evidence."  "Lack of Evidence?"  Are you kidding me?  Eighteen monmths of Plaintiff's life was disrupted, she was defamed during a school board election race, had to pay thousands to a lawyer and it was dropped for "lack of evidence."  The absurdity of this should not be lost on a jury of Plaintiff's peers.

### 9.2.1  800 Years of Service

The right to a probable cause determination in the matter of an arrest is fundamental to an ordered society.  This prescription has been in law for some 800 years, since the signing of the Magna Carta Libratum in 1215 A.D., and has held us all in good stead until the Texas Court of Criminal Appeals took it upon itself to completely disrupt the corpus juris by developing training for magistrates in accordance with Texas Code of Criminal Procedure 17.024 wherein they trained magistrates to hold Magistrations instead of examining trials.

### 9.2.2  Duties Upon Arrest

Petitioner moves this court to affirm the clear black letter of Texas law as laid down in Texas Code of Criminal Procedure 14.06(a) which reads as follows:

> Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE.  (a)  Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings

**PLAINTIFFS ORIGINAL PETITION**                                                    67 of 159

described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.

and Texas Code of Criminal Procedure 15.16 which reads as follows:

> Art. 15.16.  HOW WARRANT IS EXECUTED.  (a)  The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant, if the magistrate is in the same county where the person is arrested.  If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.

In all cases of arrest, an accused must be taken before the nearest magistrate.

### 9.2.3  No Examining Trial in Misdemeanor Nonsense

As will be address in more detail below, the courts have held, in the case of a misdemeanor, a citizen does not have the right to an examining trial.  Plaintiff will demonstrate below, that no citizen has been granted the right to an examining trial.  Neither does a citizen have a right to be cited for an offense, be arrested, taken to jail, or prosecuted.  An examining trial is a statutory prescription wherein police are commanded to take persons they arrest directly to the nearest magistrate and the magistrate is commanded to convene an examining court.  These are statutory prescriptions where officials are  commanded to do certain things which go to the due course of law.

When a person is arrested, with or without a warrant, the arresting officer is commanded to take the person directly to the nearest magistrate.  The only power the magistrate has in this circumstance is to hold an examining trial in accordance with Chapter 16 Texas Code of Criminal Procedure.

While the accused my not have a statutory right to an examining trial, Plaintiff alleges and moves the court to rule that, the accused does have the right to a reasonable expectation of the due course of the laws and is subject to harm per se when the same is denied.

### 9.2.4  Article 15.17 Confusion

Starting around 1965 the Legislature saw fit to ensure that a person who was arrested would be taken directly to the nearest magistrate, even if the arrest was not in the county of original

jurisdiction. They added a subordinate clause to Texas Code of Criminal Procedure 14.06(a) which reads as follows:

> Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, **or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code. Emphasis added.**

There is a similar addition to Texas Code of Criminal Procedure 15.16 where section (b) was added which reads as follows:

> Art. 15.16. HOW WARRANT IS EXECUTED.
>
> (b) Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county other than the county of arrest.

### 9.2.5 Authority To Hold Evaporates

Gerstein v. Pugh recognized that an arrest may be effected without the necessity of a neutral and detached magistrate having found probable cause, but, once the suspect is in custody, a probable cause hearing is constitutionally mandated under the Fourth Amendment to justify further detention:

> "Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. . . . When the stakes are this high, the detached judgment [165 W.Va. 186] of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty

**PLAINTIFFS ORIGINAL PETITION**                                    69 of 159

following arrest." Gerstein v. Pugh, 420 U.S. 103, (1975) (420 U.S. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65).

The above speaks to the 4th Amendment to the Federal Constitution.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The same provision is contained in the 1st Amendment to the Constitution of the State of Texas at Article 10 which reads as follows:

> Sec. 10.  RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS.  In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.  He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof.  He shall not be compelled to give evidence against himself† and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penetentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

In Texas the above has been Legislated into law as follows:

## 9.2.6  Examining Trial Even After Indictment

The Gerstein Court also indicated that an indictment by a grand jury was an alternative means of establishing probable cause which would authorize the arrest and detention of the defendant and satisfy Fourth Amendment standards:

> "By contrast, . . . an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. Ex parte United States, 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283 (1932). See also Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958). The willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution. See United States v.

**PLAINTIFFS ORIGINAL PETITION**                                            70 of 159

Calandra, <u>414 U.S. 338</u>, 342-346, <u>94 S.Ct. 613</u>, 617-619, <u>38 L.Ed.2d 561</u> (1974)."
(420 U.S. at 117 n. 19, 95 S.Ct. at 865 n. 19, 43 L.Ed.2d at 67).

This situation was considered by the Ferguson court as follows:

> "Although we conclude that the Constitution does not require an adversary
> determination of probable cause, we recognize that state systems of criminal
> procedure vary widely. There is no single preferred pretrial procedure, and the nature
> of the probable cause determination usually will be shaped to accord with a State's
> pretrial procedure viewed as a whole. . . ." [ <u>420 U.S. at 123</u>, <u>43 L.Ed.2d at 71</u>, <u>95
> S.Ct. at ___</u>]. *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 187 (W. Va. 1980)
> *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 187 (W. Va. 1980)

### 9.2.7 *Indictment Terminates Nothing*

The courts ruled in Ballard that an indictment terminates any right to an examining trial.

> Appellant asserts the trial court erred in failing to grant him an examining trial.
> Appellant's contention is without merit; the return of an indictment terminates any
> right to an examining trial. Brown v. State, <u>475 S.W.2d 938</u> (Tex.Cr.App. 1971);
> Harris v. State, <u>457 S.W.2d 903</u> (1970), reversed on other grounds, 403 U.S. 947, 91
> S.Ct. 2291, 29 L.Ed.2d 859 (1971); McDonald v. State, <u>513 S.W.2d 44</u> (Tex.Cr.App.
> 1974).

By the above the court cites <u>Brown v. State, 475 S.W.2d 938 (Tex.Cr.App. 1971)</u> as follows:

### 9.2.8 *We See No Error*

Here we find a string of cases which all thing on <u>Trussell v State</u>. This creates an impressive

looking string of cases, but on closer inspection we find they are all without substance as

<u>Trussell v State</u> is without foundation.

### 9.2.8.1 <u>*Trussell v State*</u>

In tracing the cases which indicate that an indictment terminates the right to an examining trial

<u>Trussell v State</u> seems to be the first and opines as follows:

> Appellant cites Art. 16.01 C.C.P. which he would have us construe as depriving the
> grand jury of authority to return an indictment prior to his being afforded an
> examining trial.
>
> Art. 16.01 reads in part:
>
> > "The accused in any felony case shall have the right to an examining
> > trial Before indictment in the county having jurisdiction of the offense,
> > whether he be in custody or on bail, at which time the magistrate at the
> > hearing shall determine the amount or sufficiency of bail, if a bailable
> > case.'
>
> We see no error. <u>Trussell v. State, 414 S.W.2d 466, 467 (Tex. Crim. App. 1967)</u>

**PLAINTIFFS ORIGINAL PETITION**                                             71 of 159

### 9.2.8.2  *Ash v State*

Next we go to <u>Ash v State</u> which opines as follows:

> Appellant contends that the trial court erred in overruling his motion to quash the indictment because appellant was not granted an examining trial when such was requested in accordance with Article 16.01, Vernon's Ann.C.C.P. The record reflects that appellant was arrested on the night of May 1, 1966, and an indictment was returned on May 3, 1966. Article 16.01 provides:
>
> > "The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case."
>
> <u>Trussell v. State, Tex.Cr.App., 414 S.W.2d 466</u>, is authority for overruling of appellant's motion to quash the indictment. <u>Ash v. State, 420 S.W.2d 703, 705 (Tex. Crim. App. 1967)</u>

Here Ash uses only <u>Trussell v State</u> as its foundation for its ruling.

### 9.2.8.3  *Murphy v State*

Next we go to <u>Murphy v State</u> which opines as follows:

> Appellant's second ground of error is that he was not furnished an examining trial prior to the return of the indictment in accordance with Article 16.01, Vernon's Ann.C.C.P. <u>Ash v. State, Tex.Cr.App., 420 S.W.2d 703</u>, and <u>Trussell v. State, Tex.Cr.App., 414 S.W.2d 466</u>, are authority for the rule that the failure to grant an examining trial prior to the return of an indictment does not affect the validity of the indictment. <u>Murphy v. State, 424 S.W.2d 231, 232-33 (Tex. Crim. App. 1968)</u>

Here we have <u>Murphy v State</u> citing <u>Ash v State</u> citing <u>Trussell v State</u> and this goes on.

### 9.2.8.4  **Back to *Trussell v State***

The problem with <u>Trussell v State</u> is that it appears to say that an indictment trumps an examining trial because we say so. This does not lend effect to the prohibition contained in <u>Texas Code of Criminal Procedure 20A.304(b)</u>.

Plaintiff alleges that an indictment does not eliminate the need for an examining trial as there can be no indictment until the accused has been arrested as per <u>Texas Code of Criminal Procedure 20A.304(b)</u> which reads as follows:

> <u>Art. 20A.304.  PRESENTMENT OF INDICTMENT ENTERED IN RECORD.</u>
>
> (b)  If the defendant is not in custody or under bond at the time the indictment is presented, the indictment may not be made public and the entry in the court's record

**PLAINTIFFS ORIGINAL PETITION**

> relating to the indictment must be delayed until the capias is served and the
> defendant is placed in custody or under bond.

As argued above, the clear letter of the law commands that the State conduct an examining trial subsequent to every arrest. There is noting in the letter of the law that would indicate the Legislature intended that an indictment trump and examining trial. Specifically, the Legislature prevented a true bill vote of a grand jury from becoming an indictment until the person was arrested and an arrest presumed an examining trial.

### 9.2.8.5  *Trussell v State* *Inconsistent With Constitution*

The Constitution of the State of Texas requires an indictment in the case of all misdemeanors and felonies as follows:

> The County Court shall hold terms as provided by law. Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law. **Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial;** and if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit. A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee. Article V, Section 17 of the Texas Constitution ("County Courts: Terms, Prosecutions, and Juries") **Emphasis added.**

Reading the above, in conjunction with Texas Code of Criminal Procedure 20A.304(b) renders clear the intent of the legislation and the Constitution. It is unclear how the courts came to the conclusion that an examining trial can be dispensed with in a misdemeanor or any criminal allegation considering Article V, Section 17 of the Texas Constitution in conjunction with 20A.304(b) supra. The only reason this prohibition can be in the code is to ensure that there is an examining trial in all cases where a citizen's liberty is at risk as, the first thing that must statutorily happen after an arrest is an examining trial in accordance with Texas Code of Criminal Procedure Chapter 16.

### 9.2.8.6  *Administrative Convenience Notwithstanding*

Plaintiff realizes that the requirement of an indictment for misdemeanors may be construed as onerous, time consuming, and downright inconvenient. Plaintiff suggests that such was the point

**PLAINTIFFS ORIGINAL PETITION**                                           73 of 159

of the Constitutional Commandment. Taking a citizen's liberty should not be easy or convenient. Because of the seemingly minor adjustments toward administrative convenience and adjudicative expediency, the counties in Texas are not paying over $990,000,000 annually for pre-trial incarceration. Granted, this may serve adjudicative expediency, but it does not serve the public.

While a preliminary hearing may be dispensed with after indictment in the Federal arena, Texas is different. In Texas, the grand jury brings a true bill, that true bill cannot become an indictment unless the accused has already been arrested.


### 9.2.8.7  Dispense With Rule of Law

Prosecutors somehow took this to mean that an examining trial could be dispensed with and directed police to take an arrestee, no matter where arrested, directly to jail and process them into the facility, then hold the overnight and bring them before a magistrate the next morning who only read them their rights in accordance with Texas Code of Criminal Procedure 15.17.

The above is the current practice in all jurisdictions in Texas. At the morning hearing the magistrate will read the person their rights, including the right to an examining trial while denying them an examining trial and the magistrate will then set bond.

## 9.3   BOND AS OPTION V BAIL AS RIGHT

The Constitution of the State of Texas at Article I Section 11 defined bail as follows:

> Art. 17.01. DEFINITION OF "BAIL". "Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.

The court will take judicial notice that the definition of "bail" does not speak to cash in any form but rather it speaks to "security."

### 9.3.1  Probable Cause as Prosecutorial Pre-requisite

The standards and procedures for arrest and detention have been derived from the Fourth Amendment to the US Constitution and its common-law antecedents. See Cupp v. Murphy, 412 U.S. 291, 294 -295 (1973);

**PLAINTIFFS ORIGINAL PETITION**                                    74 of 159

Nevertheless, the detention of the respondent against his will constituted a seizure of his person, and the Fourth Amendment guarantee of freedom from "unreasonable searches and seizures" is clearly implicated, cf. United States v. Dionisio, 410 U.S. 1, Terry v. Ohio, 392 U.S. 1,19,. As the Court said in Davis v. Mississippi, 394 U.S. 721, 726-727, "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed `arrests' or `investigatory detentions.'"

### 9.3.2  *Standards for Arrest*

The standard for arrest is probable cause, defined in terms of facts and circumstances:

Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. See Cupp v. Murphy, 412 U.S. 291, 294-295 (1973); Ex parte Bollman, 4 Cranch 75 (1807); Ex parte Burford, 3 Cranch 448 (1806).

The standard for arrest is probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). See also Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175-176 (1949).

This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Id., at 176. Gerstein v. Pugh, 420 U.S. 103, 112 (1975)

This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.

## 9.4  4^(TH) AMENDMENT PROTECTIONS

To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and

detached magistrate whenever possible. The classic statement of this principle appears in Johnson v. United States, 333 U.S. 10, 13 -14 (1948) as follows:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection Gerstein v. Pugh, 420 U.S. 103, 113 supra)  consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

See also Terry v. Ohio, 392 U.S. 1, 20 -22 (1968).

The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132 (1925); Beck v. Ohio, 379 U.S. 89, 96-97 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e. g., Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253 (1960); Henry v. United States, 361 U.S. 98 (1959). And simple "'good faith on the part of the arresting officer is not enough.'. . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. Ohio, supra, at 97.

### 9.4.1  Maximum Protection of Individual Rights

Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, supra, at 96; Wong Sun v. United States, 371 U.S. 471, 479 -482 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See Ker v. California, 374 U.S. 23 (1963); Draper v. United States, 358 U.S. 307 (1959); Trupiano v. United States, 334 U.S. 699, 705 (1948). Quoted from Terry v. Ohio, 392 U.S. 1, 20 -22 (1968).

### 9.4.2  Point of Fourth Amendment

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by

**PLAINTIFFS ORIGINAL PETITION**

the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." Pp. 13-14. And see Chapman v. United States, 365 U.S. 610, 615-616.

## 9.5   ON SCENE ASSESSMENT

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly.

> Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, see **Beck v. Ohio, at 96**;

>> An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. "Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed." **Wong Sun v. United States, 371 U.S. 471, 479-480**. Yet even in cases where warrants were obtained, the Court has held that the Constitution demands a greater showing of probable cause than can be found in the present record. **Aguilar v. Texas, 378 U.S. 108; Giordenello v. United States, 357 U.S. 480; Nathanson v. United States, 290 U.S. 41**.

> **Wong Sun v. United States, 371 U.S. 471, 479-482 (1963)**, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See **Ker v. California, 374 U.S. 23 (1963); Draper v. United States, 358 U.S. 307 (1959; Trupiano v. United States, 334 U.S. 699, 705 (1948)**.

**PLAINTIFFS ORIGINAL PETITION**

### 9.5.1  The Courts Granted and Inch

In order to facilitate effective law enforcement, a certain amount of leeway was granted to the police but that "certain amount" was statutorily limited.

> Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., **18 U. S. C. 3146 (a) (2, (5)**. When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish Respondent meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. **GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602**

The police spend their time arresting people and can forget how devastating and invasive their actions can be.  The police, they need the protection of constant vigilance on our parts to ensure their experience and familiarity does not breed contempt.  When a police officer is taking actions which can so dramatically affect the life of a citizen, they must be cautioned to exercise constant vigilance themselves.

### 9.5.2  Constitutional Consequences of Pre-trial Confinement

The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972).

> Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty.. . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause

**PLAINTIFFS ORIGINAL PETITION**                                    78 of 159

as a prerequisite to extended restraint of liberty following arrest." [420 U.S. at 114, 95 S. Ct. at 863, 43 L. Ed. 2d at 65]. See e. g., 18 U.S.C. 3146 (a) (2), (5).

In the instant case, Plaintiff Bell was forced to drop out of an election race because of the negative effect of the intentional and wrongful publicity she received as the result of the wrongful arrest make without evidence of a crime.

### 9.5.3  Historical Support

This result has historical support in the common law that has guided interpretation of the Fourth Amendment. *See Carroll v. United States, 267 U.S. 132, 149 (1925)*. At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. The justice of the peace would "examine" the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody. 1 M. Hale, supra, at 583-586; 2 W. Hawkins, supra, at 116-119; 1 J. Stephen, History of the Criminal Law of England 233 (1883). *See  Gerstein v. Pugh, 420 U.S. 103, 115 supra)*.

### 9.5.4  Habeas Corpus Available

The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment, *see Ex parte Bollman, supra*; *Ex parte Burford, 3 Cranch 448 (1806).; United States v. Hamilton, 3 Dall. 17 (1795)*, and there are indications that the Framers of the Bill of Rights regarded it as a model for a "reasonable" seizure. *See Draper v. United States, 358 U.S., at 317 -320 (DOUGLAS, J., dissenting)*.

### 9.5.5   Arrest for On-sight Offense

Where a person (hereinafter referred to as "The accused," is arrested for an alleged on-sight offense, the person making the arrest shall take the person directly to the nearest magistrate by the most direct route in accordance with Texas Code of Criminal Procedure 14.06(a)supra.

Without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 9.5.6  Arrest on Warrant

Where a person is arrested on an existing warrant, the person making the arrest is commanded by Texas Code of Criminal Article 15.16 which reads as follows:

**PLAINTIFFS ORIGINAL PETITION**                                    79 of 159

Art. 15.16. HOW WARRANT IS EXECUTED. (a) The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant if the magistrate is in the same county where the person is arrested. If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.

(b) Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county other than the county of arrest.

As above, without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

## 9.5.7 Traffic Arrest

Even if a person were to be arrested for a traffic violation the arresting officer is directed to take the person arrested directly to the nearest magistrate under Texas Transportation Code 543.002 which reads as follows:

Sec. 543.002. PERSON ARRESTED TO BE TAKEN BEFORE MAGISTRATE. (a) A person arrested for a violation of this subtitle punishable as a misdemeanor shall be immediately taken before a magistrate if:

    (1) the person is arrested on a charge of failure to stop in the event of an accident causing damage to property; or

    (2) the person demands an immediate appearance before a magistrate or refuses to make a written promise to appear in court as provided by this subchapter.

(b) The person must be taken before a magistrate who:

    (1) has jurisdiction of the offense;

    (2) is in the county in which the offense charged is alleged to have been committed; and

    (3) is nearest or most accessible to the place of arrest.

By the above, the duty of an arresting officer is statutory. There is nothing in the letter of the law to indicate that Legislature intended the requirement only apply when demanded by the accused. It is the assertion of Petitioner that statutory mandates are self-actualizing and do not need to be invoked by demand of a citizen. It is the further assertion that a citizen may not voluntarily absolve a public official from performing a statutorily mandated duty and ruling to the contrary notwithstanding.

**PLAINTIFFS ORIGINAL PETITION**

## 9.6   MAGISTRATE JURISDICTION AND DUTY

Under Texas law, if a person is arrested, with or without a warrant, the arresting officer is commanded to take the person directly to the nearest magistrate (see Texas Code of Criminal Procedure 14.06(a)supra, Texas Code of Criminal Article 15.16supra, Texas Transportation Code 543.002supra).  When a person is brought before a magistrate, the duty of the magistrate is clear as follows:

### *9.6.1  Keep the Peace.*

It is the duty of every magistrate to keep the peace as stipulated by Texas Code of Criminal Procedure Article 2.10 which reads as follows:

> Art. 2.10. DUTY OF MAGISTRATES. It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means; to issue all process intended to aid in preventing and suppressing crime; to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment.

This issue has been addressed in Texas Attorney Opinion jh0500 as follows:

> **The Honorable Gus L. Lanier page 2 (H-500)**
>
> A justice of the peace, in addition to having criminal and civil judicial duties imposed by the Constitution and laws of Texas, is a magistrate. Code Crim. Proc. art. 2.09. As such, he is required to perform the duties of a magistrate as set out in article 2.10, Code of Criminal Procedure:
>
> > It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means; to issue all process intended to aid in preventing and suppressing crime; to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment. (Emphasis added).
>
> All magistrates are empowered to issue warrants of arrest under the authority of article 15.03, Code of Criminal Procedure which reads in part:
>
> A magistrate may issue a warrant of arrest or a summons: . . ..
>
> > 2, When any person shall make oath before the magistrate that another has committed some offense against the laws of the State . . .. Article 15.04 of the Code further provides: The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense.
>
> **The Honorable Gus L. Lanier page 3 (H-500)**

**PLAINTIFFS ORIGINAL PETITION**                                    81 of 159

It is clear that any and all offenses defined by the criminal laws, of Texas, felonies, and misdemeanors of whatever classification, may be made known to any magistrate, including a justice of the peace, by complaint and that any magistrate can issue a warrant of arrest based on such complaint.

### 9.6.2  Must Convene an Examining Court

The method by which the magistrate preserves the peace is by convening an examining court as follows:

> Art. 2.11. EXAMINING COURT.  When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.

### 9.6.3  Jurisdiction

By the above, magistrates in the State of Texas are given jurisdiction and duty to convene an examining court when they are presented with a criminal complaint according to Texas Code of Criminal Procedure 15.03  which reads in pertinent part as follows:

> Art. 15.03. MAGISTRATE MAY ISSUE WARRANT OR SUMMONS.  (a)  A magistrate may issue a warrant of arrest or a summons:
>
> 1. In any case in which he is by law authorized to order verbally the arrest of an offender;
>
> 2. When any person shall make oath before the magistrate that another has committed some offense against the laws of the State; …

### 9.6.4  Sufficiency of Complaint

A complaint is sufficient to invoke the duty of a magistrate if it meets the requirements of Texas Code of Criminal Procedure 15.04  which reads as follows:

> Art. 15.04. COMPLAINT. The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense.

The duty of a magistrate, when given notice of crime, to convene an examining court is a statutory duty the magistrate may not ignore without violating Texas Penal Code 39.03 which reads in pertinent part as follows:

> Sec. 39.03.  OFFICIAL OPPRESSION.  (a)  A public servant acting under color of his office or employment commits an offense if he:
>
> (1)  intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

**PLAINTIFFS ORIGINAL PETITION**                                    82 of 159

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3) intentionally subjects another to sexual harassment.

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity…

### 9.6.5 Must Issue an Order

When an officer takes an arrested person to a magistrate, the magistrate is commanded by law to hold an examining trial and issue an order. When the arrested person is brought before a magistrate, either in person or by electronic means, the magistrate is then directed to convene and examining court to be held under prescriptions of Chapter 16 Texas Code of Criminal Procedure.

After the hearing is had, the magistrate shall issue and order in accordance with Texas Code of Criminal Procedure Chapter 16.17 which reads as follows:

Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the Respondent to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

### 9.6.6 17.30 Forward Order to Clerk

Once an order has been issued and the examining trial completed the magistrate is ordered as follows:

The court will take judicial notice that the above statute says "shall," it does not say: may, might, or can if s/he want to. The statute is obligation on the magistrate as, absent such an order in the public record, the trial court cannot accrue subject matter jurisdiction in the case. This critical requirement is addressed in greater detail below.

### 9.6.7 Constitution on Demand

The courts have held that an accused does not have a right to an examining trial unless they demand same. There is nothing in the black ink letter of the law to indicate or imply that our

**PLAINTIFFS ORIGINAL PETITION**                                      83 of 159

Constitutional Framers intended the Constitution should only apply on demand. The Texas Constitution at Art 29 reads as follows:

> To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

The court will further note the statutory requirement to take the accused before a magistrate was not optional in that they included the term "shall." Shall does not mean may, might, or can if they want to and certainly does not mean they only have to follow law if the citizen specifically demand they do. Shall is obligatory. It means must.

### 9.6.8 Magistration

Here we come to the root cause of our current mass incarceration problem. Prior to 1974 Texas used Vernons Criminal Statutes. Vernons Vt.R.Crim.P.3g reads as follows:

> (g) Appearance Before a Judicial Officer. A person arrested without a warrant and not released on a citation shall be brought before the nearest available judicial officer without unnecessary delay. The information and affidavit or sworn statement required by Rule 4(a) of these rules shall be filed with or made before the judicial officer when the arrested person is brought before the judicial officer.

## 9.7  BAIL V BOND

### 9.7.1 When "Bail" My Be Denied

The Texas Constitution addresses when bail may be denied at Constitution of the State of Texas at Article I Section 11a which reads as follows:

> Sec. 11a. DENIAL OF BAIL AFTER MULTIPLE FELONIES. (a) Any person (1) accused of a felony less than capital in this State, who has been theretofore twice convicted of a felony, the second conviction being subsequent to the first, both in point of time of commission of the offense and conviction therefor, (2) accused of a felony less than capital in this State, committed while on bail for a prior felony for which he has been indicted, (3) accused of a felony less than capital in this State involving the use of a deadly weapon after being convicted of a prior felony, or (4) accused of a violent or sexual offense committed while under the supervision of a criminal justice agency of the State or a political subdivision of the State for a prior felony, after a hearing, and upon evidence substantially showing the guilt of the accused of the offense in (1) or (3) above, of the offense committed while on bail in (2) above, or of the offense in (4) above committed while under the supervision of a criminal justice agency of the State or a political subdivision of the State for a prior

**PLAINTIFFS ORIGINAL PETITION**

felony, may be denied bail pending trial, by a district judge in this State, if said order denying bail pending trial is issued within seven calendar days subsequent to the time of incarceration of the accused; provided, however, that if the accused is not accorded a trial upon the accusation under (1) or (3) above, the accusation and indictment used under (2) above, or the accusation or indictment used under (4) above within sixty (60) days from the time of his incarceration upon the accusation, the order denying bail shall be automatically set aside, unless a continuance is obtained upon the motion or request of the accused; provided, further, that the right of appeal to the Court of Criminal Appeals of this State is expressly accorded the accused for a review of any judgment or order made hereunder, and said appeal shall be given preference by the Court of Criminal Appeals.

(b) In this section:

    (1) "Violent offense" means:

        (A) murder;

        (B) aggravated assault, if the accused used or exhibited a deadly weapon during the commission of the assault;

        (C) aggravated kidnapping; or

        (D) aggravated robbery.

    (2) "Sexual offense" means:

        (A) aggravated sexual assault;

        (B) sexual assault; or

        (C) indecency with a child.

Sec. 11b.  DENIAL OF BAIL FOR VIOLATION OF CONDITION OF RELEASE. Any person who is accused in this state of a felony or an offense involving family violence, who is released on bail pending trial, and whose bail is subsequently revoked or forfeited for a violation of a condition of release may be denied bail pending trial if a judge or magistrate in this state determines by a preponderance of the evidence at a subsequent hearing that the person violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community.

Sec. 11c.  DENIAL OF BAIL FOR VIOLATION OF PROTECTIVE ORDER INVOLVING FAMILY VIOLENCE.  The legislature by general law may provide that any person who violates an order for emergency protection issued by a judge or magistrate after an arrest for an offense involving family violence or who violates an active protective order rendered by a court in a family violence case, including a temporary ex parte order that has been served on the person, or who engages in conduct that constitutes an offense involving the violation of an order described by this section may be taken into custody and, pending trial or other court proceedings, denied release on bail if following a hearing a judge or magistrate in this state determines by a preponderance of the evidence that the person violated the order or engaged in the conduct constituting the offense.

**PLAINTIFFS ORIGINAL PETITION**

The court will take notice that the framers of the Texas Constitution took great pains to specify when "bail" may be denied. Plaintiff finds nothing the Texas Constitution which authorizes the taking of cash from a citizen as a condition of release.

### 9.7.2 No Bail Setting Outside Statutory Examining Trial

The problem with the above procedure is, there exists no provision for a magistrate to set a bail or bond outside an examining trial. While a trial judge may set bail, that can only happen after there has been an examining trial as there is no other way for a trial judge to accrue jurisdiction except by way of an order under Texas Code of Criminal Procedure 16.17 which reads as follows:

> Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

This is the case in brief. By the following I will demonstrate in detail how this procedure eviscerates the due course of the laws and eliminates a primary protection intended to prevent precisely the disaster we now face.

### 9.8 DUE COURSE IN AN EXAMINING TRIAL

In order for the court to accrue jurisdiction, there must be an examining trial as a matter of black letter law. This particular requirement has been in law since 1216 A.D. after the original signing of the Magna Carta Libertatum. It has served us well for the last 800 years until recently.

# 10 CONSTIUTIONAL SPEEDY TRIAL

Plaintiff Bell was charged with Class C Misdemeanor Assault on April 7, 2021. The court failed to timely bring the instant case to trial and forced Plaintiff Bell into repeated appearances at court for the purpose of meeting with the prosecuting attorney so that the prosecutor could threaten Plaintiff with all the rigors of a criminal prosecution if Plaintiff stood her ground and refused to take a plea arrangement where she would be compelled to plea guilty to a crime the prosecutor knew, or should have known Plaintiff did not commit.

The prosecuting attorney then conspired with Plaintiff's defense counsel and the trial judge to force a false plea from Plaintiff and left her with pending criminal charges for eighteen months.

## 10.1  LEGISLATIVE INTENT

While that may be the case in the United States Generally, in Texas the Legislature stated specifically what it considered a reasonable delay in the abstract contained in Senate Bill 1043 of the 83rd Legislature.  The abstract of the bill reads as follows:

> IN DETERMINING WHETHER A DELAY AFTER ARREST HAS VIOLATED A DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHT TO A SPEEDY TRIAL, THE U.S. SUPREME COURT HAS ARTICULATED A BALANCING TEST. FROM THE DECISION IN BARKER V. WINGO (1972), COURTS MUST LOOK AT THE LENGTH OF THE DELAY, THE REASON FOR THE DELAY, THE DEFENDANT'S ASSERTION OF HIS RIGHT, AND PREJUDICE TO THE DEFENDANT. UNDER THE TEXAS SPEEDY TRIAL ACT THERE IS NO REQUIREMENT OF A SHOWING OF PREJUDIC', AND ALTHOUGH A MOTION FOR DISCHARGE MUST BE MADE BEFORE TRIAL, THE INTERVAL WHICH WILL SHIFT TO THE PROSECUTOR THE BURDEN JUSTIFYING THE DELAY IS MUCH SHORTER THAN THE CONSTITUTIONAL THRESHOLD OF 1 YEAR. ALL FELONIES MUST BE BROUGHT TO TRIAL WITHIN 120 DAYS OF THE COMMENCEMENT OF THE CRIMINAL ACTION. IF A MISDEMEANOR IS PUNISHABLE BY IMPRISONMENT FOR MORE THAN 180 DAYS, THE STATE MUST BE READY WITHIN 90 DAYS OF THE COMMENCEMENT OF THE PROSECUTION; IF THE PUNISHMENT IS LESS THAN 180 DAYS THE STATE HAS ONLY 60 DAYS TO PREPARE. IF THE OFFENSE IS PUNISHABLE BY FINE ONLY, THE PROSECUTOR HAS A 30 DAY PERIOD TO BRING ACTION. THE LAW IS INTENDED NOT ONLY TO PROTECT DEFENDANT'S RIGHTS, BUT ALSO TO REDUCE THE PROBLEM OF OVERCROWDED JAILS. PROBLEMS WITH THE STATUTE CENTER AROUND THE NUMEROUS EXCEPTIONS TO THE TIME LIMITS, INCLUDING REASONABLE DELAYS WHILE THE STATE OBTAINS EVIDENCE. ALTHOUGH THERE ARE WAYS FOR COURTS TO EXCLUDE TOO MUCH TIME, AND FOR PROSECUTORS TO SEEK UNJUSTIFIED EXCLUSIONS, THIS STATUTE SHOULD ENCOURAGE A MORE REASONALBE FLOW OF CASES. APPENDED MATERIALS INCLUDE THE FORM FOR DEFENDANT'S MOTION FOR DISCHARGE UNDER THE ACT. FOOTNOTES ARE PROVIDED. (TWK).

## 10.2 SPEEDY TRIAL ACT  UNCONSTITUTIONAL

The State, in Fred MESHELL, Appellant, v. The STATE of Texas, Appellee. No. 1339-85 overturned the Speedy Trial Act on the following grounds:

The State would show that the caption of said bill [Acts 1977, 65th Leg., Ch. 787, pg. 1970] is defective in that it does not and did not contain sufficient information as to inform members of the Legislature as to its content and therefore violates the caption requirement and Art. III, Sec. 35 of The Texas Constitution.

The State would further show that the Texas Speedy Trial Act is a violation of the separation of powers doctrine, Art. II, Sec. 1, and also is a violation of The Texas Constitution, Art. V, Sec. 8, Art. V, Sec. 16, Art. V, Sec. 19, and any other applicable provisions of the Texas Constitution.

Without addressing whether or not the Senate Bill 1043 adequately informs the Legislators of the contents of the bill or that it intruded on the power of the Judiciary, the abstract clearly stated the Legislative intent in that trials must be held within specifically stated time limits. This is as clear a statement of Legislative intent as can be had. ( Check out Rosario V State)

## 10.3 DISTINGUISH BARKER WINGO TEST

Plaintiffs move this court to distinguish the speedy trial test in Texas as different from Barker v. Wingo. In Zamorano v. State, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002) the court opined as follows:

> The length of the delay between an initial charge and trial (or the defendant's demand for a speedy trial) acts as a "triggering mechanism." Unless the delay is presumptively prejudicial, courts need not inquire into examine the other three factors. Given the "imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." However, the Supreme Court has explained that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." If the accused shows that the interval between accusation and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, a court must then consider the extent to which that d"lay stretches beyond the bare minimum needed to "trigger judicial examination of the claim. This second inquiry is significant to the speedy trial analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over time." Thus, any speedy trial analysis depends first upon whether the delay is more than "ordinary"; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant. Zamorano v. State, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002)

Plaintiff moves this court to adopt the stated Legislative intent of that time it considered timely as clearly stated in the preamble to Senate Bill 1043 of the 83rd Legislature cited above.

**PLAINTIFFS ORIGINAL PETITION**

## 10.4 CRIME RATE DOWN

There is no war on drugs and never has been. The police have not been at war with the civilian population of the United States. The police have been indoctrinated to think they are at war with us and the results of that unfortunate mindset has been a disaster for the people, the police, prosecutors, the courts and mostly the available funds for the advancement of society.

### 10.4.1 This Is Not A War

I have been in combat and assure you, this is not a war. I am old and remember when police were not chosen for their sociopathic tendencies and set upon us like mad dogs awash in adrenaline addiction. I returned from combat addicted to it. It is seductive, there is no feeling like it. These 50 years later I still miss the fire and excitement of skirting the edge of the envelope. When I came back something was horribly wrong. All the people were the same, the places were the same, but something was horribly wrong. It took many years to realize it was adrenaline. God! I missed the whine of the bullet, the rumble beneath my feet as the adrenaline surged.

We have done this to our police. What are we thinking?

### 10.4.2 Carefully Crafted Criminal Connivance

Prosecutors, beset with a burgeoning case load, subjected the public to a carefully crafted criminal connivance, designed and orchestrated by prosecuting attorneys across Texas for the purpose of easing the prosecutorial burden of actually prosecuting crime, by denying those accused of crime to fundamental due process and the violation of multiple statutory and Constitutional rights including the right to a speedy trail.

### 10.4.3 No Speedy Trial Protection

Plaintiff will show that the police, prosecutors, judges and defense counsel have all worked in concert and collusion, one with the other, toward the disenfranchisement of the public from their statutory and Constitutional rights for the specific purpose of easing the workloads of all involved. The key element of the above alleged criminal conspiracy is the ability to hold charges over someone's head indefinitely.

### 10.4.4 Administrative Inconvenience

Prosecutors want more control over their dockets and prosecutors want time to apply inconvenience and stress in order to coerce a deal. They need time to order you to court several repeatedly so that they can turn the emotional screws and eventually coerce the accused into taking a deal simply to end the persecution and get on with their lives.

### 10.4.5 Delay and Obfuscation

A primary tactic is to delay, to order accused to court repeatedly, with no intention of holding a hearing but rather, the accused is ordered to court to meet and confer with the prosecutor so that the prosecutor can threaten the accused with all the things the prosecution will do to them if they don't take a perfectly reasonable deal. If an accused has the audacity to assert innocence, prosecutors then send the summons to the wrong address and when the accused don't show up. they charge them with failure to appear and agree to drop the charge of they take the porsecutors deal offer. The only drawback is this peskey problem of the Constitutional prohibition on public officials forbidding them from extending the time to trial.

#### 10.4.5.1 Speedy is Not a Right

The courts have addressed the "right to a speedy trial" as if it is some sort of gift to the citizen. Plaintiff suggests that notion is wrong headed. The Texas Constitution, in this regard, grants nothing to the citizen. The Constitution specifically forbids the government, including the courts, from certain actions. The courts are not required to grant a citizen in the right to a speedy trial; the courts are forbidden to deny a citizen in a speedy trail.

### 10.4.6 Prohibitions Apply

There is a notion out there that, if a citizen is not somehow versed in the intricacies of law and does not specifically demand that his/her public officials not oppress them that officials can oppress them. If a citizen does not specifically demand a speedy trial that, somehow, the Constitution ceases to apply. The state

#### 10.4.6.1 Ongoing Criminal Connivance

Plaintiff will show that prosecutors, acting in concert and collusion with defense counsel, have conspired, one with the other toward keeping defendants ignorant of the intricacies of law so that

**PLAINTIFFS ORIGINAL PETITION**

they do not know of these court created exemptions to the Constitutional prohibitions must be specifically addressed or they will be deemed waived.

### 10.4.6.2 Constitution Applies With or Without Consent

Plaintiff finds nothing in the verbiage of the Texas Constitution, or the statements of the Founders, which indicates they intended the Constitutional prohibitions only apply if the citizen demand they apply, timely or otherwise. The very notion that the courts can carve out exceptions to the Constitutional prohibitions is repugnant to an ordered society.

## 10.5 SEPARATION OF POWERS

A primary concern of our founders was the tendency of members of one branch of government to encroach upon the purview of another see Texas Constitution Article 2 Section 1 which reads as follows:

> THE TEXAS CONSTITUTION ARTICLE 2. THE POWERS OF GOVERNMENT Sec. 1. SEPARATION OF POWERS OF GOVERNMENT AMONG THREE DEPARTMENTS. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one,† those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Plaintiff finds nothing in the public laws as passed by the Texas Legislature that would indicate an intention that Constitutional prohibitions only apply if the citizen, in every instance of potential wrongdoing, specifically demand that they apply, any court ruling to the contrary notwithstanding.

### 10.5.1 Time As A Malignant Calculus

Plaintiff is prepared to show that, prosecutors have acted in furtherance with the Judges of the Court of Appeals, Texas State University and others to direct and train prosecutors, magistrates, police, and judges in practices and procedure calculated to systematically deny citizens in the full and free access to the protections as commanded by the Texas Constitution.

### 10.5.2 Delay as Hinge Pin

Plaintiff will further show that delay is a tactic that is the hinge pin to the above maglinant calculation.

### 10.5.3 Delay Inconsistent With Legislative Intent

This process of coercion takes time and is inconsistent with defendant's fundamental right to a speedy trial as opined by the courts in Barker v Wingo as follows:

> Although a speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution,[1] this Court has dealt with that right on infrequent occasions. See Beavers v. Haubert, 198 U.S. 77 (1905);
>
>> The refusal of the District Attorney to proceed with the prosecution and the failure of the court below to discharge Beavers from the arrest complained of deprived him of his constitutional right to a speedy trial by jury in the Eastern District of New York. United States v. Fox, 3 Mont. 312; note to In re Bergeron, 85 Am. St. Rep. 178, 204; Sutherland's notes on the U.S. Const.; Nixon v. State, 41 Am. Dec. 601; Cooley Const. Lim., 7th ed., 440.
>
> Pollard v. United States, 352 U.S. 354 (1957);
>
>> Our law, based upon centuries of tragic human experience, requires that before a man can be sent to a penitentiary, he is entitled to a speedy trial, to be present in court at every step of the proceedings, at all times to be represented by counsel, or to speak in his own behalf, and to be informed in open court of every action taken against him until he is lawfully sentenced. These are not mere ceremonials to be neglected at will in the interests of a crowded calendar or other expediencies. They are basic rights. They bulk large in the totality of procedural rights guaranteed to a person accused of crime. Here, in the case of an impecunious defendant, who was summarily rushed through the court mill without benefit of counsel, all of them, in some degree, were denied him.
>
> United States v. Ewell, 383 U.S. 116 (1966);
>
>> A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Beavers v. Haubert, 198 U.S. 77, 87. "Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive," Pollard v. United States, 352 U.S. 354, 361. "[T]he essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10.

**PLAINTIFFS ORIGINAL PETITION**

United States v. Marion, 404 U.S. 307 (1971).

> The motion to dismiss rested on grounds that had nothing to do with guilt or innocence or the truth of the allegations in the indictment but was, rather, a plea in the nature of confession and avoidance, that is, where the defendant does not deny that he has committed the acts alleged and that the acts were a crime but instead pleads that he cannot be prosecuted because of some extraneous factor, such as the running of the statute of limitations or the denial of a speedy trial. See United States v. Weller, 401 U.S. 254, 260 (1971). The motion rested on constitutional grounds exclusively, and neither the motion, the arguments of counsel, the Court's oral opinion, nor its judgment mentioned Federal Rule of Criminal Procedure 48(b), as a ground for dismissal. Our jurisdiction to hear this appeal has been satisfactorily established.

See also United States v. Provoo, 17 F. R. D. 183 (D. Md.), aff'd. 350 U.S. 857 (1955). The Court's opinion in Klopfer v. North Carolina, 386 U.S. 213 (1967), established that the right to a speedy trial is "fundamental" and is imposed by the Due Process Clause of the Fourteenth Amendment on the States.[2] See Smith v. Hooey, 393 U.S. 374 (1969); Dickey v. Florida, 398 U.S. 30 (1970). As MR. JUSTICE BRENNAN *516 pointed out in his concurring opinion in Dickey, in none of these cases have we attempted to set out the criteria by which the speedy trial right is to be judged. 398 U.S., at 40-41. This case compels us to make such an attempt.

### 10.5.4 Fundamental to Founders

Plaintiff could continue this line back to the beginning of the United States Republic and show how the right was clearly defined long before the Texas Republic who also adopted the clear requirement in the Texas Constitution @ Article 1 Section 10 which reads as follows:

Section 10 - RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS

**In all criminal prosecutions the accused shall have a speedy public trial** by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger. (Amended Nov. 5, 1918.) **(emphasis added)**

The court will take notice that the first right addressed is the right to a speedy trail.

### 10.5.5 No Waiver of Constitutional Prohibition

In Barker v Wingo supra, the courts opined as follows:

> In this habeas corpus proceeding the Court of Appeals, concluding that petitioner had waived his right to a speedy trial for the period prior to his demand for trial…

This raises the question, where is a defendant in a criminal prosecution granted the right to exempt a public official form the requirements of a Constitutional prohibition?  Plaintiff can find no provision for this in the Texas Constitution.  As a matter of fact, it is clear that our founders frowned on such behavior when it included Texas Constitution Article I Section 29 which reads as follows:

> Sec. 29.  BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.  To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

### 10.5.6 State Distinguished From Fed

While the federal courts may be able to play fast and loose with Constitutional prohibitions, no such power exists in Texas.   If our Framers and subsequent Legislators had intended that the courts be able to arbitrarily and capriciously exempt themselves from certain Constitutional prohibitions, they would have said so.  Absent any language in the Texas Constitution that would give a reasonable person of ordinary prudence reason to believe that the Texas Constitutional prohibitions hinged on caprice of the accused.  Plaintiff alleges that any consideration of the command to the judiciary that they ensure a speedy trial somehow hinges on a demand by someone who has been arrested and stuffed in jail is simply unconscionable Cantu v. State, 253 S.W.3d 273 and its predecessors or progeny notwithstanding.

### 10.5.7 No Harm No Foul Nonsense

The courts have presumed that a violation of a law or Constitutional prohibition only exists if the defendant can show harm as in Dragoo v. State:

> In determining whether an accused has been denied his right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." Barker v. Wingo, 407 U.S. 514, 530 (1972). The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right,

and the prejudice to the defendant resulting from the delay. Ibid. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. Id. at 533.  Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003)

The above follows Barker v Wingo supra.  While such may be the case in the federal arena, this is not the federal arena.  This is Texas and in Texas there is no Constitutional exclusion to the application of the Constitutional prohibitions.  Before taking office, each judge must swear to the following oath:

> IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,
>
> I,_____ , do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

### 10.5.8 Constitutional Duty

The courts in Dragoo v. State supra would have it that the judge is not required to uphold the Texas Constitution unless the accused can show harm.  The question becomes: "Where did they come up with this?"  Did they make it up?  It is not in the Texas Constitution.  Neither is there an exclusion of the Constitutional prohibitions anywhere in any statute.

### 10.5.9 Speedy Trial is Vested Right

The above oath constitutes a contract between the judge and the people of the Republic knowns as The State of Texas.  Where a judge fails to uphold a restriction contained in the Texas Constitution the judge commits an act of negligence at least, if not Official Oppression supra.

### 10.5.10    Delay Beyond Scope

It is the assertion and allegation of Plaintiff that, the failure to provide a defendant with a speedy trial, as commanded by the Texas Constitution, is beyond the scope of any Texas judge or prosecutor to mitigate.  Both are under oath to provide a speedy trial and a failure on their part to perform in accordance with the covenants of their oath constitutes a repudiation of their contract with the state and renders them liable for an action in Quo Warranto under Texas Civil Practice and Remedies Code Chapter 66.

### 10.5.11    No Immunity

When a public official acts in contravention of his/her contract with the state, the officer operates outside public sanction and such an act must be construed as an abuse of discretion in the context of Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) which reads in pertinent part as follows:

> A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. See Joachim v. Chambers, 815 S.W.2d 234, 240 (Tex. 1991) (trial court abused discretion by misinterpreting Code of Judicial Conduct); NCNB Texas National Bank v. Coker, 765 S.W.2d 398, 400 (Tex. 1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); Eanes ISD v. Logue, 712 S.W.2d 741, 742 (Tex. 1986) (trial court abused discretion by erroneously finding constitutional violation).

### 10.5.12    Constitutional Calculation

The right to a speedy trial arises from the time the defendant is formally accused or arrested. *Dillingham v. United States,* 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975);

> An interval of 22 months elapsed between petitioner's arrest and indictment, and a further period of 12 months between his indictment and trial, upon charges of automobile theft in violation of 18 U.S. C. §§ 371, 2312, and 2313. The District Court for the Northern District of Georgia denied petitioner's motions made immediately after arraignment and posttrial to dismiss the indictment on the ground that petitioner had been denied a speedy trial in violation of the Sixth Amendment. The Court of Appeals for the Fifth Circuit affirmed, holding that under United States v. Marion, 404 U.S. 307 (1971), the 22-month
>
>> "pre-indictment delay . . . is not to be counted for the purposes of a Sixth Amendment motion absent a showing of actual prejudice." United States v. Palmer, 502 F.2d 1233, 1235 (1974).
>
> This reading of Marion was incorrect. Marion presented the question whether in assessing a denial of speedy trial claim, there was to be counted a delay between the end of the criminal scheme charged and the indictment of a suspect not arrested or otherwise charged previous to the indictment. The Court held:
>
>> "On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons *65 who have been `accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time."

404 U.S., at 313. In contrast, the Government constituted petitioner an "accused" when it arrested him and thereby commenced its prosecution of him. Marion made this clear, id., at 320-321, where the Court stated:

> "To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in Klopfer v. North Carolina, [386 U.S. 213 (1967)]; see also Smith v. Hooey, 393 U.S. 374, 377-378 (1969). So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

Since it is "doubtless true that in some cases the power of the Government has been abused and charges have been kept hanging over the *318 heads of citizens, and they have been committed for unreasonable periods, resulting in hardship," the Court noted that many States "[w]ith a view to preventing such wrong to the citizen . . . [and] in aid of the constitutional provisions, National and state, intended to secure to the accused a speedy trial" had passed statutes limiting the time within which such trial must occur after charge or indictment.[9] Characteristically, these statutes to which the Court referred are triggered only when a citizen is charged or accused.[10] The statutes vary greatly in substance, *319 structure, and interpretation, but a common denominator is that "[i]n no event . . . [does] the right to speedy trial arise before there is some charge or arrest, even though the prosecuting authorities had knowledge of the offense long before this." Note, The Right to a Speedy Trial, 57 Colo. L. Rev. 846, 848 (1957).

*See also: Easley v. State,* 564 S.W.2d 742 (Tex.Cr.App. 1978), *cert. denied,* 439 U.S. 967, 99 S. Ct. 456, 58 L. Ed. 2d 425 (1978).

The right to a speedy trial is guaranteed by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970); Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The same right is assured by Art. I, Sec. 10 of the Texas Constitution, and Art. 1.05, V.A.C.C.P.

## 10.5.13    *Constitutional Speedy Trial Commandment*

Unlike the statutory Speedy Trial Act,[3] which addressed prosecutorial delays only, the constitutional right to a speedy trial governs the entire criminal justice process. Thus, the overcrowded dockets of trial courts, while a factor to be considered, do not excuse trial delays.

**PLAINTIFFS ORIGINAL PETITION**                                    97 of 159

But see, *Phillips v. State,* 659 S.W.2d 415, 419 (Tex.Cr. App.1983); *Ostoja v. State,* 631 S.W.2d 165, 167 (Tex.Cr.App.1982). As the Supreme Court stated in *Barker v. Wingo, 407 U.S. 514 (1972),*

> "[a] more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id., 407 U.S. at 532, 92 S.Ct. at 2192, 33 L. Ed. 2d at 117; Phillips v. State, 650 S.W.2d 396, 400 (Tex.Cr.App. 1983).

## 10.5.14    Burden on Prosecutor

The primary burden is on the prosecution and the courts to ensure that defendants are speedily brought to trial. *Turner v. State,* 504 S.W.2d 843, 845 (Tex.Cr.App. *137 1974); *McKinney v. State,* 491 S.W.2d 404, 407 (Tex.Cr.App.1973). Both the trial court and prosecution are under a positive duty to prevent unreasonable delay. *Wilson v. Bowman, supra,* at 321.

## 10.5.15    Demand Unnecessary

The courts have ruled, if a speedy trial is not demanded it is waived.  Plaintiff alleges that such case law is clearly unconstitutional.  Our founders, upon framing the Constitution, clearly intended that it's prohibitions be sacrosanct.

It is the sworn duty of the courts to ensure a speedy trial without regard to whether a defendant demands it or not.  The Constitution simply cannot be presumptively waived.  The court in ROSARIO ZAMORANO, Appellant v.THE STATE OF TEXAS ruled as follows:

> According to the Supreme Court, the nature of the speedy trial right "makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." Of course, the defendant has no duty to bring himself to trial; that is the State's duty. This does not mean that the defendant has no responsibility to assert his right to a speedy trial. Whether and how a defendant asserts his speedy trial right is closely related to the other three factors because the strength of his efforts will be shaped by them. Therefore, the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Conversely, a failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial.
>
> Appellant filed his motion for speedy trial on June 3, 1998, about two and one-half years from the date of his arrest. The record is unclear whether appellant objected to the resets before that date. During the two hearings, defense counsel argued that appellant had announced "ready" on all dates, save the one "not ready" mentioned above. The court of appeals discounted appellant's second try for a

speedy trial because "there [was] no indication that he requested an immediate setting of the motion to reconsider," and held that appellant's "delay and lack of persistence in asserting his right to a speedy trial weigh[ed] against him."

We disagree that the assertion-of-the-right factor weighs against appellant. It is true that appellant's initial motion was tardy. This late assertion, had no subsequent motion been filed, might well have undercut his Sixth Amendment claim. But appellant's second attempt to seek a speedy trial, which came less than two months after the trial court denied his initial motion, evidenced his persistence. This is not a case where appellant never asked for a hearing. Nor is this a case in which evidence shows a defendant's affirmative desire for any delay. Appellant's repeated assertion weighs in his favor.

The above consideration is simply wrong headed.

### 10.5.16    Constitution Does Not Speak To Citizens

Plaintiff asserts that Constitutional provisions do not apply to Defendants. The protections are prohibitions placed on public officials. To assert that a Constitutional right must be invoked to have effect is to place the Judiciary above the Constitution. This incursion by the courts upon Constitutionally forbidden territory is wrongful and an abuse of office and would work to suspend the prohibition included in the Constitution in violation of The Texas Constitution Article 1 Section 28 which reads as follows:

> Sec. 28. SUSPENSION OF LAWS. No power of suspending laws in this State shall be exercised except by the Legislature.

To rule that a citizen must timely demand that the courts abide by a Constitutional mandate or that mandate somehow ceases to apply is to war against the clear verbiage of the Constitution.

### 10.5.17    The Constitution Always Applies

The courts would have it that the Constitution only applies if the citizen demand that it apply. Defendant asserts, Article 1, Section 10 of the Texas Constitution always applies and the court and Legislature are forbidden to change it as stipulated by Article 1, Section 29 which reads as follows:

> Sec. 29. BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

Plaintiffs assert and move this court to rule that the Texas Constitution always applies and any laws, rulings or regulations to the contrary notwithstanding.

**PLAINTIFFS ORIGINAL PETITION**                                    99 of 159

### 10.5.18    *PROSECUTORIAL DELAY*

As the Texas Constitution bestows upon court the duty to provide a speedy trial, Defendant, hereby, demands a showing of due cause for the two year delay frequented by defendants on Plaintiff.

#### 10.5.18.1    *Administrative Convenience Notwithstanding*

Defendant specifically asserts, no delay may be occasioned or sanctioned as a result of the State's failure to sufficiently staff the offices of prosecuting attorneys. The Texas Constitution may not be subverted subsequent to financial decisions of budget setting bodies. Therefore, Defendant specifically objects to any allegations of delay resulting from staffing inadequacies of state agencies.

#### 10.5.18.2    *Crisis Is No Excuse*

Plaintiff also objects to any alleged delay occasioned by any alleged crisis. Crises come and go and public officials will never let any crisis go to waste. The courts cannot use the alleged pandemic as an excuse to deny the citizens in their constitutional rights as evidenced by the Texas Supreme Court in IN RE SALON A LA MODE, ET AL. as follows:

> "The Constitution is not suspended when the government declares a state of disaster." In re Abbott, No. 20-0291, 2020 WL 1943226, at *1 (Tex. Apr. 23, 2020). All government power in this country, no matter how well-intentioned, derives only from the state and federal constitutions. Government power cannot be exercised in conflict with these constitutions, even in a pandemic.

#### 10.5.18.3    *DELAY FOR PURPOSES OF INVESTIGATION*

A catch all delay is to claim delay for the purpose of further investigation. Without specifically asking the for the immediate details of the pending investigation, in the event any such assertion is made, Defendant specifically moves the court to demand of the State, a statement showing the substantive scope of the investigation still needed. In the event the State alleges such release would hamper said investigation, Defendant moves the court to hold an "in camera" examination of the evidence or reasons for said delay and that a record be kept of the examination in the event such is needed for future appeal.

## 10.6 SIMULATING A LEGAL PROCESS

Plaintiff will further show that Defendants simulated a legal process by issuing repeated summons from the court for an impermissible purpose in that there was no hearing intended but rather, Plaintiff was summoned to court by the prosecution attorney so that the prosecutor could pressure and harass Plaintiff in an attempt to coerce a plea.

Plaintiff was summoned to court no less than __ times.  Each time there was no hearing intended and the summons was not for a reason contained in Texas Code of Criminal Procedure 28.01 which reads in pertinent part as follows:

Art. 28.01. PRE-TRIAL.

Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing.  The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding.  The pre-trial hearing shall be to determine any of the following matters:

(1) Arraignment of the defendant, if such be necessary;  and appointment of counsel to represent the defendant, if such be necessary;

(2) Pleadings of the defendant;

(3) Special pleas, if any;

(4) Exceptions to the form or substance of the indictment or information;

(5) Motions for continuance either by the State or defendant;  provided that grounds for continuance not existing or not known at the time may be presented and considered at any time before the defendant announces ready for trial;

(6) Motions to suppress evidence--When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court;

(7) Motions for change of venue by the State or the defendant;  provided, however, that such motions for change of venue, if overruled at the pre-trial hearing, may be renewed by the State or the defendant during the voir dire examination of the jury;

(8) Discovery;

(9) Entrapment;  and

(10) Motion for appointment of interpreter.

At the first hearing on the case, Plaintiff was denied an examining trial by the judge of the court.

**PLAINTIFFS ORIGINAL PETITION**                    101 of 159

### 10.6.1 Article 26.01 Restriction in Class C Misdemeanor

In as much as the instant charge was for a class C misdemeanor, it was particularly necessary to hold an examining trial as the only way for the court to call a hearing to take a plea in a class C misdemeanor would be at an examining trial in as much as, the court was forbidden to summon Plaintiff to court for to take a plea as such was specifically excluded by Texas Code of Criminal Procedure 26.01 which reads as follows:

> Art. 26.01. ARRAIGNMENT. In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.

A hearing for the purpose of taking a plea would necessarily have to be an arraignment hearing in accordance with Texas Code of Criminal Procedure 26.02 which reads as follows:

> Art. 26.02. PURPOSE OF ARRAIGNMENT. An arraignment takes place for the purpose of fixing his identity and hearing his plea.

### 10.6.2 Lack of Jurisdiction

At the initial hearing, the court did not yet have jurisdiction as there was no determination of probable cause in the record, therefore, the trial court judge did not yet have subject matter jurisdiction. The only jurisdiction the judge could exercise would be that of a magistrate under Texas Code of Criminal Procedure 2.10 and 2.11 which reads as follows:

> Art. 2.10. DUTY OF MAGISTRATES. It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means; to issue all process intended to aid in preventing and suppressing crime; to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment.

> Art. 2.11. EXAMINING COURT. When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.

### 10.6.3    16.17 Requirement

Once the examining trial is complete, the magistrate was commanded by Texas Code of Criminal Procedure 16.17 as follows:

> Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

This issue is addressed in further detail above.

**PLAINTIFFS ORIGINAL PETITION**                                      102 of 159

In as much as there had been no determination of probable cause and the court was forbidden, in the matter of a class C misdemeanor to summon a person to court for the purpose of making a plea, the court simulated a legal process each time it ordered Plaintiff to court for no permissible purpose in violation of Texas Penal Code 32.49(a)(1&2) which reads as follows:

Sec. 32.48.  SIMULATING LEGAL PROCESS.  (a)  A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment, or other court process with the intent to:

(2)  cause another to:

(A)  submit to the putative authority of the document;  or

(B)  take any action or refrain from taking any action in response to the document, in compliance with the document, or on the basis of the document.

### 10.6.4 Delay As Am Illegal Artifice

At trial, Plaintiff will show that the delay occasioned in the instant case is consistent with the normal way of doing business by defendants.  Plaintiff will show that the prosecutor and judge acted in concert and collusion to obstruct justice by in violation of Texas Penal Code 36.06 in retaliation for Plaintiff refusing to plea guilty to the charges.  The court committed Official Misconduct in violation of Texas Penal Code 39.03  supra by denying Plaintiff in a proper examining trial in accordance with Texas Code of Criminal Procedure Chapter 16.

## 10.7 ONGOING CRIMINAL ENTERPRISE

It is the assertion and allegation of Plaintiffs that the Criminal Justice System of Texas has been taken over by a criminal street gang as the term is defined by Texas Penal Code 71(d) which reads as follows:

Sec. 71.01.  DEFINITIONS.  In this chapter,

(d)  "Criminal street gang" means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.

### 10.7.1 Duty to Develop Training

The that the Texas Court of Criminal Appeals, in cooperation with the  Office of Court Administration have been commanded by the Texas Legislature to develop training for magistrates in Texas by Texas Code of Criminal Procedure 17.024 which reads as follows:

**PLAINTIFFS ORIGINAL PETITION**                                      103 of 159

Art. 17.024.  TRAINING ON DUTIES REGARDING BAIL.  (a)  The Office of Court Administration of the Texas Judicial System shall, in consultation with the court of criminal appeals, develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases. The courses developed must include:

    (1)  an eight-hour initial training course that includes the content of the applicable training course described by Article 17.0501; and

    (2)  a two-hour continuing education course.

(b)  The office shall provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to the office.

(c)  A magistrate is in compliance with the training requirements of this article if:

    (1)  not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);

    (2)  the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and

    (3)  the magistrate demonstrates competency as provided by Subsection (b).

(c-1)  Notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022.  This subsection expires May 1, 2023.

(d)  Any course developed or approved by the office under this article may be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity.

## *10.7.2 Ongoing Criminal Enterprise*

It is the assertion and allegation of Plaintiffs that the Texas Court of Criminal Appeals, acting in concert and collusion with the Office of Court Administration, Texas State University and all magistrates in the State of Texas have been perpetrating, and continue to perpetrate an ongoing criminal enterprise designed and intended to disenfranchise the people of the State of Texas by denying them in the protection of the laws.  The training of magistrates and other members of the criminal justice system amount to nothing less than an ongoing criminal conspiracy to deny the citizens of the State of Texas in the due course of the laws.

### 10.7.3 Everything is Wrong

Every step from arrest to trial, as presently practiced in Texas, is not only wrong, it is very specifically against particular law.  It is not haphazardly against law, it amounts to a carefully crafted criminal connivance that has been honed and fine tuned so as to put any person accused of crime in a position such that, they will have no reasonable alternative to taking a plea deal.

### 10.7.4 At Least 40 Years of Abuse

Up until 1975 soon after the Troy v. State supra, the incarceration rate tracked the increase in population.  For all the years of Texas history approximately the same percentage of the population committed crimes and the incarceration rate was stable.  In 1975 the incarceration rate increase surpassed the population increase and has been climbing logarithmically ever sense.  At this point the graph is almost straight up.  Texas cannot stand much more of this.

#### 10.7.4.1 Creating A Police State

According to FBI statistics, over the last 40 years, crime has been down across the board.  In that same time, after 1975, the incarceration rate in Texas has skyrocketed to the point it is about the bankrupt the counties.  While the state is boasting a revenue surplus, the counties are being buried in criminal justice debt.

### 10.7.5 Magistrate Bypass

For at least 40 years, the police in Texas have been directed to take persons they arrest directly to jail instead of directly to the nearest magistrate as commanded by black letter law. See Texas Code of Criminal Procedure 14.05, 15.16 and Texas Transportation Code 543.002 supra. Magistrates were directed to dispense with examining trials and simply read a citizen their rights and set bail.  The average conviction rate for all crimes, across the board, is 99.6%.

One must give the criminals credit.  When they fixed the system, they did a good job.  The counties in Texas are reported by the Officer of Court Administration to be spending $990 million dollars per year for pre-trial incarceration but this writer believes that number is actually on the order of 5 time what is reported.  The Criminal Justice System is bankrupting the state.

### 10.7.6 Setting Bail

As addressed above, the only provision for a magistrate to set bail is in the context of an examining trial after the magistrate has made a determination of probable cause. Problem, there are no determinations of probable cause in Texas.

### 10.7.7 There is no Lack of Law

In this writer's opinion, Texas has the best corpus juris of any state in the Union. This problem addressed here exist from no lack of law but rather, this problem exists from an abject failure of public officials in Texas to follow the clear and unambiguous letter of law. The problem exists from a malignant calculus on the part of those very public officials charged with protecting the rights of the citizens and has it germ in the highest levels of Texas government.

### 10.7.8 Misfeasance In Office

Magistrates, across Texas, are apparently trained and directed to refuse to perform their duty as prescribed under Texas Code of Criminal Procedure 15.09 which reads as follows:

> Art. 15.09. COMPLAINT MAY BE FORWARDED. A complaint in accordance with Article 15.05, may be forwarded as provided by Article 15.08 to any magistrate in the State; and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused; and the accused, when arrested, shall be dealt with as provided in this Chapter in similar cases.

Included in this pleading are numerous examples of magistrates from the highest to the lowest refusing to perform their duty under Texas Code of Criminal Procedure 15.09 supra.

By the above practice, Public officials are now granted absolute immunity from their bad behavior except in the rarest and most outrageous circumstances that have the effect of focusing public attention on the bad behavior of the system or embarrass those is high levels of government.

### 10.7.9 Blanket Denial of a Preliminary Hearing

An examination of the criminal records in Texas will show that, for the most part, there are no Texas Code of Criminal Procedure 16.17 orders in the public records of persons accused of crime.

> Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the

**PLAINTIFFS ORIGINAL PETITION**                                      106 of 159

examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

Magistrates have been trained in the abomination called a "Magistration." This leaves the trial court without jurisdiction and all parties without the cover of any immunity, official or otherwise.

### 10.7.10    Denial of Speedy Trial as Malignant Calculus

The public has been universally denied in their right to a proper examining trial as required by statute. They are then subject to a carefully crafted criminal connivance designed and intended to wear out the innocent. This is no problem for the guilty as they know they can cut a deal and hit the streets to offend again. It is the innocent that suffer. As in the instant case, if anyone in Texas dares to stand on their innocence, they are subjected to an onslaught of official abuse by the police, prosecutors, and judges. They will be harassed until they make a deal and defense counsel if of no benefit as they know better than to interfere with the ongoing criminal enterprise.

## 10.8 CRIMINAL STREET GANG

The courts in Hartford, Connecticut. In a memorandum of Decision on Summary Judgment in the case of . CT Freedom Alliance, LLC, ET AL v State of Connecticut Department of Education, ET AL, recently addressed the abuse of power by government as follows:

> The law limits the power of the good lest the wicket inherit it.
>
> Until recently, most of us have believed that the checks and balances within our legal system require no attention to keep them running smoothly. But recent events have undermined that confidence. Faith that government's three great gears-the executive, the legislative, and the judicial- are self-calibrating has been seriously undercut by a pandemic and by violence from the right and the left. CT Freedom Alliance, LLC, ET AL v State of Connecticut Department of Education, ET AL.

The above case is a wonderful read for anyone concerned with the excesses of government during times like these where the best people, with the highest of motives, wreak havoc from the noblest intent.

### 10.8.1 Engaging In Organized Crime

It is the contention and allegation of Plaintiffs that the Texas Court of Criminal appeals, the director of the Texas Office of Court Administration, the board of regents of Texas State University and every person involved in the teaching of the above alleged criminal enterprise,

**PLAINTIFFS ORIGINAL PETITION**                                     107 of 159

every magistrate, prosecutor and police officer in Texas is complicit in an ongoing criminal enterprise violation of Texas Penal Code 71.02)a)(13) Texas Penal Code which reads in pertinent part as follows:

> Sec. 71.02. ENGAGING IN ORGANIZED CRIMINAL ACTIVITY. (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:
>
> > (9) any offense under Chapter 36; and
> >
> > (13) any offense under Section 37.10;

### 10.8.2 All Are Disqualified

This case presents a quandary for Plaintiff's. Here, we are not accusing all the judges in Texas of some unquantifiable something. We are accusing all the judges in Texas of specific criminal actions. Every judge in Texas who has presided over a criminal case, or acted as a prosecutor or defense counsel, in the last 40 years, where the accused was arrested, taken to jail, subjected to a magistration hearing, then prosecuted in accordance with the training given to the police, prosecutors, magistrates and judges, developed by the Texas Court of Criminal Appeals, is directly implicated as part of a street gang.

If all judges are disqualified, they are disqualified. There is some federal legal-babble about a maxim of law:

> [T]here is a maxim of law to the effect that where all are disqualified, none are disqualified. *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. 48 C.J.S. Judges § 74. 407 F. Supp. at 483, as quoted from *Pilla v. American Bar Ass'n*, 542 F.2d 56, 59 (8th Cir. 1976)

We also find a similar following in Turner v. American Bar Ass'n, 407 F. Supp. 451, 483 (N.D. Tex. 1975):

> With respect to disqualification in civil actions where the trial judge to which the case happens to be assigned is also a defendant in the same action, 28 U.S.C.A. § 455 would require that the judge disqualify himself. This Court notes, however, that there is a maxim of law to the effect that where all are disqualified, none are disqualified. Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. 48 C.J.S. Judges § 74. Although this maxim would

allow the Supreme Court to proceed where all or a quorum of the Justices have been sued, it would seemingly not allow a District Court Judge to proceed if other judges are available by substitution. Brinkley v. Hassig,83 F.2d 351 (C.A.10, 1936). As quoted from: Turner v. American Bar Ass'n, 407 F. Supp. 451, 483 (N.D. Tex. 1975)

The above cases reference Brinkly and Philla which both draw the quote from Evans v. Gore,253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920).  The problem is, the that the following verbiage is not found in Evans.  The only thing even close is the following:

> With respect to disqualification in civil actions where the trial judge to which the case happens to be assigned is also a defendant in the same action, 28 U.S.C.A. § 455 would require that the judge disqualify himself. This Court notes, however, that there is a maxim of law to the effect that where all are disqualified, none are disqualified.

It appears the court simply made the maxim up, therefore, it would be inappropriate to go to this maxim so, we would need to find it in Texas law or figure something out.  State Remedy

Plaintiff's could take this to the feds but this is a state issue and needs to be addressed in concert with Texas law.  The hardest thing to find is what is not there.  Well, this maxim:

> "if all are disqualified then none are disqualified"

does not seem to be in Texas law.  Even if it was in Texas law, the above allegations are not general, but rather, are specific and go directly to grounds for disqualification.

### 10.8.3 Petition for Court of Inquiry

All is not lost.  Plaintiff Kelton is a radio talk show host and does a show on legal reform.  Plaintiff Kelton tells his listeners that Texas has the best body of law of any state in the union.  There is not a single remedy you need that you will not find in Texas law and we have one.

In the instant case, Plaintiff moves the court to appoint an associate judge

### 10.8.3.1 Appointment of Associate District Judge

Plaintiff moves this court to appoint an associate judge in accordance with Texas Government Code 54A.002 which reads as follows:

> Sec. 54A.002. APPOINTMENT.  (a)  A judge of a court subject to this subchapter may appoint a full-time or part-time associate judge to perform the duties authorized by this subchapter if the commissioners court of the county in which the court has jurisdiction has authorized the creation of an associate judge position.

(b) If a court has jurisdiction in more than one county, an associate judge appointed by that court may serve only in a county in which the commissioners court has authorized the appointment.

(c) If more than one court in a county is subject to this subchapter, the commissioners court may authorize the appointment of an associate judge for each court or may authorize one or more associate judges to share service with two or more courts.

(d) If an associate judge serves more than one court, the associate judge's appointment must be made as established by local rule, but in no event by less than a vote of two-thirds of the judges under whom the associate judge serves.

### 10.8.3.2 Convene Court of Inquiry

Plaintiff moves the trial judge to petition the appointed associate judge to convene a court of inquiry to inquire into the allegations made herein by Plaintiffs.

### 10.8.3.3 Disqualify Yourself

Plaintiff moves the trial court to disqualify itself and petition the head administrative judge of the district to appoint the associate judge to rule in this instant case.

# 11 CRIMINAL ACCUSATIONS

By the following, Plaintiffs invokes the duty of the trial judge to act in the capacity of a magistrate and issue warrants, in accordance with Texas Code of Criminal Procedure 15.09 supra in the following matters:

## 11.1 ASSAULT PLAINTIFF KELTON

### 11.1.1 Travis County Court House

On or about the 12th day of October 2021, Plaintiff Kelton was assaulted by Sheriff Deputy _____ at the Travis County District Court house entrance. Sheriff Deputy _____ denied entrance into the courthouse unless Plaintiff Kelton donned a medical device in the form of a medical mask. When asked if the pistol the deputy was prominently displaying on his hip was loaded, the deputy assured Plaintiff Kelton that it was. When asked if he was prepared to use the weapon, if necessary, in order to prevent Plaintiff Kelton from entering the courthouse without a mask, the deputy assured Plaintiff Kelton that he would.

### 11.1.2 Combat Veteran

Plaintiff Kelton is a combat veteran who believes in and is dedicated to the American form of government, to the point Plaintiff Kelton offered up his life to the protection of same. Plaintiff Kelton paid for these rights and he paid heavy. To have my life casually threatened by an arrogant, self-important, minor official was much more than a threat, it was a betrayal, on the order of the sputum laced welcome Plaintiff received on return from hell.

### 11.1.3 911 Call

When Plaintiff Kelton took out his cell phone to call 911, the officer placed his hand on his weapon and told Plaintiff Kelton that he could not use a cell phone in the courthouse. I suspect the young man doesn't know the smell of a man's insides when they are violently exposed to the air, or the smell of gangrene as it eats a man alive from wounds inflicted by weapons the like of which he had his hand on, but Plaintiff has.

### 11.1.4 Governors Edict

In the instant case, Deputy _____, attempted to enforce an edict of the Governor of the State of Texas, an edict the Governor had no power to issue.

By his act, Deputy _____, threatened Plaintiff Kelton with the use of deadly force while exhibiting a deadly weapon, while acting under the color (pretense) of an official capacity. Said act was an act of first degree aggravated assault as defined by Texas Penal Code 22.02(b)(2)(A) which reads as follows:

> Sec. 22.02. AGGRAVATED ASSAULT.
>
> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
>
>> (2) regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:
>>
>>> (A) by a public servant acting under color of the servant's office or employment;

### 11.1.5 Plaintiff Bell

Plaintiff Bell was subjected to numerous criminal acts by Nordstrom Rack employees and the Sunset Valley Police Department as follows:

### *11.1.5.1 Aggravated Assault*

Plaintiff Bell was physically attacked by a Nordstrom Rack employee wherein the employee grabbed Plaintiff Bell by the arm and squeezed so hard that finger mark bruises were left in Plaintiff Bell's forearm. Plaintiff Bell jerked loose and jumped into a changing room, locked the door, and called 911 to seek help from the attacker.

#### 11.1.5.1.1   Aggravated Assault on Plaintiff

When police arrived, instead of taking Plaintiff Bell's statement, the officers took Plaintiff Bell into custody, escorted her outside the building, then harassed Plaintiff Bell trying to get her to state her name despite already having provided it and trying to get her to provide an ID she did not possess, one officer moved behind Plaintiff Bell then both officers grabbed Plaintiff Bell and threw he to the ground and handcuffed her. Plaintiff Bell had made no aggressive movement and was not armed with any weapon of any kind.

#### 11.1.5.1.2   Hot Boxed Plaintiff

After talking Plaintiff to the ground, Officers Eller and Gil placed Plaintiff Bell in the back of a patrol car with the windows rolled up and the engine off.

The car heated up quickly and Plaintiff Bell was beginning to panic. As she could not get out of the car and no one responded to her screams for help, Plaintiff Bell started banging her head on the window. A bystander saw Plaintiff Bell's distress and went over and ordered the officers to get Plaintiff Bell out of the patrol car.

#### 11.1.5.1.3   Paramedics Called

By this time Plaintiff Bell was faint from heat prostration so paramedics were called. When the paramedics got there Plaintiff Bell's body temperature was still at 101 degrees and the paramedics said her heart rate was off the charts. Plaintiff was treated by the paramedics and stabilized. Fortunately, it was not necessary to transport Plaintiff Bell to the hospital.

#### 11.1.5.1.4   No Probable Cause for Arrest

It was discovered later that the Nordstrom Rack employee had told police that Plaintiff Bell had not committed any crime and did not want to press charges.

**11.1.5.1.5   1st Degree Felony Aggravated Assault**

[missing language] Plaintiff Bell to a false arrest, a physical attack where was, without provocation jumped by two police officers, thrown to the ground and cuffed. Plaintiff Bell was then subjected to intentional punishment by "Hot Boxing" her, which put her life at risk by being placed in a patrol car with the windows up and the engine off on a very warm Texas afternoon. Plaintiff Bell was unable to defend herself against the false arrest and imprisonment as, at the time, both officers were prominently displaying numerous deadly weapons. City of Sunset Valley police officers, Defendant Eller and Defendant Gil, conspired, one with the other then worked in concert and collusion one with the other toward the perpetration an act of aggravated assault against Plaintiff Bell, in violation of Texas Penal Code 22.02(b)(2)(A) which reads as follows:

> Sec. 22.02.  AGGRAVATED ASSAULT.
>
> (b)  An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
>
> > (2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:
> >
> > > (A)  by a public servant acting under color of the servant's office or employment;

## *11.1.5.2 False Imprisonment*

At the time of the Sunset Valley police officers tackled and handcuffed Plaintiff Bell, the officers has no cause to believe that Plaintiff Bell had committed, or was about to commit a crime. Their assault against Plaintiff Bell and subsequent arrest was without probable cause and, therefore, an act of kidnapping in violation of Texas Penal Code 20.03 which reads as follows:

> Sec. 20.03.  KIDNAPPING.  (a)  A person commits an offense if he intentionally or knowingly abducts another person.

In as much as Texas does not have a statute labeled, "False Imprisonment," the appropriate criminal charge is "Kidnapping."

**11.1.5.2.1   Obstruction/retaliation**

After the Sunset Police almost killed Plaintiff Bell, Officer Eller went back inside Nordstrom Rack and talked to the employee who had said that she did not believe that Plaintiff Bell had

**PLAINTIFFS ORIGINAL PETITION**                                    113 of 159

committed a crime and told her that Plaintiff Bell intended to file criminal allegations against the security officer. Officer Eller then conspired with the Nordstrom Rack security officer to fabricate false charges against Plaintiff Bell so that the officers could falsely prosecute Plaintiff Bell in order to prevent Plaintiff Bell from pursuing allegations against the officers in an act of Obstruction of Justice in violation of Texas Penal Code 36.06 which reads in pertinent part as follows:

> Sec. 36.06. OBSTRUCTION OR RETALIATION. (a) A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:
>
>> (1) in retaliation for or on account of the service or status of another as a:
>>
>>> (A) public servant, witness, prospective witness, or informant; or
>>>
>>> (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
>>
>> (2) to prevent or delay the service of another as a:
>>
>>> (A) public servant, witness, prospective witness, or informant; or
>>>
>>> (B) person who has reported or who the actor knows intends to report the occurrence of a crime.

### 11.1.5.3 Fail to Take Before Magistrate

On the 7th day of April 2021, Plaintiff Bell was cited by City of Sunset Police Officer for Class C Misdemeanor Assault By Contact and Failure to Identify. Plaintiff Bell was asked to sign a promise to appear before a magistrate in accordance with Texas Code of Criminal Procedure 4.06(b)(1) which reads as follows:

> Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE
>
> (b) A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains:
>
>> (1) written notice of the time and place the person must appear before a magistrate; (49.02 is Public Intoxication)

When Plaintiff Bell hired counsel who appeared as agreed, before City of Sunset Valley Municipal Judge, Kenton Johnson, the judge commenced to perform an arraignment as defined by Texas Code of Criminal Procedure 26.02 which reads as follows:

**PLAINTIFFS ORIGINAL PETITION**                                           114 of 159

> Art. 26.02. PURPOSE OF ARRAIGNMENT. An arraignment takes place for the
> purpose of fixing his identity and hearing his plea.

Under Texas law, when Plaintiff appeared before City of Sunset Valley Municipal Judge,
Plaintiff Bell appeared before the judge in his capacity as a magistrate in and for the State of
Texas. As a magistrate, City of Sunset Valley Municipal Judge, Kenton Johnson was required to
convene an examining court in accordance with Chapter 16 Texas Code of Criminal Procedure.

Instead, the magistrate held an arraignment in the case of a class C misdemeanor in violation of
the restriction contained in Texas Code of Criminal Procedure 26.01 which reads as follows:

> Art. 26.01. ARRAIGNMENT. In all felony cases, after indictment, and all
> misdemeanor cases punishable by imprisonment, there shall be an arraignment.

The Texas Legislature, for reasons of it's own, restricted arraignment hearings to the above. It
was the Legislative intent that persons accused of a class C Misdemeanor not be subjected to an
arraignment hearing. In the instant case, Plaintiff was denied and examining trail and subjected
to an arraignment hearing instead.

By the failure of the magistrate to hold an examining trial, the magistrate failed to perform a duty
he was commanded by law to perform and, in the process, denied Plaintiff Bell in the due course
of the laws of the State of Texas in an act of Official Oppression as defined by Texas Penal Code
39.03, which reads as follows:

> Sec. 39.03. OFFICIAL OPPRESSION. (a) A public servant acting under color of
> his office or employment commits an offense if he:
>
> (1) intentionally subjects another to mistreatment or to arrest, detention, search,
> seizure, dispossession, assessment, or lien that he knows is unlawful;
>
> (2) intentionally denies or impedes another in the exercise or enjoyment of any
> right, privilege, power, or immunity, knowing his conduct is unlawful; or
>
> (3) intentionally subjects another to sexual harassment.

### *11.1.5.4 Shielding From Prosecution*

On the 7th day of April 2021, Plaintiff Bell gave notice of crime to City of Sunset Velley police
officers Eller and Gil. On the 13th day of April 2021, City of Sunset Velley Chief of Police,
Lynn Carter, stated that he dismissed the criminal charge filed by Plaintiff Bell against
Defendant Gill.

**PLAINTIFFS ORIGINAL PETITION**                                             115 of 159

City of Sunset Valley Police Officers, Gill and Eller, after being presented with a [??] complaint against Nordstrom Rack security officer Fucci, had a duty to give notice to some magistrate by Texas Code of Criminal Procedure 2.13(b)(3) which reads in pertinent part as follows:

> Art. 2.13. DUTIES AND POWERS.
>
> (b) The officer shall:
>
>> (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

Said failure to act had the effect of shielding the accused from prosecution in violation of Texas Penal Code 38.05 which reads in pertinent part as follows:

> Sec. 38.05. HINDERING APPREHENSION OR PROSECUTION. (a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:
>
>> (1) harbors or conceals the other;
>>
>> (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (emphasis added)
>>
>> (3) warns the other of impending discovery or apprehension.

### *11.1.5.5 Impersonating a Judicial Officer*

On or about the 13th day of April 2021 City of Sunset Valley Chief of Police Lynn Carter, dismissed the charge filed by Plaintiff Bell against Nordstrom Rack security officer Fucci. In as much as a criminal complaint had been made before a police officer and the complaint was commanded by law to be presented to "some magistrate," (see Texas Code of Criminal Procedure 2.13(b)(3) supra, Chief of Police Lynn Carter made a determination of no probable cause in impersonated of a magistrate in violation of Texas Penal Code 37.11 which reads as follows:

> Sec. 37.11. IMPERSONATING PUBLIC SERVANT. (a) A person commits an offense if the person:
>
>> (1) impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts; or

**PLAINTIFFS ORIGINAL PETITION**                                    116 of 159

(2) knowingly purports to exercise, without legal authority, any function
of a public servant or of a public office, including that of a judge and
court.

(b) An offense under this section is a felony of the third degree.

While Chief of Police Carter was a public servant, a determination of probable cause and subsequent dismissal of a criminal allegation may only be performed by some magistrate under Texas law.

### 11.1.5.6 Simulating a Legal Process

Plaintiff was arrested by City of Sunset Valley police and give a citation for Failure to Identify and Class C Misdemeanor Assault by Contact. Plaintiff Bell was allowed to sign the citation as a promise to appear. Plaintiff Bell, through counsel, appeared at the Sunset Valley Municipal Court on the 7th day of May 2021 in accordance with her promise. At the hearing, the magistrate did not hold an examining trial as required by the statute, but rather, held an arraignment then sent Plaintiff to confer with the prosecuting attorney who attempted to convince Plaintiff Bell to plea guilty and pay a fine. Plaintiff Bell refused to plea guilty to a crime she did not commit, so, the prosecutor summoned Plaintiff to court __ time. Each time there was not court hearing but rather, Plaintiff Bell was forced to meet with the prosecuting attorney who repeatedly attempted to coerce Plaintiff Bell into a guilty plea.

### 11.1.6 Subject Matter Jurisdiction Challenge

Plaintiff Bell, on the 10th day of October 2022, filed two motions to dismiss with the trial court:

### 11.1.6.1 Denial of Due Process

Plaintiff Bell's pleadings included a Challenge to the Subject Matter Jurisdiction of the Court as the court never accrued jurisdiction as there was no order issued under Texas Code of Criminal Procedure 16.17 and, therefore, the court was ordered to discharge the accused as follows:

> Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.

### 11.1.6.2 Speedy Trial Demand

Included in the above filing was a motion to dismiss for denial of speedy trial.

**PLAINTIFFS ORIGINAL PETITION**                                    117 of 159

### 11.1.7 Discharged for Lack of Evidence

Finally, on the 14th day of November 2022, the prosecution dismissed the case for lack of evidence.

### 11.1.8 Shyster Shenanigan

Plaintiff Bell was repeatedly summoned to court to meet with the prosecutor so that the prosecutor could attempt to coerce Plaintiff Bell to plea guilty to a crime for which there was no evidence of a crime and for which a subject matter jurisdiction challenge had been made but not heard.

#### 11.1.8.1 Denial of Redress

The court had a duty to dismiss the case as a matter of law, but dismissed for lack of evidence instead as a ploy to deny Plaintiff Bell in her right to sue and recover damages for wrongful prosecution.

#### 11.1.8.2 Simulating Legal Process

Under Texas law, once subject matter jurisdiction was challenged the presumption of jurisdiction for the trial court was lost and the court was without jurisdiction. When the court summoned Plaintiff Bell to a hearing that was not to hear the subject matter jurisdiction challenge, the court simulated a legal process in violation of Texas Penal Code 32.48 which reads as follows:

> Sec. 32.48. SIMULATING LEGAL PROCESS. (a) A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment, or other court process with the intent to:
>
> > (1) induce payment of a claim from another person; or
> >
> > (2) cause another to:
> >
> > > (A) submit to the putative authority of the document; or
> > >
> > > (B) take any action or refrain from taking any action in response to the document, in compliance with the document, or on the basis of the document.
>
> (b) Proof that the document was mailed to any person with the intent that it be forwarded to the intended recipient is a sufficient showing that the document was delivered.
>
> (c) It is not a defense to prosecution under this section that the simulating document:
>
> > (1) states that it is not legal process; or

(2) purports to have been issued or authorized by a person or entity who did not have lawful authority to issue or authorize the document.

(d) If it is shown on the trial of an offense under this section that the simulating document was filed with, presented to, or delivered to a clerk of a court or an employee of a clerk of a court created or established under the constitution or laws of this state, there is a rebuttable presumption that the document was delivered with the intent described by Subsection (a).

(e) Except as provided by Subsection (f), an offense under this section is a Class A misdemeanor.

(f) If it is shown on the trial of an offense under this section that the defendant has previously been convicted of a violation of this section, the offense is a state jail felony.

### 11.1.9 Refusal To Yield

After the Subject Matter Jurisdiction Petition was filed the court to one last effort to force a deal. This last hearing was outside the jurisdiction of the court as once a Subject Matter Jurisdiction challenge is made, the court looses jurisdiction as follows:

# 12 CHALLENGE TO SUBJECT MATTER JURISDICTION

A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. State v. Benavides, 772 S.W.2d 271, 273 (Tex. App. - Corpus Christi 1989, writ denied). The plaintiff bears the burden to allege facts affirmatively showing the trial court has jurisdiction to hear the cause. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Vincent v. W. Tex. State Univ., 895 S.W.2d 469, 472 n.3 (Tex. App. - Amarillo 1995, no writ).

In then instant case, Intervener does not challenge the general subject matter jurisdiction of the court over the subject matter of the case at bar, but rather, Intervenor challenges the legal capacity of Plaintiff to invoke the subject matter jurisdiction of this court. Absent specific authority timely filed in the public record, any act by defendant is necessarily void. Intervenor alleges that the foreclosure sale was not prosecuted in accordance with the Legislative intent of Texas Property Code 13.001 supra and is, therefore void as a matter of law.

## 12.1 CHALLENGE TIMELY RAISED

This instant challenge to the subject matter jurisdiction of this court is timely raise.

Subject-matter jurisdiction cannot be waived, and it may be raised at any point in the proceeding. *Alfonso v. Skadden, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam)*; *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P., 234 S.W.3d 726, 735 (Tex. App.-Dallas 2007, pet. denied)*.

## 12.2 CHALLENGE NEGATES JURISDICTION

Plaintiff Bell challenged the subject matter jurisdiction of this court.  Therefore, this court now is without jurisdiction.

> *"Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action." Melo v. US, 505 F2d 1026.*

A trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. Tex. Dep't. of Parks & Wildlife v. Miranda, 133 S.W.3d at 226.  Whether a court has subject-matter jurisdiction is a question of law.  Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). Want of subject-matter jurisdiction arrests a cause of action at any stage in the proceeding. Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 739 (Tex. App. - Austin 1994, writ denied).

# 13 TORTS AND CAUSES OF ACTION

Plaintiff includes all the above as if incorporated directly herein.

Historically, assault was divided into two causes of action, assault, which involves "apprehension," or perception, of offensive contact and Battery, which involves the offensive contact itself.  In the Texas Penal Code, assault and battery are combined under the offense of "assault."  The elements for assault are the same in civil and criminal cases. Loaisiga v. Cerda, 379 S.W.3d 248.

## 13.1 PLAINTILFF KELTON

Plaintiff Kelton was subjected to denial of the due course of the laws by Travis County public officials.

### 13.1.1 1st Degree Felony Aggravated Assault

On or about the 12th day of October 2021, Plaintiff Kelton was assaulted by Sheriff Deputy [Eller] at the Travis County District Court house entrance. Sheriff Deputy Eller denied Plaintiff Kelton entrance into the courthouse unless Plaintiff Kelton donned a medical device in the form of a medical mask. When asked if the pistol the deputy was prominently displaying on his hip was loaded, the deputy assured Plaintiff Kelton that it was. When asked if he was prepared to use the weapon, if necessary, in order to prevent Plaintiff Kelton from entering the courthouse without a mask, the deputy assured Plaintiff Kelton that he would.

### 13.1.2 Interfering With 911 Call

When Plaintiff Kelton took out his cell phone to call 911, the officer placed his hand on his weapon and told Plaintiff Kelton that he could not use a cell phone in the courthouse. At that point, Deputy Eller came around the metal detector with his hand on his pistol and ordered Plaintiff from the building. When Plaintiff Kelton asked the deputy if he was going to interfere with a 911 call another deputy came and physically restrained Deputy Eller.

### 13.1.3 Special Conditions

Plaintiff Kelton is a combat veteran who believes in an is dedicated to the American form of government, to the point Plaintiff Kelton offered up his life to the protection of same. Plaintiff Kelton paid for these rights and he paid heavy. To have my life casually threatened by an arrogant, self-important, minor official was much more than a threat.

> It is well settled that a tortfeasor takes a plaintiff as he finds him. Driess v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 *753 (1889); Thompson v. Quarles, 297 S.W.2d 321, 330 (Tex.App.-Galveston 1956. writ ref'd n.r.e.). as quoted from: Coates v. Whittington, 758 S.W.2d 749 (1988).

I suspect the young man doesn't know the smell of a man's insides when they are violently exposed to the air, or the smell of gangrene as it eats a man alive from wounds inflicted by weapons the like of which he had his hand on, but Plaintiff knows the smell very well and never wants to experience it again.

### 13.1.4 Proximate Cause

Governor Abbott, by his illegal executive orders, is the proximate cause of the harm inflicted on Plaintiff Kelton by Deputy Eller. In the instant case, Deputy Eller, attempted to enforce an edict

**PLAINTIFFS ORIGINAL PETITION**                                       121 of 159

of the Governor of the State of Texas, an edict the Governor had no power to issue and which had the effect of denying Plaintiff Kelton access to a government building.

### 13.1.5 Assisting

While assisting and participating with Governor Abbotts executive order, Deputy Eller, aided Governor Abbott in achieving the intended outcome of his improper edict. Deputy Eller knew, or should have known that his action was wrongful

> It is said, however, that this construction of the Act will not save it from the infirmity of vagueness since neither a law enforcement official nor a trial judge can know with sufficient definiteness the range of rights that are constitutional. But that criticism is wide of the mark. For the specific intent required by the Act is an intent to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them. Take the case of a local officer who persists in enforcing a type of ordinance which the Court has held invalid as violative of the guarantees of free speech or freedom of worship. Or a local official continues to select juries in a manner which flies in the teeth of decisions of the Court. If those acts are done willfully, how can the officer possibly claim that he had no fair warning that his acts were prohibited by the statute? He violates the statute not merely because he has a bad purpose but because he acts in defiance of announced rules of law. He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did. Of course, willful conduct cannot make definite that which is undefined. But willful violators of constitutional requirements, which have been defined, certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment. When they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite. When they are convicted for so acting, they are not punished for violating an unknowable something. Screws v. United States, 325 U.S. 91, 104-5 (1945)

### 13.1.6 Aggravated Assault 22.02(b)(2)(A)

Unknown Deputy, threatened Plaintiff Kelton with the use of deadly force while exhibiting a deadly weapon, in order to enforce the mask executive order. By said act, Unknown Deputy committed an act of first degree felony aggravated assault as defined by Texas Penal Code 22.02(b)(2)(A) which reads as follows:

> Sec. 22.02. AGGRAVATED ASSAULT.
>
> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
>
>> (2) regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

**PLAINTIFFS ORIGINAL PETITION**                                     122 of 159

(A) by a public servant acting under color of the servant's office or
employment;

The laws of the State of Texas at Texas Penal Code 22.02(b)(2)(A) must be construed as a special
statute as it specifies a special circumstance anticipated by the Texas Legislature.

## 13.1.7 Special Legislation

Unlike other states, when our Legislators put pistols on the hips of our public officials, they
placed a horrible responsibility on them.  It was not the Legislative intent that officers take
deadly weapons lightly.   Texas Penal Code 22.02(b)(2)(A) made Unknown Deputy's act a first
degree felony act of aggravated assault to ensure no officer would do what Deputy Eller did and
risk the harm his actions could ultimately cause.

### 13.1.7.1 Bigger Deal for Some Than Others

Combat changes people.   Try as one may, being in theater where one knows every step, every
movement can be your last changes things.  We can't explain it.  If we try to tell people the
things that happen, for the most part they think it is too outrageous so we tend to keep these
things to ourselves.  Suppress it as we may, it has a way of ozzing out through the cracks and the
ordinary for some become revivification for others.

Many may not consider being threatened with a pistol such a big deal but Plaintiff Kelton is a
combat veteran and had spent time on the sharp end of those things.  Kelton has unloaded
helicopters with blood pouring out the bottom like someone kicked a bucket over, pushed
intestines back inside a living person while he is crying for his mother.  Unlike what you see on
the screen, people are very hard to kill and they mostly die horribly and slowly.

### 13.1.7.2 Not What I Risked My Life For

I came home to the place I was prepared to give my life to preserve have to endure some
arrogant little Sheriff's deputy threaten me with a weapon over something so petty as a mask.
This is not Nazi Germany or Communist Russia.  This is not what I offered up and my twin
brother gave his life for.

### 13.1.7.3 No Apologies

That I am somewhat broken I had been forced to accept.  At eighteen, I didn't realize that some
choices are more life altering than others and some debts never get fully paid.  I offer no

**PLAINTIFFS ORIGINAL PETITION**                                    123 of 159

apologies for who and what I am. I am older and realize things were never the way I was lead to believe but I must take things as I find them as must Defendants.

> It is well settled that a tortfeasor takes a plaintiff as he finds him. Driess v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 *753 (1889); Thompson v. Quarles, 297 S.W.2d 321, 330 (Tex.App.-Galveston 1956, writ ref'd n.r.e.). as quoted from: Coates v. Whittington, 758 S.W.2d 749 (1988).

### 13.1.7.4 Duty to Enforce and Abide by Law, not Policy

The Travis County Sheriff's department, in training and directing their deputies stands as respondeat superior. I am certain, if you ask the officer, he will genuinely decry any culpability as he was only following orders.

> the "factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." Id. Engineering Corp. v. Clark, 668 S.W.2d at 308 at 309, as quoted from Nabors Drilling v. Escoto, 288 S.W.3d 401, 405 (Tex. 2009)

### 13.1.7.5 Aggravated Assault as a Matter of Policy

That citizens of Texas would be curtailed in their freedoms as a direct result of Defendant Abbott's improper executive order would, for any reasonable person of ordinary prudence, be the intended and expected outcome of Defendant Abbott's action. It is apparent from the actions of Bailiffs at the Travis County courthouse that they were trained to use force to enforce the Governor's edicts.

Governor Abbott personally dictated public policy to police officers by issuing an executive order directing police to deny citizens access to public buildings if they did not choose or could not wear a medical device.

### 13.1.8 Legal Duty

Defendant Abbott had a legal duty as stipulated by the oath of office he was required to swear to as a condition of employment by the people of the State of Texas which reads as follows:

> IN THE NAME AND BY THE AUTHORITY OF THE STATE OF **TEXAS**, I, , do solemnly swear (or affirm), that I will faithfully execute the duties of the **office** of of the State of **Texas**, and will to the best of my ability **preserve, protect, and defend the Constitution and laws of the United States and of this State**, so help me God.

**PLAINTIFFS ORIGINAL PETITION**                                                    124 of 159

Plaintiff Kelton was subjected to being threatened by a man with a loaded pistol in order to prevent Plaintiff Kelton from doing something as simple as entering a courthouse without a mask. It cannot be construed that Unknown Deputy was unaware of the impropriety of the mask order by the Governor as the Texas Constitution clearly limited the power of the governor to write law as stipulated by the United States Supreme Court in the Screws v. United States, 325 U.S. 91 (1945) which reads in pertinent part as follows:

> Take the case of a local officer who persists in enforcing a type of ordinance which the Court has held invalid as violative of the guarantees of free speech or freedom of worship. Or a local official continues to select juries in manner which flies in the teeth of decisions of the Court. If those acts are done willfully, how can the officer possibly claim that he had no fair warning that his acts were prohibited by the statute? He violates the statute not merely because he has a bad purpose but because he acts in defiance of announced rules of law. He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did. Screws v. United States, 325 U.S. 91 (1945)

### 13.1.9  Legal Reform Activist

Plaintiff Kelton is a long time legal activist. This suit has been filed in an attempt to right some wrongs Plaintiff Kelton has been investigating these last 40+ years. Over this period, Plaintiff Kelton has been threatened by public officials with guns more times than he cares to remember, physically thrown out of court houses on numerous occasions, suffered three broken ribs, two broken collar bones, a chipped elbow and only one tooth knocked out, and arrested numerous times.

An examination of Plaintiff Kelton's criminal history will show numerous arrests and criminal charges filed. What the court will not find is an order under Texas Code of Criminal Procedure 16.17 supra in any of the cases against Plaintiff Kelton.

### 13.2 PLAINTIFF BELL

Plaintiff Bell intended to go to Nordstrom Rack to do some shopping and was subjected to the following:

### 13.2.1 Nordstrom Assault

Plaintiff Bell, prior to going to Nordstrom Rack to shop, contacted Nordstrom Rack corporate offices and asked about shopping without a mask. Plaintiff Bell explained that she had a physical condition which rendered her sensitive to lowered blood oxygen levels and the wearing

**PLAINTIFFS ORIGINAL PETITION**

of masks have been shown to dramatically lower the oxygen content of the blood. Plaintiff Bell was assured by Nordstrom's Corporate office as well as two store employees that Nordstrom Rack policy allowed for medical exemptions and that her exemption would be honored. Plaintiff Bell then went to the Nordstrom Rack in Sunset Valley, Texas. After shopping for 2 hours Plaintiff went to try on the apparel she intended to purchase.

Plaintiff shopped for two hours without incident then, at the dressing room, Plaintiff Bell was confronted by a woman who ordered Plaintiff Bell to put on a mask. Plaintiff Bell had no idea who the woman was as she was not in any type of uniform. She appeared to be just another shopper. Plaintiff Bell told the woman that she had a medical exemption and had addressed the issue with the Nordstrom Rack Corporate office and was assured, since she had a medical exemption that Nordstrom Rack honored medical exemptions and she could shop without a mask.

After shopping and selecting some clothes to try on, she was confronted about a mask at the changing by an unidentified woman (later learned to be Defendant Fucci), Plaintiff noticed had been hanging around in her vicinity while she shopped. At the changing room the unidentified woman confronted Plaintiff and demanded that she don a mask. Plaintiff explained that she had a medical condition and had contacted Nordstrom Corporate and spoke to employees at the store upon her arrival and was assured by them she could shop without a mask. The unidentified employee did not like this. She was clearly agitated and wanted to enforce her personal agenda that Plaintiff Bell, in fact, wear a mask regardless of her medical condition or what she had previously stated. The unidentified employee started acting aggressive. Bell then asked why the woman behind her was able to shop without a mask but she could not. Fucci turned to look at the other unmasked woman behind her. While she was looking the other way, Bell made her way toward the first dressing room on the left which had an open door. At this moment, the unidentified employee turned back toward Bell, saw her entering an empty dressing stall, and proceeded to hip-check Bell so hard that she fell back into the door frame of the dressing room. Bell then stumbled back into the dressing room and at this time, the unidentified employee escalated her assault and battery and grabbed Bell's right arm and tried to pull her out of the dressing room. Fucci grabbed Bell's arm so tightly that Fucci left finger mark bruises on Bell's arm. Extremely frightened, Bell instinctively dropped the clothes that she was holding in her left arm and jerked herself free by trying to close the door to the dressing stall to remove Fucci's

**PLAINTIFFS ORIGINAL PETITION**                                          126 of 159

tight grip on her right arm. Bell then closed and locked the door and called 911. At this point, Bell's post-traumatic stress disorder had been triggered and her mental state had been severely impacted. Bell was now medically disabled and put in an incredibly dire situation.

### 13.2.1.1 PSTD Diagnosis

Plaintiff Bell had previously been diagnosed with Post Traumatic Stress Disorder (PTSD) and was alarmed by the demanding and aggressive behavior of Defendant Fucci.    When Plaintiff Bell started to enter a changing room, the woman grabbed Plaintiff Bell's arm so tightly that it left her finger marks in Plaintiff Bell's arm in bruises.   Said grabbing amounted to offensive touching with bodily injury in violation of Texas Penal Code 22.01 which reads in pertinent part as follows:

> Sec. 22.01. ASSAULT. (a)  A person commits an offense if the person:
>> (3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Consequent to Plaintiff Bell's PTSD condition Plaintiff Bell was terrified.  Plaintiff Bell jerked free, went into the changing room and closed and locked the door, then called 911.

### 13.2.1.2 Retaliation

Apparently, Nordstrom Rack employees heard Plaintiff Bell talking to the 911 officer then called 911 themselves.  When the police arrived, they took Plaintiff Bell into custody, refused to consider her complaints, escorted her from the building, attacked Plaintiff Bell by throwing her to the ground, handcuffed Plaintiff Bell and placed her in a hot automobile with the windows rolled up and the engine off, in 97 degree heat, almost killing Plaintiff Bell.

### 13.2.1.3 Saved by Bystander

Plaintiff called for help but no one could hear her so the banged her head on the window to get someone's attention.  While the police were going through Plaintiff Bell's purse looking for her car keys so they could search her car, a bystander observed Plaintiff Bell's predicament and ordered the police to get Plaintiff Bell out of the car.  When the police finally removed Plaintiff Bell from the hot car, she was getting faint from heat prostration so the police call to have paramedics dispatched.

**PLAINTIFFS ORIGINAL PETITION**                                         127 of 159

### 13.2.1.4 False Alarm

When Nordstrom Rack employees heard Plaintiff Bell talking to the 911 operator, the assailant immediately called 911 herself. In Nordstrom Rack employee, Fucci's statement to the 911 operator she admitted that she did not believe Plaintiff Bell had committed a crime. It is the assertion and allegation of Plaintiff Bell that Nordstrom Rack employee Fucci made a false 911 call for the purpose of covering up her criminal behavior in violation of Texas Penal Code 42.06 which reads as follows:

> Sec. 42.06. FALSE ALARM OR REPORT. (a) A person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily:
>
>> (1) cause action by an official or volunteer agency organized to deal with emergencies;
>>
>> (2) place a person in fear of imminent serious bodily injury; or
>>
>> (3) prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance.
>
> (b) An offense under this section is a Class A misdemeanor unless the false report is of an emergency involving a public or private institution of higher education or involving a public primary or secondary school, public communications, public transportation, public water, gas, or power supply or other public service, in which event the offense is a state jail felony.

### 13.2.1.5 Conspiracy to False Accusation

Nordstrom Rack security officer had told the 911 dispatcher that she did not believe Plaintiff Bell had committed any crime and only wanted her removed from the property. When the police realized their act of "hotboxing" Plaintiff Bell nearly killed her and Plaintiff Bell indicated she wanted to press assault charges against Nordstrom Rack's security officer, Officer Eller went back to Nordstrom Rack and conspired with Nordstrom Rack security officer to retaliate by filing criminal charges against Plaintiff Bell.

#### 13.2.1.5.1  Alternative Liability

Plaintiff Bell would not have had to endure eighteen years of official misconduct by the police and courts were it not for the adverse personal action of Defendant Fucci conspiring with the police toward the filing of false charges against Plaintiff Bell.

**PLAINTIFFS ORIGINAL PETITION**                                    128 of 159

The arrest and prosecution of Plaintiff Bell was the proximate result of the concert of action between Defendant Fucci and Officer Eller, Officer Gil, Chief of Police Carter, Prosecutor, Jeff Ulmann, the Knight Law Firm], and Judge Kenton Johnson

> A crucial element to alternative liability is that *all* possible wrongdoers must be brought before the court. *https://casetext.com/case/abel-v-eli-lilly-co#p174 cert. denied,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984); *Starling v. Seaboard Coast Line R.R.,* 533 F. Supp. 183, 188 (S.D.Ga. 1982).  (quoting from *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 69 (Tex. 1989))

### 13.2.1.6 False 911 Call as Proximate Cause

Plaintiff alleges and is prepared to prove in court, the injury Plaintiff Bell suffered at the hands of the police only occurred as a proximate result of Nordstrom Rack employees making a false 911 call, then falsely alleging wrong doing on the part of Plaintiff Bell, to cover up the assault by Security officer Fucci and the police, on Plaintiff Bell.

### 13.2.1.7 Reasonable Expectation of Excessive Force

With the current condition of policing in Texas, any reasonable person of ordinary prudence, would expect that, by calling the police and involving them, there was a high likelihood that further injury would come to Plaintiff Bell, and further injury did accrue as a proximate result of the improper 911 call by Nordstrom Rack employees.

### 13.2.1.8 Scope of Responsibility

Nordstrom Rack is responsible for the actions of it's employee, Defendant Fucci, as, at the time of the alleged tort, Defendant Fucci was employed by Nordstrom Rack as a security officer.  In as much as Nordstrom Rack employed Defendant Fucci as a security officer, by such employment Nordstrom Rack authorized the use of force either expressly or indirectly, by placing Defendant Fucci in a position that involved the use of physical force.  (see <u>Green v. Jackson, 674 S.W.2d 395, 396 at 708 (Tex. App. 1984)</u>

> In considering the question of exceptions to this general rule there appear to be two divergent lines of authority in Texas. The first line of cases employs the "rule of force." That rule provides before an employer could be held liable for the assault and battery of its servant, the employer must have authorized the act, either expressly or impliedly, by placing the individual in a position which involved the use of physical force itself. Under that rule, a plaintiff has to allege and prove that the servant's position was one that permitted the use of force and, if not, there can be no recovery.

**PLAINTIFFS ORIGINAL PETITION**                                    129 of 159

See Texas P. Ry. Co. v. Hagenloh, supra; Dart v. Yellow Cab. Inc., 401 S.W.2d 874 (Tex.Civ.App.-Amarillo 1966, writ ref'd n.r.e.).  Green v. Jackson, 674 S.W.2d 395, 396 at 708 (Tex. App. 1984)

### 13.2.1.9 Intentional Conduct

Plaintiff Bell was turning away from Defendant Fucci when Defendant Fucci grabbed Plaintiff Bell.  The grip was surprising and immediately painful causing Plaintiff Bell to instinctively jerk away from the contact and go into the changing booth and lock the door for protection.  Defendant Fucci grabbed Plaintiff Bell, apparently, for the purpose of restraining her but the grip was so strong and painful, it triggered an instinctual reaction from Plaintiff.

A culpable mental state is almost always proven by circumstantial evidence. *See Hernandez v. State,*819 S.W.2d 806, 810 (Tex.Crim.App.1991); *Gant v. State,*278 S.W.3d 836, 839 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Pitonyak v. State,*253 S.W.3d 834, 844 (Tex.App.-Austin 2008, pet. ref'd). Proof of knowledge or intent may be inferred from both direct evidence and from evidence of the circumstances surrounding the act. *See Brown v. State,*122 S.W.3d 794, 800 (Tex.Crim.App.2003), *cert. denied,*541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004); *Wolfe v. State,*917 S.W.2d 270, 275 (Tex.Crim.App.1996).  *In re I.L.,* 389 S.W.3d 445, 456 (Tex. App. 2012)

Plaintiff Bell alleges Defendant Fucci acted knowingly and intentionally when she grabbed Plaintiff Bell, causing injury to Plaintiff Bell.

### 13.2.1.10    Failure to Properly Train

Nordstrom Rack had a duty to properly train and supervise Defendant Fucci in the performance of her duty.  Nordstrom Rack employee Defendant Fucci violated Nordstrom Rack guidelines by refusing medical accommodation to Plaintiff Bell and subsequently called 911 to falsely allege trespass.

At the time of the incident, Defendant Fucci was an employee of Nordstrom Rack,

There are but few situations in which one may be constituted a wrongdoer by ratification where such wrong consists of an assault and battery. In the case of Dillingham v. Anthony, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, Chief Justice Stayton quotes with approval the following language from Cooley on Torts:

**PLAINTIFFS ORIGINAL PETITION**                                                    130 of 159

'In order to constitute one a wrongdoer by ratification the original act must have been done in his interest, or been intended to further some purpose of his own.' Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984)

### 13.2.1.11    *Issue of Force*

The testimony of Nordstrom Rack employees establish the facts in this matter as to the assault against Plaintiff Bell.

> In summary judgment cases the judgment granted should be affirmed only if the record establishes a right thereto as a matter of law and the movant establishes that he is entitled to the judgment by reason of the matters set out in the motion. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex. 1979); Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828 (Tex. 1970); Harrington v. Young Men's Christian Ass'n of Houston, 452 S.W.2d 423, 424 (Tex. 1970). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant and all doubts are resolved against him. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, 235 (1956); Durham v. Cannan Communications,Inc.,645 S.W.2d 845, 852 (Tex.App.-Amarillo 1982, writ dism'd). It is in the light of this teaching that we examine the record in this case.  Green v. Jackson, 674 S.W.2d 395, 396-97 (Tex. App. 1984)

### 13.2.1.12    *Intentional Assault*

Defendant Fucci, acted with intent to commit assault when Defendant Fucci  grabbed Plaintiff Bell and in a grip tight enough to leave bruises on Plaintiff Bell's arm.  While it may not have been Defendant Fucci's conscious intent to cause bruising to Plaintiff Bell's arm, the bruising was the natural result of being grabbed by Defendant. See *Traveler's Protective Assn. v. Weil*, 40 Tex. Civ. App. 629, 631 (Tex. Civ. App. 1905)

### 13.2.1.13    *Injury Direct Result of Offensive Touching*

It is the testimony of Defendant Fucci that she intentionally grabbed the arm of Plaintiff Bell in an attempt to restrain Bell.  The resultant injury to Plaintiff Bell was the direct result of Defendant Fucci's action of grabbing.  See Pleasant Glad

> At common law, actual damages are either "direct" or "consequential.".  In the case of intentional torts such as assault and battery and false imprisonment, the wrongdoer is responsible for the direct and immediate damages resulting from the tort regardless of whether those damages were contemplated, foreseen, or expected. See Sitton v. Am. Title Co. of Dallas, 396 S.W.2d 899, 903-04 (Tex.Civ.App.-Dallas 1965, writ ref'd n.r.e.), cert. denied, 385 U.S. 975, 87 S.Ct. 501, 17 L.Ed.2d 437 (1966); Thompson v. Hodges, 237 S.W.2d 757, 759 (Tex.Civ.App.-San Antonio 1951, writ ref'd n.r.e.).  Direct damages, also known as "general" damages, flow naturally and necessarily from the wrong and compensate the plaintiff for the loss

**PLAINTIFFS ORIGINAL PETITION**                                    131 of 159

that the defendant is conclusively presumed to have foreseen as a result of his wrongful act.

### 13.2.1.13.1  Respondeat Superior

Nordstrom Rack is vicariously liable for the assault by Security Officer Fucci under the doctrine of respondeat superior.  The applicable rule in the situation here is well stated in Gulf, C. S.F. Ry. Co. v. Cobb (Texas Civ. App.) 45 S.W.2d 323, 325, error dismissed, as follows:

> "In practically all jurisdictions, the law is now settled that a master is liable for the willful and malicious acts of his servant when done within the scope of his employment. Such acts are imputable to the master, under the doctrine of respondeat superior, and in accordance with the general principles that the master is liable for any act of the servant done within the scope of his employment, as well as for any act of the servant which, if isolated would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as being one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act."

There is no evidence to indicate that Defendant Fucci acted from some personal motive as Plaintiff Bell and Defendant Fucci were strangers to one another and had no previous interactions that would motivate any action by Defendant Fucci.   The only issue was the wearing of a mask.

### 13.2.1.13.2  Wrongdoer by Ratification

It should reasonably be expected that a "security officer' would, at some point, be required to use force in the performance of their function. Nordstrom Rack tacitly or directly authorized the use of force by it's security officers which included Defendant Kelsey Fucci, while failing to adequately train said employee in the proper use of force.  Plaintiff alleges, when Defendant _____ used force against Plaintiff Bell, she was acting within the scope of her employment, therefore, Nordstrom Rack is a wrongdoer by ratification as construed by the courts in Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984) as follows:

> There are but few situations in which one may be constituted a wrongdoer by ratification where such wrong consists of an assault and battery. In the case of Dillingham v. Anthony, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, Chief Justice Stayton quotes with approval the following language from Cooley on Torts:

**PLAINTIFFS ORIGINAL PETITION**                                    132 of 159

'In order to constitute one a wrongdoer by ratification the original act must have been done in his interest, or been intended to further some purpose of his own.' Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984)

### 13.2.1.14    *Exemplary Damages*

Plaintiff Bell had exercised due care by contacting Nordstrom Rack prior to shopping there. Plaintiff Bell has a right to the expectation that she would be treated with the dignity and respect any citizen has a right to expect from another. In the instant case, Defendant Fucci acted with unconcealed malice prior to grabbing Plaintiff Bell which was the reason Plaintiff Bell was trying get into the changing room so that she could call for help.

> Punitive damages have an altogether different purpose. Cavnar, 696 S.W.2d at 555; Smith v. Sherwood, 2 Tex. 460, 463-64 (1847). "The idea of punishment, or of discouraging other offenses usually does not enter into tort law. . . . In one rather anomalous respect, [punitive damages], the ideas underlying the criminal law have invaded the field of torts." PROSSER KEETON § 2. More than 100 years ago, in one of its first opinions addressing punitive damages, this court recognized the close connection between punitive damages and the criminal law:

> Such indifference is morally criminal, and if it leads to actual injury may well be regarded as criminal in law. A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the border-line of a quasi-criminal act of commission or malfeasance.

> "Southern Cotton Press Mfg. Co. v. Bradley, 52 Tex. 587, 600-601 (1880) (citations omitted)." Quoted from Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 16 (Tex. 1994).

There is nothing to indicate that Defendant Fucci acted from some personal motive by the above assault. The facts indicate that Defendant Fucci was acting in what she believed to be the interest of her employer.

> Texas recognizes the rule that a master is liable for exemplary damages if the agent who caused actual damage by his tortious conduct was engaged in a managerial capacity and was acting in the scope of his employment. Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627 (Tex. 1967). The landmark cases with regard to corporate liability for exemplary damages arising from acts of an employee were written by Chief Justice Cureton in Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (1934); Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409 (1934); Southwestern Gas Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413 (1934). Frito-Lay Inc. v. Ramos, 770 S.W.2d 887, 889 (Tex. App. 1989).

**PLAINTIFFS ORIGINAL PETITION**                                        133 of 159

### 13.2.1.15    *Nordstrom Rack Severe Emotional Distress*

Plaintiff, while talking to police was attacked and thrown to the ground by two Sunset Valley police officers without cause or provocation. Plaintiff Bell was talking to police officers and made no aggressive moves of any kind when one of the officers walked behind Plaintiff then both tackled Plaintiff and threw her to the ground and handcuffed her. As the officer's body cameras will show, Plaintiff did nothing that would warrant a physical attack and, therefore, the act of assault by said police officers was an act taken without authority in violation of Texas Penal Code 22.02(b)(2)(A) which reads in pertinent part as follows:

> Sec. 22.02.  AGGRAVATED ASSAULT.
>
> (b)  An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
>
>> (2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:
>>
>>> (A)  by a public servant acting under color of the servant's office or employment;

### 13.2.1.16    *Eggshell Rule*

Plaintiff Bell had previously been diagnosed with Post Traumatic Stress Disorder (PTSD) and was, due to Lime's disease and other disorders, in a weakened physical and emotional condition. When Plaintiff Bell was physically attacked by Defendant Fucci, the attack caused severe emotional distress.

> It is well settled that a tortfeasor takes a plaintiff as he finds him. Driess v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 *753 (1889); Thompson v. Quarles. 297 S.W.2d 321, 330 (Tex.App.-Galveston 1956, writ ref'd n.r.e.). as quoted from: Coates v. Whittington, 758 S.W.2d 749 (1988).

## 13.2.2 *Public Official Abuse*

City of Sunset Valley police officers Eller and Gil, Chief of Police Lynn Carter, City Prosecutor Jeff Ulmann, and Judge Kenton Johnson, acted outside the scope of their authority when they subjected Plaintiff Bell to a set of practices and procedures which amount to an ongoing criminal conspiracy to deny Plaintiff in the due course of the laws of the state of Texas.

### 13.2.2.1 *Ultra Vires*

Plaintiff's fully expect all named public official defendants will claim various forms of official immunity, however, the various doctrines of immunity do not apply to criminal acts as there is

**PLAINTIFFS ORIGINAL PETITION**                                    134 of 159

no grant of immunity in Texas intended to indemnify anyone from criminal acts committed under the color of official capacity or otherwise. Therefore, it must be construed that, any act by any public official which is in violation of any criminal law is beyond the scope of their employment.

> Heinrich, 284 S.W.3d at 369–372 (widow challenged retroactive reduction in benefits by pension fund); see also Chambers-Liberty Ctys. Nav. Dist. v. State, 575 S.W.3d 339, 348–355 (Tex. 2019) (ultra-vires claims against commissioners of coastal-navigation district by State alleging district exceeded its legal authority by entering into lease of certain submerged land when right to enter that lease belonged to different state department); McRaven, 508 S.W.3d at 234, 235–37 (ultra-vires claim against chancellor alleging chancellor exceeded his granted authority in applying applicable laws and withholding records); Houston Belt & Terminal Ry. Co. v. City of Houston, 487 S.W.3d 154, 158–61 (Tex. 2016) (railroads alleged City's director of public works acted without legal authority in making determination of status of railroad's property with regard to drainage fees); Southwestern Bell Tel., L.P. v. Emmett, 459 S.W.3d 578, 588 (Tex. 2015) (utility company alleged that county commissioners acted ultra vires by refusing to accept responsibility for repayment of relocation costs in violation of statutory duty); Sawyer Trust, 354 S.W.3d at 393–94 (plaintiff sought declaratory judgment against State that streambed on its property was not navigable; however, while court dismissed claim as barred by sovereign immunity, it held plaintiff should have right to amend and assert ultra-vires claim against state actors claiming streambed to be navigable).

### 13.2.2.2 Depraved Heart Assault

The above referenced officers intentionally subjected Plaintiff Bell to a life threatening situation for the purpose of punishing Plaintiff Bell and rendering her move compliant with police who were in the process of violating her rights to the due course of the laws of the State of Texas.

### 13.2.2.3 Hot Boxing

Plaintiff Bell, after being arrested and double cuffed, was placed in the back seat of a patrol car with the windows up and the engine turned off. At trial, plaintiff will show that this has become a common practice of police as a way to punish citizens and render them compliant.

Leaving a person in a car with blatant disregard for the person's safety is addressed specifically by Texas Administrative Code 707.467 which reads in pertinent part as follows:

> (a) Neglect is defined in Texas Family Code (TFC) §261.001(4) as an act or failure to act by a person responsible for a child's care, custody, or welfare evidencing the person's blatant disregard for the consequences of the act or failure to act that results in harm to the child or that creates an immediate danger to the child's physical health

**PLAINTIFFS ORIGINAL PETITION**                                                   135 of 159

or safety. Neglectful supervision is a subset of the statutory definition of neglect and involves the following acts or omissions by a person:

> (1) Placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or an immediate danger of harm to the child;

### 13.2.2.4 Helpless as a Child

Plaintiff Bell, in the instant case was rendered incapable of acting in her best interest as she was placed in the back seat of a patrol car that was designed to contain a person is such a way that they could not escape the vehicle. In the instant case, Plaintiff Bell had no more control of her situation than a child would being placed in the back of a car with the windows up and the engine off. No reasonable person of ordinary prudence would leave another human being in such a situation, much less, deliberately place the person at such risk.

Plaintiff Bell, in order to save her life had to bang her head on the window until a bystander approached the police and ordered them to assist Plaintiff Bell. The officers opened the door and found Plaintiff Bell in a state of heat prostration and called paramedics. When paramedics arrived, Plaintiff Bell had recovered somewhat but her temperature was still and 101 degrees and her blood pressure was, to quote the paramedics, "off the charts."

### 13.2.2.5 Life Saved by Citizen

Plaintiff Bell feels she owes her life to a brave bystander who, after watching the police deliberately put Plaintiff Bell in jeopardy of her life, had the courage to order them to get Plaintiff Bell out of that car. In the current policing environment, that citizen placed herself in grave jeopardy to help a stranger and has Plaintiff Bell's undying gratitude.

The experience left Plaintiff Bell terrified as she knew she would have died in the patrol car had it not been for a bystander who was willing to intercede in a police investigation and risk arrest herself.

### 13.2.2.6 Intentional Infliction of Bodily Injury

Plaintiff alleges, the above reference act was not simply an act of negligence, but rather, it was a deliberate act of first degree felony aggravated assault on the part of the officers with the intent of visiting unadjudicated punishment on Plaintiff Bell, in violation of Texas Penal Code 22.02(b)(2)(A) supra.

**PLAINTIFFS ORIGINAL PETITION**

### 13.2.3 False Imprisonment

Plaintiff Bell was falsely imprisoned by Sunset Valley police officers when there was no
evidence to indicate Plaintiff Bell had committed a crime. The police reports indicate the
Nordstrom security officer told a 911 officer she did no have reason to believe Plaintiff Bell had
committed any crime. The officers continued to hold Plaintiff Bell, physically attacked her and
hot boxed her, almost killing her when there was no evidence before them that Plaintiff Bell had
committed a crime in violation of Texas Penal Code 22.04 which reads as follows:

> Sec. 20.04. AGGRAVATED KIDNAPPING. (a) A person commits an offense if
> he intentionally or knowingly abducts another person with the intent to:
>
> > (1) hold him for ransom or reward;
> >
> > (2) use him as a shield or hostage;
> >
> > (3) facilitate the commission of a felony or the flight after the attempt or
> > commission of a felony;
> >
> > (4) inflict bodily injury on him or violate or abuse him sexually;
> >
> > (5) terrorize him or a third person; or
> >
> > (6) interfere with the performance of any governmental or political
> > function.
>
> (b) A person commits an offense if the person intentionally or knowingly abducts
> another person and uses or exhibits a deadly weapon during the commission of the
> offense.
>
> (c) Except as provided by Subsection (d), an offense under this section is a felony of
> the first degree.
>
> (d) At the punishment stage of a trial, the defendant may raise the issue as to
> whether he voluntarily released the victim in a safe place. If the defendant proves
> the issue in the affirmative by a preponderance of the evidence, the offense is a
> felony of the second degree.

After the police officers nearly killed Plaintiff Bell, Officer

### 13.2.3.1 Proximate Cause of Harm

It is the assertion and allegation of Plaintiff Bell that Nordstrom Rack security officer Fucci,
knew, or should have known that Plaintiff Bell would be badly handled by the police. Defendant
Fucci knew, or should have known, when she called the police that there was a high likelihood
that the police would act badly, in as much as the Austin Police department had, for the first time
in history, been defunded as a consequence of their bad behavior which included the abuse and
even murder of citizens in custody.

**PLAINTIFFS ORIGINAL PETITION**                                                137 of 159

### *13.2.3.2 False 911 Call*

But for the false 911 call made by Defendant Fucci, the police would not have came and the resulting harm at the hands of the police would not have happened to Plaintiff Bell.

The 2010 edition of Texas Pattern Jury Charge 2.4 reads:

> "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom."

When the City of Sunset Valley police officer Eller solicited a criminal complaint from her after she had told the police that she did not have reason to believe that Plaintiff Bell had committed a crime, prudence and fair dealing on the part of Defendant _____ would have prevented the two years of torture Plaintiff Bell suffered at the hands of the City of Sunset Valley police and courts would not have occurred.

## *13.2.4 Criminal Conspiracy*

Defendant Police Officers Eller and Gil, falsely imprisoned Plaintiff Bell while they conspired with the Nordstrom Rack Security officer to shield said officer from prosecution and fabricate evidence to cover the bad behavior of said officers.

### *13.2.4.1 Witness Tampering*

It wasn't until after the police almost killed Plaintiff Bell that they asked her if she wanted to prefer charges against the Nordstrom security officer. When Plaintiff Bell indicated that she did, the officers went back into Nordstrom and pressured the security officer to prefer charges against Plaintiff Bell as, Plaintiff Bell intended to file a criminal complaint against her. This act was committed in retaliation for Plaintiff Bell preferring charges against the Nordstrom employee and to cover up the fact that, at the time of the attack and hot boxing of Plaintiff Bell, there was no evidence of crime that would justify the detention of Bell. Plaintiff Bell alleges this act of pressuring the witness to file a criminal complaint against Plaintiff Bell was an act of Witness Tampering in violation of Texas Penal Code 36.05 which reads in pertinent part as follows:

> Sec. 36.05. TAMPERING WITH WITNESS. (a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, or he coerces a witness or a prospective witness in an official proceeding:

**PLAINTIFFS ORIGINAL PETITION**                                    138 of 159

(1) to testify falsely;

(2) to withhold any testimony, information, document, or thing;

(3) to elude legal process summoning him to testify or supply evidence;

(4) to absent himself from an official proceeding to which he has been legally summoned; or

(5) to abstain from, discontinue, or delay the prosecution of another.

(b) A witness or prospective witness in an official proceeding commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will do any of the things specified in Subsection (a).

Plaintiffs allege, the above act of Witness Tampering in violation of Texas Penal Code 36.05. The body cameras of police officers clearly witness the conspiratorial acts of Police Officers and Nordstrom Rack Security officer. The court will note that said security officer was reluctant to file a complaint an only capitulated subject to pressure by the officer.

### 13.2.4.2 Conspire to False Allegation

The above referenced officers, after realizing that they had almost killed Plaintiff, acted to secure evidence to give the appearance of justification for holding Plaintiff Bell after they had escorted Plaintiff Bell from Nordstrom Rack property.   The officer returned to the security officer who had indicated that she did not have reason to believe Plaintiff Bell had committed any crime. She only wanted Plaintiff Bell removed from the building for apparently violating a store policy. The police, after almost killing Plaintiff Bell, then went into Nordstrom Rack and conspired with the Nordstrom Security officer and pressured her to change her testimony and file a complaint against Plaintiff Bell.

By the above, Sunset Police Officer Eller  and Nordstrom Rack Security Officer Eller conspired, one with the other to false testimony as evidenced by the criminal complaint filed by said Nordstrom Rack Security Officer, in violation Texas Penal Code 15.02 which reads as follows:

Sec. 15.02. CRIMINAL CONSPIRACY. (a) A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense;  and

(2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from acts of the parties.

**PLAINTIFFS ORIGINAL PETITION**

(c)  It is no defense to prosecution for criminal conspiracy that:

> (1)  one or more of the coconspirators is not criminally responsible for the object offense;

> (2)  one or more of the coconspirators has been acquitted, so long as two or more coconspirators have not been acquitted;

> (3)  one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution;

> (4)  the actor belongs to a class of persons that by definition of the object offense is legally incapable of committing the object offense in an individual capacity;  or

> (5)  the object offense was actually committed.

(d)  An offense under this section is one category lower than the most serious felony that is the object of the conspiracy, and if the most serious felony that is the object of the conspiracy is a state jail felony, the offense is a Class A misdemeanor.

### 13.2.4.3 Obstruction of Justice

Sunset Police Officer Eller conspired with Nordstrom Rack Security Officer Fucci toward the conscious intent of denying Plaintiff in the due course of the laws by subjection Plaintiff to a malicious prosecution for the purpose of covering up Officer Eller's bad behavior in an act intended to Obstruct of Justice in violation of Texas Penal Code 36.06 which reads in pertinent part as follows:

> Sec. 36.06.  OBSTRUCTION OR RETALIATION.  (a)  A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:

> (1)  in retaliation for or on account of the service or status of another as a:

>> (A)  public servant, witness, prospective witness, or informant; or

>> (B)  person who has reported or who the actor knows intends to report the occurrence of a crime; or

> (2)  to prevent or delay the service of another as a:

>> (A)  public servant, witness, prospective witness, or informant; or

>> (B)  person who has reported or who the actor knows intends to report the occurrence of a crime.

The officers acted with mens rea for the purpose of fabricating evidence covering up their own bad behavior.

### 13.2.5 Denial of Due Process

After a citation was issued to Plaintiff Bell, Plaintiff Bell signed the citation agreeing to appear before a magistrate. When Plaintiff Bell made her first court appearance, it was not before a magistrate, it was before a trial judge. The problem was, there was no order under Texas Code of Criminal Procedure 16.17 supra in the court record which had been forwarded to the court by some magistrate after an examining trial in the matter.

Defendants can be expected to argue that Plaintiff Bell did not have a right to an examining trial as the accusation was a misdemeanor and Plaintiffs agree. An examining trial was not required because it was a right Plaintiff Bell had, an examining trial should have been held because the Texas Constitution and Texas Code of Criminal Procedure commanded the courts to hold one as a condition of jurisdiction and a matter of the due course of the laws and, due course of the laws is a right Plaintiff Bell has.

Plaintiff, by being denied an examining trial was made to suffer two years of court harassment with repeated appearances for no legitimate legal purpose in violation of Texas Penal Code 32.48 supra.

For over two years the above referenced charge was held over Plaintiff Bell's head with repeated forced trips to the court for no purpose other than to give the prosecutor opportunity to harass Plaintiff Bell in an effort to force her to waive her rights and plea guilty to a crime she did not commit.

Plaintiff Bell has secured learned counsel who worked in concert and collusion with the prosecution to force Plaintiff Bell to take a plea bargain wherein she would be required to plea guilty to a crime she did not commit and for which there was no evidence.

### 13.2.6 Negligence Per Se

In the instant case, Texas Administrative Code 707.467 supra should be construed to control and, therefore,

> "Certain kinds of negligence may be classified as negligence per se. For an act to be deemed negligence per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that it is very clear that no careful person would have committed it. In the absence of a law characterizing the actor's conduct as negligent, the issue whether he ought to have foreseen and prevented the calamity or was negligent is one to be determined by the jury by

**PLAINTIFFS ORIGINAL PETITION**                                        141 of 159

reference to the facts." See the authorities cited therein. Sheppard v. Judkins, 476 S.W.2d 102, 107 (Tex. Civ. App. 1971)

### 13.2.7 Denial of Due Process

Plaintiff Bell was subjected to an ongoing criminal conspiracy wherein the prosecuting attorney and Municipal judge acted in concert with an ongoing criminal enterprise wherein the Municipal refused to perform his duty as a magistrate on Plaintiff Bell's first appearance at court.  Under the due course of the laws of the State of Texas, at the first appearance, Plaintiff had a due course of law right an examining trial in accordance with Texas Code of Criminal Procedure Chapter 16 supra.

#### 13.2.7.1.1    Unauthorized Arraignment

At the first hearing, the Municipal Judge simulated a legal process by holding an arraignment hearing in violation of the statutory restriction contained in Texas Code of Criminal Procedure 26.01 which reads as follows:

> Art. 26.01. ARRAIGNMENT.  In all felony cases, after indictment, and all
> misdemeanor cases punishable by imprisonment, there shall be an arraignment.

The court will take judicial notice that the Texas Legislature took special care to exclude to exclude class C misdemeanor crimes from those instances where an arraignment hearing may be held.

#### 13.2.7.1.2    Simulating Legal Process

In as much as a public official my only do what s/he is specifically authorized to do, the act of the municipal judge of holing an arraignment hearing was an act of Simulating a Legal Process in violation of Texas Penal Code 32.48 supra. By summoning Plaintiff Bell to an examining trial, the municipal judge denied Plaintiff Bell in the due course of the laws of the  State of Texas.

#### 13.2.7.1.3    Ongoing Criminal Enterprise

Defendant Kenton Johnson, while acting in the capacity of municipal judge for the City of Sunset Valley, had an administrative duty to properly train the clerks and other members of the municipal court.  We are not alleging that Defendant Kenton Johnson failed to train the court employees, Plaintiffs allege that Defendant Kenton Johnson, intentionally trained the court employees using practices and procedures which were in furtherance of an ongoing criminal

conspiracy designed and intended to force anyone charged with a crime in the City of Sunset Valley, Texas, to take a plea deal.

An examination of the records of the City of Sunset Valley Municipal Court will show that, if anyone was found "not guilty," the number will be so low as to be statistically insignificant.

At trial, Plaintiffs will show that all the funds collected by the City of Sunset Valley municipal court were collected in violation of the due course of the laws of the State of Texas and in furtherance of the above alleged ongoing criminal enterprise in violation of Texas Penal Code 71.02 supra.

**13.2.7.1.4   Failure to Properly Train**

Instead, Kenton Johnson, while acting in is administrative capacity, conspired with members of the Sunset Valley Municipal Court toward the furtherance of an ongoing criminal enterprise designed and intended to deny the citizens of the State of Texas in the due course of the laws.

At the first appearance of Plaintiff Bell before the municipal court, Kenton Johnson was required to act in the capacity of a magistrate in and for the State of Texas and hold an examination into the sufficiency of the charges against Plaintiff Bell. Instead of performing his duty, Kenton Johnson held an arraignment in the matter of a misdemeanor in violation of Texas Code of Criminal Procedure 26.01 supra.

**13.2.7.1.5   Challenge to Subject Matter Jurisdiction**

Defendant _____ then repeatedly had Plaintiff Bell summoned to the court to meet with the prosecuting attorney. Plaintiff Bell has filed a motion with the court challenging the subject matter jurisdiction of the court. Plaintiff Bell was repeatedly summoned to the court after the subject matter jurisdiction or the court had been challenged, however, the court refused to address the challenge to it's subject matter jurisdiction.

> To impute liability to an employer for its employee's tort, the employee's act usually must fall within the course and scope of the employee's general authority and must have been performed in furtherance of the employer's business. See Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 493 (Tex.App.–Fort Worth 2002, no pet.). Intentional torts are not ordinarily within the scope of a worker's employment. Cowboys Concert Hall–Arlington, Inc. v. Jones, No. 02–12–00518–CV, 2014 WL 1713472, at *9 (Tex.App.–Fort Worth May 1, 2014, pet. denied) (per curiam, mem. op.). And as ExxonMobil points out, an employer ordinarily is not vicariously liable for the employee's intentional torts that are motivated by personal animosity. See

**PLAINTIFFS ORIGINAL PETITION**                                    143 of 159

Wrenn, 73 S.W.3d at 494 (citing Tex. & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 197, 247 S.W.2d 236, 239 (1952) ). ExxonMobil Corp. v. Pagayon, NO. 14–13–00456–CV

### 13.2.8 Continuing abuse

Plaintiff Bell, in the instant case, was forced into a continuing relationship with the Sun Valley police and courts where she was subjected to two years of continuing abuse in an effort to force Plaintiff Bell to enter a guilty plea in order to stop the abuse.

> " When abusive conduct such as being assaulted, intimidated, and threatened becomes a regular pattern of behavior, it should not be accepted in a civilized society." Toles v. Toles, 45 S.W.3d 252, 262 (Tex. App. 2001)

Plaintiff Bell is relatively certain that Defendants will argue that the treatment of Plaintiff Bell was not extreme and outrageous as she was subjected to the same treatment as everyone else accused of crime in the city of Sunset Valley. Plaintiff Bell will agree that her treatment by the Sunset Valley Municipal Court was not unusual, simply because the treatment is metered out equally to everyone, that does not make it less extreme or outrageous. That everyone is treated equally bad simply goes to willful intend to equally harm everyone.

### 13.2.9 Intentional Infliction of Emotional Distress

As a proximate result of Nordstrom Rack employees calling the police, Plaintiff Bell was subjected to physical assault and a life threatening episode of "hot boxing," where Plaintiff Bell was handcuffed and placed in the back of a police patrol car that was specially designed so that no one could escape. The doors and windows were closed and the engine was off in 97 degree heat so that the temperature rose dramatically almost killing Plaintiff Bell.

Then, in order to cover their bad behavior, the police conspired with a Nordstrom Bell employees to false charges which subjected Plaintiff Bell to two years of harassment by members of the City of Sunset municipal court.

Plaintiff Bell, while locked in the steaming patrol car, knew full well because of he Lime's disease condition, her body could not stand high temperatures and that he life was at risk. Plaintiff Bell did not imagine the need to tell the officers before being locked in the patrol car as, no reasonable human being would lock a person in a car on such a hot day without the windows

down or the air conditioner on. No reasonable person would even do that to a dog, much less a person.

When the officers walked away without at least cracking a window or turning on the air conditioning, she knew immediately that her life was in peril. She creamed for help but no one could here her outside the patrol car. The officers were well away from the patrol car executing a search of Plaintiff's automobile. When a female bystander saw Plaintiff Bell banging her head on the window she went over and ordered the officers to get Plaintiff Bell out of the patrol car. Plaintiff Bell has no doubt, but for the bystander, Plaintiff Bell would have died in that patrol car. By the time the police got Plaintiff Bell out of the patrol car she was becoming faint from heat prostration.

> In 1993, we recognized the independent tort of intentional infliction of emotional distress, adopting the elements of the RESTATEMENT (SECOND) OF TORTS § 46 (1965). See Twyman v. Twyman,855 S.W.2d 619, 621-22 (Tex. 1993). To recover under this tort, a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was "extreme and outrageous," 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. See id. at 621. Only the first two elements are at issue in this case. Standard Fruit and Veg. Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998)

Plaintiff Bell alleges, following the depraved heart assault against Plaintiff Bell, the actions of the Sunset Valley Municipal Court exacerbated the injury were, acting in concert and collusion with the above act of assault, the City of Sunset Valley prosecuted and ongoing criminal conspiracy, designed and intended to force everyone accused of crime to take a plea bargain so that the court could avoid the cost and inconvenience of trail and preclude any claim against the Sunset Valley police officers who, by their intentional behavior, nearly killed Plaintiff Bell.

Plaintiff's allege and are prepared to prove at trial that the above practice is not an exception but that the same abusive treatment is given to citizens across the State of Texas in furtherance of training implemented by Defendants toward an ongoing criminal enterprise.

### 13.2.9.1 Intentional Act

The worst part of this incident was finding out it is common practice among police, so much so they have a colloquial name for it. The police actually call it "Hot Boxing." It is amazing and terrifying that, otherwise ordinary human beings, can become twisted that they would act with

such extreme and callous disregard for human, that they would intentionally and routinely, subject another human being to such an abominable practice.

### 13.2.9.2  PTSD

Plaintiff has already been diagnosed with PTSD and this experience greatly increased the severity of her condition.  Prior to this incident, Plaintiff Bell trusted the police and was confident, if she needed help, they were the place to go.  Now, it seems the police are more dangerous than the criminals.  There utter disregard for human life is beyond reason.

### 13.2.9.3  Common Practice

After the incident, in studying the practice, it seems this was no mistake on the part of the police, it seems that "hot boxing" is a standard procedure for subduing or punishing someone who has been arrested.

### 13.2.9.4  Emotional Distress

What about our children?  If they will do this to an adult, what would they do to children who are not able to help themselves?  Plaintiff is now terrified that one of her teenage children may be stopped or arrested by the police as the police are far more dangerous than criminals.  Plaintiff Bell is struck with terror when imagines the mind set that must be trained into the officers that they would feel at liberty to conduct themselves with such utter disregard for the lives of the very people they have been employed to protect.

### 13.2.9.5  Malicious Prosecution

Plaintiff Bell was maliciously prosecuted by Sunset Valley police and courts in order to shield the arresting officers from their abominable behavior.

Defendant Fucci conspired with Officer Eller to a false prosecution.  It must be construed, based on the evidence of the 911 call made by Defendant Fucci, where she told the 911 operator that she did not believe Plaintiff Bell violated any law but the Defendant Fucci only wanted her out of the store.

It should be noted, there were others in the store, in the changing area, with no masks on, at the time of the incident.  It was clear Plaintiff Bell had been singled out for special treatment. Defendant Fucci, upon making an emergency call then telling the 911 operator that she had not

**PLAINTIFFS ORIGINAL PETITION**                                    146 of 159

cause to believe Plaintiff Bell had committed a crime, was collaterally estopped from arbitrarily changing that testimony simply because a police officer need a smoke screen to cover for his bad behavior.

Officer Eller told Defendant Fucci that Plaintiff Bell was pressing charges against Defendant Fucci and, because of that, Defendant Fucci acted with conscious malice toward Plaintiff Bell and was, thereby, proximately responsible for the unlawful prosecution of Plaintiff Bell.

### 13.2.9.6 Prosecution Dismissed

On the 14th day of November 2022, the criminal action against Plaintiff Bell was dismissed for lack of evidence.

### 13.2.9.7 Plaintiff Harmed

Before the above criminal prosecution was dismissed, Plaintiff Bell had to contend with two years if improper behavior on the part of the prosecutor, the municipal court judge, and Plaintiff Bell's own attorney. Plaintiff was subjected to harm as Plaintiff was forced to drop out of the race for school board where she was pursuing criminal behavior on the part of the Lakeway school district. Plaintiff had to pay a lawyer $6000 and the lawyer did nothing to protect Plaintiff Bell from two years of malicious prosecution.

### 13.2.9.8 Complicity After the Fact

Nordstrum Rack Security Officer Fucci, acted in concert and collusion with the police by conspiring to false testimony when she agreed to file a criminal complaint even after telling the 911 operator she had no reason to believe Plaintiff Bell had committed any crime. The false swearing of Defendant Fucci was the proximate cause which implemented the malignant calculas of the City of Sunset Valley to the detriment and subsequent harm to Plaintiff. Liable and Slander

While Plaintiff Bell was being held by the City of Sunset Valley Police, they searched Plaintiff Bell's purse and found a card which indicated she was running for a seat on the Lake Travis Independent school board. The female officer, Defendant Gill, while holding the card, smirked at Plaintiff and said:

> "I see you are running for school board. You are not going to want this to get out."

**PLAINTIFFS ORIGINAL PETITION**                                                    147 of 159

After the arrest of Plaintiff Bell, the City of Sunset Valley Chief of Police Carter_ issued a press release and told the press about the arrest of Plaintiff Bell. When questioned by a citizen about the impropriety of the action Chief of Police Carter said that he was not going to have people coming into his city without a face mask.

As a result of the arrest and the unwarranted publicity, Plaintiff Bell experienced significant emotional distress.

### 13.2.9.9 Deliberate Defamation

At the time of the incident, Plaintiff Bell was a highly respected member of the community and was running for the school board in the City of Lakeway, Texas. The chief of Police of the City of Sunset Valley, Texas made a special point to defame Plaintiff Bell by holding a press conference telling everyone of the arrest. What he did not tell the press and everyone else was that the arrest was specifically contrived and executed to punish Plaintiff Bell as there never was cause for the arrest in the first place. Neither did he tell the press that his police officers nearly killed Plaintiff Bell using a form of pre-trial punishment.

## 13.2.10    Negligence

### 13.2.10.1    Greg Abbott

Defendant Abbott acted with negligent disregard for the likelihood that harm would accrue to private citizens when he issued executive orders while acting under the color of a non-existent authority as Governor. While Defendant Abbot was the Governor of Texas and certainly had the right to issue executive orders, as addressed above, he had power to issue orders which applied to members of the executive branch of government, however, he had no power to issue orders which effected the rights and privileges of private citizens. He certainly could have convened a special session of the Legislature and requested that they pass his executive orders into substantive law, but he chose not to do so. Therefore, it must be construed that his act was an act of sedition in an attempt to undermine the Constitution and laws of the State of Texas. See Texas Government Code 577 supra.

### 13.2.10.2    Nordstrom Rack Negligence

Nordstrom Rack was negligent in that they imposed a mask requirement but failed properly implement the policy such that they implemented the policy consistently and said failure lead to

**PLAINTIFFS ORIGINAL PETITION**                                    148 of 159

harm suffered by Plaintiff Bell.  Plaintiff was also subjected to life threatening event subject to
Nordstrom Rack calling the police and making allegations against Plaintiff Bell.

### 13.2.10.2.1  Employees Attacking Patrons

Plaintiff Bell was physically attacked by Nordstrom Rack security officer Defendant Fucci then
arrested by Sunset Valley Police officers Defendants Gill and Eller.

Plaintiff Bell was escorted outside the building then attacked again, this time by police where she
was jumped by bot police officers and taken to the ground where she was handcuffed and put in
the back of a hot patrol car with the windows up and the engine off.  But for the initiative of a
bystander ordering the police to get Plaintiff Bell out of the car, Plaintiff Bell may well have died
in the vehicle.

### 13.2.10.2.2  Life Threatening Abuse

Subsequent to the life threatening event, in an effort to cover up their bad behavior, Sunset
Valley Police conspired with Nordstrom Rack employee Fucci, to prefer false charges against
Plaintiff Bell for which she suffered two years of prosecutorial harassment before the charges
were dropped for lack of evidence.  Plaintiff suffered the harm addressed in Sections [X] above
as a proximate result of Nordstrom Rack's failure to properly train and supervise its employees
in the implementation of its mask policy.

### 13.2.10.2.3  Legal Duty

When Nordstrom Rack implemented a policy which required its patrons to don a medical device,
Nordstrom Rack had a legal duty to ensure that the implementation of the policy did not place
the health or safety of its employees or the public at jeopardy.

> Cf. Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109, 110 (1942) ("Using familiar
> illustrations, it may be said generally, on the one hand, that if a party negligently
> creates a dangerous situation it then becomes his duty to do something about it to
> prevent injury to others if it reasonably appears or should appear to him that others
> in the exercise of their lawful rights may be injured thereby.").  As quoted from:
> Nabors Drilling v. Escoto, 288 S.W.3d 401, 405 n.1 (Tex. 2009)Medical Condition.

Plaintiff Bell suffers from Lime's Disease and consequently is especially sensitive to oxygen
reduction.  Medical masks significantly reduce the oxygen content of the blood and, therefore,
Plaintiff Bell was physically unable to wear a mask without significant medical issues.  Acting
with due caution, prior to shopping at Nordstrom Rack in Sunset Valley, Texas, Plaintiff Bell

**PLAINTIFFS ORIGINAL PETITION**                                          149 of 159

called Nordstrom Rack Corporate and talked to John Doe. She explained her condition and was assured that Nordstrom Rack policy made provision for medical accommodation.

At Nordstrom Rack, Plaintiff Bell was physically attacked by a Nordstrom Rack security officer for failing to wear a medical mask.

> Otis, 668 S.W.2d at 311 (emphasis added). The Court held that Otis owed a duty to exercise reasonable care to control its employee. Id. "[In Otis,] [w]e imposed the duty upon the employer, not because of the mere knowledge of the intoxication, but because of the employer's negligent exercise of control over the employee. The defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others." Phillips, 801 S.W.2d at 526 (internal citations and emphasis omitted). In the present case, however, Nabors did not have the requisite knowledge of employee impairment, nor did it exercise the requisite control. Otis, 668 S.W.2d at 311 as quoted from: Nabors Drilling v. Escoto, 288 S.W.3d 401, 406 (Tex. 2009).

In as much as the Nordstrom Rack security officer was not in uniform nor showing any signs of a special position such that a reasonable person would recognize her as having some special authority, Nordstrom Rack had a duty to train said security officers in practices and procedures that would not put the public at risk.

Nordstrom Rack, by failing to properly train and supervise Defendant Fucci, is the proximate cause of the harm to Plaintiff Bell.

> Tex. Civ. Prac. & Rem. Code § 33.011(6) (" 'Responsible third party' means any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these."). Pagayon v. Exxon Mobil Corp., 536 S.W.3d 499, 502 n.4 (Tex. 2017)

13.2.10.2.4 Nordstrom Rack Liability

Prior to going to Nordstrom Rack to shop, Plaintiff Bell exercised due diligence by calling Nordstrom Rack corporate offices and spoke to John Doe, who assured Plaintiff Bell that Nordstrom Rack would honor her medical exemption. Without addressing the legality of requiring a medical device and the legality of the executive orders of the governor, Plaintiff took care to ensure their would be no mask issue. Nordstrom Rack's failure to properly train and direct its employees is the proximate cause of the harm to Plaintiff Bell at the hands of Nordstrom Rack employees and the police who were called and given a false claim against Plaintiff Bell.

**PLAINTIFFS ORIGINAL PETITION**                                    150 of 159

To impute liability to an employer for its employee's tort, the employee's act usually must fall within the course and scope of the employee's general authority and must have been performed in furtherance of the employer's business. See Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 493 (Tex.App.–Fort Worth 2002, no pet.). Intentional torts are not ordinarily within the scope of a worker's employment. Cowboys Concert Hall–Arlington, Inc. v. Jones, No. 02–12–00518–CV, 2014 WL 1713472, at *9 (Tex.App.–Fort Worth May 1, 2014, pet. denied) (per curiam, mem. op.). And as ExxonMobil points out, an employer ordinarily is not vicariously liable for the employee's intentional torts that are motivated by personal animosity. See Wrenn, 73 S.W.3d at 494 (citing Tex. & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 197, 247 S.W.2d 236, 239 (1952) ). ExxonMobil Corp. v. Pagayon, NO. 14–13–00456–CV

### 13.2.10.3    *Police Officer Negligence*

Plaintiff Bell was tackled by two Sunset Valley police officers, knocked to the ground, handcuffed (double cuffed) and placed in the back of a patrol car while the police initiated an illegal search of Plaintiff Bell's personal automobile.  While in the patrol car, Plaintiff Bell's body temperature rose dramatically as the outside temperature was in the upper 90's and the car engine was off and the patrol car was sealed so that heat could not escape.  It is Plaintiff Bell's belief that, had a passer-by not seen Plaintiff Bell banging her head on the window and ordered the police to get Plaintiff out of there, Plaintiff Bell would have died in the patrol car.

#### 13.2.10.3.1  Harm Foreseeable

Once Defendant Police Officers took physical control of Plaintiff Bell, Defendants had a duty to ensure the safety of Plaintiff.

> "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." El Chico Corp., 732 S.W.2d at 315." Nabors Drilling v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009)

#### 13.2.10.3.2  Reasonable Person Standard

Any reasonable person of ordinary prudence would not put a dog in a hot car in the middle of the day in summer, in Austin.  In the instant case, it is the assertion of Plaintiff Bell that the officers knew full well that their action would subject Plaintiff Bell to high temperatures in the back of their patrol car.

> In Browning, an inmate named Graves was killed by other inmates in a jail who were in possession of deadly weapons. 152 S.W.2d at 519. The jury found that the sheriff and his deputies negligently caused Graves's death. Id. On appeal, the sheriff and the deputies argued that the trial court should have directed a verdict in their

**PLAINTIFFS ORIGINAL PETITION**                                        151 of 159

favor — a legal sufficiency challenge — because there was no evidence that the sheriff and his deputies knew or should have known that Graves would be injured if he was placed in the cell with the other inmates. Id. The court held that the duty required of a jailer in this type of case is to "exercise ordinary care to prevent those confined together from having in their possession weapons with which they might inflict serious injuries upon another prisoner." Id. The court held that the evidence was legally sufficient to show a breach of that duty because: (1) the inmates that killed Graves possessed deadly weapons; (2) the officer knew the weapons had been found among those prisoners during prior searches of the compartment; (3) it was not unreasonable to assume that the prisoners would again make and possess the weapons; and (4) the officer had not searched the compartment for a week or ten days prior to Graves's death. Id. The court held that "[i]f a jailer whose duty it was to care for and protect his prisoners from harm, would have, in the exercise of ordinary care, discovered the presence of these weapons and removed them, and thus prevent the tragedy that resulted in Graves' death, he, with his principal, the sheriff, would be responsible in damages for having failed." Id. We hold that equivalent evidence existed in this case, and that such evidence was legally and factually sufficient to support the judgment. Wackenhut Corrections Corp. v. de la Rosa, 305 S.W.3d 594, 625 (Tex. App. 2009)

### 13.2.10.3.3  Hightened Degree of Care

Defendant Police Officers took Plaintiff Bell into physical custody and placed her in a circumstance she would have never put herself in.  In as much as Defendant Police Officers had complete control over Plaintiff Bell and Plaintiff Bell was rendered incapable of caring for herself.  Texas Administrative Code 707.467 supra

Liable and Slander

While Plaintiff Bell was being held by the City of Sunset Valley Police, they searched Plaintiff Bell's purse and found a card which indicated she was running for a seat on the Lakewood school board.  The female officer, _Officer Gill, while holding the card, smirked at Plaintiff and said:

"I see you are running for school board.  You are not going to want this to get out."

## *13.2.11     Liable*

After the arrest of Plaintiff Bell, the City of Sunset Valley Chief of Police Lynn Carter, issued a press release and told the press about the arrest of Plaintiff Bell.  When questioned by a citizen about the impropriety of the action Chief of Police Lynn Carter said that he was not going to have people coming into his city without a face mask.

**PLAINTIFFS ORIGINAL PETITION**                                              152 of 159

It cannot be reasonably construed that Chief of Police Lynn Carter was somehow unaware that the charges against Plaintiff Bell were false as all the evidence to demonstrate the falsity of the claims were before the chief of police. In furtherance of the abuse of Plaintiff Bell, Chief of Police Lynn Carter, took it upon himself to dismiss the criminal charge filed by Plaintiff Bell in violation of Texas Code of Criminal Procedure 2.13 which reads in pertinent part as follows:

> 2.13. DUTIES AND POWERS. (b) The officer shall:
>
> > (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

Instead of addressing the criminal complaint stated by Plaintiff Bell, Chief Carter secreted said complaint from "some magistrate" and the press and failed to address the impropriety of the actions of his officers, Chief Lynn Carter advertised the false claims against Plaintiff Bell which had the effect of defaming her in the community. The preceding is addressed by Texas Practice and Remedies Code Section 73.001 which reads as follows:

> Sec. 73.001. ELEMENTS OF LIBEL. A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

As a result of the arrest and the unwarranted publicity, Plaintiff Bell was subjected to ridicule and humiliation in the community and experienced significant emotional distress.


### 13.2.11.1    *Deliberate Defamation*

At the time of the incident, Plaintiff Bell was a highly respected member of the community and was running for the school board in the City of Lakeway, Texas.

The arresting officers, after almost killing Plaintiff Bell in an improper "hot boxing" incident needed a way to cover for placing Plaintiff Bell in the patrol care in the first place in as much as it was Plaintiff Bell who had called 911 requesting assistance. In an effort to shield the Nordstrom Rack employee from prosecution and shield themselves from the legal consequences of their reckless and negligent behavior, conspired with Nordstrom Rack employee Fucci to false testimony and malicious prosecution.

**PLAINTIFFS ORIGINAL PETITION**                                    153 of 159

The chief of Police of the City of Sunset Valley, Texas made a special point to defame Plaintiff Bell by holding a press conference telling everyone of the arrest of Plaintiff Bell. What he did not tell the press and everyone else was that the arrest was specifically contrived and executed to punish Plaintiff Bell and cover up the improper behavior of the police as, there never was cause for the arrest in the first place. Neither did he tell the press that his police officers nearly killed Plaintiff Bell using a form of pre-trial punishment.

### 13.2.11.1.1  Criminal affidavit as Liable

The false accusation of Nordstrom Rack employee Fucci stated that she had reason to believe and did believe that Plaintiff Bell committed the criminal act of misdemeanor assault even though Fucci had already admitted to the 911 operator that she did not have reason to believe Plaintiff Bell had committed a crime.

> The truth of a statement on which a defamation action is based is a defense to the action. Tex. Civ. Prac. Rem. Code Ann. § 73.005 (Vernon 1997). A showing of substantial truth at a summary judgment hearing will defeat a defamation claim. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990); *Dracos*, 922 S.W.2d at 249. Also, a conditional or qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Lomas Bank USA v. Flatow*, 880 S.W.2d 52, 54 (Tex.App. — San Antonio 1994, writ denied). Whether a conditional or qualified privilege exists is a question of law for the court. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.*, 911 S.W.2d 403, 408 (Tex.App. — Houston [1st Dist.] 1995, no writ). *Rodriguez v. NBC Bank*, 5 S.W.3d 756, 766 n.10 (Tex. App. 1999)

While the statement Chief Carter made to the press was facially accurate, it was substantially incorrect as Chief Carter well knew. It is the assertion and allegation that the press release was issued by Chief Carter as a ruse to shield his officers behind that "thin blue line." Plaintiff's assert and allege that there is no thing blue line between the public and the police. There is a relationship wherein citizens are the masters of their public servants and the servants have a fiduciary duty to abide by all the statutory restrictions affecting the exercise of privilege and authority granted to them.

### 13.2.11.1.2  Half Truth as Slander

Chief Carter, noted in the press drelease that Plaintiff Bell had been arrested. What he did not tell reporters was that Plaintiff Bell was the original victim who called the police for help and

**PLAINTIFFS ORIGINAL PETITION**                                      154 of 159

was subjected to depraved heart assault by the police and almost murdered by them. While the words used had the appearance of truth, the facts lend falsity to the statements by omission.

# 14 JURY DEMAND

Plaintiff demands a jury trial.

# 15 PRAYER

Wherefore premises considered, Plaintiff's request relief as follows:

## 15.1 PLAINTIFF BELL

Plaintiff Bell move the court to award damages as follows:

1.    Nordstrom Rack, in the amount of $5,000,000;

2.    Defendant Fucci in the amount of $1,000,000;

Plaintiff Bell further seeks damages from certain City of Susnet Valley employees as follows:

1.    Municipal Judge, Kenton Johnson, in the amount of $15,000,000;

2.    Prosecuting attorney, Sam Bassett, in the amount of $15,000,000;

3.    Chief of Police, Lynn Carter, in the amount of $15,000,000;

4.    Police Officer Eller, in the amount of $5,000,000;

5.    Police Officer Gill, in the amount of $5,000,000;

6.    Sara Donovan

## 15.2 PLAINTIFF KELTON

Plaintiff Kelton moves the court to grand damages against Governor Abbott, in the amount of $10,000,000 or some other amount sufficient to insure that no Governor take it upon him/herself to circumvent the Legislature by issuing Gubernatorial edicts which restrict the people of the State of Texas.

Plaintiff Kelton further moves the court to grant damages against Unknown Sheriff Deputy, in the amount of $2,000,000;

**PLAINTIFFS ORIGINAL PETITION**

## 15.3 GENERAL PRAYER

1.    Plaintiffs move the court to aware damages against:

2.    Nathan Hetch, in the amount of $10,000,000;

3.    Sharon Keller, in the amount of $10,000,000;

4.    Barbara Hervey, in the amount of $10,000,000;

5.    Bert Richardson, in the amount of $10,000,000;

6.    Kevin Yeary, in the amount of $10,000,000;

7.    David Newell, in the amount of $10,000,000;

8.    Mary Lou Keel, in the amount of $10,000,000;

9.    Scott Walker, in the amount of $10,000,000;

10.    Michelle Slaughter, in the amount of $10,000,000;

11.    Jesse F. McClure III, in the amount of $10,000,000;

12.    Megan LaVoie, in the amount of $10,000,000;

13.    Thea Whalen, in the amount of $10,000,000;

14.    Deadra Stark, in the amount of $10,000,000;

15.    Kelly R,. Damphousse, PH.D., in the amount of $10,000,000;

16.    Mr. Nathan Cradduck, in the amount of $10,000,000;

17.    Gail Bel, $10,000,000.

18.    Nordstrom Rack, in the amount of $15,000,000;

19.    Kelsie Fucci, $1,000,000.

DATED: April 6, 2023

Randall Kelton                    Kara Bell

**PLAINTIFFS ORIGINAL PETITION**                    156 of 159

**15.3 GENERAL PRAYER**

1.      Plaintiffs move the court to aware damages against:

2.      Nathan Hetch, in the amount of $10,000,000;

3.      Sharon Keller, in the amount of $10,000,000;

4.      Barbara Hervey, in the amount of $10,000,000;

5.      Bert Richardson, in the amount of $10,000,000;

6.      Kevin Yeary, in the amount of $10,000,000;

7.      David Newell, in the amount of $10,000,000;

8.      Mary Lou Keel, in the amount of $10,000,000;

9.      Scott Walker, in the amount of $10,000,000;

10.     Michelle Slaughter, in the amount of $10,000,000;

11.     Jesse F. McClure III, in the amount of $10,000,000;

12.     Megan LaVoie, in the amount of $10,000,000;

13.     Thea Whalen, in the amount of $10,000,000;

14.      Deadra Stark, in the amount of $10,000,000;

15.     Kelly R,. Damphousse, PH.D., in the amount of $10,000,000;

16.     Mr. Nathan Cradduck, in the amount of $10,000,000;

17.     Gail Bel, $10,000,000.

18.     Nordstrom Rack, in the amount of $15,000,000;

19.     Kelsie Fucci, $1,000,000.

DATED: April 6, 2023


_____                *Kara Bell*

Randall Kelton                              Kara Bell


**PLAINTIFFS ORIGINAL PETITION**                          156 of 159

# DECLARATION PER § 1746

Pursuant to 28 USC § 1746, I, Randall Kelton, Plaintiff in the above action declare (or certify, verify, or state) under penalty of perjury under the laws of the United states that the facts asserted in this document are true and correct, that I have personal knowledge of the facts or that the facts asserted are ones that I have determined by investigation and have found credible enough in their context to make conclusions and related commercial decisions relevant to this matter based on my training, study, and experience in these matters.

Executed on this the __ day of April, 2023, in Austin, Texas.

_____
*Randall Kelton*

# VERIFICATION

I, Kara Bell, do swear and affirm that all statements made herein are true and accurate, in all respects.

*Kara Bell*
*PO Box 341703*
*Lakeway, TX 78734*

*Kara Bell*

SWORN TO AND SUBSCRIBED BEFORE ME, __ notary's name ___, by _____ your name _____, on the _6_ day of _April_, 2023, which witnesses my hand and seal of office.

*NOTARY PUBLIC IN AND FOR*
*THE STATE OF TEXAS*

CHAD RONALD COLLINS
Notary Public, State of Texas
Comm. Expires 05-20-2023
Notary ID 132019475

**PLAINTIFFS ORIGINAL PETITION**