# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

FILED

2023 JUN 26  AM 11:27

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | | |
|---|---|---|
| **Randall Kelton, Kara Bell** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VERSUS** | § | |
| | § | |
| **Nordstrom Inc. (d.b.a. Nordstrom Rack), Kelsie Fucci, Nathan Hecht, Sharon Keller, Jose Garza, Rob Stuart Drummond, Barbara Hervey, Bert Richardson, Kevin Yeary, David Newell, Mary Lou Keel, Scott Walker, Michelle Slaughter, Jesse F. McClure III, Megan LaVoie, Thea Whalen, Deadra Stark, Kelly Damphouse, Nathan Cradduck, Gail Bell, Travis County Sheriff Deputy Name Unknown, Sally Hernandez, Lenn Carter, Robert Eller, Crystal Gill, Marc Bruner, Kenton Johnson, Barbara Boulware-Wells, Jeff Ulmann, Audrey Guthrie, Sam Bassett, Sara Donovan** | § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION 1:23-cv-00395** |
| *Defendants* | | |

## SECOND AMENDED COMPLAINT
## SUIT UNDER 42 USC 1983 FOR RICO VIOLATIONS

Now comes Randall Kelton ("Kelton") and Kara Bell ("Bell"), Plaintiffs in the above action and sues on behalf of themselves and all others similarly situated.  While most parties are public officials in one capacity or another, all parties acted in concert and collusion, one with the other toward furtherance of an ongoing criminal conspiracy to obstruct justice and deny Plaintiffs in the due course of the laws of the State of Texas.  While some parties acted under the color of an official capacity, Plaintiffs sue all parties in their personal capacity as crimes and criminal conspiracy do not fall within the scope of any official capacity.

# 1   ONGOING CRIMNAL ENTEPRISE

The **Texas Court of Criminal Appeals**, acting in concert and collusion with the **Texas Office of Court Administration**, acting in their administrative capacity as commanded by Texas Code of Criminal Procedure 17.24 and developed training for magistrates and others in Texas that was then implemented by **Texas Office of Court Administration**, Megan LaVoie, the **Texas Justice Court Training Center**, Thea Whalen, the **Texas Municipal Courts Education Center**, Deadra Stark, **Texas State University**, the **Texas Association of Counties**, Mr. Nathan Cradduck, the **Texas Center for the Judiciary**, Gail Bell , and similar entities to be named subsequent to discovery.  Plaintiffs will show how practices and procedures taught to magistrates, police, and others around Texas had the effect of circumventing the Constitutions and laws of the United States and the State of Texas, having the effect of an ongoing criminal enterprise which annually extracts billions of dollars from taxpayers in violation of the clear dictate of law.

## 1.1 DENIAL OF PROCEDURAL DUE PROCESS

Plaintiffs will further show that the practices and procedures taught to otherwise well-meaning public officials, across Texas, had the effect of chilling access to the courts by persons accused of crime.  Due process was and continues to be denied as a matter of established policy and procedure.  Said policy and procedure had the effect of interfering with the ability of those accused of crime to seek remedy and redress from the courts in violation of **18 U.S.C. 1512(a)(2(A)** which reads as follows:

> *(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—*

(A)influence, delay, or prevent the testimony of any person in an official proceeding;

## 1.2 INTERFERENCE WITH INTERSTATE COMMERCE

Plaintiffs will further show that Defendants acted under use of force and threat of force through criminal prosecution, in order to facilitate their criminal enterprise to the expense of all persons in and traveling through the State of Texas and, by so doing, promoted their criminal enterprise in violation of **18 U.S.C. 1951**:

> *(a)Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.*

## 1.3 WITNESS TAMPERING

Plaintiffs will show that persons arrested in Texas and accused of crime were, and continue to be, as a matter of policy, denied access to the due course of the laws by being secreted from the nearest magistrate where the accused would have had opportunity to testify in his/her own behalf in direct violation of the clear directives contained in **Texas Code of Criminal Procedure 14 06**:

> *Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.*

and **15.16**:

> *Art. 15.16.  HOW WARRANT IS EXECUTED. (a) The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant, if the magistrate is in the same county where the person is arrested.  If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.*

## 1.4 RICO

Plaintiffs will further show that Defendants, acting in concert and collusion violated laws relating to their office, or acted in concert and collusion with others in the violation of laws relating to their offices, and in the process denied citizens in the full and free access to or enjoyment of

rights secured by the Constitutions of the United States and the State of Texas in violation of **Texas Penal Code 71.02(a)(1)** which reads as follows:

> *Sec. 71.02.  ENGAGING IN ORGANIZED CRIMINAL ACTIVITY.  (a)  A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:*

(1)  murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, aggravated sexual assault, sexual assault, continuous sexual abuse of young child or disabled individual, solicitation of a minor, forgery, deadly conduct, assault punishable as a Class A misdemeanor, burglary of a motor vehicle, or unauthorized use of a motor vehicle;

Plaintiffs will show that the actions of Defendants also have the effect of violation of **18 U.S.C. Chapter 92, Racketeer Influenced and Corrupt Organizations**.

## 1.5 SHIELDING FROM PROSECUTION

Plaintiffs will further show how Defendants facilitated the above criminal enterprise by systematically shielding one another from prosecution by refusing to perform their duty as prescribed by **Texas Code of Criminal Procedure 15.09** when complaints were made against public officials, which had the effect of shielding the accused from prosecution in violation of **Texas Penal Code 38.05**:

> *Sec. 38.05.  HINDERING APPREHENSION OR PROSECUTION.  (a)  A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:*

(1)  harbors or conceals the other;

(2)  provides or aids in providing the other with any means of avoiding arrest or effecting escape; or

(3)  warns the other of impending discovery or apprehension.

### 1.5.1   Witness Tampering

Plaintiffs will further show that Defendants tampered with witnesses by denying witnesses access to the court and interfering with said witness's duty to report crime under **Texas Penal Code 38.171**.

> *Sec. 38.171.  FAILURE TO REPORT FELONY.  (a)  A person commits an offense if the person:*

(1) observes the commission of a felony under circumstances in which a reasonable person would believe that an offense had been committed in which serious bodily injury or death may have resulted;  and

(2) fails to immediately report the commission of the offense to a peace officer or law enforcement agency under circumstances in which:

> (A) a reasonable person would believe that the commission of the offense had not been reported;  and

> (B) the person could immediately report the commission of the offense without placing himself or herself in danger of suffering serious bodily injury or death.

### 1.5.2   Misprision of Felony

Plaintiffs will show that, in as much as magistrates in Texas are authorized to take criminal complaints, state and federal, their systematic refusal to perform their administrative duties has the effect of **Misprision of Felony**:

> ***18 U.S. Code § 4 - Misprision of felony*** *Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.*

## 1.6 BANKRUPTING TEXAS COUNTIES

Plaintiffs, at trial, will prove and show how the above alleged practice and procedures have led directly to numerous causes of action as addressed herein, and to the current state of mass incarceration which is now costing the State of Texas on the order of $12 Billion every year.

# 2   JURISDICTION AND VENUE

The federal court has jurisdiction based on the amount in controversy which is in excess of $75,000 and federal question.

# 3   VENUE

All the acts in controversy, in the instant case, arise from actions in Travis County, Texas.

# 1   PARTIES

## 1.1 PLAINTIFF/S

Randall Kelton
PO Box 1
113 S. Allen ST.
Boyd, TX 76023
(940) 399-9922
randy@ruleoflawradio.com

Kara Bell
P.O. Box 341703
Lakeway, TX 78734
(310) 606-9093
karabell@feduptexans.com

## 1.2 RESPONDENTS

*Nordstrom, Inc. (d.b.a. Nordstrom Rack)*
*1617 Sixth Avenue*
*Seattle, WA 98101*

*Kelsie Fucci, Nordstrom Loss Prevention Officer*
*Brain Injury Alliance*
*1325 South Colorado Blvd., Ste B-300*
*Denver, CO 80222*

*Nathan Hecht,*
*201 West 14th Street, Room 104*
*Austin, TX 78701*

*Sharon Keller*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Jose Garza*
*Ronald Earle Building*
*416 West 11th Street*
*Austin, TX 78701*

*Rob Stuart Drummond*
*Ronald Earle Building*
*416 West 11th Street*
*Austin, TX 78701*

*Barbara Hervey,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Bert Richardson,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Kevin Yeary,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*David Newell,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Mary Lou Keel,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Scott Walker,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Michelle Slaughter,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Jesse F. McClure III,*
*201 West 14th Street, Room 106*
*Austin, TX 78701*

*Texas Office of Court Administration, Megan LaVoie,*
*205 W. 14th St.,*
*Suite 600*
*Austin, Texas 78701-1614*

*Texas Justice Court Training Center, Thea Whalen\*
*1701 Directors Blvd Suite 530*
*Austin Texas 78744*

*Texas Municipal Courts Education Center, Deadra Stark*
*2210 Hancock Drive*
*Austin, TX 78756*

*Texas State University, Kelly Damphouse*
*601 University Drive*
*J.C. Kellam, Room 1020*
*San Marcos, Texas 78666*

*Texas Association of Counties, Mr. Nathan Cradduck*
*1210 San Antonio Street*
*Austin, Texas 78701*

*Texas Center for the Judiciary, Gail Bell*
*1210 San Antonio, Suite 800*
*Austin, Texas 78701*

*Travis County Sheriff Sally Hernandez,*
*5555 Airport Blvd*
*Austin, TX 78751*

*Unknown Travis County Courthouse Security Officer,*
*(to be found on discovery)*
*5555 Airport Blvd*
*Austin, TX 78751*

*Sunset Valley Chief of Police Lenn Carter*
*3205 Jones Rd*
*Sunset Valley, TX 78745*

*Sunset Valley Police Officer Robert Eller*
*3205 Jones Rd*
*Sunset Valley, TX 78745*

*Sunset Valley Police Officer Crystal Gill*
*3205 Jones Rd*
*Sunset Valley, TX 78745*

*Sunset Valley Mayor, Marc Bruner*
*3205 Jones Rd*
*Sunset Valley, TX 78745*

*Sunset Valley Judge Kenton Johnson*
*3205 Jones Rd*
*Sunset Valley, TX 78745*

*Sunset Valley Prosecutor, Barbara Boulware-Wells*
*The Knight Law Firm*
*223 West Anderson Lane, Ste. A-105*
*Austin, TX 78752*

*Sunset Valley Prosecutor, Jeff Ulmann*
*The Knight Law Firm*
*223 West Anderson Lane, Ste. A-105*
*Austin, TX 78752*

*Sunset Valley Prosecutor, Audrey Guthrie*
*The Knight Law Firm*
*223 West Anderson Lane, Ste. A-105*
*Austin, TX 78752*

*Sam Bassett, Plaintiff Bell Defense Counsel*
*Minton, Bassett, Flores & Carsey, P.C.*
*1100 Guadalupe Street*
*Austin, TX 78701*

*Sara Donovan, Plaintiff Bell Defense Counsel*
*Minton, Bassett, Flores & Carsey, P.C.*
*1100 Guadalupe Street*
*Austin, TX 78701*

# 2   PLAINTFFS WILL SHOW

Plaintiffs will show that Plaintiffs were not singled out for special persecution but worse, Plaintiffs were treated just like everyone else accused of crime in Texas.  Plaintiffs will show that Plaintiffs were subjected to an ongoing criminal enterprise designed and implemented by the **Texas Court of Criminal Appeals**, in conjunction with the directors of the **Texas Office of Court Administration**, Megan LaVoie, the **Texas Justice Court Training Center**, Thea Whalen, the **Texas Municipal Courts Education Center**, Deadra Stark, **Texas State University**, Kelly Damphouse, the **Texas Association of Counties**, Mr. Nathan Cradduck, the **Texas Center for the Judiciary**, Gail Bell , and other entities to be named subsequent to discovery.

The Texas Legislature, on passage of **Texas Code of Criminal Procedure 17.024**, directed the **Texas Court of Criminal Appeals** and the **Texas Office of Court Administration**, as follows:

*__Art. 17.024.   TRAINING ON DUTIES REGARDING BAIL__. (a) The Office of Court Administration of the Texas Judicial System shall, in consultation with the court of criminal appeals, develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases.  The courses developed must include:*

(1)  an eight-hour initial training course that includes the content of the applicable training course described __by Article 17.0501__; and

(2)  a two-hour continuing education course.

*(b) The office shall provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to the office.*

*(c) A magistrate is in compliance with the training requirements of this article if:*

(1)  not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);

(2)  the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and

(3)  the magistrate demonstrates competency as provided by Subsection (b).

*(c-1) Notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022.  This subsection expires May 1, 2023.*

*(d) Any course developed or approved by the office under this article may be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity. (b) A personal bond is not required to contain the oath described by Subsection (a)(3) if:*

(1)  the magistrate makes a determination under __Article 16.22__ that the defendant has a mental illness or is a person with an intellectual disability, including by using the results of a previous determination under that article;

(2)  the defendant is released on personal bond under __Article 17.032__; or

(3)  the defendant is found incompetent to stand trial in accordance with Chapter 46B.

Instead of proper legal instruction for magistrates in the rule of law, the above referenced cabal, instructed magistrates, the police, prosecutors, and trial judges in a set of practices and procedures which had the effect of denying every person accused of crime in the due course of the laws and converted Texas into the worst police state the world has ever seen.

Through a series of seemingly minor adjustments toward administrative convenience and adjudicative expediency, the Defendants have so perverted the legal system such that, every step, from arrest to trial, is not only wrong, but very specifically against particular law.  Plaintiffs will show how each step has been carefully crafted to totally disenfranchise the public from their right to the due course of the laws.

## 2.1 ONGOING CRIMINAL ENTERPRISE

By the following, Plaintiffs will show that the criminal justice system in Texas has been carefully crafted such that, every person accused of crime will not enjoy the due course of the laws or exercise their rights, but rather, will enter into a plea agreement with the State. Plaintiffs will show how the above referenced criminal cabal has developed into a culture of corruption such that public officials are no longer bound by their oaths of office and officials are able to act with absolute impunity in the face of black letter law. In the process of implementing the above referenced improper practices, Texas public officials have turned Texas into the worst police state the world has ever seen.

## 2.2 FULLY FUNCTIONING POLICE STATE

Communist China imprisons approximately **121 persons per 100,000**, Russia **imprisons 331**, the United States **639**, while Texas imprisons **840** at last count and climbing fast. The State of Texas spends **$3.5 billion** on state prisons and Texas Counties, another $12 billion for pre-trial detainment, with another $254 million for court appointed counsel. According to **FBI statistics**, crime is down across the board in all categories and has been on a steady decline for the last 40 years while the Texas jail population has skyrocketed. The single largest budget item for counties is no longer education, it is now confinement of unprosecuted citizens being held in county jails and we need to fix that.

### 2.2.1   No Lack of Law

The problem exists in the criminal justice system from no lack of law. The problem exists because otherwise good and right-minded people were improperly trained in wrongful practices and procedures based on improper readings and interpretation of the black letter law.

Plaintiffs will show how they were not singled out for special persecution but worse, Plaintiffs were treated just like everyone else accused of crime in Texas. Plaintiffs will show that Plaintiffs were subjected to an ongoing criminal enterprise designed and implemented by the **Texas Court of Criminal Appeals**, in conjunction with the **Texas Office of Court Administration**, the **Texas Justice Court Training Center**, **Texas Municipal Courts Education Center**, **Texas State University**, **Texas Association of Counties**, **Texas Center for**

**the Judiciary**, **Texas State University** and various similar entities both governmental and private, to be named subsequent to discovery.

### 2.2.2   Do Not Pass Go

Plaintiffs, will further show that Defendants crafted a criminal connivance wherein they trained magistrates to ignore the procedural due process mandate contained in **Texas Code of Criminal Procedure 14.06**, **15.16**, and **Texas Transportation Code 543.002,** which directs police to take persons arrested directly to the nearest magistrate, instead, they are trained to take the accused directly to jail having made no due diligent effort to locate a magistrate.

### 2.2.3   Mass Incarceration

Plaintiffs will show how this practice is the key underlying cause of the current mistrust of the police and the mass incarceration issue.

### 2.2.4   No Subject Matter Jurisdiction

Plaintiffs will show how, in most every criminal case in Texas for the last 40 years, citizens have been prosecuted without subject matter jurisdiction.

#### 2.2.4.1   *Magistrate a Pre-requisite to Incarceration*

Plaintiffs will show how the law commands every person arrested in Texas, with or without a warrant, to be taken directly to the nearest magistrate for an examining trial in accordance with **Texas Code of Criminal Procedure Chapter 16**, prior to being imprisoned.

#### 2.2.4.2   *Jurisdictional Pre-requisite*

Plaintiffs will show that, police have jurisdiction to arrest a citizen based on an existing warrant or reasonable belief that a felony has been committed and the accused who committed said felony is likely to escape if not arrested without a warrant, or for an on sight offense.  While police have authority to arrest and hold for as long as it reasonably takes to locate a magistrate, that jurisdiction evaporates if the accused is not taken directly to the nearest magistrate for a proper determination of probable cause.

#### 2.2.4.3   *Jurisdiction of Magistrate*

Plaintiffs will show how, magistrates have jurisdiction based on being presented with a criminal complaint complete in accordance with **Texas Code of Criminal Procedure 15.05**.  Said

jurisdiction is for the limited purpose of convening an examining court in accordance with **Chapter 16 Texas Code of Criminal Procedure Chapter 16**.

### 2.2.4.4    *Section 16.17 Order*

Plaintiffs will show how, an examining trial must culminate with an order by the magistrate issued in accordance with **Texas Code of Criminal Procedure 16.17**.  Said order must then be forwarded to the court of original jurisdiction in accordance with **Texas Code of Criminal Procedure 17.30**.  It is the magistrate's order which imbues the trial court with jurisdiction.

### 2.2.4.5    *Grand Jury Jurisdiction*

Plaintiffs will show that, after an examination into the sufficiency of the allegation and a finding of probable cause by a magistrate, the above referenced order is directed to the grand jury by **Texas Code of Criminal Procedure 17.31**.

### 2.2.4.6    *Article 5 Indictment*

Plaintiffs will further show how, after a determination of probable cause by a magistrate, the **Texas Constitution at Article 5, Section 17**, grants jurisdiction to the grand jury to sit for the purpose of the finding of a true bill, said true bill is made known to the court in accordance with **Texas Code of Criminal Procedure 20A.051**.

### 2.2.4.7    *True Bill*

Plaintiffs will show that, after a true bill is brought and presented to the grand jury, the clerk will create a cause of action by making notes in the minutes of the court of the existence of a criminal claim in accordance with **Texas Code of Criminal Procedure 20A.304**.

### 2.2.4.8    *Notice to Trial Court*

Plaintiffs will show how, after an indictment has been brought and presented to the court, the District Court must certify the indictment and give notice to the trial court in accordance with **Texas Constitution at Article 5, Section 17**.

## 2.2.5   Procedural Due Process

Local judges, prosecutors, and even defense counsel claim, a person only has a right to an examining trial after indictment.  Plaintiffs will show, such a notion is patently untrue.  Plaintiffs will show, a citizen never has a direct right to an examining trial.  This is not about "rights."  The black letter law, fidelity to which every public official has sworn, commands an examining trial

be provided to every person arrested for any reason.  The above is about procedural due process and the due course of the laws amount to a covenant of the Constitution, which is the contract every public official bound him/herself to by virtue of their sworn oath.

### 2.2.6    TCCP 15.09

Plaintiffs, by the following, will show the above referenced criminal enterprise trained magistrates to ignore the administrative duty specified by **Texas Code of Criminal Procedure 15.09.**  Plaintiff Kelton will show how Plaintiff has repeatedly presented criminal complaints to magistrates and all were summarily trashed, without regard to the sufficiency of the allegations made therein.  Magistrates simply refused to accept criminal complaints from private citizens and by so doing failed to perform an administrative duty imposed upon them by **Texas Code of Criminal Procedure 15.09** as addressed in more detail below.   The proceeding refusal on the part of magistrates in Texas, had the effect of disenfranchising every person from the remedies contained in the Texas Constitution and laws of the State of Texas in violation of **Texas Constitution Article 1 Section 19** which reads as follows: .

> ***Sec. 19.  DEPRIVATION OF LIFE, LIBERTY, PROPERTY, ETC. BY DUE COURSE OF LAW***.  *No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.*

## 2.3 SPEEDY TRIAL

Plaintiffs will further move the court to declare, all judges and prosecutors in Texas are commanded by the **Texas Constitution** to provide every person accused of crime in a speedy trial and a trial shall be presumed speedy if said trial is held within the time limits specified by the Legislature in the abstract to **Bill 1043 of the 66th Legislature**.

## 2.4 JUDICIAL NOTICE

Plaintiffs move this court to take judicial notice of the Federal Constitution, the Texas Constitution, the laws of the Federal Government and the State of Texas as cited herein.

# 3   TABLE OF CONTENTS

Contents

1   Ongoing crimnal Enteprise ....................................................................................... 2

   1.1   Denial of Procedural Due Process ........................................................................ 2

   1.2   Interference with Interstate Commerce ................................................................ 3

   1.3   Witness Tampering ............................................................................................... 3

   1.4   RICO ..................................................................................................................... 3

   1.5   Shielding from Prosecution ................................................................................. 4

      1.5.1   Witness Tampering ...................................................................................... 4

      1.5.2   Misprision of Felony ................................................................................... 5

   1.6   Bankrupting Texas Counties ................................................................................ 5

2   JURISDICTION AND VENUE ................................................................................... 5

3   Venue ........................................................................................................................... 5

1   PARTIES ...................................................................................................................... 6

   1.1   Plaintiff/s ............................................................................................................. 6

   1.2   Respondents ......................................................................................................... 6

2   Plaintffs Will Show ...................................................................................................... 9

   2.1   Ongoing Criminal Enterprise ............................................................................ 11

   2.2   Fully Functioning Police State .......................................................................... 11

      2.2.1   No Lack of Law ......................................................................................... 11

      2.2.2   Do Not Pass Go ......................................................................................... 12

      2.2.3   Mass Incarceration .................................................................................... 12

      2.2.4   No Subject Matter Jurisdiction ................................................................. 12

      2.2.5   Procedural Due Process ............................................................................. 13

      2.2.6   TCCP 15.09 ............................................................................................... 14

   2.3   Speedy Trial ...................................................................................................... 14

   2.4   Judicial Notice ................................................................................................... 14

3   Table of Contents ....................................................................................................... 15

4     Kelton Statement of Facts ......................................................................... 24

  4.1    Criminal Complaints Filed ................................................................. 24

    4.1.1    Governor Abbott ...................................................................... 24

    4.1.2    Jose Garza ................................................................................ 25

  4.2    Travis County District Courthouse ................................................... 26

    4.2.1    Some Deals Bigger Than Others............................................. 28

    4.2.2    Official Gun Slingers ............................................................... 28

  4.3    Travis County District Judges .......................................................... 28

5     Bell Statement of Facts ............................................................................ 29

    5.1.1    Mask Confrontation ................................................................. 29

    5.1.2    Personal Agenda ...................................................................... 29

    5.1.3    Assault and Battery ................................................................. 30

    5.1.4    Aggravated Assault .................................................................. 30

    5.1.5    Serious Bodily Injury .............................................................. 30

    5.1.6    Illegal Search ........................................................................... 31

    5.1.7    Solicitation of Complaint ........................................................ 32

    5.1.8    Intimidation ............................................................................. 32

    5.1.9    Improper Press Release and Release of Body Cam Video ..................... 32

    5.1.10    Showing of Malice .................................................................. 32

    5.1.11    Denied Examining Trial .......................................................... 33

    5.1.12    Subjected To Ongoing Criminal Enterprise........................... 33

    5.1.13    Ineffective Assistance of Counsel .......................................... 33

    5.1.14    Dismissed for Lack of Evidence ............................................ 33

6     Statement of Claim ................................................................................... 34

  6.1    No Lack of Law.................................................................................. 35

    6.1.1    The Deal ................................................................................... 35

    6.1.2    Corruption By Design ............................................................. 35

6.1.3    Magistrates as Key to Kingdom ................................................................. 36

6.1.4    Prosecutorial Impersonation ..................................................................... 36

6.2    Due Course of Standing Law ......................................................................... 37

6.2.1    Masters of the Servants ............................................................................. 37

6.2.2    Official Constitutional Duty ...................................................................... 37

6.2.3    Constitutional Prescriptions ...................................................................... 38

6.2.4    Duties of Peace Officers ............................................................................ 39

6.3    Due Course of Law .......................................................................................... 39

6.3.1    Federal Constitution Applies ..................................................................... 39

6.3.2    Examining Trial (Preliminary Hearing) As Due Process ........................ 40

6.3.3    Arrest in County of Jurisdiction ................................................................ 40

6.3.4    Reasonable Delay ...................................................................................... 41

6.3.5    Diligent Effort to Locate Magistrate ........................................................ 42

6.3.6    Any Magistrate in Texas ........................................................................... 42

6.3.7    One Magistrate as Close as Another ......................................................... 43

6.3.8    Duties of Magistrates ................................................................................ 43

6.3.9    Order Under 16.17 ..................................................................................... 43

6.3.10   Forward to Clerk 17.30 .............................................................................. 43

6.4    Acces to Courts ................................................................................................ 44

6.4.1    Set the Hounds Upon Us ............................................................................ 44

6.4.2    Statutory Prescription on Arrest ................................................................ 44

6.5    Police Mis-direction ........................................................................................ 46

6.5.1    Police Officer Directive ............................................................................. 46

6.5.2    Prosecuting Officer Directive .................................................................... 46

6.5.3    Magistrates Ignore Statutory Mandate ...................................................... 47

6.5.4    Must Issue Warrant .................................................................................... 47

6.5.5     Remedy Denied ................................................................................. 47

6.5.6     Cases in Point .................................................................................. 47

6.5.7     Wise County .................................................................................... 48

6.5.8     Travis County .................................................................................. 49

6.5.9     Defense Counsel Collusion ............................................................. 49

6.6     The grain of Sand that Released the bolder ........................................ 49

6.6.1     Magistration Abomination .............................................................. 50

6.6.2     Statutory Construction Violation ................................................... 50

6.6.3     Objective Reasonableness ............................................................... 50

6.6.4     Nearest Magistrate ......................................................................... 51

6.6.5     High Court Mis-interpretation ........................................................ 51

6.7     No Right To Examining Trial ............................................................. 52

6.7.1     Statutory Prescription .................................................................... 52

6.7.2     Constitutional Commandments On Demand .................................. 53

6.7.3     Statutory Construction Act ............................................................. 53

6.7.4     Constitutional Speedy Trial Trashed ............................................. 54

6.8     Intent of The Texas Legislature ......................................................... 55

6.9     Speedy Trial Unconstitutional ........................................................... 56

6.10     Legislative Definition Remains .......................................................... 56

6.10.1     Prosecutor Coup ............................................................................. 56

6.10.2     Policing Persecution With Impunity ............................................... 57

6.10.3     No Indictment of Police .................................................................. 57

6.10.4     Crucify them All Equally ................................................................ 58

6.10.5     Inferior Court Fraud ....................................................................... 58

7     Points and Authorities ....................................................................... 60

7.1     Right to Probable Cause Determination ............................................. 60

7.1.1     800 Years of Service ...................................................................... 60

7.1.2    Duties Upon Arrest ................................................................................................ 61

7.1.3    Procedural Due Process ......................................................................................... 61

7.1.4    No Examining Trial in Misdemeanor Nonsense.................................................... 61

7.1.5    Article 15.17 Confusion ......................................................................................... 62

7.1.6    Article 15.17 Warnings Only ................................................................................. 62

7.1.7    Authority To Hold Evaporates .............................................................................. 63

7.1.8    Examining Trial Even After Indictment ................................................................ 64

7.1.9    Indictment Terminates Nothing ............................................................................ 65

7.1.10   We See No Error.................................................................................................... 66

7.1.11   Trussell v State ...................................................................................................... 66

7.2    Bond As Option / Bail As Right.................................................................................... 68

7.2.1    Probable Cause as Prosecutorial Pre-requisite...................................................... 69

7.2.2    Standards for Arrest ............................................................................................... 69

7.3    4th Amendment Protections ........................................................................................... 70

7.3.1    Maximum Protection of Individual Rights ............................................................ 70

7.3.2    Point of Fourth Amendment .................................................................................. 70

7.4    On Scene Assessment..................................................................................................... 71

7.4.1    The Courts Granted an Inch................................................................................... 71

7.4.2    Constitutional Consequences of Pre-trial Confinement......................................... 72

7.4.3    Historical Support .................................................................................................. 72

7.4.4    Habeas Corpus Available ....................................................................................... 73

7.4.5    Arrest for On-sight Offense ................................................................................... 73

7.4.6    Arrest on Warrant .................................................................................................. 73

7.4.7    Traffic Arrest ......................................................................................................... 74

7.5    Magistrate Jurisdiction and Duty .................................................................................. 74

7.5.1    Keep the Peace....................................................................................................... 74

7.5.2    Must Convene an Examining Court...................................................................... 75

7.5.3    Jurisdiction............................................................................................................ 75

7.5.4    Sufficiency of Complaint....................................................................................... 76

7.5.5    Must Issue an Order.............................................................................................. 76

7.5.6    17.30 Forward Order to Clerk.............................................................................. 76

7.5.7    Constitution on Demand....................................................................................... 77

7.5.8    Magistration.......................................................................................................... 78

7.5.9    15.17 and Foreign Magistrates............................................................................. 81

7.5.10   Government Gone Rogue....................................................................................... 82

7.6    Bail v Bond................................................................................................................. 82

7.6.1    When "Bail" May Be Denied ................................................................................ 82

7.6.2    No Bail Setting Outside Statutory Examining Trial ............................................ 83

7.7    Due Course in an Examining Trial............................................................................ 84

8    Constitutional Speedy Trial ............................................................................................ 84

8.1    Legislative Intent....................................................................................................... 84

8.2    Speedy Trial ACT UNCONSTITUTIONAL ............................................................ 85

8.3    Distinguish Barker Wingo Test................................................................................. 85

8.4    Current Practice......................................................................................................... 86

8.4.1    Go Straight To Jail .............................................................................................. 86

8.4.2    Secrets Documents to Jailers ............................................................................... 86

8.4.3    Notice to Prosecutor............................................................................................. 86

8.4.4    Delay as Key Element........................................................................................... 86

8.5    Speedy Trial Denied as a Matter of Course ............................................................. 86

8.5.1    No Speedy Trial Protection.................................................................................. 87

8.5.2    Administrative Inconvenience .............................................................................. 87

8.5.3    Delay and Obfuscation......................................................................................... 87

8.5.4    Speedy is Not a Right .......................................................................................... 87

8.5.5   Constitution Applies With or Without Consent.......................................................88

8.6   Time As A Malignant Calculus.................................................................................88

8.6.1   Delay Inconsistent With Legislative Intent.............................................................88

8.6.2   Fundamental to Founders......................................................................................90

8.7   No Waiver of Constitutional Prohibition ................................................................91

8.7.1   State Distinguished From Fed................................................................................91

8.7.2   No Harm No Foul Nonsense..................................................................................92

8.7.3   Constitutional Duty...............................................................................................92

8.7.4   Speedy Trial is Vested Right .................................................................................92

8.7.5   Delay Beyond Scope.............................................................................................92

8.8   No Immunity ..........................................................................................................93

8.8.1   Constitutional Calculation ....................................................................................93

8.8.2   Constitutional Speedy Trial Commandment...........................................................94

8.9   Burden on Prosecutor ............................................................................................95

8.9.1   Demand Unnecessary............................................................................................95

8.9.2   Constitution Does Not Speak To Citizens .............................................................96

8.9.3   The Constitution Always Applies..........................................................................96

8.9.4   PROSECUTORIAL DELAY ................................................................................97

8.10   Simulating a Legal Process ....................................................................................98

8.10.1   Article 26.01 Restriction in Class C Misdemeanor ...............................................99

8.10.2   Lack of Jurisdiction..............................................................................................99

8.10.3   16.17 Requirement................................................................................................99

8.10.4   Delay As An Illegal Artifice ...............................................................................100

9   Ongoing Criminal Enterprise ........................................................................................100

9.1   Crime Rate Down.................................................................................................100

9.2   This Is Not A War ................................................................................................101

9.3   Carefully Crafted Criminal Connivance ...............................................................101

9.4     Duty to Develop Training ....................................................................... 101

   9.4.1     Ongoing Criminal Enterprise ......................................................... 102

   9.4.2     Everything is Wrong ......................................................................... 102

   9.4.3     At Least 40 Years of Abuse ............................................................. 102

   9.4.4     Magistrate Bypass ............................................................................. 103

   9.4.5     Setting Bail ......................................................................................... 103

   9.4.6     There is no Lack of Law ................................................................... 103

   9.4.7     Misfeasance In Office ....................................................................... 103

   9.4.8     Blanket Denial of a Preliminary Hearing ..................................... 104

   9.4.9     Denial of Speedy Trial as Malignant Calculus ........................... 104

9.5     Criminal Street Gang ................................................................................ 105

   9.5.1     Engaging In Organized Crime ........................................................ 105

   9.5.2     All Are Disqualified .......................................................................... 105

10    Criminal Accusations .................................................................................. 107

  10.1    Assault Plaintiff Kelton ............................................................................ 107

   10.1.1    Travis County Court House ............................................................ 107

   10.1.2    Standing on the Oath ....................................................................... 107

   10.1.3    911 Call ............................................................................................... 108

   10.1.4    Governors Edict ................................................................................ 108

   10.1.5    Plaintiff Bell ....................................................................................... 108

   10.1.6    Subject Matter Jurisdiction Challenge ......................................... 114

   10.1.7    Discharged for Lack of Evidence .................................................. 115

   10.1.8    Shyster Shenanigan .......................................................................... 115

11    Torts and Causes of Action ....................................................................... 116

  11.1    Plaintilff Kelton ......................................................................................... 116

   11.1.1    1st Degree Felony Aggravated Assault ........................................ 116

   11.1.2    Interfering With 911 Call ................................................................ 117

11.1.3   Special Conditions ............................................................................... 117

11.1.4   Proximate Cause ................................................................................... 117

11.1.5   Aggravated Assault 22.02(b)(2)(A) ..................................................... 118

11.1.6   Special Legislation................................................................................ 118

11.1.7   Legal Duty ............................................................................................ 120

11.1.8   Legal Reform Activist........................................................................... 121

11.2   Plaintiff Bell ................................................................................................ 121

11.2.1   Nordstrom Assault ................................................................................ 121

11.2.2   Public Official Abuse............................................................................ 130

11.2.3   False Imprisonment............................................................................... 132

11.2.4   Criminal Conspiracy ............................................................................. 134

11.2.5   Denial of Due Process ........................................................................... 136

11.2.6   Negligence ............................................................................................ 137

11.2.7   Negligence Per Se ................................................................................. 142

11.2.8   Denial of Due Process ........................................................................... 143

11.2.9   Continuing abuse .................................................................................. 144

11.2.10   Intentional Infliction of Emotional Distress........................................ 145

11.2.11   Libel and Slander ................................................................................. 148

12   Jury Demand .......................................................................................................... 151

13   Prayer ..................................................................................................................... 151

13.1   Plaintiff Bell ................................................................................................ 151

13.2   Plaintiff Kelton............................................................................................. 151

13.3   General Prayer.............................................................................................. 151

# 4   KELTON STATEMENT OF FACTS

Plaintiff Kelton is a combat veteran.  Once upon a time, Plaintiff Kelton swore on his oath that he would protect this country from all enemies, foreign and domestic.  Plaintiff Kelton found the enemy and it is domestic.  It is a well-entrenched enemy buried behind the best intentions of otherwise well-meaning public officials.

## 4.1 CRIMINAL COMPLAINTS FILED

In an effort to correct some perceived problems with the system, Plaintiff Kelton has attempted to do his duty as a citizen and report crime by filing verified criminal affidavits with various magistrates expecting them to do their duty as prescribed by **Texas Code of Criminal Procedure 15.09 supra**.

> *Art. 15.09.  COMPLAINT MAY BE FORWARDED. A complaint in accordance with Article 15.05, may be forwarded as provided by Article 15.08 to any magistrate in the State;  and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused; and the accused, when arrested, shall be dealt with as provided in this Chapter in similar cases.*

### 4.1.1   Governor Abbott

On or about the 15th day of October 2020, Plaintiff Kelton filed criminal complaints with the Chief Justice of the Texas Supreme Court, Nathan Hecht, against **Gregory Abbott,** for his actions in issuing executive orders which had the effect of infringing on the rights of citizens and subjected the people of Texas to Sedition, Official Oppression including other high crimes and misdemeanors. The above referenced complaints were complete in accordance with **Texas Code of Criminal Procedure 15.05** which reads as follows:

> *Art. 15.05. REQUISITES OF COMPLAINT. The complaint shall be sufficient, without regard to form, if it have these substantial requisites:*
>
> *1. It must state the name of the accused, if known, and if not known, must give some reasonably definite description of him.*
>
> *2. It must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.*
>
> *3. It must state the time and place of the commission of the offense, as definitely as can be done by the affiant.*
>
> *4. It must be signed by the affiant by writing his name or affixing his mark.*

Said complaints were filed with the **Chief Justice of the Texas Supreme Court, Nathan Hecht**, in his capacity as the highest level magistrate in the State of Texas.  **Justice Hecht** failed to

perform his duty as a magistrate in Texas as stipulated by **Texas Code of Criminal Procedure 15.09 supra**.

To the knowledge of Plaintiff Kelton, as of the writing of this document, Justice Hecht, failed to perform a duty he was required to perform and in the process, denied Plaintiff Kelton in the due course of the laws while acting to shield Governor Abbot from prosecution in violation of **Texas Penal Code 38.05** which reads in pertinent part as follows:

> *Sec. 38.05.  **HINDERING APPREHENSION OR PROSECUTION**. (a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:*

(1)  harbors or conceals the other;

(2)  provides or aids in providing the other with any means of avoiding arrest or effecting escape; or

> *(3)  warns the other of impending discovery or apprehension*

### 4.1.2   Jose Garza

On or about the 14th day of October 2021, **Plaintiff Kelton** filed a set of criminal complaints with the Travis County Grand Jury.  Said documents were delivered to the Ron Earl Building in Austin, Texas in a sealed envelope addressed to the foreman of the Travis County Grand Jury, and put in the hands of Lisa Morell, an investigator for the Travis County District Attorney. Plaintiff Kelton insisted, and got assurance from Lisa Morell that the folder would be delivered to the foreman of the grand jury.

Said filing was made in consideration of **Texas Code of Criminal Procedure 20A.51** which reads as follows:

> *Art. 20A.051.  **DUTIES OF GRAND JURY**.  The grand jury shall inquire into all offenses subject to indictment of which any grand juror may have knowledge or of which the grand jury is informed by the attorney representing the state or by any other credible person.*

Said envelope contained a cover letter to the foreman of the grand jury asking the foreman to email **Plaintiff Kelton** at the address provided and to let Plaintiff Kelton know that the grand jury actually received the complaints contained in the envelope.  As of the writing of this complaint, Plaintiff Kelton has not received an email from the foreman of the grand jury.

Plaintiff Kelton cautioned Investigator Morell to warn **Jose Garza** not to open the folder. Plaintiff Kelton did not reveal that the envelope contained complaints against Jose Garza and

others alleging that the **Travis County District Attorney** impersonated a magistrate by making a judicial determination that the District Attorney did not have jurisdiction to pursue the complaints which were filed with his office. While he may not have had jurisdiction, that was not a determination a prosecuting attorney had jurisdiction to make. He could have filed a motion with the trial court asking that the complaints be dismissed for lack of jurisdiction but he chose to take that authority upon himself in violation of **Texas Penal Code 39.03** which reads in pertinent part as follows:

> ***Sec. 39.03.  OFFICIAL OPPRESSION***. *(a)  A public servant acting under color of his office or employment commits an offense if he:*

(1)  intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2)  intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3)  intentionally subjects another to sexual harassment.

> *(b)  For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity...*

Plaintiff Kelton has reason to believe and does believe that **Jose Garza** opened the folder and found criminal complaints against himself and, consequently, secreted same from the foreman of the grand jury, thereby denying Plaintiff Kelton in the right to petition the court for redress of grievance in violation of the **1st Amendment to the Constitution of the United States** which reads as follows:

> *Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

## 4.2 TRAVIS COUNTY DISTRICT COURTHOUSE

On or about the 14th day of October 2021, Plaintiff Kelton went to the Travis County Courthouse and attempted to enter the building but was not comfortable wearing a mask as Plaintiff Kelton, at 71, was having some lung issues. The bailiff guarding the door, when asked, told Plaintiff Kelton that the pistol he was prominently displaying on his hip was loaded and he was prepared to use the pistol if necessary to prevent Plaintiff Kelton from entering the building without a mask.

Plaintiff then asked the deputy to go up to the District Clerk's office and have a clerk come down and talk to Plaintiff Kelton. Plaintiff Kelton had just left the County Courthouse and a Sargent there did just exactly that. Well, at the district courthouse, when Plaintiff asked the deputy to go to the clerk's office and ask a specific clerk who, was suggested by the county clerk, to come down and talk to Plaintiff the deputy asked if that was an order. Plaintiff thought a moment then responded, "Yes, as a matter of fact, it is."

The deputy then asked: "How has that worked out for you?"

Plaintiff Kelton responded, "Pretty good. Do you want to test it?"

The deputy said, "Yes."

Plaintiff Kelton was busy and had not intended to take on the issue of the loaded pistol and the depravation of the right to access the courthouse, but with the officer's stance it was clear he did not intend to provide reasonable accommodation, as the Sargent at the County Courthouse did. So, Plaintiff Kelton took out his cell phone with the intent of calling 911 to ask for an officer to take Plaintiff Kelton's criminal complaint of 1st Degree Felony Aggravated Assault in violation of **Texas Penal Code 22.02(b)(2)(A)** which reads as follows:

### *Sec. 22.02. AGGRAVATED ASSAULT.*

*(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:*

(2) regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

> (A) by a public servant acting under color of the servant's office or employment; (emphasis added)

The bailiff stepped around the counter he had been behind, put his hand on his pistol, and told Plaintiff that he could not use a cell phone in the courthouse. When Plaintiff Kelton asked the officer if he intended to interfere with a 911 call, another deputy came and pulled the officer away.

Plaintiff Kelton promptly called 911 to secure an officer to take his complaint of first degree felony aggravated assault, in violation of **Texas Penal Code 22.02(b)(2)(A)**, against the bailiff. Apparently, in protest of the de-funding of the police by the City of Austin, the 911 operator refused to dispatch an officer and Plaintiff Kelton was denied access to the courthouse at

constructive gunpoint.   It was at the time when the city had reduced the police budget and they seemed to be protesting by not dispatching for 911 calls.

### 4.2.1   Some Deals Bigger Than Others

Some may think that this is not such a big deal.  Plaintiff Kelton has a different perspective.  I was a soldier once and still carry the memory of standing at the bottom of a ramp leading up to that 707 jet poised to take off from Travis Airbase and ferry me and a plane load of others to war.  I walked up that ramp with the lyrics of "The Last Train To Clarksville" ringing in my ears, the lyrics that said: "I don't know if I am ever coming home."  I almost did not, unlike my twin brother, who was in theater at the same time.  He did not come home, well, not alive that is.  I was given the honor and privilege of holding his hand as his soul left him, eaten away by gangrene, in the Third Field Hospital in Saigon, South Vietnam.  Like him, I have been on the sharp end of those deadly weapons and came away with a seriously skewed perspective.

### 4.2.2   Official Gun Slingers

When Texas put pistols on police officer's hips, they placed a grave responsibility on them by the passage of **Texas Penal Code 22.02(b)(2)(A)**.  That made a violation of that section a 1st degree felony.  With the current state of lawlessness in the ranks of our public officials, we are all at risk of having those guns slung at us.  Yes, I take them on but, better they point those pistols at me than my wife, my children, your wife, or your children.  I swore on my oath, I would protect this country from all enemies, foreign and domestic so, it is my job to ensure the police follow the law to the letter.  I now call every public official to their duty and do so as well.

That is my story and I am sticking to it.

## 4.3 TRAVIS COUNTY DISTRICT JUDGES

On or before the 30th day of November 2021, Plaintiff Kelton sent a set of criminal complaints against **Jose Garza** to every District Judge in Travis County, accusing Garza of secreting criminal complaints against himself from the Travis County Grand Jury.  As of the date of this writing, Plaintiff Kelton has reason to believe and does believe that not one District Judge in Travis County issued a warrant against **Jose Garza** and commanded by **Texas Code of Criminal Procedure 15.09 supra**.  Their failure to act in accordance with their sworn oath has left this republic in a shambles.

# 5   BELL STATEMENT OF FACTS

This suit arises out of a gross failure of the legal system in Texas.  Plaintiff Bell, during the panic of the Covid 19 pandemic, simply wanted to go shopping at Nordstrom Rack on April 7, 2021, to return a belt she had purchased a few weeks before.  However, due to the Governor's executive order requiring face masks, Plaintiff called Nordstrom Rack Corporate and notified them that she had some autoimmune issues that affected her ability to withstand a lowered oxygen level and could not safely wear a mask.  Plaintiff was told that there would be no problem as the store honored the medical exemption and to enjoy her shopping. About fifteen minutes after her arrival at the store located in Sunset Valley, Texas, Plaintiff explained her medical situation as it pertained to her ability to wear a mask to the two employees that approached her. Plaintiff was told she could shop without a mask by a man identifying himself as the store manager.

### 5.1.1   Mask Confrontation

After shopping around for about an hour, Plaintiff Bell selected some clothes to try on.  As Plaintiff Bell entered the dressing room, she was confronted about a mask by an unidentified woman (later learned to be Defendant Fucci). Plaintiff Bell noticed this unidentified woman had been lurking around in her vicinity earlier while she shopped. At the dressing room the unidentified woman aggressively confronted Plaintiff Bell and demanded that she don a mask. Plaintiff Bell explained that she had a medical condition and had contacted Nordstrom Rack Corporate regarding her medical condition and was given assurance that she could shop at Nordstrom Rack without a mask.

### 5.1.2   Personal Agenda

Defendant Fucci did not like the fact that Plaintiff Bell was not wearing a mask. She was clearly agitated and wanted to enforce her personal agenda that Plaintiff Bell, in fact, wear a mask regardless of her medical condition. When Defendant Fucci started acting agitated, Plaintiff Bell asked why the woman behind her was able to shop without a mask but she could not.  Defendant Fucci turned to look at the other unmasked woman behind her. While she was looking the other way, Bell made her way toward the first dressing room on the left which had an open door. At this moment, Defendant Fucci turned back toward Bell, saw her entering an empty dressing stall,

and proceeded to hip-check Bell so hard that she fell back into the door frame of the dressing room.

### 5.1.3   Assault and Battery

Bell then stumbled back into the dressing room and at this time, the unidentified employee escalated her assault and battery and grabbed Bell's right arm and tried to pull her out of the dressing room. Defendant Fucci grabbed Plaintiff Bell's arm so tightly that Fucci left painful, finger mark bruises on Bell's arm. Extremely frightened, Bell instinctively dropped the clothes that she was holding in her left arm and had to use the door to free herself from Defendant Fucci's tight grip on her right arm. Bell then closed and locked the door and called 911. At this point, Bell's post-traumatic stress disorder had been triggered and her mental state had been severely impacted.

### 5.1.4   Aggravated Assault

Two Sunset Valley Police officers arrived and instead of addressing the assault and battery against Plaintiff Bell, committed by Defendant Fucci, the police detained Plaintiff Bell even though Defendant Fucci stated that she did not want to file charges and only wanted Plaintiff Bell removed from the building. The two police officers ignored Plaintiff Bell's claims of assault and refused to do an unbiased investigation. Instead, Defendants Eller and Gill violently threw Plaintiff Bell to the ground, prompting a young woman to call 911 and report Police Brutality. The officers ripped Plaintiff Bell's cell phone out of her hands, took her purse from her body, searched her purse, took her car keys, and put Bell in a baking hot patrol car, with the windows rolled up and the car turned off.

### 5.1.5   Serious Bodily Injury

The actions by Sunset Valley Police almost killed Bell from heat prostration. Bell would have died if not for a bystander calling 911 to report police brutality and then another bystander alerting the police that Plaintiff Bell was thrashing around in the overheated police car and then forcing the police to get Plaintiff Bell out of the car.

#### 5.1.5.1   *Hot Boxing*

Plaintiff Bell's physical condition including her affliction with PTSD and other auto immune disorders impacted her ability to regulate her body temperature, triggering Plaintiff Bell and

sending her into a panic, as she could feel her temperature rising, fearing for her life. Plaintiff Bell was handcuffed with her hands behind her back, rendering her helpless, and she could only signal for help by banging her head on the side of the patrol vehicle.

It turns out, this practice is so common, the police call it "hot boxing" and they use it to force otherwise "difficult" people into submission (regardless of their medical condition).

### 5.1.5.2    *Saved by Bystanders*

The brutal assault called a "takedown" by Sunset Valley Police Department, prompted the need for a from to be filled out by the on-scene officers involved. On this form Officers Gill and Eller were listed as the Officers involved and Plaintiff Bell was listed as the subject, but oddly the "witnesses" box was intentionally left blank. However, although they are never listed in any of the investigation notes or reports that Plaintiff Bell was provided, there were witnesses and compassionate bystanders who were willing to help.

While Plaintiff Bell was being "hotboxed" and her life was being threatened a passerby saw Plaintiff Bell's distress and hurriedly went over to the police ordering them to get her out of the baking hot police car. By this time Plaintiff Bell was incoherent and in the early stages of heat stroke.

When EMS arrived, Plaintiff Bell's temperature was still 101 degrees, her blood pressure was alarmingly high, and her pulse was "off the charts" as one of the paramedics mentioned. Her skin was reported as being cyanotic from inadequate oxygen and Plaintiff Bell was noted to be sweating an unusual amount.

After Plaintiff Bell had a chance to cool down, catch her breath, and complete a medical assessment by Travis County EMS, Officers Gill and Officer Eller asked Plaintiff Bell if she wanted to press charges against the Nordstrom Rack employee. Plaintiff Bell was viciously attacked and then almost killed…Of course, Plaintiff Bell wanted to press charges!!!

### 5.1.6   Illegal Search

While Plaintiff Bell was locked in the baking hot patrol car, the police searched her purse, found her car keys and accessed her car. While the police were searching her belongings, a bystander demanded they get Plaintiff Bell out of the sweltering hot patrol car. Plaintiff has no doubt, but for the compassion and assistance of a bystander, she would have died in that car.

### 5.1.7   Solicitation of Complaint

After the medical scare, the officers told Plaintiff Bell that the Nordstrom employee did not want to pursue criminal charges against Plaintiff and asked Plaintiff if she wanted to pursue criminal charges against the Nordstrom employee.  When Plaintiff Bell indicated that she did in fact want to press charges against her attacker for assault, the officers then went back into Nordstrom Rack and informed Defendant Fucci that Plaintiff Bell intended to pursue criminal charges against her. At this time the officers solicited a criminal complaint from Defendant Fucci, against Plaintiff Bell, even though Defendant Fucci had stated multiple times that she did not want to press assault charges.

Prior to the soliciting of charges, the "investigating" officers themselves had concluded that there "was no assault" by Plaintiff Bell, and stated as much to each other at the scene.

### 5.1.8   Intimidation

While Officer Eller was in Nordstrom soliciting a criminal complaint against Plaintiff Bell, the Officer Gill searched Plaintiff Bell's purse again and pulled out a card showing that Plaintiff was running for the local school board, then said to Plaintiff: "You don't want this getting out."

### 5.1.9   Improper Press Release and Release of Body Cam Video

Shortly after the arrest of Plaintiff Bell, the Sunset Valley Chief of Police- Lenn Carter, issued a press release about the arrest.  The Chief also released body cam footage to the media that the prosecution would later secret from Plaintiff Bell.  Upon being called by Plaintiff Bell who asked about the press release and for a copy of the then yet-to-be provided police report, Police Chief, Lenn Carter stated that "he would not have people coming into his town without masks".

### 5.1.10   Showing of Malice

To date, this was only the second press release issued by this particular Sunset Valley Chief of Police, in the entire history of his tenure.  The only prior press release involved the shooting of a suspect by a SVPD officer. The Police Chief also intentionally leaked body-cam video to the media which soon went viral. The release of the body cam footage to the media by the Sunset Valley Chief of Police was in direct violation of **Texas Occupations Code Title 10. Occupations Related to Law Enforcement and Security Chapter 1701. Law Enforcement**

**Officers, Subchapter N Body Worn Camera Program, Section 1701.661(f)** which reads as follows:

> ***Texas Occupations Code 1701.661*** *(f) A law enforcement agency may not release any portion of a recording made in a private space, or of a recording involving the investigation of conduct that constitutes a misdemeanor punishable by fine only and does not result in arrest, without written authorization from the person who is the subject of that portion of the recording or, if the person is deceased, from the person's authorized representative.*

### 5.1.11   Denied Examining Trial

Plaintiff was given a citation and commanded to appear at court, which she did.  However, when Plaintiff appeared and asked the court to examine into the sufficiency of the allegations, the court refused.

### 5.1.12   Subjected To Ongoing Criminal Enterprise

Plaintiff Bell was commanded to come to court repeatedly to meet with the prosecutor so that they could pressure Plaintiff Bell to accept a plea bargain.  This continued for eighteen months while there was a Challenge to Subject Matter Jurisdiction before the court and a motion to dismiss for denial of a speedy trial.

### 5.1.13   Ineffective Assistance of Counsel

Plaintiff Bell had filed with the court a Challenge to Subject Matter Jurisdiction of the Court and motion to dismiss for denial of a speedy trial. The court refused to set the motions for hearing and repeatedly ordered Plaintiff to court to meet with the prosecutor where the prosecutor and Plaintiff Bell's hired counsel pressured Plaintiff Bell to enter a no contest plea.  Plaintiff Bell's counsel repeatedly refused to petition to set the motions and pleadings filed by Plaintiff Bell for a hearing.

### 5.1.14  Dismissed for Lack of Evidence

On November 14, 2022, the case was dismissed for "Insufficient Evidence to Sustain a Conviction", a determination that was required to be made the first day at an examining trial held under **Chapter 16 Texas Code of Criminal Procedure**.

#### 5.1.14.1   *Subject Matter Jurisdiction Challenge*

On or about October 10, 2022, Plaintiff filed a challenge to the subject matter jurisdiction of the court for failure to hold a proper examining trial and for denying Plaintiff a speedy trial.  The

court refused to set either petition for hearing but had already set numerous hearings for the purpose of giving the prosecutor opportunity to improperly pressure Plaintiff Bell to enter a guilty plea.

### 5.1.14.2   *Denied Access to Court*

The court refused to set the petition for hearing but set numerous hearings for the purpose of giving the prosecutor opportunity to improperly pressure Plaintiff Bell to enter a plea of no contest.

The court pursued prosecution of Plaintiff for eighteen months until it dismissed the case for lack of evidence, an outcome that would have become immediately apparent had the court acted in accordance with the law and held an examining trial.

Had the court acted in accordance with Texas Code of Criminal Procedure 2.11 and convened an examining trial, the lack of evidence would have been evident and the prosecution would have ended before it started.

### 5.1.14.3   *Unnecessary Lawyer Fees*

As it was, Plaintiff had to hire an attorney who did nothing but collude with the prosecution and charged Plaintiff approximately $6,000 only to act in concert and collusion with the State of Texas in the improper treatment of Plaintiff. As of the date of this pleading, Plaintiff's attorney has yet to return the unused portion of the retainer paid to counsel.

### 5.1.14.4   *Conspiracy Against Civil Rights*

By the following, Plaintiff Bell will show that Nordstrom Rack, the Sunset Valley Police, the municipal judge, the prosecuting attorney and Plaintiff's counsel acted in concert and collusion, one with the other to obstruct justice and deny Plaintiff, and all others prosecuted in Texas in the due course of the laws of the State of Texas.

# 6   STATEMENT OF CLAIM

Plaintiffs will show, by the following, that the Judges of the **Texas Court of Criminal Appeals**, acting in concert and collusion with the **Texas Office of Court Administration**, developed a curriculum to train magistrates in practices and procedures which had the effect of eliminating **Texas Code of Criminal Procedure Chapter 16**, denying citizens accused of crime in their Constitutional protections and the due course of the laws. Defendants then promoted said

practices and procedures through various state agencies and **Texas State University**, a law school, to train magistrates in these flawed practices.  The above amounted to an ongoing criminal conspiracy to undermine the Texas legal system and created our current catastrophe which, according to the **Texas Office of Court Administration**, costs Texas counties on the order of $990,000,000 every year for pre-trial incarceration and another $254,000,000 in court appointed counsel.  Plaintiff's own calculations of costs to counties is closer to $12,000,000,000.

All persons arrested in Texas and accused of crime are being subjected to prosecutorial and judicial misconduct in furtherance of the above referenced ongoing criminal enterprise in violation of **Texas Penal Code Chapter 71**.  Plaintiffs will show that the above criminal connivance is the product of a malignant calculus designed and intended to ease the prosecutorial burden on prosecutors and judges.  The above has been, and continues to be perpetrated, in order to coerce every person accused of a crime, into accepting a plea bargain in lieu of trial.  All this so that prosecutors and judges can avoid doing their jobs.

## 6.1 NO LACK OF LAW

The above referenced problem exists from no lack of law, but rather, from the refusal of public officials to follow the law as written.  Instead of following the law, they follow the training provided by the **Court of Criminal Appeals** and as a result, Texans are being denied in procedural due process at every turn and this illegal practice is on the verge of bankrupting Texas Counties.

### 6.1.1   The Deal

Everyone charged with a crime in Texas, is going to take a deal.  Every step, as presently practiced in the Texas Criminal Justice System, has been carefully crafted by the **Texas Court of Criminal Appeals** and **Office of Court Administration** and prosecuting attorneys to ensure the above outcome.  This criminal cabal has been so effective they have achieved an average conviction rate for all crimes in Texas, across the board, of 99.6%.

### 6.1.2   Corruption By Design

Police have been trained to take persons arrested, with or without a warrant, directly to jail with no consideration for the availability of a magistrate.  Magistrates have been trained to perform an aborted hearing called a "Magistration."   Neither this term, nor the hearing which it refers to

exist in Texas law.  It is a corrupted practice taught to magistrates which has the effect of nullifying **Texas Code of Criminal Procedure Chapter 16** and removes a bedrock practice which has been in law and served justice very well since the passing of the **Magna Carta Libertatum** in 1215 A.D.

### 6.1.3   Magistrates as Key to Kingdom

It was the intent of our founders that no freeman be subjected to criminal prosecution except by way of an examining trial by a local magistrate.  The **Texas Court of Criminal Appeals** and **Office of Court Administration,** along with numerous Texas agencies and other training facilities, have trained otherwise right minded and well-meaning, police, prosecutors, and magistrates in practices and procedures which routinely deny citizens in this primary protection. As a result, police are put in a position to where their judgment, upon making an arrest, is seldom if ever questioned.  They can arrest a citizen for any reason, with or without cause, throw citizens in jail where the accused is forced to take a deal.  The actions of the arresting officers are seldom if ever questioned.

### 6.1.4   Prosecutorial Impersonation

Prosecutors routinely fail to act in accordance with their duty as prescribed by **Texas Code of Criminal Procedure 2.01** which reads in pertinent part as follows:

> *Art. 2.01. DUTIES OF DISTRICT ATTORNEYS. It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.  They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.*

When complaints are filed with prosecutors against public officials, they routinely exercise "prosecutorial discretion."  Prosecutorial discretion is another term they made up that describes a concept never intended by the Legislature.  The Legislature considered prosecutors carefully and absolutely forbad them from acting in the capacity of a magistrate, in every case, but more specifically in matters of criminal allegations against public officials.

> *Art. 2.03. NEGLECT OF DUTY. (a) It shall be the duty of the attorney representing the State to present by information to the court having jurisdiction, any officer for neglect or failure of any duty enjoined upon such officer, when such neglect or failure can be presented by information, whenever it shall come to the knowledge of said attorney that there has been a neglect or failure of duty upon the part of said officer;  and he shall bring to the notice of the grand jury any act of violation of law or neglect or failure of duty upon the part of any officer, when such violation, neglect or failure is not presented by information, and whenever the same may come to his knowledge.*

A prosecuting attorney was never intended to act as anything other than a lawyer for the state and was given no magisterial powers to make determinations of probable cause, especially in the matter of allegations against another public official.

## 6.2 DUE COURSE OF STANDING LAW

It is, and always has been, the intent of the Texas Legislature that the law be followed to the benefit of the people.

### 6.2.1   Masters of the Servants

Texas is a republic and, as such, the citizen is the ultimate check to the balance of bad law.  The republican form of government hinges on the power of the citizen to control the governmental instruments they have created.

> *Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people...The people insist on remaining informed so that they may retain control over the instruments they have created.* ***Texas Government Code 552.001.***

The above follows from **Article 1 Section 2 of the Texas Constitution** which reads as follows:

> ***Sec. 2. INHERENT POLITICAL POWER; REPUBLICAN FORM OF GOVERNMENT****. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.*

### 6.2.2   Official Constitutional Duty

The Texas Constitution prescribes process designed and intended to insure that all citizens are provided the due course of standing law starting with the **Texas Constitution Article 1 Section 10** which reads as follows:

> ***Sec. 10.  RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS****. In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.  He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof.  He shall not be compelled to give evidence against himself† and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense.† unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in*

> *cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.*

The requirement is also contained in the **Constitution of the United States under the 6ᵗʰ Amendment** which reads as follows:

> ### Amendment 6.2.2.2 Right to a Public Trial:
>
> *In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.*

### 6.2.3   Constitutional Prescriptions

The notion that the above describes rights of the people is misplaced.  The above stands as commandments to public officials as no official may take on any official capacity until such time as that official has entered into a contract with the state by way of an oath of office taken in accordance with **Texas Constitution Article 16** which reads as follows:

> ### *Sec. 1.  OFFICIAL OATH OF OFFICE*. *(a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:*

"I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."

> *(b) All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:*

"I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God."

> *(c)  Members of the Legislature, the Secretary of State, and all other elected and appointed state officers shall file the signed statement required by Subsection (b) of this section with the Secretary of State before taking the Oath or Affirmation of office prescribed by Subsection (a) of this section. All other officers shall retain the signed statement required by Subsection (b) of this section with the official records of the office.*

The above is a contract, the covenants of which are contained in the Texas Constitution and the laws passed by the Texas Legislature, **Barker v Wingo** notwithstanding.   In Texas, there is nothing in the Legislative intent to presume that a constitutional provision only has effect if a citizen individually demands that the official abide by their oath.

38 of 153

### 6.2.4   Duties of Peace Officers

In every case, where someone has reason to believe that a crime has been committed, the only official authorized to receive a criminal allegation is some magistrate.  A police officer is given no special powers concerning criminal allegations.  When an officer has it made known to him/her, s/he is commanded to give said notice to some magistrate by **Texas Code of Criminal Procedure 2.13(b)(3)** as follows:

> ### *Art. 2.13. DUTIES AND POWERS.*
>
> (b) The officer shall:
>
> > (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

You will notice, the laws of Texas in this regard, say nothing about a prosecutor.

## 6.3 DUE COURSE OF LAW

The **Constitution of the State of Texas, Article 1, Section 19** guarantees all citizens the following:

> ### *Sec. 19.  DEPRIVATION OF LIFE, LIBERTY, PROPERTY, ETC. BY DUE COURSE OF LAW.*  *No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.*

### 6.3.1   Federal Constitution Applies

The people of the State of Texas have a right to the due course of the law under the **Constitution of the United States, Fourteenth Amendment, Section 1** which reads as follows:

> ***Section 1:*** *All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, with-out due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

The **Constitution of the State of Texas, Article 1, Section 1** likewise binds the State of Texas to the due process provisions of the Constitution of the United States as follows:

> ### *Sec. 1.  FREEDOM AND SOVEREIGNTY OF STATE.*  *Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States.*

### 6.3.2   Examining Trial (Preliminary Hearing) As Due Process

**Texas Code of Criminal Procedure 14.06(a)supra** and **Texas Code of Criminal Procedure 15.16supra** are clear in that an arrested person is to be immediately taken to a magistrate.

> *"The law must be given a practical and reasonable application. Accordingly, the word `immediately' is very generally held to Defendant and with due diligence. The accused has the right to be presented without delay, but the question of what delay is must be determined by all the facts and circumstances. . .. While courts must safeguard the rights of individuals, they should not impose liability upon peace officers for delays which are reasonable under all the circumstances."* **Hicks v. Matthews, 1954, 153 Tex 177, 266 S.W.2d 846,849.**   Roberts v. Bohac, 574 F.2d 1232 (5th Cir. 06/13/1978)

Defendant has a right to a proper determination of probable cause by a neutral magistrate in accordance with the decision of the Federal Courts in **GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602**, which reads in pertinent part as follows:

> *Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, **Beck v. Ohio, at 96; Wong Sun v. United States, 371 U.S. 471, 479-482 (1963),***

> *Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., **18 U. S. C. 3146 (a)(2, (5)**. When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish Defendant meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.*

### 6.3.3   Arrest in County of Jurisdiction

Where an individual is arrested in the county of original jurisdiction, the arresting officer has a duty, absent extenuating circumstances such as storm, flood, or intervening emergency, to immediately take Defendant to the nearest magistrate.  It can hardly be construed that, during normal business hours, with no intervening emergency clear from the public record, no magistrate was available.  Surely, there were magistrates in the county who would have been

available considering all the officials designated as magistrates under **Texas Code of Criminal Procedure Article 2.09** which reads as follows:

> ***Art. 2.09. WHO ARE MAGISTRATES****. Each of the following officers is a magistrate within the meaning of this Code: The justices of the Supreme Court, the judges of the Court of Criminal Appeals, the justices of the Courts of Appeals, **the judges of the District Court**, the magistrates appointed by the judges of the district courts of Bexar County, Dallas County, or Tarrant County that give preference to criminal cases, the criminal law hearing officers for Harris County appointed under Subchapter **L**, Chapter **54**, Government Code, the criminal law hearing officers for Cameron County appointed under Subchapter **BB**, Chapter **54**, Government Code, the magistrates or associate judges appointed by the judges of the district courts of Lubbock County, Nolan County, or Webb County, the magistrates appointed by the judges of the criminal district courts of Dallas County or Tarrant County, the associate judges appointed by the judges of the district courts and the county courts at law that give preference to criminal cases in Jefferson County, the associate judges appointed by the judges of the district courts and the statutory county courts of Brazos County, Nueces County, or Williamson County, the magistrates appointed by the judges of the district courts and statutory county courts that give preference to criminal cases in Travis County, the criminal magistrates appointed by the Brazoria County Commissioners Court, the criminal magistrates appointed by the Burnet County Commissioners Court, the magistrates appointed by the El Paso Council of Judges, the county judges, the judges of the county courts at law, judges of the county criminal courts, the judges of statutory probate courts, the associate judges appointed by the judges of the statutory probate courts under Chapter **54A**, Government Code, the associate judges appointed by the judge of a district court under Chapter **54A**, Government Code, the magistrates appointed under Subchapter **JJ**, Chapter **54**, Government Code, the magistrates appointed by the Collin County Commissioners Court, the magistrates appointed by the Fort Bend County Commissioners Court, the justices of the peace, and the mayors and recorders and the judges of the municipal courts of incorporated cities or towns.**(emphasis added)**

Even if there were no magistrates in the county, surely there was at least one magistrate in Texas that could make him/herself available considering that examining trials can be conducted electronically in Texas.

### 6.3.4    Reasonable Delay

While delays can be expected in certain circumstances, simple failure to seek the authority envisioned by **Gerstien v Pugh(supra)**, may not be construed as a proximate cause of reasonable delay.  This issue was addressed in the seminal case on this is **Heath v. Boyd, 175 S.W.2d 214 (Tex. 1943)**.

> *"Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd.  The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd.  There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by telephone as to what to do, in the face of a plain statutory command as to [***13] what must be done in all cases of arrest without warrant.  Art. 217, C.C.P., 1925, provides, "Defendant each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested * * before the nearest magistrate where the arrest was made without an order." Substantially the same requirement*

*appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925. Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official. Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon. If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson. He was under a positive duty immediately to seek a magistrate. That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities. Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [\*\*\*14] al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.);   [\*\*218] Karner et al v. Stump (Civ. App.), 34 S.W. 656; **Petty v. Morgan** et al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31 **Heath v. Boyd, 175 S.W.2d 214 (Tex. 1943)***

### 6.3.5   Diligent Effort to Locate Magistrate

22. The arresting officer in this case made no due diligent effort to locate a magistrate.

> *"Although the failure to take the plaintiff before a magistrate would have been excused if good grounds had existed for the belief that a magistrate was not available, such was not the case since the Defendant **officers made no attempt to determine whether the magistrate was or would make himself available." Roberts v Bohac, 574 F2d 1232***

### 6.3.6   Any Magistrate in Texas

Irrespective of any other states, Texas has specific legislation concerning this requirement to take the accused before a magistrate. In Texas, if a magistrate is not available in the county, the consideration of the availability of a magistrate must be extended to include every county in the state (see Texas **Code of Criminal Procedure Article 14.06 supra).**

> *The record offers, as the government's only justification, evidence that the magistrate, who issued the warrants, advised of his unavailability after the early evening of Friday, September 8, 1989. There are three other magistrates in the District. The record is bereft of any evidence as to their availability. Likewise, the record is bereft of any evidence as to the availability of any of the district Judges. n5 Absent evidence of other than the unavailability of the duty magistrate (the propriety of which is not here questioned), there is no basis to find that the delay for the entire period from [\*20] the arrest to presentment was necessary. To be sure, it was a weekend. The court was closed. But those facts do not entitle the government to presume the absence of an obligation to try to arrange the appearance of an arrestee before one of the other possible judicial officers. The law remains a force in life even outside usual business hours and all judicial officers have the obligation to respond to the needs of parties as they are mandated by the law. Defendant to their reasonable non-judicial activities, all judicial officers stand ready to fulfill that obligation. Here, the government has not shown the unavailability of all the possible judicial officers. The obligation of complying with the law lies with the government, which thus has the burden of proving that an arrestee was brought before a judicial officer without unnecessary delay. Its proof of the unavailability of one judicial officer does not prove that the delay to the next regular business hours, some sixty to sixty-five hours later, did not constitute unnecessary delay if it does not exhaust the possibility of an appearance before one of the other judicial officers in the district. See **United States v. Colon, 835 [\*21] F.2d 27, 30-31 (2d Cir. 1987)**.*

### 6.3.7   One Magistrate as Close as Another

With the current technology and law, it is not unreasonable to consider every magistrate in the State of Texas, as any one magistrate can be reached by phone.  Distance is no longer an impediment to seeking permission of a magistrate before taking a citizen to jail.

### 6.3.8   Duties of Magistrates

When a magistrate is given notice of crime said magistrate is to convene an examining court in accordance with **Texas Code of Criminal Procedure 2.11** which reads as follows:

> *Art. 2.11. EXAMINING COURT.  When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.*

### 6.3.9   Order Under 16.17

An examining trial must be held under Texas Code of Criminal Procedure Chapter 16 and after a determination is made, an order is to be issued by the magistrate in accordance with **Texas Code of Criminal Procedure 16.17** which reads as follows:

> *Art. 16.17. DECISION OF JUDGE.  After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require.  Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

### 6.3.10   Forward to Clerk 17.30

Once an order is issued, the magistrate is directed to forward the order and all other documents had in the case to the court of jurisdiction in accordance with **Texas Code of Criminal Procedure 17.30**, the court of jurisdiction is then directed by Texas Code of Criminal Procedure 17.31 as follows:

> *Art. 17.30. SHALL CERTIFY PROCEEDINGS.  The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope.  The voluntary statement of the defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.*

The clerk, upon receiving documents from the magistrate is directed by **Texas Code of Criminal Procedure 17.31** as follows:

> *Art. 17.31. DUTY OF CLERKS WHO RECEIVE SUCH PROCEEDINGS.  If the proceedings be delivered to a district clerk, he shall keep them safely and deliver the same to the next grand jury.  If the proceedings are delivered to a county clerk, he shall without delay deliver them to the district or county attorney of his county.*

The above is in keeping with the Constitutional requirements in the **Texas Constitution Article 5 Section 17** which reads as follows:

> ***Sec. 17. COUNTY COURT: TERMS, PROSECUTIONS, AND JURIES.*** *The County Court shall hold terms as provided by law. Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law. Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; and if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit. A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee. Forward to Grand Jury*

## 6.4   ACCES TO COURTS

The Texas Court of Criminal Appeals acting in concert and collusion with the Texas Office of Court Administration, and others, have been trained and directed to deny citizens access to the court for redress of criminal grievance by refusing to act on criminal complaints by citizens in direct violation of **Texas Code of Criminal Procedure 15.09 supra**.

This had the effect of taking control of the government from the people and turning Texas into the worst police state the world has ever seen.

### 6.4.1   Set the Hounds Upon Us

Police have been trained to arrest citizens with no regard for the right of things or probable cause and take them directly to jail in direct violation of **Texas Code of Criminal Procedure 14.06, 15.16**, and **Texas Transportation Code 543.002**.  Since there will be no proper examining trial, a police officer can arrest anyone and not be required to immediately explain himself.

It was not intended that the police hold the key to the jailhouse door.  That key was left in the hand of magistrates whose job it was to stand between the police and the public, to act as a buffer to the exuberance of law enforcement, but that buffer has been artfully removed.

### 6.4.2   Statutory Prescription on Arrest

In every case where a citizen is arrested in Texas, with or without an existing warrant, the arresting officer is commanded to take the accused directly to the nearest magistrate as follows:

### 6.4.2.1    *Arrest for On Sight Offense*

Where a person (hereinafter referred to as "Defendant," is arrested for an alleged onsite offense, the person making the arrest shall take the person directly to the nearest magistrate by the most direct route in accordance with **Texas Code of Criminal Procedure 14.06(a)** which reads as follows:

> *__Art. 14.06(a) MUST TAKE OFFENDER BEFORE MAGISTRATE.__*
>
> *(a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by __Article 15.17__ of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in __Article 15.17__ of this Code.*

Without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 6.4.2.2    *Arrest on Warrant*

Where a person is arrested on an existing warrant, the person making the arrest is commanded by **Texas Code of Criminal Article 15.16** which reads as follows:

> *__Art. 15.16.   HOW WARRANT IS EXECUTED__.  (a) The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant if the magistrate is in the same county where the person is arrested.  If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.*
>
> *(b) Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article __15.17__, the officer or person executing the arrest warrant may, as permitted by that article, take the person arrested before a magistrate in a county other than the county of arrest.*

As above, without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 6.4.2.3    *Traffic Arrest*

Even if a person were to be arrested for a traffic violation the arresting officer is directed to take the person arrested directly to the nearest magistrate under **Texas Transportation Code 543.002** which reads as follows:

> *__Sec. 543.002.  PERSON ARRESTED TO BE TAKEN BEFORE MAGISTRATE__.  (a) A person arrested for a violation of this subtitle punishable as a misdemeanor shall be immediately taken before a magistrate if:*

(1) the person is arrested on a charge of failure to stop in the event of an accident causing damage to property; or

(2) the person demands an immediate appearance before a magistrate or refuses to make a written promise to appear in court as provided by this subchapter.

(b) *The person must be taken before a magistrate who:*

(1) has jurisdiction of the offense;

(2) is in the county in which the offense charged is alleged to have been committed; and

(3) is nearest or most accessible to the place of arrest.

## 6.5 POLICE MIS-DIRECTION

Police officers in Texas are trained and directed to take persons arrested, with or without a warrant, directly to jail where they are booked and held until someone claiming to be a magistrate will hold an abomination called a "Magistration."

### 6.5.1   Police Officer Directive

When a police officer has it made known to him/her that a crime has been committed that officer is directed by **Texas Code of Criminal Procedure 2.13(a)(3)** as follows:

**Art. 2.13. DUTIES AND POWERS**. *(b) The officer shall:*

(3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

### 6.5.2   Prosecuting Officer Directive

Prosecuting attorneys are directed by **Texas Code of Criminal Procedure 2.05** as follows:

**Art. 2.05. WHEN COMPLAINT IS MADE**. *If the offense be a misdemeanor, the attorney shall forthwith prepare an information based upon such complaint and file the same in the court having jurisdiction; provided, that in counties having no county attorney, misdemeanor cases may be tried upon complaint alone, without an information, provided, however, in counties having one or more criminal district courts an information must be filed in each misdemeanor case. If the offense be a felony, he shall forthwith file the complaint with a magistrate of the county.*

By the following, we will show how the above reference to prosecution by information alone is unconstitutional and that all complaints must be presented to some magistrate or the trial court cannot accrue jurisdiction.

### 6.5.3    Magistrates Ignore Statutory Mandate

Magistrates were apparently instructed to ignore the mandate contained **Texas Code of Criminal Procedure 15.09 supra**.

Plaintiffs will show, by the facts alleged below, that magistrates across Texas, from the highest to the lowest, routinely ignore their duty when it comes to responding to their Constitutional masters.

### 6.5.4    Must Issue Warrant

In Texas, unlike some other states, when a criminal complaint is presented to a magistrate, the magistrate is commanded to issue a warrant forthwith.  There is nothing in Texas law to indicate the Legislature intended magistrates to hold an examining trial ex parte, with only the accuser present.  It was clearly intended that the examination into the sufficiency of the allegation, beyond the requirements of **Texas Code of Criminal Procedure 15.05** pre-requisites, only be held when both parties were present as will be shown in greater detail below.

### 6.5.5    Remedy Denied

The above had the effect of denying the public access to the remedy contemplated by **Texas Constitution Art 13** which reads as follows:

> **Sec. 1.  FREEDOM AND SOVEREIGNTY OF STATE**.  *Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States.*

### 6.5.6    Cases in Point

As a case in point, Plaintiff Kelton filed a 151 page criminal complaint against Gregory Abbott consequent to his executive orders related to the Covid pandemic.  The complaint was filed with **Supreme Court Chief Justice Nathan Hecht** in his capacity as a magistrate in the State of Texas.    It seemed appropriate in as much as Plaintiff Kelton was filing against the highest official of the Executive Branch of Texas Government, that Plaintiff Kelton file the complaint with the highest level magistrate in the State of Texas and indicated by **Texas Code of Criminal Procedure 2.09** which reads as follows:

> **Art. 2.09.  WHO ARE MAGISTRATES**.  *Each of the following officers is a magistrate within the meaning of this Code:  The **Justices of the Supreme Court**, the judges of the Court of Criminal Appeals, the justices of the Courts of Appeals, the judges of the District Court, the magistrates*

*appointed by the judges of the district courts of Bexar County, Dallas County, or Tarrant County that give preference to criminal cases, the criminal law hearing officers for Harris County appointed under Subchapter L, Chapter 54, Government Code, the criminal law hearing officers for Cameron County appointed under Subchapter BB, Chapter 54, Government Code, the magistrates or associate judges appointed by the judges of the district courts of Lubbock County, Nolan County, or Webb County, the magistrates appointed by the judges of the criminal district courts of Dallas County or Tarrant County, the associate judges appointed by the judges of the district courts and the county courts at law that give preference to criminal cases in Jefferson County, the associate judges appointed by the judges of the district courts and the statutory county courts of Brazos County, Nueces County, or Williamson County, the magistrates appointed by the judges of the district courts and statutory county courts that give preference to criminal cases in Travis County, the criminal magistrates appointed by the Brazoria County Commissioners Court, the criminal magistrates appointed by the Burnet County Commissioners Court, the magistrates appointed by the El Paso Council of Judges, the county judges, the judges of the county courts at law, judges of the county criminal courts, the judges of statutory probate courts, the associate judges appointed by the judges of the statutory probate courts under Chapter 54A, Government Code, the associate judges appointed by the judge of a district court under Chapter 54A, Government Code, the magistrates appointed under Subchapter JJ, Chapter 54, Government Code, the magistrates appointed by the Collin County Commissioners Court, the magistrates appointed by the Fort Bend County Commissioners Court, the justices of the peace, and the mayors and recorders and the judges of the municipal courts of incorporated cities or towns.* **(emphasis added)**

In as much as **Justice Hecht** is the Chief Justice of the Supreme Court, it seemed appropriate. However, **Justice Hecht** did not seem impressed and refused to perform his duty as prescribed by **Texas Code of Criminal Procedure 15.09 supra**.  Subsequently, Plaintiff Kelton filed a criminal complaint against **Justice Hecht** with  the presiding judge of the **Texas Court of Criminal Appeals**,  **Judge Sharon Keller**.  **Judge Keller** also refused to perform her duty under **Texas Code of Criminal Procedure 15.09 supra**.

By the following, Plaintiffs will show how magistrates across Texas engage in an ongoing criminal enterprise whereby they regularly deny citizens access to the courts for redress of criminal grievance in matters of complaints against public officials then regularly prosecute those same citizens in gross violation of the clear letter of the laws of the State of Texas.

### 6.5.7   Wise County

On or around the 15th day of November, 2020, Plaintiff Kelton went to the Wise County Courthouse to file criminal complaints against the County Judge for refusing to act on criminal complaints against Justice Hecht and Judge Keller.  Plaintiff was blocked by bailiffs at the direction of District Judge Brock Smith as Judge Smith did not want to hear Plaintiff Kelton's complaint.

After being threatened with arrest if Plaintiff Kelton attempted to file criminal complaints with Judge Smith's clerk, Plaintiff went to the District Attorney's office and while having a private conversation with the then district attorney, Greg Lowery, Plaintiff Kelton was arrested by Sgt's Riggs and Woods for disorderly conduct on the allegation that Plaintiff Kelton softly said, "Damn" and "SOB."  Plaintiff was within 30 ft of the magistrate Plaintiff came to see and demanded that the bailiffs open the door to the courtroom and take him to the nearest magistrate.

I guess they missed the irony of the situation and took Plaintiff Kelton across town and processed him into the county jail where he spent the night and got bitten on the head by a Brown Recluse spider that was apparently in the blanket they gave him.

It took 6 weeks to get a probable cause statement where Sgt Riggs effectively threw the District Judge under the bus.  Plaintiff Kelton filed a motion to dismiss and the case was dismissed immediately.  Had Plaintiff Kelton been taken before a magistrate, the case would have been dropped immediately.

### 6.5.8   Travis County

Plaintiff Bell was arrested by City of Sunset Valley Police and charged with a class C misdemeanor, cited and released, then spent almost 2 years being ordered to one hearing after another, where with the assistance of Plaintiff Bell's own counsel, the prosecutor tried to coerce Plaintiff Bell into entering a guilty plea.  Eventually the case was dropped for lack of evidence. Had an examining trial been held at the first appearance the case would have been dropped immediately.

### 6.5.9   Defense Counsel Collusion

Plaintiff Bell hired local counsel to assist her in her defense.  She held a reasonable expectation that her counsel would act with good faith and fair dealing.  Instead of helping Plaintiff Bell secure justice, Plaintiff Bell's counsel acted in concert and collusion with the prosecuting attorney in attempting to coerce Plaintiff Bell into giving up her rights and throwing herself on the mercy of a court that, as has been shown, is horribly corrupt.

## 6.6 THE GRAIN OF SAND THAT RELEASED THE BOLDER

The **Texas Court of Criminal Appeals** in concert and collusion with the **Office of Court Administration** develop training for magistrates and police which created this horrible mess we

have in Texas today.  They directed police to arrest people and take them directly to jail where they could be subjected to the abomination called a "Magistration."

### 6.6.1    Magistration Abomination

When a person, who has been arrested, is brought before a magistrate, magistrates have been trained to perform an abomination referred to as a "Magistration."  The term is highlighted in red as, when the term is typed into Microsoft Word, Word puts a red line under it as Word does not recognize it as a legitimate term in the English language.  In point of fact, it is not a proper word and it refers to a set of practices and procedures taught to magistrates by **Texas State University** and various governmental agencies, as approved by the by the **Office of Court Administration** and the **Texas Court of Criminal Appeals**.

### 6.6.2    Statutory Construction Violation

In 1965, the Legislature saw fit to add a subordinate clause to **Texas Code of Criminal Procedure 14.06(a)** which reads as follows:

> *__Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE__. (a)  Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, **or, to provide more expeditiously to the person arrested the warnings described by __Article 15.17__ of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in __Article 15.17__ of this Code. (emphasis added)***

At the same time a sub-paragraph to **Texas Code of Criminal Procedure 15.16**.  as paragraph (b) which reads as follows:

> *__Art. 15.16.  HOW WARRANT IS EXECUTED__.*
>
> *(b)  Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county **other** than the county of arrest.*

### 6.6.3    Objective Reasonableness

In the interest of being objectively reasonable, on careful examination of the corpus juris (body of Texas law), this addition could only refer to a person arrested near a county line.  In Heath v. Boyd the court is clear in that a person arrested is to be taken directly to the nearest magistrate as follows:

*Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd. There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by tele-phone as to what to do, in the face of a plain statutory command as to [\*\*\*13] what must be done in all cases of arrest without warrant. Art. 217, C.C.P., 1925, pro-vides, "I each case enumerated in this chapter, the per-son making the arrest shall immediately take the person arrested \* \* before the nearest magistrate where the ar-rest was made without an order." Substantially the same requirement appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925. Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official. Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon. If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson. He was under a positive duty immediately to seek a magistrate. That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities. Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [\*\*\*14] al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.); [\*\*218] Karner et al v. Stump (Civ. App.), 34 S.W. 656; Petty v. Morgan et al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31*

### 6.6.4   Nearest Magistrate

Where Boyd arrested Heath and did not take him to the nearest magistrate, Boyd was found liable. Had the nearest magistrate been in another county, this created a question: Can the arresting officer exit the county of jurisdiction in order to seek the nearest magistrate?

The above addition to the code answers this question by authorizing the arresting officer to take the accused to any county "other" than the county of jurisdiction if that magistrate is closer.   In that instance, and only that instance, the out of county magistrate could administer the warnings in **Texas Code of Criminal Procedure 15.17.**   Then, when the person was returned to the county of original jurisdiction, a proper examining trial must be held.

### 6.6.5   High Court Mis-interpretation

In 1970, the courts ruled that a person only had a right to an examining trial in a felony case. This was based on a bastardized reading of **Texas Code of Criminal Procedure 16.01** which reads as follows:

***Art. 16.01. EXAMINING TRIAL.** When the accused has been brought before a magistrate for an examining trial that officer shall proceed to examine into the truth of the accusation made, allowing the accused, however, sufficient time to procure counsel. In a proper case, the magistrate may appoint counsel to represent an accused in such examining trial only, to be compensated as otherwise provided in this Code. **The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine***

> *the amount or sufficiency of bail, if a bailable case.  If the accused has been transferred for criminal prosecution after a hearing under Section 54.02, Family Code, the accused may be granted an examining trial at the discretion of the court. (emphasis added)*

The courts somehow construed from the above that a citizen only had a right to an examining trial in the matter of a felony.

## 6.7 NO RIGHT TO EXAMINING TRIAL

Somehow the courts came to the conclusions that an examining trial was a matter or "right."  It is no such thing.  All public officials are commanded by the Texas Constitution to ensure the due course of the laws of the State of Texas.  The laws of Texas command, to include **Texas Code of Criminal Procedure 14.06**, and **15.16** as well as **Texas Transportation Code 345.002**, require every person who makes an arrest, with or without a warrant, to take the accused directly to the nearest magistrate and the magistrate is commanded by **Texas Code of Criminal Procedure 2.11** to convene an examining court.  Examining courts are held under **Texas Code of Criminal Procedure Chapter 16 supra**.

### 6.7.1   Statutory Prescription

This is not about "rights" granted to the people.  This is about a statutory prescription in the form of a commandment to public officials which they bound themselves to when they entered into a contract with the state by swearing on their oath they would support the Constitution and uphold the laws of the State of Texas.

The courts speak to "rights" as if they are some sort of gift granted to the people by the Constitution.  That is nonsense.  **The Texas Constitution, in Article I** grants the people nothing. The Texas Constitution, by said article, placed a contractual covenant on public officials and commands them to provide an examining trial on arrest with or without a warrant, **Barker v Wingo** notwithstanding.

There is nothing in Texas Legislative history which gives rise to the notion that a  public official may ignore the clear mandate of the Texas Constitution unless a citizen demand that they abide by their sworn oath.  Such a consideration would render the oath and Constitution of little, if any, force or effect.

### 6.7.2   Constitutional Commandments On Demand

The courts have ruled that a citizen must demand their right to an examining trial.  Plaintiffs will show this to be utter nonsense.  Public officials are commanded to hold an examining trial in the due course of the laws of the State of Texas.  This is not a right granted to the people.  Citizens do not have a right to be arrested, to be thrown in jail, to be prosecuted or to an examining trial.  An examining trial is a statutory prescription which goes to the due course of the laws and the due course of the law is something the people do have a right to.  Plaintiffs assert and allege, the laws apply without regard to the wants or wishes of the accused.  The police and public officials are commanded to take each arrested person directly to "some magistrate" whether the person wants to be brought before a magistrate or not.

The courts have ruled that a citizen may waive an examining trial.  There is nothing in statutory law that could give a reasonable person of ordinary prudence reason to believe that the Legislature only intended the law to have effect if the citizen demanded it or that Constitutional provisions could be waived by anyone.  Such a notion opens the door to horrendous abuse.

### 6.7.3   Statutory Construction Act

Because of the above, prosecutors started interpreting **Texas Code of Criminal Procedure 14.06(a)** and **Texas Code of Criminal Procedure 15.16(b)** to mean they could simply ignore **Chapter 16 of the Texas Code of Criminal Procedure**.  The verbiage of the statutory adjustments were not as clear as they might have been and prosecuting attorneys, being lawyers, did what lawyers tend to do.  They word-crafted the meanings and used them to completely do away with the due course of the laws in the state of Texas which had secondary effects no one foresaw, the mass incarceration crisis which is in the process of bankrupting Texas counties.

The above treatment interpreted a statute in such a way that it had the effect of nullifying **Texas Code of Criminal Procedure Chapter 16**.  According to the **Texas Code Construction Act at 311.021** the intent of statutes must be construed as follows:

> ### *Sec. 311.021.  INTENTION IN ENACTMENT OF STATUTES*.  *In enacting a statute, it is presumed that:*
>
> *(1)  compliance with the constitutions of this state and the United States is intended;*
>
> *(2)  the entire statute is intended to be effective;*
>
> *(3)  a just and reasonable result is intended;*

*(4)  a result feasible of execution is intended;  and*

*(5)  public interest is favored over any private interest.*

As a result of shyster word crafting, Texas Criminal Justice has been converted into a street gang as the term is defined by **Texas Code of Criminal Procedure 71.01(d)** which reads as follows:

> ***Sec. 71.01.  DEFINITIONS.  In this chapter,***
>
> *(d)  "Criminal street gang" means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.*

### 6.7.4   Constitutional Speedy Trial Trashed

The speedy trial act was ruled unconstitutional on technical grounds that had little or nothing to do with the Constitutional commandment that public officials accord any accused in a speedy trial.  Once the act was overturned prosecutors treated the Constitutional commandment as if it no longer existed and they were free to hold people as long as needed to force a plea agreement from them.

> *The Government errs in arguing that the Speedy Trial Clause does not significantly protect a defendant's interest in fair adjudication. United States v. Marion, 404 U.S. 307, 320-323;*

." On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him. "[T]he essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10 (1959).  **United States v. Marion, 404 U.S. 307, 313 (1971)**

In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim. Dillingham v. United States, 423 U.S. 64 (1975). Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, see United States v. Lovasco, 431 U.S. 783, 788-789 (1977), or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.  **United States v. MacDonald, 456 U.S. 1, 7 (1982)**

The Court has found that when no indictment is outstanding, only the " actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment." United States v. Marion, 404 U.S. 307, 320 (1971) (emphasis added); see MacDonald, supra, at 9. As we stated in MacDonald: "The speedy trial guarantee is designed to minimize

the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." 456 U.S., at 8.  **United States v. Loud Hawk, 474 U.S. 302, 310-11 (1986)**

> *Nor does Doggett's failure to cite any specifically demonstrable prejudice doom his claim, since excessive delay can compromise a trial's reliability in unidentifiable ways. Presumptive prejudice is part of the mix of relevant Barker factors, and increases in importance with the length of the delay. Here, the Government's egregious persistence in failing to prosecute Doggett is sufficient to warrant granting relief. The negligence caused delay six times as long as that generally deemed sufficient to trigger judicial review, and the presumption of prejudice is neither extenuated, as by Doggett's acquiescence, nor persuasively rebutted. Pp. 651-658.* **Doggett v. United States, 505 U.S. 647, (1992).**

In the instant case, Plaintiff Bell had a class C misdemeanor held over her head for two years because she would not be strong-armed into entering a no contest plea.  Finally, the case was dismissed for lack of evidence.  Had an examining trial been timely held, the lack of evidence would have been apparent to any magistrate and the case would have been dismissed, immediately.

> *." On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him. "[T]he essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10 (1959).* **United States v. Marion, 404 U.S. 307, 313 (1971)**

## 6.8 INTENT OF THE TEXAS LEGISLATURE

While that may be the case in the United States generally, in Texas the Legislature stated specifically what it considered a reasonable delay in the abstract contained in Senate Bill 1043. The abstract of the bill reads as follows:

> *IN DETERMINING WHETHER A DELAY AFTER ARREST HAS VIOLATED A DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHT TO A SPEEDY TRIAL, THE U.S. SUPREME COURT HAS ARTICULATED A BALANCING TEST. FROM THE DECISION IN BARKER V. WINGO (1972), COURTS MUST LOOK AT THE LENGTH OF THE DELAY, THE REASON FOR THE DELAY, THE DEFENDANT'S ASSERTION OF HIS RIGHT, AND PREJUDICE TO THE DEFENDANT. UNDER THE TEXAS SPEEDY TRIAL ACT THERE IS NO REQUIREMENT OF A SHOWING OF PREJUDICE, AND ALTHOUGH A MOTION FOR DISCHARGE MUST BE MADE BEFORE TRIAL, **THE INTERVAL WHICH WILL SHIFT TO THE PROSECUTOR THE BURDEN JUSTIFYING THE DELAY IS MUCH SHORTER THAN THE CONSTITUTIONAL THRESHOLD OF 1 YEAR. ALL FELONIES MUST BE BROUGHT TO TRIAL WITHIN 120 DAYS OF THE COMMENCEMENT OF THE CRIMINAL ACTION. IF A MISDEMEANOR IS PUNISHABLE BY IMPRISONMENT FOR MORE THAN 180 DAYS, THE STATE MUST BE READY***

*WITHIN 90 DAYS OF THE COMMENCEMENT OF THE PROSECUTION; IF THE PUNISHMENT IS LESS THAN 180 DAYS THE STATE HAS ONLY 60 DAYS TO PREPARE. IF THE OFFENSE IS PUNISHABLE BY FINE ONLY, THE PROSECUTOR HAS A 30 DAY PERIOD TO BRING ACTION. THE LAW IS INTENDED NOT ONLY TO PROTECT DEFENDANT'S RIGHTS, BUT ALSO TO REDUCE THE PROBLEM OF OVERCROWDED JAILS. PROBLEMS WITH THE STATUTE CENTER AROUND THE NUMEROUS EXCEPTIONS TO THE TIME LIMITS, INCLUDING REASONABLE DELAYS WHILE THE STATE OBTAINS EVIDENCE. ALTHOUGH THERE ARE WAYS FOR COURTS TO EXCLUDE TOO MUCH TIME, AND FOR PROSECUTORS TO SEEK UNJUSTIFIED EXCLUSIONS, THIS STATUTE SHOULD ENCOURAGE A MORE REASONALBE FLOW OF CASES. APPENDED MATERIALS INCLUDE THE FORM FOR DEFENDANT'S MOTION FOR DISCHARGE UNDER THE ACT. FOOTNOTES ARE PROVIDED. (TWK).* **(Emphasis Added)**

## 6.9 SPEEDY TRIAL UNCONSTITUTIONAL

The State, in Fred **MESHELL, Appellant, v. The STATE of Texas, Appellee. No. 1339-85** overturned the Speedy Trial Act on the following grounds:

> *The State would show that the caption of said bill [Acts 1977, 65th Leg., Ch. 787, pg. 1970] is defective in that it does not and did not contain sufficient information as to inform members of the Legislature as to its content and therefore violates the caption requirement and Art. III, Sec. 35 of The Texas Constitution.*
>
> *The State would further show that the Texas Speedy Trial Act is a violation of the separation of powers doctrine, Art. II, Sec. 1, and also is a violation of The Texas Constitution, Art. V, Sec. 8, Art. V, Sec. 16, Art. V, Sec. 19, and any other applicable provisions of the Texas Constitution.*

While the act itself was declared unconstitutional, it was so declared on grounds that did not invalidate the clearly stated Legislative intent that trials must be held within specifically stated time limits. This is as clear a statement of Legislative intent as can be had.

## 6.10   LEGISLATIVE DEFINITION REMAINS

The intent of the Legislature in the preamble to the bill, as quoted above, stated the clear intent of the Legislature as to the amount of delay that would constitute a constitutional violation of the right to a speedy trial. Police and prosecutors in the State of Texas have taken the fact that the Speedy Trial Act was overturned as license to violate the Constitutional right to a speedy trial and have used that to create a police state in Texas that has led to our current mass incarceration issue that is decimating the Texas Economy.

### 6.10.1  Prosecutor Coup

The above resulted in a situation to where prosecutors were able to take control of the prosecutorial process. Without examining trials, prosecutors were at liberty to prosecute anyone and everyone. Consequently, prosecutors in Texas no longer prosecute cases. They simply harangue and harass the accused until they take a deal. The police were allowed to arrest anyone

for any reason with no concern for the right of things, or the rule of law, as the accused almost never made it to court. Every step in the prosecutorial process was carefully crafted to force anyone accused of crime to take a deal, without regard to the sufficiency of the charges against them. As a result, at present in Texas, the average conviction rate for all crimes, across the board, is 99.6%. We should be ashamed of ourselves.

### 6.10.2  Policing Persecution With Impunity

This has led the police to absolute impunity when making arrests. At this point, a police officer can arrest anyone for any reason and the arrest will never be questioned. Neither the prosecutor nor defense counsel care if the person is guilty or innocent. Prosecutors know, if they delay justice long enough and put enough pressure on the accused, they will take a deal. Defense counsel knows this as well and they need only delay and do nothing as the prosecutor will secure a deal. With the magistrate's neutral judgment and probable cause determinations eliminated, the police set loose to hound the public to the point the public is rising up against them.

Probable cause determinations were a mainstay of proper juris-prudence for the last 800 years, since the original signing of the **Magna Carta Libertatum in 1215**, then prosecutors, through **Texas State University** and **the Texas Court of Criminal Appeals**, adopted training procedures which virtually eliminated the due course of the laws in Texas, rendered Texas Code of Criminal Procedure Chapter 16 void, and set the police hounds upon us.

### 6.10.3  No Indictment of Police

The above should not be construed as an indictment of the police. They are not expected to be lawyers. They are required to follow policy. The policies put before police forced them to horribly mistreat the public and to justify their existence by making multiple arrests. So, whether they had cause or not, they would justify their existence as they knew they could arrest anyone at any time with relative impunity, with or without cause.

Once the perception of persecution was established, it made no difference if the police were exceptionally professional or not, every act was viewed in the worst light which has led to nationwide protests and de-funding of police.

### 6.10.4  Crucify them All Equally

In Texas, with a conviction rate of 99.6% you might say that the criminal justice system, if not fair, is at least equal as they crucify everyone equally.  If you are charged with a crime in Texas that is punishable by imprisonment, you will be arrested and brought before a magistrate. However, the magistrate will not perform an examination into the sufficiency of the allegation. The magistrate will simply tell you what you are charged with and explain how you have a right to an examining trial while s/he is in the process of denying you one.  S/he will then set bail and remand you to the jail.

#### 6.10.4.1    Make Bail

If you are able to make bail, you will be called into court every month or two and offered a deal. This process will be continued until you take a deal.  The prosecution has no concern about guilt or innocence and has no reason to care.  They have a near perfect conviction rate and no one is screaming to high heaven.  Well, maybe a few try, but they will simply wind up back in jail on a higher bond until they can't pay it.  If you finally make it to trial the courts can be expected to rule against you out of hand at every turn as you are interrupting their golf schedule.

#### 6.10.4.2    Assistance of Counsel

If you have assistance of counsel, the assistance they give will not be to you.  It will be to the prosecution.  Your lawyer will not dare do anything on your behalf as they will risk the ire of the system and know the courts will be harsher on their next client in retribution.  Well, that is the rationalization they give for doing nothing.  Defense counsel profits as they get paid to do nothing but help coerce the accused into taking a plea deal.

### 6.10.5  Inferior Court Fraud

In Texas there are approximately 9 million criminal cases filed each year in a state of 29 million. That is almost 1 in 3 people that are forced before these courts each year.  Of those 9 million, 7 million are for traffic issues, class C misdemeanor charges which bring them before the inferior courts of this state.

#### 6.10.5.1    Retribution and Retaliation

It is ironic that the lowest level courts in Texas, under this oppressive criminal enterprise, seem to have set themselves apart from learned judges and seem on a campaign to terrorize the public and demonstrate to them that any attempt to stand up for themselves and express the Constitution

or any concept of a just judicial system will be met with the most vile and oppressive retribution. The inferior courts in Texas have lived up to their moniker and have set the police on the public like a pack of wolves.

### 6.10.5.2    *You Will Take A Deal or Else*

Of the 7 million traffic tickets filed annually in Texas, 73% of the people simply pay the fines. Most likely, they are the 1/3 of the public who have not been charged with a crime before and still think they can find justice in Texas courts.  Of the 27% who express their innocence, 99% eventually are coerced into taking a deal as, at the first hearing, instead of the judge holding an examining trial, the judge will force the accused to meet with the prosecutor whose job it is to get the accused to talk a deal.  If the accused refuses, they will be forced to return over and over until they take a deal.

### 6.10.5.3    *The Instant Case as Case in Point*

In the instant case, the police arrested Plaintiff Bell and were required to take her directly to the nearest magistrate and explain themselves.  In as much as the case was eventually dismissed for lack of evidence, had they taken Plaintiff Bell to the nearest magistrate she would have been released from all charges, immediately.  Instead, it was made very clear to Plaintiff Bell that any attempt to stand up to an oppressive court would be met with a total disregard for the right of things and the rule of law, and she would be subjected to repeated court hearings and relentless pressure by the prosecuting attorney, and her own lawyer to simply take a plea.

### 6.10.5.4    *Learned Counsel Collusion*

Plaintiff Bell secured learned counsel, Sam Bassett and Sara Donovan, to act in her defense. Instead of actively adjudicating Plaintiff's rights, Defense counsel repeatedly advised Plaintiff Bell to take a plea bargain.  Plaintiff Bell filed a challenge to the subject matter jurisdiction of the court and directed Defense Counsel to adequately adjudicate the legal issues brought in the pleading.  Defense Counsel refused to have the motion set for hearing and, by so doing, denied Plaintiff Bell in her right to an adequate defense in the case. Instead of adjudicating on behalf of their client, Bassett and Donovan withdrew from the case because their client did not want to accept a plea deal.

In the instant case, Plaintiff Bell paid approximately $6,000 for a lawyer to represent her in a class C misdemeanor as she still had a remanent of faith in the criminal justice system. What she got for her $6,000 learned counsel was a partner working with the criminal cabal.

### 6.10.5.5   *Criminal Justice as a Money Mill*

With 7 million class C misdemeanors filed each year and 99.6% being summarily adjudged guilty or being forced into a deal, with fines on the order of $300 each, the traffic courts are extorting from the public in excess of $2 billion annually for class C misdemeanors alone. The above can only happen in the absence of a speedy trial and a proper examining trial.

# 7   POINTS AND AUTHORITIES

The **4th amendment to the United States Constitution** guarantees citizens of the United States in the due course of the laws as follows:

> *All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

## 7.1 RIGHT TO PROBABLE CAUSE DETERMINATION

Plaintiff Bell was arrested without cause and after eighteen months and numerous appearances at court, the charge was dropped for "lack of evidence." "Lack of Evidence?" Are you kidding me? Eighteen months of Plaintiff's life was disrupted, she was harassed and defamed during a school board election race, had to pay thousands to a lawyer and it was dropped for "lack of evidence." The absurdity of this should not be lost on a jury of Plaintiff's peers.

### 7.1.1   800 Years of Service

The right to a probable cause determination in the matter of an arrest is fundamental to an ordered society. This prescription has been in law for some 800 years, since the signing of the **Magna Carta Libratum in 1215 A.D.,** and has held us all in good stead until the **Texas Court of Criminal Appeals** took it upon itself to completely disrupt the corpus juris by developing training for magistrates in accordance with **Texas Code of Criminal Procedure 17.024** wherein they trained magistrates to hold Magistrations, instead of examining trials.

### 7.1.2    Duties Upon Arrest

The Sheriff is charged with being the conservator of the peace for the county as stipulated by **Texas Code of Criminal Procedure 2.17** which reads as follows:

> *Art. 2.17. CONSERVATOR OF THE PEACE. Each sheriff shall be a conservator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial. He shall quell and suppress all assaults and batteries, affrays, insurrections and unlawful assemblies. He shall apprehend and commit to jail all offenders, until an examination or trial can be had.*

The court will take judicial notice of the above requirement to take the accused before the proper court for an examining trail.

### 7.1.3    Procedural Due Process

Petitioner moves this court to affirm the clear black letter of Texas law as laid down in **Texas Code of Criminal Procedure 14.06(a)** which reads as follows:

> *Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.*

and **Texas Code of Criminal Procedure 15.16** which reads as follows:

> *Art. 15.16. HOW WARRANT IS EXECUTED. (a) The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant, if the magistrate is in the same county where the person is arrested. If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.*

In all cases of arrest, an accused must be taken before the nearest magistrate.

### 7.1.4    No Examining Trial in Misdemeanor Nonsense

As will be addressed in more detail below, the courts have held, in the case of a misdemeanor, a citizen does not have the right to an examining trial. Plaintiffs will demonstrate below that no citizen has been granted the right to an examining trial. Neither does a citizen have a right to be cited for an offense, be arrested, taken to jail, or prosecuted. An examining trial is a statutory prescription wherein police are commanded to take persons they arrest directly to the nearest magistrate and the magistrate is commanded to convene an examining court. These are statutory

prescriptions where officials are commanded to do certain things which go to the due course of law.

When a person is arrested, with or without a warrant, the arresting officer is commanded to take the person directly to the nearest magistrate. The only power the magistrate has in this circumstance is to hold an examining trial in accordance with **Chapter 16 Texas Code of Criminal Procedure**.

While the accused may not have a statutory right to an examining trial, Plaintiffs allege and move the court to rule that, the accused does have the right to a reasonable expectation of the due course of the laws and is subject to harm per se when the same is denied.

### 7.1.5   Article 15.17 Confusion

Starting around 1965 the Legislature saw fit to ensure that a person who was arrested would be taken directly to the nearest magistrate, even if the arrest was not in the county of original jurisdiction. They added a subordinate clause to **Texas Code of Criminal Procedure 14.06(a)** which reads as follows:

> *Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, **or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code. Emphasis added.***

There is a similar addition to Texas Code of Criminal Procedure 15.16 where section (b) was added which reads as follows:

> *Art. 15.16.  HOW WARRANT IS EXECUTED.*
>
> *(b) Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county other than the county of arrest.*

### 7.1.6   Article 15.17 Warnings Only

The above additions to **Articles 14.06** and **15.16** authorize the taking of a person to the nearest magistrate, even if that magistrate is in a county other than the county of original jurisdiction. While the magistrate could hold a proper examining trial at this point, the Legislature offered an

alternative to a foreign magistrate.  In lieu of a proper examining trial, the foreign magistrate could simply advise the accused of his/her right as listed in **Article 15.17**.  The above referenced alternative method does not authorize the setting of bail or any other actions listed in **Article 15.17**.

In this case, in order to provide the rights contained in **Chapter 16**, once the accused was returned to the county of original jurisdiction, there would have to be a proper examining trial in order to get bail set and a determination of probable cause made so that an order could be sent to the trial court providing it with jurisdiction in the case.  There is no other provision in law that would give the trial court jurisdiction in the case.

To interpret the additions to **Articles 14.06** and **15.16** to mean that a magistrate only needs to read the accused his/her rights would have the effect of rendering void **Chapter 16**, Article **17.30** and **17.31** void as well and leave no mechanism to provide a constitutionally valid criminal prosecution.

### 7.1.7    Authority To Hold Evaporates

**Gerstein v. Pugh** recognized that an arrest may be effected without the necessity of a neutral and detached magistrate having found probable cause, but, once the suspect is in custody, a probable cause hearing is constitutionally mandated under the Fourth Amendment to justify further detention:

> *"Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. . . . When the stakes are this high, the detached judgment [165 W.Va. 186] of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein v. Pugh, 420 U.S. 103, (1975) (420 U.S. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65).*

The above speaks to the **4ᵗʰ Amendment to the Federal Constitution**.

> *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon*

*probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

The same provision is contained in the **1ˢᵗ Amendment to the Constitution of the State of Texas at Article 10** which reads as follows:

> *Sec. 10.  **RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS.**  In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.  He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself† and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense. unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penetentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.*

### 7.1.8   Examining Trial Even After Indictment

The Gerstein Court also indicated that an indictment by a grand jury was an alternative means of establishing probable cause which would authorize the arrest and detention of the defendant and satisfy Fourth Amendment standards:

> *"By contrast, . . . an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. Ex parte United States, **287 U.S. 241**, 250, **53 L.Ed. 129**, 131, **77 L.Ed. 283** (1932). See also Giordenello v. United States, **357 U.S. 480**, 487, **78 S.Ct. 1245**, 1250, **2 L.Ed.2d 1503** (1958). The willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution. See United States v. Calandra, **414 U.S. 338**, 342-346, **94 S.Ct. 613**, 617-619, **38 L.Ed.2d 561** (1974)." **Gerstein v. Pugh, 420 U.S. 103, (1975) (420 U.S. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65).***

While the above may be the case in the Federal jurisdiction, this situation was considered by the Ferguson court as follows:

> *"Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. . . ." [ **420 U.S. at 123, 43 L.Ed.2d at 71, 95** S.Ct. at __ ].  **State ex rel. Rowe v. Ferguson, 165 W. Va. 183, 187 (W. Va. 1980) State ex rel. Rowe v. Ferguson, 165 W. Va. 183, 187 (W. Va. 1980)***

In the State of Texas, a true bill cannot be recorded as an indictment until the accused has been arrested.

> *Art. 20A.304.  **PRESENTMENT OF INDICTMENT ENTERED IN RECORD.**  (a)  If the defendant is in custody or under bond at the time the indictment is presented, the fact of the*

> *presentment shall be entered in the court's record, noting briefly the style of the criminal action, the file number of the indictment, and the defendant's name.*
>
> *(b)  If the defendant is not in custody or under bond at the time the indictment is presented, the indictment may not be made public and the entry in the court's record relating to the indictment must be delayed until the capias is served and the defendant is placed in custody or under bond.*

In any arrest, with or without a warrant, the accused must be taken directly to the nearest magistrate for an examining trial see: **Texas Code of Criminal Procedure 14.06 supra** or **15.16 supra**.

### 7.1.9   Indictment Terminates Nothing

The courts ruled in Ballard that an indictment terminates any right to an examining trial.

> *Appellant asserts the trial court erred in failing to grant him an examining trial. Appellant's contention is without merit; the return of an indictment terminates any right to an examining trial. Brown v. State, **475 S.W.2d 938** (Tex.Cr.App. 1971); Harris v. State, **457 S.W.2d 903** (1970), reversed on other grounds, 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (1971); McDonald v. State, **513 S.W.2d 44** (Tex.Cr.App. 1974).*

If the court will read Brown v. State, **475 S.W.2d 938** it will find that Brown does not address indictment before an examining trial.

> *Appellant complains he was denied an examining trial. The record reflects the appellant was brought before Judge Medford for an examining trial on January 17, 1967, and though without counsel at the time, personally waived such examining trial after his rights had been explained to him. The record does not reflect any request subsequent to that time for an examining trial. The return of the indictment on March 2, 1967, terminated any right to an examining trial. Article 16.01, V.A.C.C.P.; Gooden v. State, Tex.Cr.App., **425 S.W.2d 645**; Ash v. State, Tex.Cr.App., **420 S.W.2d 703**; Murphy v. State, Tex.Cr.App., **424 S.W.2d 231**; Bryant v. State, Tex.Cr.App., **423 S.W.2d 320**; Trussell v. State, Tex.Cr.App., **414 S.W.2d 466**; Ward v. State, Tex.Cr.App., **427 S.W.2d 876**; Wallace v. State, Tex.Cr.App., **429 S.W.2d 145**; Scallion v. State, Tex.Cr.App., **433 S.W.2d 438**; Klechka v. State, Tex.Cr.App., **429 S.W.2d 900**, cert. den. 393 U.S. 1044, 89 S.Ct. 672, 21 L.Ed.2d 592; Wilhelm v. State, Tex.Cr.App., **426 S.W.2d 850**; 21A Tex.Digest, Indictment and Information, Sec. 9, 10.1(1); Attorney General's Opinion C — 718 (1966). **Harris v. State, 457 S.W.2d 903, 907 (Tex. Crim. App. 1970)***

What the court fails to address here is that an indictment can only be entered into the court of record after the accused has been arrested and, upon arrest under Texas Code of Criminal Procedure 1406, 15.16, or Texas Transportation Code 543.002 require that the person be brought before the nearest magistrate for an examining trial.  There cannot be an indictment of record until there is an examining trial as with **Harris v. State, 457 S.W.2d 903**  with or without a warrant

### 7.1.10  We See No Error

Here we find a string of cases which all hinge on **Trussell v State**.  This creates an impressive looking string of cases, but on closer inspection we find they are all without substance as **Trussell v State** is without substance.

### 7.1.11  Trussell v State

In tracing the cases which indicate that an indictment terminates the right to an examining trial **Trussell v State** seems to be the first and opines as follows:

> *Appellant cites Art. 16.01 C.C.P. which he would have us construe as depriving the grand jury of authority to return an indictment prior to his being afforded an examining trial.*
>
> *Art. 16.01 reads in part:*

"The accused in any felony case shall have the right to an examining trial Before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case.'

> *We see no error.  **Trussell v. State, 414 S.W.2d 466, 467 (Tex. Crim. App. 1967)***

#### 7.1.11.1    *Ash v State*

Next we go to **Ash v State** which opines as follows:

> *Appellant contends that the trial court erred in overruling his motion to quash the indictment because appellant was not granted an examining trial when such was requested in accordance with Article 16.01, Vernon's Ann.C.C.P. The record reflects that appellant was arrested on the night of May 1, 1966, and an indictment was returned on May 3, 1966. Article 16.01 provides:*
>
> > *"The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case."*
>
> ***Trussell v. State, Tex.Cr.App., 414 S.W.2d 466**, is authority for overruling of appellant's motion to quash the indictment.  **Ash v. State, 420 S.W.2d 703, 705 (Tex. Crim. App. 1967)***

Here Ash uses only **Trussell v State** as its foundation for its ruling.

#### 7.1.11.2    *Murphy v State*

Next we go to **Murphy v State** which opines as follows:

> *Appellant's second ground of error is that he was not furnished an examining trial prior to the return of the indictment in accordance with Article 16.01, Vernon's Ann.C.C.P. **Ash v. State, Tex.Cr.App., 420 S.W.2d 703**, and **Trussell v. State, Tex.Cr.App., 414 S.W.2d 466**, are authority for the rule that the failure to grant an examining trial prior to the return of an indictment does not affect the validity of the indictment.  **Murphy v. State, 424 S.W.2d 231, 232-33 (Tex. Crim. App. 1968)***

Here we have **Murphy v State** citing **Ash v State** citing **Trussell v State** and this goes on.

### 7.1.11.3   *Back to Trussell v State*

The problem with **Trussell v State** is that it appears to say that an indictment trumps an examining trial because we say so.  This does not lend effect to the prohibition contained in **Texas Code of Criminal Procedure 20A.304(b)**.

Plaintiffs allege that an indictment does not eliminate the need for an examining trial as there can be no indictment until the accused has been arrested as per **Texas Code of Criminal Procedure 20A.304(b)** which reads as follows:

> *Art. 20A.304.  PRESENTMENT OF INDICTMENT ENTERED IN RECORD.*
>
> *(b)  If the defendant is not in custody or under bond at the time the indictment is presented, the indictment may not be made public and the entry in the court's record relating to the indictment must be delayed until the capias is served and the defendant is placed in custody or under bond.*

As argued above, the clear letter of the law commands that the State conduct an examining trial subsequent to every arrest.  There is nothing in the letter of the law that would indicate the Legislature intended that an indictment trump an examining trial.  Specifically, the Legislature prevented a true bill vote of a grand jury from becoming an indictment until the person was arrested and an arrest presumed an examining trial.

### 7.1.11.4   *Trussell v State* **Inconsistent With Constitution**

The Constitution of the State of Texas requires an indictment in the case of all misdemeanors and felonies as follows:

> *The County Court shall hold terms as provided by law. Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law.* ***Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; and if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit. A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee.*** *Article V, Section 17 of the Texas Constitution ("County Courts: Terms, Prosecutions, and Juries") Emphasis added.*

Reading the above, in conjunction with **Texas Code of Criminal Procedure 20A.304(b)** renders clear the intent of the legislation and the Constitution.  It is unclear how the courts came to the conclusion that an examining trial can be dispensed with in a misdemeanor or any criminal allegation considering **Article V, Section 17 of the Texas Constitution** in conjunction with **20A.304(b) supra**.  The only reason this prohibition can be in the code is to ensure that there is

an examining trial in all cases where a citizen's liberty is at risk as, the first thing that must statutorily happen after an arrest is an examining trial in accordance with **Texas Code of Criminal Procedure Chapter 16**.

### 7.1.11.5    *Administrative Convenience Notwithstanding*

Plaintiffs realize the requirement of an indictment for misdemeanors may be construed as onerous, time consuming, and downright inconvenient.  Plaintiff suggests that such was the point of the Constitutional Commandment.  Taking a citizen's liberty should not be easy or convenient.  Due to the seemingly minor adjustments toward administrative convenience and adjudicative expediency, the counties in Texas are not paying over $990,000,000 annually for pre-trial incarceration.  Granted, this may serve adjudicative expediency, but it does not serve the public.

While a preliminary hearing may be dispensed with after indictment in the Federal arena, Texas is different.  In Texas, the grand jury brings a true bill, that true bill cannot become an indictment unless the accused has already been arrested as, on every arrest, there must be an examining trial.  Therefore, there is no circumstance where a true bill can be registered by the court clerk as an indictment unless there has been an examining trial.

### 7.1.11.6    *Dispense With Rule of Law*

Prosecutors somehow decided an examining trial could be dispensed with and directed police to take an arrestee, no matter where arrested, directly to jail and process them into the facility, then hold them overnight and bring them before a magistrate the next morning who only reads them their rights in accordance with **Texas Code of Criminal Procedure 15.17**.

The above is the current practice in all jurisdictions in Texas.  At the morning hearing the magistrate will read the person their rights, including the right to an examining trial while denying them an examining trial and the magistrate will then set bond.

## 7.2 BOND AS OPTION / BAIL AS RIGHT

The **Constitution of the State of Texas at Article I Section 11** defined bail as follows:

> *Art. 17.01. DEFINITION OF "BAIL".*  *"Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.*

The court will take judicial notice that the definition of "bail" does not speak to cash in any form but rather it speaks to "security."

### 7.2.1   Probable Cause as Prosecutorial Pre-requisite

The standards and procedures for arrest and detention have been derived from the Fourth Amendment to the US Constitution and its common-law antecedents. See **Cupp v. Murphy, 412 U.S. 291, 294 -295 (1973)**;

> *Nevertheless, the detention of the respondent against his will constituted a seizure of his person, and the Fourth Amendment guarantee of freedom from "unreasonable searches and seizures" is clearly implicated, cf. **United States v. Dionisio, 410 U.S. 1**, **Terry v. Ohio, 392 U.S. 1,19**,. As the Court said in **Davis v. Mississippi, 394 U.S. 721, 726-727**, "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed `arrests' or `investigatory detentions.'"*

### 7.2.2   Standards for Arrest

The standard for arrest is probable cause, defined in terms of facts and circumstances:

> *Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. See **Cupp v. Murphy, 412 U.S. 291, 294-295 (1973)**; **Ex parte Bollman, 4 Cranch 75 (1807)**; **Ex parte Burford, 3 Cranch 448 (1806)**.*
>
> *The standard for arrest is probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." **Beck v. Ohio, 379 U.S. 89, 91 (1964)**. See also **Henry v. United States, 361 U.S. 98 (1959)**; **Brinegar v. United States, 338 U.S. 160, 175-176 (1949)**.*
>
> *This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.*

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Id., at 176.Gerstein v. Pugh, 420 U.S. 103, 112 (1975)

This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.

# 7.3 4TH AMENDMENT PROTECTIONS

To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible. The classic statement of this principle appears in **Johnson v. United States, 333 U.S. 10, 13 -14 (1948)** as follows:

> *"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection* **Gerstein v. Pugh, 420 U.S. 103, 113 supra)** *consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."*

See also **Terry v. Ohio, 392 U.S. 1, 20 -22 (1968).**

> *The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Cf.* **Carroll v. United States, 267 U.S. 132 (1925); Beck v. Ohio, 379 U.S. 89, 96-97 (1964).** *Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e. g.,* **Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253 (1960); Henry v. United States, 361 U.S. 98 (1959).** *And simple "good faith on the part of the arresting officer is not enough.'. . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. Ohio, supra, at 97.*

## 7.3.1 Maximum Protection of Individual Rights

> *Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible,* **Beck v. Ohio, supra, at 96; Wong Sun v. United States, 371 U.S. 471, 479 -482 (1963),** *it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See* **Ker v. California, 374 U.S. 23 (1963); Draper v. United States, 358 U.S. 307 (1959); Trupiano v. United States, 334 U.S. 699, 705 (1948).** *Quoted from* **Terry v. Ohio, 392 U.S. 1, 20 -22 (1968).**

## 7.3.2 Point of Fourth Amendment

> *"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." Pp. 13-14. And see* **Chapman v. United States, 365 U.S. 610, 615-616.**

## 7.4 ON SCENE ASSESSMENT

Under this practical compromise, a police officer's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly.

> *Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, see Beck v. Ohio, at 96;*

An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. "Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed." Wong Sun v. United States, 371 U.S. 471, 479-480. Yet even in cases where warrants were obtained, the Court has held that the Constitution demands a greater showing of probable cause than can be found in the present record. Aguilar v. Texas, 378 U.S. 108; Giordenello v. United States, 357 U.S. 480; Nathanson v. United States, 290 U.S. 41.

> *Wong Sun v. United States, 371 U.S. 471, 479-482 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See Ker v. California, 374 U.S. 23 (1963); Draper v. United States, 358 U.S. 307 (1959; Trupiano v. United States, 334 U.S. 699, 705 (1948).*

### 7.4.1   The Courts Granted an Inch

In order to facilitate effective law enforcement, a certain amount of leeway was granted to the police but that "certain amount" was statutorily limited.

> *Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases*

> *significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., **18 U. S. C. 3146 (a) (2, (5).** When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish Respondent meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. **GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602***

The police spend their time arresting people and can forget how devastating and invasive their actions can be.  The police, need the protection of constant vigilance on our parts to ensure their experience and familiarity does not breed contempt.  When a police officer is taking actions which can so dramatically affect the life of a citizen, they must be cautioned to exercise constant vigilance themselves.

### 7.4.2   Constitutional Consequences of Pre-trial Confinement

The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See **R. Goldfarb, Ransom 32-91 (1965)**; L. Katz, Justice Is the Crime 51-62 (1972).

> *Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." [**420 U.S. at 114, 95 S. Ct. at 863, 43 L. Ed. 2d at 65**], See e. g., **18 U.S.C. 3146 (a) (2), (5).***

In the instant case, Plaintiff Bell was defamed and harassed, impairing some of her relationships and forced to stop campaigning because of the negative effect of the intentional and wrongful publicity she received as the result of the unlawful arrest made without evidence of a crime.

### 7.4.3   Historical Support

This result has historical support in the common law that has guided interpretation of the Fourth Amendment. *See **Carroll v. United States, 267 U.S. 132, 149 (1925)***. At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. The justice of the peace would "examine" the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was reason to believe a crime had occurred, the suspect would be committed to jail or bailed pending trial. If

not, he would be discharged from custody. 1 M. Hale, supra, at 583-586; 2 W. Hawkins, supra, at 116-119; 1 J. Stephen, History of the Criminal Law of England 233 (1883). *See Gerstein v. Pugh, 420 U.S. 103, 115 supra*).

### 7.4.4   Habeas Corpus Available

The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment, *see Ex parte Bollman, supra*; *Ex parte Burford, 3 Cranch 448 (1806).*; *United States v. Hamilton, 3 Dall. 17 (1795)*, and there are indications that the Framers of the Bill of Rights regarded it as a model for a "reasonable" seizure. *See Draper v. United States, 358 U.S., at 317 -320 (DOUGLAS, J., dissenting).*

### 7.4.5   Arrest for On-sight Offense

Where a person, hereinafter referred to as "The accused," is arrested for an alleged on-sight offense, the person making the arrest shall take the person directly to the nearest magistrate by the most direct route in accordance with **Texas Code of Criminal Procedure 14.06(a)supra.**

Without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 7.4.6   Arrest on Warrant

Where a person is arrested on an existing warrant, the person making the arrest is commanded by **Texas Code of Criminal Article 15.16** which reads as follows:

> *Art. 15.16.  HOW WARRANT IS EXECUTED*. *(a)  The officer or person executing a warrant of arrest shall without unnecessary delay take the person or have him taken before the magistrate who issued the warrant or before the magistrate named in the warrant if the magistrate is in the same county where the person is arrested.  If the issuing or named magistrate is in another county, the person arrested shall without unnecessary delay be taken before some magistrate in the county in which he was arrested.*
>
> *(b)  Notwithstanding Subsection (a), to provide more expeditiously to the person arrested the warnings described by Article 15.17, the officer or person executing the arrest warrant may as permitted by that article take the person arrested before a magistrate in a county other than the county of arrest.*

As above, without regard to the rights of the individual, the above is a statutory duty placed upon the person making the arrest.

### 7.4.7   Traffic Arrest

Even if a person were to be arrested for a traffic violation the arresting officer is directed to take the person arrested directly to the nearest magistrate under **Texas Transportation Code 543.002** which reads as follows:

> _**Sec. 543.002**. PERSON ARRESTED TO BE TAKEN BEFORE MAGISTRATE. (a) A person arrested for a violation of this subtitle punishable as a misdemeanor shall be immediately taken before a magistrate if:_

(1) the person is arrested on a charge of failure to stop in the event of an accident causing damage to property; or

(2) the person demands an immediate appearance before a magistrate or refuses to make a written promise to appear in court as provided by this subchapter.

> _(b) The person must be taken before a magistrate who:_

(1) has jurisdiction of the offense;

(2) is in the county in which the offense charged is alleged to have been committed; and

(3) is nearest or most accessible to the place of arrest.

By the above, the duty of an arresting officer is statutory. There is nothing in the letter of the law to indicate that Legislature intended the requirement only apply when demanded by the accused. It is the assertion of Plaintiffs that statutory mandates are self-actualizing and do not need to be invoked by demand of a citizen. It is the further assertion that a citizen may not voluntarily absolve a public official from performing a statutorily mandated duty, any ruling to the contrary notwithstanding.


## 7.5 MAGISTRATE JURISDICTION AND DUTY

Under Texas law, if a person is arrested, with or without a warrant, the arresting officer is commanded to take the person directly to the nearest magistrate (see **Texas Code of Criminal Procedure 14.06(a)supra, Texas Code of Criminal Article 15.16supra, Texas Transportation Code 543.002supra**). When a person is brought before a magistrate, the duty of the magistrate is clear as follows:

### 7.5.1   Keep the Peace.

It is the duty of every magistrate to keep the peace as stipulated by **Texas Code of Criminal Procedure Article 2.10** which reads as follows:

> ***Art. 2.10. DUTY OF MAGISTRATES.*** *It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means; to issue all process intended to aid in preventing and suppressing crime; to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment.*

This issue has been addressed in **Texas Attorney Opinion jh0500** as follows:

> ***The Honorable Gus L. Lanier page 2 (H-500)***
>
> *A justice of the peace, in addition to having criminal and civil judicial duties imposed by the Constitution and laws of Texas, is a magistrate.* ***Code Crim. Proc. art. 2.09.*** *As such, he is required to perform the duties of a magistrate as set out in* ***article 2.10, Code of Criminal Procedure***:

It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means; to issue all process intended to aid in preventing and suppressing crime; to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment. (Emphasis added).

> *All magistrates are empowered to issue warrants of arrest under the authority of* ***article 15.03, Code of Criminal Procedure*** *which reads in part:*
>
> *A magistrate may issue a warrant of arrest or a summons: . . . .*

2, When any person shall make oath before the magistrate that another has committed some offense against the laws of the State . . . . **Article 15.04 of the Code** further provides: The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense.  **The Honorable Gus L. Lanier page 3 (H-500)**

It is clear that any and all offenses defined by the criminal laws, of Texas, felonies, and misdemeanors of whatever classification, may be made known to any magistrate, including a justice of the peace, by complaint and that any magistrate can issue a warrant of arrest based on such complaint.

### 7.5.2   Must Convene an Examining Court

The method by which the magistrate preserves the peace is by convening an examining court as follows:

> ***Art. 2.11. EXAMINING COURT.*** *When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.*

### 7.5.3   Jurisdiction

By the above, magistrates in the State of Texas are given jurisdiction and duty to convene an examining court when they are presented with a criminal complaint according to **Texas Code of Criminal Procedure 15.03** which reads in pertinent part as follows:

> ***Art. 15.03. MAGISTRATE MAY ISSUE WARRANT OR SUMMONS.*** *(a) A magistrate may issue a warrant of arrest or a summons:*

*1. In any case in which he is by law authorized to order verbally the arrest of an offender;*

*2. When any person shall make oath before the magistrate that another has committed some offense against the laws of the State; ...*

### 7.5.4   Sufficiency of Complaint

A complaint is sufficient to invoke the duty of a magistrate if it meets the requirements of **Texas Code of Criminal Procedure 15.04**  which reads as follows:

*Art. 15.04. COMPLAINT. The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense.*

The duty of a magistrate, when given notice of crime, to convene an examining court is a statutory duty the magistrate may not ignore without violating **Texas Penal Code 39.03 supra.**

### 7.5.5   Must Issue an Order

When an officer takes an arrested person to a magistrate, the magistrate is commanded by law to hold an examining trial and issue an order.  When the arrested person is brought before a magistrate, either in person or by electronic means, the magistrate is then directed to convene an examining court to be held under prescriptions of **Chapter 16 Texas Code of Criminal Procedure**.

After the hearing is had, the magistrate shall issue an order in accordance with **Texas Code of Criminal Procedure Chapter 16.17** which reads as follows:

*Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the Respondent to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

### 7.5.6   17.30 Forward Order to Clerk

Once an order has been issued and the examining trial completed the magistrate is ordered by **Texas Code of Criminal Procedure 17.30** as follows:

*Art. 17.30. SHALL CERTIFY PROCEEDINGS. The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope.  The voluntary statement of the defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.*

The court will take judicial notice that the above statute says "shall," it does not say: may, might, or can if s/he wants to.  The statute is obligatory on the magistrate as, absent such an order in the

public record, the trial court cannot accrue subject matter jurisdiction in the case. This critical requirement is addressed in greater detail below.

17.31 Keep Papers Safe

Under the provisions of **Texas Code of Criminal Procedure 17.31**, the clerk is commanded as follows:

> ***Art. 17.31. DUTY OF CLERKS WHO RECEIVE SUCH PROCEEDINGS.*** *If the proceedings be delivered to a district clerk, he shall keep them safely and deliver the same to the next grand jury. If the proceedings are delivered to a county clerk, he shall without delay deliver them to the district or county attorney of his county.*

A search of the records of any case in Travis, Hays, Victoria, Henderson, Dallas, Tarrant, Randall, Johnson, Wise, Denton, Hill, and most every other county in Texas will reveal that no such records exist in the records of the grand jury or the clerk of the court. The records will be found at the Sheriff's office in violation of **Texas Penal Code 37.10(a)(3)** which reads in pertinent part as follows:

> ***Sec. 37.10. TAMPERING WITH GOVERNMENTAL RECORD.*** *(a) A person commits an offense if he:*

(3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;

### 7.5.7   Constitution on Demand

The courts have held that an accused does not have a right to an examining trial unless they demand same. There is nothing in the black ink letter of the law to indicate or imply that our Constitutional Framers intended the Constitution should only apply on demand. The **Texas Constitution at Art 29** reads as follows:

> *To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.*

The court will further note the statutory requirement to take the accused before a magistrate was not optional in that they included the term "shall." Shall does not mean may, might, or can if they want to and certainly does not mean they only have to follow law if the citizen specifically demand they do so.

### 7.5.8   Magistration

Here we come to the root cause of our current mass incarceration problem.  Prior to 1974 Texas used Vernons Criminal Statutes.  **Vernons Vt.R.Crim.P.3g** reads as follows:

> *(g) Appearance Before a Judicial Officer. A person arrested without a warrant and not released on a citation shall be brought before the nearest available judicial officer without unnecessary delay. The information and affidavit or sworn statement required by Rule 4(a) of these rules shall be filed with or made before the judicial officer when the arrested person is brought before the judicial officer.*

This provision was carried forward in **Texas Code of Criminal Procedure 14.06 supra** with the addition of a subordinate clause which reads as follows:

> *Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE.  (a)  Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, **or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code. Emphasis added.***

Prosecutors and the courts have had a field day with this.  Somehow, prosecutors and some courts have decided that this subordinate clause can be interpreted to eliminate the requirements that the accused be brought before a magistrate and the magistrate was no longer bound by chapter 16 Texas Code of Criminal Procedure but rather, could ignore it and somehow set bond with no determination of probable cause but use the procedure described in Texas Code of Criminal Procedure 15.17 which reads as follows:

> *Art. 15.17. DUTIES OF ARRESTING OFFICER AND MAGISTRATE. (a)  In each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested, take the person arrested or have him taken before some magistrate of the county where the accused was arrested or, to provide more expeditiously to the person arrested the warnings described by this article, before a magistrate in any other county of this state.  The arrested person may be taken before the magistrate in person or the image of the arrested person may be presented to the magistrate by means of a videoconference.  The magistrate shall inform in clear language the person arrested, either in person or through a videoconference, of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial.  The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel.  The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel.  If applicable, the magistrate shall inform the person that the person may file the affidavit described by Article 17.028(f).  If the person does not speak and understand the English language or is deaf, the magistrate shall inform the person in a manner consistent with Articles 38.30 and 38.31, as appropriate.  The magistrate shall ensure that reasonable assistance in completing the necessary*

*forms for requesting appointment of counsel is provided to the person at the same time. If the person arrested is indigent and requests appointment of counsel and if the magistrate is authorized under Article 26.04 to appoint counsel for indigent defendants in the county, the magistrate shall appoint counsel in accordance with Article 1.051. If the magistrate is not authorized to appoint counsel, the magistrate shall without unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel, transmit, or cause to be transmitted to the court or to the courts' designee authorized under Article 26.04 to appoint counsel in the county, the forms requesting the appointment of counsel. The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense and whether the bail decision is subject to Article 17.027, admit the person arrested to bail if allowed by law. A record of the communication between the arrested person and the magistrate shall be made. The record shall be preserved until the earlier of the following dates: (1) the date on which the pretrial hearing ends; or (2) the 91st day after the date on which the record is made if the person is charged with a misdemeanor or the 120th day after the date on which the record is made if the person is charged with a felony. For purposes of this subsection, "videoconference" means a two-way electronic communication of image and sound between the arrested person and the magistrate and includes secure Internet videoconferencing.*

### 7.5.8.1    *15.17 Formatted for Clarity*

If the court finds this difficult to read, join the club. For clarity, Plaintiff has put a new line at each sentence for clarity as follows:

**Art. 15.17. DUTIES OF ARRESTING OFFICER AND MAGISTRATE**. (a)

1) *In each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested, take the person arrested or have him taken before some magistrate of the county where the accused was arrested or, to provide more expeditiously to the person arrested the warnings described by this article, before a magistrate in any other county of this state.*

2) *The arrested person may be taken before the magistrate in person or the image of the arrested person may be presented to the magistrate by means of a videoconference.*

3) *The magistrate shall inform in clear language the person arrested, either in person or through a videoconference, of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial.*

4) *The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel.*

5) *The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel.*

6) *If applicable, the magistrate shall inform the person that the person may file the affidavit described by Article 17.028(f).*

7) *If the person does not speak and understand the English language or is deaf, the magistrate shall inform the person in a manner consistent with Articles 38.30 and 38.31, as appropriate.*

8) *The magistrate shall ensure that reasonable assistance in completing the necessary forms for requesting appointment of counsel is provided to the person at the same time.*

9) *If the person arrested is indigent and requests appointment of counsel and if the magistrate is authorized under Article 26.04 to appoint counsel for indigent defendants in the county, the magistrate shall appoint counsel in accordance with Article 1.051.*

10) *If the magistrate is not authorized to appoint counsel, the magistrate shall without unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel, transmit, or cause to be transmitted to the court or to the courts' designee authorized under Article 26.04 to appoint counsel in the county, the forms requesting the appointment of counsel.*

11) *The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him.*

12) *The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense and whether the bail decision is subject to Article 17.027, admit the person arrested to bail if allowed by law.*

13) *A record of the communication between the arrested person and the magistrate shall be made.*

14) *The record shall be preserved until the earlier of the following dates: (1) the date on which the pretrial hearing ends; or (2) the 91st day after the date on which the record is made if the person is charged with a misdemeanor or the 120th day after the date on which the record is made if the person is charged with a felony.*

15) *For purposes of this subsection, "videoconference" means a two-way electronic communication of image and sound between the arrested person and the magistrate and includes secure Internet videoconferencing.*

For further clarity, Plaintiff has numbered the above sentences.

### *7.5.8.2   Take Notice of Subordinate Clause*

The court will take notice that the above referenced subordinate clause only authorizes the magistrate to advise the accused of his/her rights as follows:

> *, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code. Emphasis added.*

The section of **Article 15.17** supra the subordinate clause is referring to included sub paragraph (1) through (8). The court will take special notice of sub paragraph (3) which reads as follows:

> *The magistrate shall inform in clear language the person arrested, either in person or through a videoconference, of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, **and of his right to have an examining trial. Emphasis added.***

### 7.5.8.3    *Prosecution Needs Probable Cause*

Somehow the courts have decided that an accused no longer had a right to an examining trial if the accusation is of a misdemeanor offense.  This is not in para materia with Texas Constitution **Article 5 Section 17 supra** which, for clarity, is repeated here:

> *Sec. 17.  COUNTY COURT: TERMS, PROSECUTIONS, AND JURIES.  The County Court shall hold terms as provided by law.  Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law.  Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; and if such indictment be quashed in the County, or other inferior court, the person charged, **shall not be discharged if there is probable cause of guilt**, but may be held by such court or magistrate to answer an information or affidavit.  A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee.  Emphasis added.*

A true bill by a grand jury may not be recorded in the court record unless or until the person has been arrested as per **Texas Code of Criminal Procedure 20A.304(b) supra**, repeated here for clarity:

> *Art. 20A.304.  PRESENTMENT OF INDICTMENT ENTERED IN RECORD.*
>
> *(b)  If the defendant is not in custody or under bond at the time the indictment is presented, the indictment may not be made public and the entry in the court's record relating to the indictment must be delayed until the capias is served and the defendant is placed in custody or under bond.*

In **Article 15.17** supra the court must advise the accused of their right to an examining trial but that right is derived from the right to the due course of the law as argued above.  The police and courts are commanded to hold an examining trial so that there is a determination of probable cause before the true bill becomes an indictment of record.  Absent a probable cause determination, if the grand jury declines to indict, the accused must be discharged whereas, in the case of a standing determination of probable cause the accused may still be prosecuted.

The codes, after almost 150 years have been carefully crafted and well honed.  The current practice has made a horrible mess of a fine mosaic.

### 7.5.9    15.17 and Foreign Magistrates

If the provisions in **14.06(a)** and **15.16(b)** which are intended to more expeditiously provide the warnings are to be interpreted in para materia with the corpus juris, it must be read to apply only to a magistrate outside the county of original jurisdiction.  The point of the above addition to the code is unclear as according to **Attorney General Opinion JH500**, any magistrate in Texas may

hold an examining trial under their duty as prescribed by **Article 2.10 supra** to keep the peace in the State of Texas.  If the above is to be read in para materia with the rest of the code it must be read to only apply to the taking of an arrestee to an out of county magistrate with the understanding that, once the accused is returned to the county of original jurisdiction, the accused will be provided a proper examining trial.

### 7.5.10  Government Gone Rogue

The courts in Texas, through a series of bad decisions, have managed to wrestle this republic from the people.  By their mechanizations they have eliminated probable cause determinations in misdemeanor cases and indictments, two primary protections written into Texas law.  The result is this monumental mass incarceration problem which has disenfranchised the public and threatens to bankrupt the counties.

## 7.6 BAIL V BOND

### 7.6.1   When "Bail" May Be Denied

The Texas Constitution addresses when bail may be denied at **Constitution of the State of Texas at Article I Section 11a** which reads as follows:

> *Sec. 11a.  DENIAL OF BAIL AFTER MULTIPLE FELONIES.  (a)  Any person (1) accused of a felony less than capital in this State, who has been theretofore twice convicted of a felony, the second conviction being subsequent to the first, both in point of time of commission of the offense and conviction therefor, (2) accused of a felony less than capital in this State, committed while on bail for a prior felony for which he has been indicted, (3) accused of a felony less than capital in this State involving the use of a deadly weapon after being convicted of a prior felony, or (4) accused of a violent or sexual offense committed while under the supervision of a criminal justice agency of the State or a political subdivision of the State for a prior felony, after a hearing, and upon evidence substantially showing the guilt of the accused of the offense in (1) or (3) above, of the offense committed while on bail in (2) above, or of the offense in (4) above committed while under the supervision of a criminal justice agency of the State or a political subdivision of the State for a prior felony, may be denied bail pending trial, by a district judge in this State, if said order denying bail pending trial is issued within seven calendar days subsequent to the time of incarceration of the accused; provided, however, that if the accused is not accorded a trial upon the accusation under (1) or (3) above, the accusation and indictment used under (2) above, or the accusation or indictment used under (4) above within sixty (60) days from the time of his incarceration upon the accusation, the order denying bail shall be automatically set aside, unless a continuance is obtained upon the motion or request of the accused; provided, further, that the right of appeal to the Court of Criminal Appeals of this State is expressly accorded the accused for a review of any judgment or order made hereunder, and said appeal shall be given preference by the Court of Criminal Appeals.*
>
> *(b)  In this section:*

(1)  "Violent offense" means:

        (A)  murder;

(B) aggravated assault, if the accused used or exhibited a deadly weapon during the commission of the assault;

(C) aggravated kidnapping; or

(D) aggravated robbery.

(2) "Sexual offense" means:

(A) aggravated sexual assault;

(B) sexual assault; or

(C) indecency with a child.

*Sec. 11b. DENIAL OF BAIL FOR VIOLATION OF CONDITION OF RELEASE. Any person who is accused in this state of a felony or an offense involving family violence, who is released on bail pending trial, and whose bail is subsequently revoked or forfeited for a violation of a condition of release may be denied bail pending trial if a judge or magistrate in this state determines by a preponderance of the evidence at a subsequent hearing that the person violated a condition of release related to the safety of a victim of the alleged offense or to the safety of the community.*

*Sec. 11c. DENIAL OF BAIL FOR VIOLATION OF PROTECTIVE ORDER INVOLVING FAMILY VIOLENCE. The legislature by general law may provide that any person who violates an order for emergency protection issued by a judge or magistrate after an arrest for an offense involving family violence or who violates an active protective order rendered by a court in a family violence case, including a temporary ex parte order that has been served on the person, or who engages in conduct that constitutes an offense involving the violation of an order described by this section may be taken into custody and, pending trial or other court proceedings, denied release on bail if following a hearing a judge or magistrate in this state determines by a preponderance of the evidence that the person violated the order or engaged in the conduct constituting the offense.*

The court will take notice that the framers of the Texas Constitution took great pains to specify when "bail" may be denied. Plaintiff finds nothing in the Texas Constitution which authorizes the taking of cash bonds from a citizen as a condition of release.

### 7.6.2   No Bail Setting Outside Statutory Examining Trial

The problem with the above procedure is, there exists no provision for a magistrate to set a bail or bond outside an examining trial. While a trial judge may set bail, this can only happen after there has been an examining trial as there is no other way for a trial judge to accrue jurisdiction except by way of an order under **Texas Code of Criminal Procedure 16.17** which reads as follows:

*Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

This is the case in brief. By the following Plaintiffs will demonstrate in detail how this procedure eviscerates the due course of the laws and eliminates a primary protection intended to prevent precisely the disaster we now face.

## 7.7 DUE COURSE IN AN EXAMINING TRIAL

In order for the court to accrue jurisdiction, there must be an examining trial as a matter of black letter law. This particular requirement has been in law since 1216 A.D. after the original signing of the **Magna Carta Libertatum**. It has served us well for the last 800 years until recently.

# 8   CONSTIUTIONAL SPEEDY TRIAL

Plaintiff Bell was charged with a Class C Misdemeanor for Assault By Contact on April 7, 2021. The court failed to timely bring the instant case to trial and forced Plaintiff Bell into repeated appearances at court for the purpose of meeting with the prosecuting attorney so that the prosecutor could threaten Plaintiff with all the rigors of a criminal prosecution if Plaintiff stood her ground and refused to take a plea arrangement where she would be compelled to plead guilty to a crime the prosecutor knew, or should have known, Plaintiff Bell did not commit.

The prosecuting attorney conspired with Plaintiff's defense counsel and the trial judge to force a false plea from Plaintiff Bell, leaving her with pending criminal charges for eighteen months.

## 8.1   LEGISLATIVE INTENT

While that may be the case in the United States, generally, in Texas the Legislature stated specifically what it considered a reasonable delay in the abstract contained in **Senate Bill 1043 of the 83rd Legislature**. The abstract of the bill reads as follows:

*IN DETERMINING WHETHER A DELAY AFTER ARREST HAS VIOLATED A DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHT TO A SPEEDY TRIAL, THE U.S. SUPREME COURT HAS ARTICULATED A BALANCING TEST. FROM THE DECISION IN BARKER V. WINGO (1972), COURTS MUST LOOK AT THE LENGTH OF THE DELAY, THE REASON FOR THE DELAY, THE DEFENDANT'S ASSERTION OF HIS RIGHT, AND PREJUDICE TO THE DEFENDANT. UNDER THE TEXAS SPEEDY TRIAL ACT THERE IS NO REQUIREMENT OF A SHOWING OF PREJUDIC', AND ALTHOUGH A MOTION FOR DISCHARGE MUST BE MADE BEFORE TRIAL, THE INTERVAL WHICH WILL SHIFT TO THE PROSECUTOR THE BURDEN JUSTIFYING THE DELAY IS MUCH SHORTER THAN THE CONSTITUTIONAL THRESHOLD OF 1 YEAR. ALL FELONIES MUST BE BROUGHT TO TRIAL WITHIN 120 DAYS OF THE COMMENCEMENT OF THE CRIMINAL ACTION. IF A MISDEMEANOR IS PUNISHABLE BY IMPRISONMENT FOR MORE THAN 180 DAYS, THE STATE MUST BE READY WITHIN 90 DAYS OF THE COMMENCEMENT OF THE PROSECUTION; IF THE PUNISHMENT IS LESS*

*THAN 180 DAYS THE STATE HAS ONLY 60 DAYS TO PREPARE. IF THE OFFENSE IS
PUNISHABLE BY FINE ONLY, THE PROSECUTOR HAS A 30 DAY PERIOD TO BRING
ACTION. THE LAW IS INTENDED NOT ONLY TO PROTECT DEFENDANT'S RIGHTS, BUT
ALSO TO REDUCE THE PROBLEM OF OVERCROWDED JAILS. PROBLEMS WITH THE
STATUTE CENTER AROUND THE NUMEROUS EXCEPTIONS TO THE TIME LIMITS,
INCLUDING REASONABLE DELAYS WHILE THE STATE OBTAINS EVIDENCE. ALTHOUGH
THERE ARE WAYS FOR COURTS TO EXCLUDE TOO MUCH TIME, AND FOR
PROSECUTORS TO SEEK UNJUSTIFIED EXCLUSIONS, THIS STATUTE SHOULD
ENCOURAGE A MORE REASONALBE FLOW OF CASES. APPENDED MATERIALS INCLUDE
THE FORM FOR DEFENDANT'S MOTION FOR DISCHARGE UNDER THE ACT.
FOOTNOTES ARE PROVIDED. (TWK).*

## 8.2 SPEEDY TRIAL ACT UNCONSTITUTIONAL

The State, in Fred **MESHELL, Appellant, v. The STATE of Texas, Appellee. No. 1339-85**

overturned the Speedy Trial Act on the following grounds:

> *The State would show that the caption of said bill [Acts 1977, 65th Leg., Ch. 787, pg. 1970] is
> defective in that it does not and did not contain sufficient information as to inform members of the
> Legislature as to its content and therefore violates the caption requirement and Art. III, Sec. 35 of
> The Texas Constitution.*

> *The State would further show that the Texas Speedy Trial Act is a violation of the separation of
> powers doctrine, Art. II, Sec. 1, and also is a violation of The Texas Constitution, Art. V, Sec. 8,
> Art. V, Sec. 16, Art. V, Sec. 19, and any other applicable provisions of the Texas Constitution.*

Without addressing whether or not the Senate Bill 1043 adequately informs the Legislators of the

contents of the bill or that it intruded on the power of the Judiciary, the abstract clearly stated the

Legislative intent in that trials must be held within specifically stated time limits.  This is as clear

a statement of Legislative intent as can be had.  **( Check out Rosario V State)**

## 8.3 DISTINGUISH BARKER WINGO TEST

Plaintiffs move this court to distinguish the speedy trial test in Texas as different from **Barker v.

Wingo**.  In **Zamorano v. State, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002)** the court

opined as follows:

> *The length of the delay between an initial charge and trial (or the defendant's demand for a
> speedy trial) acts as a "triggering mechanism." Unless the delay is presumptively prejudicial,
> courts need not inquire into examine the other three factors. Given the "imprecision of the right to
> speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon
> the peculiar circumstances of the case." However, the Supreme Court has explained that "the
> delay that can be tolerated for an ordinary street crime is considerably less than for a serious,
> complex conspiracy charge." If the accused shows that the interval between accusation and trial
> has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, a court
> must then consider the extent to which that delay stretches beyond the bare minimum needed to
> trigger judicial examination of the claim. This second inquiry is significant to the speedy trial
> analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over
> time." Thus, any speedy trial analysis depends first upon whether the delay is more than
> "ordinary"; if so, the longer the delay beyond that which is ordinary, the more prejudicial that
> delay is to the defendant. **Zamorano v. State, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002)***

Plaintiffs move this court to adopt the stated Legislative intent of that time it considered timely as clearly stated in the preamble to **Senate Bill 1043 of the 79rd Legislature** cited above.

## 8.4 CURRENT PRACTICE

The current criminal justice practice in Texas is designed to put every person arrested in a position such that they have no reasonable option other than to take a plea deal when offered. This is part and parcel to an ongoing criminal enterprise designed and intended to extract a deal from every person arrested without regard to the right of things or the rule of law.

### 8.4.1   Go Straight To Jail

Currently, if a person is arrested in Texas, they will be taken directly to jail with no attempt made to locate a magistrate. This is done as a matter of policy. The person is then brought before a mock hearing the next morning where a magistrates reads the accused some of their rights then illegally sets bail outside a proper examining trial.

### 8.4.2   Secrets Documents to Jailers

After the hearing, the magistrate will return the documents used in the hearing to the jailers instead of sealing them in an envelope and forwarding them to the clerk of the court of jurisdiction as commanded by Article 17.30 Texas Code of Criminal Procedure. This leaves no record in the court of the accused's arrest or imprisonment.

### 8.4.3   Notice to Prosecutor

Notice is somehow given to the prosecuting attorney who will then start a campaign of harassment designed and intended to force the accused into taking a plea bargain. The process is so successful that the current conviction rate in Texas is 99.6%.

### 8.4.4   Delay as Key Element

This process can only work if the prosecutor has unlimited time in which to torture the accused until they concede and take a deal.

## 8.5 SPEEDY TRIAL DENIED AS A MATTER OF COURSE

The denial of a speedy trial is a necessary predicate act on which the entire scheme relies. We will speak to the remainder of the improper acts in the section on R.I.C.O. below.

### 8.5.1   No Speedy Trial Protection

Plaintiffs will show that the police, prosecutors, judges, and defense counsel have all worked in concert and collusion, one with the other, toward the disenfranchisement of the public from their statutory and Constitutional rights for the specific purpose of easing the workloads of all involved.  The key element of the above alleged criminal conspiracy is the ability to hold charges over someone's head, indefinitely.

### 8.5.2   Administrative Inconvenience

Prosecutors want more control over their dockets and prosecutors want time to apply inconvenience and stress in order to coerce a deal.  They need time to order you to court repeatedly so that they can turn the emotional screws and eventually coerce the accused into taking a deal simply to end the persecution and get on with their lives.

### 8.5.3   Delay and Obfuscation

A primary tactic is to delay, in order to bring the accused to court repeatedly, with no intention of holding a hearing but rather, the accused is ordered to court to meet and confer with the prosecutor so that the prosecutor can threaten the accused with all the things the prosecution will do to them if they don't take a perfectly reasonable deal.  If an accused has the audacity to assert innocence, prosecutors then send the summons to the wrong address and when the accused doesn't show up, they charge them with failure to appear and agree to drop the charge if they take the prosecutors offer for a deal.  The only drawback is this pesky problem of the Constitutional prohibition on public officials forbidding them from extending the time to trial.

### 8.5.4   Speedy is Not a Right

The courts have addressed the "right to a speedy trial" as if it is some sort of gift to the citizen. Plaintiffs suggest that notion is wrong headed.  The Texas Constitution, in this regard, grants nothing to the citizen.  The Constitution specifically forbids governmental officials, including the courts, from certain actions.  The courts are not required to grant a citizen in the right to a speedy trial; the courts commanded and agreed to, provide a speedy trail to all citizens, whether they want one or not.  There is nothing in the Texas Constitutional mandate which indicates the framers intended the prescription may be waived or denied by the accused.  This is not about the accused.  This is a contractual covenant between the State of Texas and the public official.

### 8.5.5   Constitution Applies With or Without Consent

Plaintiffs find nothing in the verbiage of the Texas Constitution, or the statements of the Founders, which indicates they intended the Constitutional prohibitions only apply if the citizen demand they apply, timely or otherwise. The very notion that the courts can carve out exceptions to the Constitutional prohibitions is repugnant to an ordered society.

## 8.6 TIME AS A MALIGNANT CALCULUS

Plaintiffs are prepared to show that, prosecutors have acted in concert and collusion with the Judges of the Court of Appeals and others to direct and train prosecutors, magistrates, police, and judges in practices and procedures calculated to systematically deny citizens in the full and free access to specific mandated behaviors.

### 8.6.1   Delay Inconsistent With Legislative Intent

This process of coercion takes time and is inconsistent with defendant's fundamental right to a speedy trial as opined by the courts in **Barker v Wingo** as follows:

> *Although a speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution,[1]*
> *this Court has dealt with that right on infrequent occasions. **See Beavers v. Haubert, 198 U.S. 77***
> ***(1905)**:*

The refusal of the District Attorney to proceed with the prosecution and the failure of the court below to discharge Beavers from the arrest complained of deprived him of his constitutional right to a speedy trial by jury in the Eastern District of New York. United States v. Fox, 3 Mont. 312; note to In re Bergeron, 85 Am. St. Rep. 178, 204; Sutherland's notes on the U.S. Const.; Nixon v. State, 41 Am. Dec. 601; Cooley Const. Lim., 7th ed., 440.

> *Pollard v. United States, 352 U.S. 354 (1957);*

Our law, based upon centuries of tragic human experience, requires that before a man can be sent to a penitentiary, he is entitled to a speedy trial, to be present in court at every step of the proceedings, at all times to be represented by counsel, or to speak in his own behalf, and to be informed in open court of every action taken against him until he is lawfully sentenced. These are not mere ceremonials to be neglected at will in the interests of a crowded calendar or other expediencies. They are basic rights. They bulk large in the totality of procedural rights guaranteed to a person accused of crime. Here, in the case of an impecunious defendant, who was summarily rushed through the court mill without benefit of counsel, all of them, in some degree, were denied him.

> *United States v. Ewell, 383 U.S. 116 (1966);*

A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this

Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Beavers v. Haubert, 198 U.S. 77, 87. "Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive," Pollard v. United States, 352 U.S. 354, 361. "[T]he essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10.

### *United States v. Marion, 404 U.S. 307 (1971).*

The motion to dismiss rested on grounds that had nothing to do with guilt or innocence or the truth of the allegations in the indictment but was, rather, a plea in the nature of confession and avoidance, that is, where the defendant does not deny that he has committed the acts alleged and that the acts were a crime but instead pleads that he cannot be prosecuted because of some extraneous factor, such as the running of the statute of limitations or the denial of a speedy trial. See United States v. Weller, 401 U.S. 254, 260 (1971). The motion rested on constitutional grounds exclusively, and neither the motion, the arguments of counsel, the Court's oral opinion, nor its judgment mentioned Federal Rule of Criminal Procedure 48(b), as a ground for dismissal. Our jurisdiction to hear this appeal has been satisfactorily established.

> *See also **United States v. Provoo, 17 F. R. D. 183 (D. Md.), aff'd, 350 U.S. 857 (1955)**. The Court's opinion in **Klopfer v. North Carolina, 386 U.S. 213 (1967)**, established that the right to a speedy trial is "fundamental" and is imposed by the Due Process Clause of the Fourteenth Amendment on the States.[2] See **Smith v. Hooey, 393 U.S. 374 (1969)**;*

We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215), wherein it was written, "We will sell to no man, we will not deny or defer to any man either justice or right"; but evidence of recognition of the right to speedy justice in even earlier times is found in the Assize of Clarendon (1166). By the late thirteenth century, justices, armed with commissions of gaol delivery and/or oyer and terminer were visiting the  countryside three times a year. These justices, Sir Edward Coke wrote in Part II of his Institutes, "have not suffered the prisoner to be long detained, but at their next coming have given the prisoner full and speedy justice, . . . without detaining him long in prison." To Coke, prolonged detention without trial would have been contrary to the law and custom of England; but he also believed that the delay in trial, by itself, would be an improper denial of justice. In his explication of Chapter 29 of the Magna Carta, he wrote that the words "We will sell to no man, we will not deny or defer to any man either justice or right" had the following effect:

Magna Carta, c. 29 [c. 40 of King John's Charter of 1215] (1225), translated and quoted in Coke, The Second Part of the Institutes of the Laws of England 45 (Brooke, 5th ed., 1797).

"4. And when a robber or murderer or thief or receiver of them has been arrested through the aforesaid oath, if the justices are not about to come speedily enough into the country where they have been taken, let the sheriffs send word to the nearest

justice by some well-informed person that they have arrested such men, and the justices shall send back word to the sheriffs informing them where they desire the men to be brought before them; and let the sheriffs bring them before the justices." 2 English Historical Documents 408 (1953).

An example of the Commission of goal delivery is set forth in Goebel, Cases and Materials on the Development of Legal Institutions 53 (7th rev. 1946): "The lord king to his beloved and faithful Stephen de Segrave and William Fitz Warin, greeting. Know that we have appointed you justices to deliver our gaol at Gloucester, in accordance with the custom of our realm, of the prisoners arrested and held there. And hence we order you that in company with the coroners of the county of Gloucester you convene at Gloucester on the morrow of the festival of the Holy Trinity in the twelfth year of our reign [Monday, May 22, 1228], to deliver the aforementioned gaol, as aforesaid, for we have ordered our sheriff of Gloucestershire that at the aforesaid time and place he cause to come before you all the prisoners in the aforesaid gaol and all persons attached to appear against them and on account of them. In witness whereof, etc. Dated April 20, in the twelfth year of our reign." "The judges commissioned in a general oyer and terminer commission," Professor Goebel writes, "are ordered to inquire by grand jury of named crimes, from treasons to the pettiest offense, as to all particulars and to hear and determine these according to the law and custom of the realm." Id., at 54. Id., at 54.Coke, op. cit. supra, n. 8, at 43.See Ibid.

"And therefore, every subject of this realme, for injury done to him in bonis, terris, vel persona, by any other subject, be he ecclesiasticall, or temporall, free, or bond, man, or woman, old, or young, or be he outlawed, excommunicated, or any other without exception, may take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay."

> *Dickey v. Florida, 398 U.S. 30 (1970). As MR. JUSTICE BRENNAN *516 pointed out in his concurring opinion in Dickey, in none of these cases have we attempted to set out the criteria by which the speedy trial right is to be judged. 398 U.S., at 40-41.*

The Legislative intent is clear.

### 8.6.2   Fundamental to Founders

Plaintiffs could continue this line back to the beginning of the United States Republic and show how the right was clearly defined long before the Texas Republic also adopted the clear requirement in the **Texas Constitution @ Article 1 Section 10** which reads as follows:

> *Section 10 - RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS*
>
> *In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws*

*of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger. (Amended Nov. 5, 1918.)* **(emphasis added)**

The court will take notice that the first right addressed is the right to a speedy trail.

## 8.7 NO WAIVER OF CONSTITUTIONAL PROHIBITION

In **Barker v Wingo supra**, the federal courts opined as follows:

> *In this habeas corpus proceeding the Court of Appeals, concluding that petitioner had waived his right to a speedy trial for the period prior to his demand for trial...*

This raises the question, where is a defendant in a criminal prosecution granted the right to exempt a public official from the requirements of a Constitutional condition of employment? Plaintiffs can find no provision for this in the Texas Constitution. As a matter of fact, it is clear that our founders frowned on such behavior when it included **Texas Constitution Article I Section 29** which reads as follows:

> *Sec. 29. BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE. To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.*

### 8.7.1   State Distinguished From Fed

While the federal courts may be able to play fast and loose with Constitutional prohibitions, no such power exists in Texas. If our Framers and subsequent Legislators had intended that the courts be able to arbitrarily and capriciously exempt themselves from certain Constitutional prohibitions, they would have said so. Absent any language in the Texas Constitution that would give a reasonable person of ordinary prudence reason to believe that the Texas Constitutional prohibitions hinged on caprice of the accused, Plaintiffs allege any consideration that the command to the judiciary to provide a speedy trial somehow hinges on a demand by someone who has been arrested and stuffed in jail, is simply unconscionable **Cantu v. State, 253 S.W.3d 273** and its predecessors or progeny notwithstanding.

### 8.7.2      No Harm No Foul Nonsense

The courts have presumed that a violation of a law or Constitutional prohibition only exists if the defendant can show harm as in **Dragoo v. State**:

> *In determining whether an accused has been denied his right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed."* **Barker v. Wingo, 407 U.S. 514, 530 (1972)**. *The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. Ibid. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. Id. at 533.* **Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003)**

The above follows **Barker v Wingo supra**.  While such may be the case in the federal arena, this is not the federal arena.  This is Texas and in Texas there is no Constitutional exclusion to the application of the Constitutional prohibitions.  Before taking office, each judge must swear to the following oath:

> *IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,*
> *I,_____ , do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.*

### 8.7.3      Constitutional Duty

The courts in **Dragoo v. State supra** would have it that the judge is not required to uphold the Texas Constitution unless the accused can show harm.  The question becomes: "Where did they come up with this?  Did they make it up?"  It is not in the Texas Constitution.  Neither is there an exclusion of the Constitutional prohibitions anywhere in any statute.

### 8.7.4      Speedy Trial is Vested Right

The above oath constitutes a contract between the judge and the people of the Republic known as The State of Texas.  Where a judge fails to uphold a restriction contained in the Texas Constitution the judge commits an act of negligence at least, if not **Official Oppression supra**.

### 8.7.5      Delay Beyond Scope

It is the assertion and allegation of Plaintiffs that, the failure to provide a defendant with a speedy trial, as commanded by the Texas Constitution, is beyond the scope of any Texas judge or prosecutor to mitigate.  Both are under oath to provide a speedy trial and a failure on their part to perform in accordance with the covenants of their oath constitutes a repudiation of their contract

with the state and renders them liable for an action in **Quo Warranto** under **Texas Civil Practice and Remedies Code Chapter 66**.

> ***Sec. 66.001.  GROUNDS****.  An action in the nature of quo warranto is available if:*

(1)  a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office, including an office in a corporation created by the authority of this state;

(2)  a public officer does an act or allows an act that by law causes a forfeiture of his office;

## 8.8    NO IMMUNITY

When a public official acts in contravention of his/her contract with the state, the officer operates outside public scope and such, said act must be construed as an abuse of discretion in the context of **Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)** which reads in pertinent part as follows:

> *A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. See **Joachim v. Chambers, 815 S.W.2d 234, 240 (Tex. 1991)** (trial court abused discretion by misinterpreting Code of Judicial Conduct); NCNB Texas National Bank v. Coker, 765 S.W.2d 398, 400 (Tex. 1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); Eanes ISD v. Logue, 712 S.W.2d 741, 742 (Tex. 1986) (trial court abused discretion by erroneously finding constitutional violation).*

### 8.8.1       Constitutional Calculation

The right to a speedy trial arises from the time the defendant is formally accused or arrested.

*Dillingham v. United States*, 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975);

> *An interval of 22 months elapsed between petitioner's arrest and indictment, and a further period of 12 months between his indictment and trial, upon charges of automobile theft in violation of **18 U.S. C. §§ 371**, **2312**, and **2313**. The District Court for the Northern District of Georgia denied petitioner's motions made immediately after arraignment and posttrial to dismiss the indictment on the ground that petitioner had been denied a speedy trial in violation of the Sixth Amendment. The Court of Appeals for the Fifth Circuit affirmed, holding that under **United States v. Marion, 404 U.S. 307 (1971)**, the 22-month*

"pre-indictment delay . . . is not to be counted for the purposes of a Sixth Amendment motion absent a showing of actual prejudice." **United States v. Palmer, 502 F.2d 1233, 1235 (1974)**.

> *This reading of **Marion** was incorrect. **Marion** presented the question whether in assessing a denial of speedy trial claim, there was to be counted a delay between the end of the criminal scheme charged and the indictment of a suspect not arrested or otherwise charged previous to the indictment. The Court held:*

"On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons *65 who have been `accused' in the course of that prosecution. These provisions would seem to afford no

protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time."

> *404 U.S., at 313. In contrast, the Government constituted petitioner an "accused" when it arrested him and thereby commenced its prosecution of him. Marion made this clear, id., at 320-321, where the Court stated:*

"To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in Klopfer v. North Carolina, [386 U.S. 213 (1967)]; see also Smith v. Hooey, 393 U.S. 374, 377-378 (1969). So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

> *Since it is "doubtless true that in some cases the power of the Government has been abused and charges have been kept hanging over the \*318 heads of citizens, and they have been committed for unreasonable periods, resulting in hardship," the Court noted that many States "[w]ith a view to preventing such wrong to the citizen . . . [and] in aid of the constitutional provisions, National and state, intended to secure to the accused a speedy trial" had passed statutes limiting the time within which such trial must occur after charge or indictment.[9] Characteristically, these statutes to which the Court referred are triggered only when a citizen is charged or accused.[10] The statutes vary greatly in substance, \*319 structure, and interpretation, but a common denominator is that "[i]n no event . . . [does] the right to speedy trial arise before there is some charge or arrest, even though the prosecuting authorities had knowledge of the offense long before this." Note, The Right to a Speedy Trial, 57 Colo. L. Rev. 846, 848 (1957).*

*See also: Easley v. State, 564 S.W.2d 742 (Tex.Cr.App. 1978), cert. denied, 439 U.S. 967, 99 S. Ct. 456, 58 L. Ed. 2d 425 (1978).*

> *The right to a speedy trial is guaranteed by the Sixth Amendment to the Constitution of the United States as applied through the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970); Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The same right is assured by Art. I, Sec. 10 of the Texas Constitution, and Art. 1.05, V.A.C.C.P.*

### 8.8.2    Constitutional Speedy Trial Commandment

> *Unlike the statutory Speedy Trial Act, which addressed prosecutorial delays only, the constitutional right to a speedy trial governs the entire criminal justice process. Thus, the overcrowded dockets of trial courts, while a factor to be considered, do not excuse trial delays. But see, Phillips v. State, 659 S.W.2d 415, 419 (Tex.Cr. App.1983); Ostoja v. State, 631 S.W.2d 165, 167 (Tex.Cr.App.1982). As the Supreme Court stated in Barker v. Wingo, 407 U.S. 514 (1972),*

"[a] more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

Id., 407 U.S. at 532, 92 S.Ct. at 2192, 33 L. Ed. 2d **at** 117; Phillips v. State, 650 S.W.2d 396, 400 (Tex.Cr.App. 1983).

## 8.9   BURDEN ON PROSECUTOR

The primary burden is on the prosecution and the courts to ensure that defendants are speedily brought to trial. ***Turner v. State*, 504 S.W.2d 843, 845 (Tex.Cr.App. *137 1974);**

> *"It is true that the primary burden is on the prosecution and the courts to insure that defendants are speedily brought to trial. **McKinney v. State, 491 S.W.2d 404 (Tex.Cr.App. 1973)**. "*

> In **Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971)**, the United States Supreme Court discussed the right to a speedy trial noting it was a more vague and generically different concept than other constitutional rights guaranteed a criminal defendant, and that it was impossible to pinpoint a precise time in the judicial process when the right must be asserted or considered waived. The Court further observed that while a defendant's assertion of, or failure to assert, his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of such right, the primary burden remains on the courts and the prosecutors to assure that cases are speedily brought to trial. **McKinney v. State, 491 S.W.2d 404, 407 (Tex. Crim. App. 1973)**

Both the trial court and prosecution are under a positive duty to prevent unreasonable delay. The Texas Constitution does not quibble, it commands public officials to provide a speedy trial whether the accused demands it or not so any consideration of Federal law as it applies to the Texas Constitutional provision is irrelevant here.

### 8.9.1   Demand Unnecessary

The courts have ruled if a speedy trial is not demanded it is waived. Plaintiffs allege that such case law is clearly unconstitutional. Our founders, upon framing the Constitution, clearly intended that its prohibitions be sacrosanct.

It is the sworn duty of the courts to ensure a speedy trial without regard to whether a defendant demands it or not. The Constitution simply cannot be presumptively waived. The court in **ROSARIO ZAMORANO, Appellant v.THE STATE OF TEXAS** ruled as follows:

> *According to the Supreme Court, the nature of the speedy trial right "makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." Of course, the defendant has no duty to bring himself to trial; that is the State's duty. This does not mean that the defendant has no responsibility to assert his right to a speedy trial. Whether and how a defendant asserts his speedy trial right is closely related to the other three factors because the strength of his efforts will be shaped by them. Therefore, the defendant's assertion of his speedy trial right is*

> *entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Conversely, a failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial.*
>
> *Appellant filed his motion for speedy trial on June 3, 1998, about two and one-half years from the date of his arrest. The record is unclear whether appellant objected to the resets before that date. During the two hearings, defense counsel argued that appellant had announced "ready" on all dates, save the one "not ready" mentioned above. The court of appeals discounted appellant's second try for a speedy trial because "there [was] no indication that he requested an immediate setting of the motion to reconsider," and held that appellant's "delay and lack of persistence in asserting his right to a speedy trial weigh[ed] against him."*
>
> *We disagree that the assertion-of-the-right factor weighs against appellant. It is true that appellant's initial motion was tardy. This late assertion, had no subsequent motion been filed, might well have undercut his Sixth Amendment claim. But appellant's second attempt to seek a speedy trial, which came less than two months after the trial court denied his initial motion, evidenced his persistence. This is not a case where appellant never asked for a hearing. Nor is this a case in which evidence shows a defendant's affirmative desire for any delay. Appellant's repeated assertion weighs in his favor.*

The above consideration is simply wrong headed. It treats the speedy trial matter as a Sixth Amendment matter. It is no such thing. It is a 1st Amendment matter under the Texas Constitution. There is nothing in the Texas constitution which indicates or even implies that the commandments made there can be mitigated by the acts of citizens.

### 8.9.2     Constitution Does Not Speak To Citizens

Plaintiffs assert that Constitutional provisions do not apply to Defendants. The protections are prohibitions placed on public officials. To assert that a Constitutional right must be invoked to have effect is to place the Judiciary above the Constitution. This incursion by the courts upon Constitutionally forbidden territory is wrongful and, an abuse of office and would work to suspend the prohibition included in the Constitution, in violation of **The Texas Constitution Article 1 Section 28** which reads as follows:

> *Sec. 28.  SUSPENSION OF LAWS. No power of suspending laws in this State shall be exercised except by the Legislature.*

To rule that a citizen must timely demand that the courts abide by a Constitutional mandate or that mandate somehow ceases to apply is to war against the clear verbiage of the Constitution.

### 8.9.3     The Constitution Always Applies

The courts would have it that the Constitution only applies if the citizen demands that it apply. Plaintiffs assert, **Article 1, Section 10 of the Texas Constitution** always applies and the court and Legislature are forbidden to change it as stipulated by **Article 1, Section 29** which reads as follows:

> ***Sec. 29.  BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND***
> ***INVIOLATE***. *To guard against transgressions of the high powers herein delegated, we declare*
> *that everything in this "Bill of Rights" is excepted out of the general powers of government, and*
> *shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall*
> *be void.*

Plaintiffs assert and move this court to rule that the Texas Constitution always applies, any laws, rulings or regulations to the contrary notwithstanding.

### 8.9.4    PROSECUTORIAL DELAY

As the Texas Constitution bestows upon court the duty to provide a speedy trial, Plaintiffs hereby, demand a showing of due cause for the two year delay frequented by defendants on Plaintiff.

### 8.9.4.1    *Administrative Convenience Notwithstanding*

Plaintiffs specifically assert, no delay may be occasioned or sanctioned as a result of the State's failure to sufficiently staff the offices of prosecuting attorneys.  The Texas Constitution may not be subverted subsequent to financial decisions of budget setting bodies.  Therefore, Plaintiffs specifically object to any allegations of delay resulting from staffing inadequacies of state agencies.

### 8.9.4.2    *Crisis Is No Excuse*

Plaintiff also objects to any alleged delay occasioned by any alleged crisis.  Crisis come and go and public officials will never let any crisis go to waste.  The courts cannot use the alleged pandemic as an excuse to deny the citizens in their constitutional rights as evidenced by the Texas Supreme Court in **IN RE SALON A LA MODE, ET AL**. as follows:

> *"The Constitution is not suspended when the government declares a state of disaster." In re*
> *Abbott, No. 20-0291, 2020 WL 1943226, at *1 (Tex. Apr. 23, 2020). All government power in this*
> *country, no matter how well-intentioned, derives only from the state and federal constitutions.*
> *Government power cannot be exercised in conflict with these constitutions, even in a pandemic.*

### 8.9.4.3    *DELAY FOR PURPOSES OF INVESTIGATION*

A catch all delay is to claim delay for the purpose of further investigation.  If the prosecution was not ready to prosecute, it should not have brought the prosecution or, in the event the prosecution was occasioned by an arrest, the prosecution could have moved the court to dismiss the prosecution and brought it later, after the completion of an investigation.  The Constitution cannot be abridged because the prosecutor acted injudiciously in bringing the prosecution prematurely.

## 8.10   SIMULATING A LEGAL PROCESS

Plaintiffs will further show that Defendants simulated a legal process by issuing repeated summons from the court for an impermissible purpose in that there was no hearing intended, but rather, Plaintiff was summoned to court by the prosecution attorney so that the prosecutor could pressure and harass Plaintiff in an attempt to coerce a plea.

Plaintiff was summoned to court no less than a dozen times.  Each time there was no hearing intended and the summons was not for a reason contained in **Texas Code of Criminal Procedure 28.01** which reads in pertinent part as follows:

> ### Art. 28.01. PRE-TRIAL.
>
> *Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing.  The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding.  The pre-trial hearing shall be to determine any of the following matters:*

(1) Arraignment of the defendant, if such be necessary;  and appointment of counsel to represent the defendant, if such be necessary;

(2) Pleadings of the defendant;

(3) Special pleas, if any;

(4) Exceptions to the form or substance of the indictment or information;

(5) Motions for continuance either by the State or defendant;  provided that grounds for continuance not existing or not known at the time may be presented and considered at any time before the defendant announces ready for trial;

(6) Motions to suppress evidence--When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court;

(7) Motions for change of venue by the State or the defendant;  provided, however, that such motions for change of venue, if overruled at the pre-trial hearing, may be renewed by the State or the defendant during the voir dire examination of the jury;

(8) Discovery;

(9) Entrapment;  and

(10) Motion for appointment of interpreter.

At the first hearing on the case, Plaintiff was denied an examining trial by the judge of the court.

### 8.10.1  Article 26.01 Restriction in Class C Misdemeanor

In as much as the instant charge was for a class C misdemeanor, it was particularly necessary to hold an examining trial as the only way for the court to call a hearing to take a plea in a class C misdemeanor would be at an examining trial in as much as, the court was forbidden to summon Plaintiff to court to take a plea as such was specifically excluded by **Texas Code of Criminal Procedure 26.01** which reads as follows:

> *Art. 26.01. ARRAIGNMENT.  In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.*

A hearing for the purpose of taking a plea would necessarily have to be an arraignment hearing in accordance with **Texas Code of Criminal Procedure 26.02** which reads as follows:

> *Art. 26.02. PURPOSE OF ARRAIGNMENT.  An arraignment takes place for the purpose of fixing his identity and hearing his plea.*

### 8.10.2  Lack of Jurisdiction

At the initial hearing, the court did not yet have jurisdiction as there was no determination of probable cause in the record, therefore, the trial court judge did not yet have subject matter jurisdiction.  The only jurisdiction the judge could exercise would be that of a magistrate under **Texas Code of Criminal Procedure 2.10** and **2.11** which reads as follows:

> *Art. 2.10. DUTY OF MAGISTRATES.  It is the duty of every magistrate to preserve the peace within his jurisdiction by the use of all lawful means;  to issue all process intended to aid in preventing and suppressing crime;  to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment.*
>
> *Art. 2.11. EXAMINING COURT.  When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.*

### 8.10.3    16.17 Requirement

Once the examining trial is complete, the magistrate was commanded by **Texas Code of Criminal Procedure 16.17** as follows:

> *Art. 16.17. DECISION OF JUDGE.  After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require.  Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

This issue is addressed in further detail above.

In as much as there had been no determination of probable cause and the court was forbidden, in the matter of a class C misdemeanor to summon a person to court for the purpose of making a

plea, the court simulated a legal process each time it ordered Plaintiff to court for no permissible purpose in violation of **Texas Penal Code 32.49(a)(1&2)** which reads as follows:

> *Sec. 32.48.  SIMULATING LEGAL PROCESS.  (a)  A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment, or other court process with the intent to:*

(2)  cause another to:

> (A)  submit to the putative authority of the document;  or

> (B)  take any action or refrain from taking any action in response to the document, in compliance with the document, or on the basis of the document.

### 8.10.4  Delay As An Illegal Artifice

At trial, Plaintiffs will show that the delay occasioned in the instant case is consistent with the normal way of doing business by defendants, part and parcel to an ongoing criminal connivance. Plaintiffs will show that the prosecutor and judge acted in concert and collusion to obstruct justice in violation of **Texas Penal Code 36.06** in retaliation for Plaintiff refusing to plead guilty to the charges.  The court committed **Official Misconduct** in violation of **Texas Penal Code 39.03  supra** by denying Plaintiff in a proper examining trial in accordance with **Texas Code of Criminal Procedure Chapter 16 supra**.

# 9   ONGOING CRIMINAL ENTERPRISE

It is the assertion and allegation of Plaintiffs that the Criminal Justice System of Texas has been taken over by a criminal street gang as the term is defined by **Texas Penal Code 71(d)** which reads as follows:

> *Sec. 71.01.  DEFINITIONS.  In this chapter,*
>
> *(d)  "Criminal street gang" means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.*

## 9.1 CRIME RATE DOWN

The police have not been at war with the civilian population of the United States.  The police have been indoctrinated to think they are at war with us and the results of that unfortunate mindset have been a disaster for the people, the police, prosecutors, the courts and mostly the

available funds for the advancement of society.  The crime rate in **2019 was half what it was in 1991**.

## 9.2 THIS IS NOT A WAR

I have been to war and this is not one.  I am old and remember when police were not chosen for their sociopathic tendencies and set upon us like mad dogs awash in adrenaline addiction.  I returned from combat addicted to it.  It is seductive, there is no feeling like it.  These 50 years later I still miss the fire and excitement of skirting the edge of the envelope.  When I came back from war, something was horribly wrong.  All the people were the same, the places were the same, but something was horribly wrong.  It took many years to realize it was adrenaline.  God! I miss the whine of the bullet and the rumble beneath my feet as the adrenaline surged.

We have trained this into our police.  What are we thinking?

## 9.3 CAREFULLY CRAFTED CRIMINAL CONNIVANCE

Prosecutors, beset with a burgeoning case load, subjected the public to a carefully crafted criminal connivance, designed and orchestrated by prosecuting attorneys across Texas for the purpose of easing the prosecutorial burden by denying those accused of crime to fundamental due process through the violation of multiple statutory and Constitutional prescriptions including the right to a speedy trail.

## 9.4 DUTY TO DEVELOP TRAINING

The **Texas Court of Criminal Appeals**, in cooperation with the **Office of Court Administration** have been commanded by the Texas Legislature to develop training for magistrates in Texas by **Texas Code of Criminal Procedure 17.024** which reads as follows:

> *Art. 17.024.  TRAINING ON DUTIES REGARDING BAIL.  (a)  The Office of Court Administration of the Texas Judicial System shall, in consultation with the court of criminal appeals, develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases.  The courses developed must include:*

(1)  an eight-hour initial training course that includes the content of the applicable training course described by **Article 17.0501**; and

(2)  a two-hour continuing education course.

> *(b)  The office shall provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to the office.*
>
> *(c)  A magistrate is in compliance with the training requirements of this article if:*

(1)  not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);

(2)  the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and

(3)  the magistrate demonstrates competency as provided by Subsection (b).

*(c-1)  Notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022.  This subsection expires May 1, 2023.*

*(d)  Any course developed or approved by the office under this article may be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity.*

### 9.4.1   Ongoing Criminal Enterprise

It is the assertion and allegation of Plaintiffs that the **Texas Court of Criminal Appeals**, acting in concert and collusion with the **Office of Court Administration**, **Texas State University** and all magistrates in the State of Texas have been perpetrating, and continue to perpetrate an ongoing criminal enterprise designed and intended to disenfranchise the people of the State of Texas by denying them in the protection of the laws.  The training of magistrates and other members of the criminal justice system amount to nothing less than an ongoing criminal conspiracy to deny the citizens of the State of Texas in the due course of the laws.

### 9.4.2   Everything is Wrong

Every step from arrest to trial, as presently practiced in Texas, is not only wrong, it is very specifically against particular law.  It is not haphazardly against law, it amounts to a carefully crafted criminal connivance that has been honed and fine tuned so as to put any person accused of crime in a position such that, they will have no reasonable alternative other than to taking a plea deal.

### 9.4.3   At Least 40 Years of Abuse

Up until 1975 soon after the Troy v. State supra, the incarceration rate tracked the increase in population.  For all the years of Texas history, approximately the same percentage of the population committed crimes and the incarceration rate was stable.  In 1975 the incarceration rate increase surpassed the population increase and has been climbing logarithmically ever sense.  At this point the graph is almost straight up.  Texas cannot stand much more of this.

### 9.4.3.1     *Creating A Police State*

According to FBI statistics, over the last 40 years, crime has been down across the board.  In that same time, after 1975, the incarceration rate in Texas has skyrocketed to the point it is about to bankrupt the counties.  While the state is boasting a revenue surplus, the counties are being buried in criminal justice debt.

### 9.4.4     Magistrate Bypass

For at least 40 years, the police in Texas have been directed to take persons they arrest directly to jail instead of directly to the nearest magistrate as commanded by black letter law. See Texas **Code of Criminal Procedure 14.05**, **15.16** and **Texas Transportation Code 543.002** supra. Magistrates were directed to dispense with examining trials and simply read a citizen their rights and set bail.  The average conviction rate for all crimes, across the board, is 99.6%.

One must give the criminals credit.  When they fixed the system, they did a good job.  The counties in Texas are reported by the Officer of Court Administration to be spending $990 million dollars per year for pre-trial incarceration but this writer believes that number is actually on the order of 5 times what is reported.  The Criminal Justice System is bankrupting the state.

### 9.4.5     Setting Bail

As addressed above, the only provision for a magistrate to set bail is in the context of an examining trial after the magistrate has made a determination of probable cause.  Problem, there are no determinations of probable cause in Texas criminal records.

### 9.4.6     There is no Lack of Law

In this writer's opinion, Texas has the best corpus juris of any state in the Union.  This problem addressed here exists from no lack of law but rather, this problem exists from an abject failure of public officials in Texas to follow the clear and unambiguous letter of law.  The problem exists from a malignant calculus on the part of those very public officials charged with protecting the rights of the citizens and germinated in the highest levels of Texas government.

### 9.4.7     Misfeasance In Office

Magistrates, across Texas, are apparently trained and directed to refuse to perform their duty as prescribed under **Texas Code of Criminal Procedure 15.09** which reads as follows:

> **Art. 15.09.  COMPLAINT MAY BE FORWARDED.**  *A complaint in accordance with Article 15.05, may be forwarded as provided by Article 15.08 to any magistrate in the State;  and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused; and the accused, when arrested, shall be dealt with as provided in this Chapter in similar cases.*

Included in this pleading are numerous examples of magistrates from the highest to the lowest refusing to perform their duty under **Texas Code of Criminal Procedure 15.09 supra.**

By the above practice, Public officials are now granted absolute immunity from criminal prosecution for their criminal behavior.

### 9.4.8   Blanket Denial of a Preliminary Hearing

An examination of the criminal records in Texas will show that, for the most part, there are no **Texas Code of Criminal Procedure 16.17** orders in the public records of persons accused of crime.

> **Art. 16.17. DECISION OF JUDGE.**  *After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require.  Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

Magistrates have been trained in the abomination called a "Magistration."  This leaves the trial court without jurisdiction and all parties without the cover of any immunity, official or otherwise.

### 9.4.9   Denial of Speedy Trial as Malignant Calculus

The public has been universally denied in their right to a proper examining trial as required by statute.  They are then subjected to a carefully crafted criminal connivance designed and intended to wear out the innocent.  This is no problem for the guilty as they know they can cut a deal and hit the streets to offend again.  It is the innocent that suffer.  As in the instant case, if anyone in Texas dares to stand on their innocence, they are subjected to an onslaught of official abuse by the police, prosecutors, and judges.  They will be harassed until they make a deal and defense counsel is of no benefit as they know better than to interfere with the ongoing criminal enterprise.

## 9.5 CRIMINAL STREET GANG

The courts in Hartford, Connecticut. In a memorandum of Decision on Summary Judgment in the case of . **CT Freedom Alliance, LLC, ET AL v State of Connecticut Department of Education, ET AL**, recently addressed the abuse of power by government as follows:

> *The law limits the power of the good lest the wicket inherit it.*
>
> *Until recently, most of us have believed that the checks and balances within our legal system require no attention to keep them running smoothly. But recent events have undermined that confidence. Faith that government's three great gears-the executive, the legislative, and the judicial- are self-calibrating has been seriously undercut by a pandemic and by violence from the right and the left.* **CT Freedom Alliance, LLC, ET AL v State of Connecticut Department of Education, ET AL.**

The above case is a wonderful read for anyone concerned with the excesses of government during times like these where the best people, with the highest of motives, wreak havoc from the noblest intent.

### 9.5.1   Engaging In Organized Crime

It is the contention and allegation of Plaintiffs that the Texas Court of Criminal appeals, the director of the Texas Office of Court Administration, the board of regents of Texas State University and every person involved in the teaching of the above alleged criminal enterprise, every magistrate, prosecutor and police officer in Texas is complicit in an ongoing criminal enterprise violation of Texas Penal Code **71.02)a)(13) Texas Penal Code** which reads in pertinent part as follows:

> ***Sec. 71.02.  ENGAGING IN ORGANIZED CRIMINAL ACTIVITY.*** *(a)  A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:*

(9)  any offense under Chapter 36; and

(13)  any offense under Section 37.10;

### 9.5.2   All Are Disqualified

This case presents a quandary for Plaintiffs.  Here, we are not accusing all the judges in Texas of some unquantifiable something, we are accusing all the judges in Texas of specific criminal actions.  Every judge in Texas who has presided over a criminal case, or acted as a prosecutor or defense counsel, in the last 40 years, where the accused was arrested, taken to jail, subjected to a magistration hearing, then prosecuted in accordance with the training given to the police,

prosecutors, magistrates and judges, developed by the Texas Court of Criminal Appeals, is directly implicated as part of a street gang.

If all judges are disqualified, none are disqualified.  There is some federal legal babble about a maxim of law:

> [T]here is a maxim of law to the effect that where all are disqualified, none are disqualified. Evans v. Gore, **253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887** (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. **48 C.J.S. Judges § 74, 407 F. Supp. at 483**, as quoted from **Pilla v. American Bar Ass'n, 542 F.2d 56, 59 (8th Cir. 1976)**

We also find a similar following in **Turner v. American Bar Ass'n, 407 F. Supp. 451, 483 (N.D. Tex. 1975):**

> With respect to disqualification in civil actions where the trial judge to which the case happens to be assigned is also a defendant in the same action, 28 U.S.C.A. § 455 would require that the judge disqualify himself. This Court notes, however, that there is a maxim of law to the effect that where all are disqualified, none are disqualified. **Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920)**. The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. 48 C.J.S. Judges § 74. Although this maxim would allow the Supreme Court to proceed where all or a quorum of the Justices have been sued, it would seemingly not allow a District Court Judge to proceed if other judges are available by substitution. **Brinkley v. Hassig, 83 F.2d 351 (C.A.10, 1936)**. As quoted from: **Turner v. American Bar Ass'n, 407 F. Supp. 451, 483 (N.D. Tex. 1975)**

The above cases reference **Brinkly** and **Philla** which both draw the quote from **Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920)**.  The problem is, the following verbiage is not found in Evans.  The only thing even close is the following:

> With respect to disqualification in civil actions where the trial judge to which the case happens to be assigned is also a defendant in the same action, 28 U.S.C.A. § 455 would require that the judge disqualify himself. This Court notes, however, that there is a maxim of law to the effect that where all are disqualified, none are disqualified.

It appears the court simply made the maxim up, therefore, it would be inappropriate to go to this maxim so, we would need to find it in Texas law or figure something out.

Plaintiffs could take this to the feds but this is a state issue and needs to be addressed in concert with Texas law.  The hardest thing to find is what is not there.  Well, this maxim:

> "if all are disqualified then none are disqualified"

does not seem to be in Texas law.  Even if it was in Texas law, the above allegations are not general, but rather, are specific and go directly to grounds for disqualification.

# 10 CRIMINAL ACCUSATIONS

By the following, Plaintiffs claim as torts against themselves as a result of the following criminal acts committed to their detriment.  Plaintiff will not bother trying to file criminal affidavits at this time as it is clear from past experience, they will all go in the trash.  Therefore, Plaintiffs claim each criminal violation as the tort of denial of due process.

## 10.1   ASSAULT PLAINTIFF KELTON

### 10.1.1 Travis County Court House

On or about the 12th day of October 2021, Plaintiff Kelton was assaulted by a Sheriff's Deputy whose name will be supplied subsequent to discovery but in the meantime will be referred to as "Unknown Sheriff Deputy" at the Travis County District Court house entrance.  Deputy Unknown denied entrance into the courthouse unless Plaintiff Kelton donned a medical device in the form of a medical mask.  When asked if the pistol the deputy was prominently displaying on his hip was loaded, the deputy assured Plaintiff Kelton that it was.  When asked if he was prepared to use the weapon, if necessary, in order to prevent Plaintiff Kelton from entering the courthouse without a mask, the deputy assured Plaintiff Kelton that he was.

### 10.1.2 Standing on the Oath

Plaintiff Kelton is a combat veteran who believes in and is dedicated to the American form of government.  A long time ago in what now seems another life, Plaintiff Kelton swore on his oath that he would protect this country from all enemies, foreign and domestic.  I found the enemy and the fight is on.

The enemy is not the police, prosecutors, magistrates, or judges.  The enemy is apathy.  Not yours, ours.  Not yours as public officials but ours, as citizens in a republic.  It was our duty to stand up and rail in righteous indignation every time one of our public officials stepped half-inch outside one of our legal lines, but we were too busy with our own lives and it was easier to trust in the good faith of our public servants.

In that we failed you.  It was our duty to protect you from your own apathy and tendency to make adjustments to due process, toward administrative convenience and adjudicative expediency.  We are here to set things to right.

Plaintiff Kelton was sent halfway around the world to a stinking, stifling jungle where he offered up his life for the protection of this country. In those days, Plaintiff Kelton paid for these rights, and he paid heavy. To have my life casually threatened by an arrogant, self-important, minor official was much more than a threat, it was a betrayal, on the order of the sputum-laced welcome Plaintiff Kelton received on return from hell.

### 10.1.3  911 Call

When Plaintiff Kelton took out his cell phone to call 911, Deputy Unknown placed his hand on his weapon and told Plaintiff Kelton he could not use a cell phone in the courthouse. I suspect the young man doesn't know the smell of a man's insides when they are violently exposed to the air, or the smell of gangrene as it eats a man alive from wounds inflicted by weapons the like of which he had his hand on, but Plaintiff does.

### 10.1.4  Governors Edict

In the instant case, Deputy Unknown, attempted to enforce an edict of the Governor of the State of Texas, an edict the Governor had no power to issue.

By his act, Deputy Unknown, threatened Plaintiff Kelton with the use of deadly force while exhibiting a deadly weapon, while acting under the color (pretense), of an official capacity. Said act was an act of first degree aggravated assault as defined by **Texas Penal Code 22.02(b)(2)(A)** which reads as follows:

> ### *Sec. 22.02.  AGGRAVATED ASSAULT*
>
> *(b)  An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:*

(2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

> (A)  by a public servant acting under color of the servant's office or employment;

### 10.1.5  Plaintiff Bell

Plaintiff Bell was subjected to numerous criminal acts by Nordstrom Rack employees and the Sunset Valley Police Department as follows:

### 10.1.5.1    Assault

Plaintiff Bell was physically assaulted by a Nordstrom Rack employee wherein the employee grabbed Plaintiff Bell by the arm and squeezed so hard that finger mark bruises were left on Plaintiff Bell's right upper arm.  Plaintiff Bell jerked free and jumped into a changing room, locked the door, and called 911 to seek help from her attacker.

### 10.1.5.2    Aggravated Assault on Plaintiff

When police arrived, instead of taking Plaintiff Bell's statement, the officers took Plaintiff Bell into custody, escorted her outside the building, then harassed Plaintiff Bell by trying to get her to state her name despite already having provided it. The officers proceeded to attempt to get Plaintiff Bell to provide an ID she did not possess. Eventually, the male officer moved behind Plaintiff Bell, then both officers engaging in deadly force grabbed Plaintiff Bell and threw her to the ground, putting their knees in her back and handcuffed her.  Plaintiff Bell had made no aggressive movement and was not armed with a weapon of any kind.

### 10.1.5.3    Hot Boxing as Attempted Murder

After taking Plaintiff Bell to the ground, Officers Eller and Gill double cuffed her and placed Plaintiff Bell in the back of a baking hot patrol car with the windows rolled up and the engine off.  Plaintiff Bell alleges this was an act of attempted murder as defined by **Texas Penal Code 19.02(b)(2)** which reads in pertinent part as follows:

> ### Sec. 19.02.  MURDER.
>
> *(b)  A person commits an offense if he:*

(2)  intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;

The inside of the car heated up quickly and Plaintiff Bell was beginning to panic.  As she could not get out of the car and no one could hear her screams for help, Plaintiff Bell started banging her head on the side of the car.  A bystander saw Plaintiff Bell's distress and went over and ordered the officers to get Plaintiff Bell out of the patrol car.

### 10.1.5.4    Paramedics Called

By this time Plaintiff Bell was faint from heat prostration so paramedics were called.  By the time the paramedics arrived, Plaintiff Bell's body temperature was still at 101 degrees and the paramedics said her heart rate was off the charts.  Plaintiff was treated by the paramedics and stabilized.  Fortunately, it was not necessary to transport Plaintiff Bell to the hospital.

### 10.1.5.5    *No Probable Cause for Arrest*

It was discovered later that the Nordstrom Rack employee had told police that Plaintiff Bell had

not committed any crime and that she did not want to press charges.

### 10.1.5.6    *Criminal Attempt*

Defendants Gill and Eller acted with conscious intent when they hot boxed Plaintiff Bell under

conditions that would get them arrested if they did as much to a dog, much less a human being.

That the natural outcome of their actions was interrupted by a bystander is the only reason they

are not also charged with murder.  Their actions amounted to a violation of **Texas Penal Code**

**15.01** which reads in pertinent part as follows:

> *Sec. 15.01.  CRIMINAL ATTEMPT.  (a)  A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.*
>
> *(b)  If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt.*
>
> *(c)  It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.*

### 10.1.5.7    *1ˢᵗ Degree Felony Aggravated Assault*

Sunset Valley Police Officers Eller and Gill subjected Plaintiff Bell to a false arrest, and an

unprovoked physical attack wherein she was thrown to the ground and cuffed.  Plaintiff Bell was

then subjected to intentional punishment by "Hot Boxing" her, which put her life at risk by being

placed in a patrol car with the windows up and the engine off on a very warm Texas afternoon.

Plaintiff Bell was unable to defend herself against the false arrest and imprisonment as, at the

time, both officers were prominently displaying numerous deadly weapons.  City of Sunset

Valley police officers, Defendant Eller and Defendant Gill, conspired, one with the other then

worked in concert and collusion one with the other toward the perpetration of an act of

aggravated assault against Plaintiff Bell, in violation of **Texas Penal Code 22.02(b)(2)(A)** which

reads as follows:

> ### Sec. 22.02.  AGGRAVATED ASSAULT.
>
> *(b)  An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:*
>
> (2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:
>
>> (A)  by a public servant acting under color of the servant's office or employment;

### 10.1.5.8    False Imprisonment

At the time, the Sunset Valley police officers tackled and handcuffed Plaintiff Bell, the officers had no cause to believe that Plaintiff Bell had committed, or was about to commit a crime.  Their assault against Plaintiff Bell and subsequent arrest was without probable cause and, therefore, an act of kidnapping in violation of **Texas Penal Code 20.03** which reads as follows:

> **Sec. 20.03.   KIDNAPPING**.  (a)  A person commits an offense if he intentionally or knowingly abducts another person.

In as much as Texas does not have a statute labeled, "False Imprisonment," the appropriate criminal charge is "Kidnapping."

### 10.1.5.9    Obstruction/retaliation

After the Sunset Valley Police Officers almost killed Plaintiff Bell, Officer Eller went back inside Nordstrom Rack and talked to the employee who had previously stated multiple times that she did not believe that Plaintiff Bell had committed a crime and informed her that Plaintiff Bell intended to file criminal allegations against the Loss Prevention Officer.  Officer Eller then conspired with the Nordstrom Rack Loss Prevention Officer to fabricate false charges against Plaintiff Bell so that the officers could falsely prosecute Plaintiff Bell in order to prevent Plaintiff Bell from pursuing allegations against the officers in an act of **Obstruction of Justice** in violation of **Texas Penal Code 36.06** which reads in pertinent part as follows:

> **Sec. 36.06.   OBSTRUCTION OR RETALIATION**.  (a)  A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1)  in retaliation for or on account of the service or status of another as a:

> (A)  public servant, witness, prospective witness, or informant; or

> (B)  person who has reported or who the actor knows intends to report the occurrence of a crime; or

(2)  to prevent or delay the service of another as a:

> (A)  public servant, witness, prospective witness, or informant; or

> (B)  person who has reported or who the actor knows intends to report the occurrence of a crime.

### 10.1.5.10   Fail to Take Before Magistrate

On the 7th day of April 2021, Plaintiff Bell was cited by City of Sunset Valley Police Officers for a Class C Misdemeanor (Assault By Contact) and Failure to Identify.  Plaintiff Bell was not

even asked or afforded the opportunity to sign (Officer Gill signed it herself as "Covid-19") a promise to appear before a magistrate in accordance with **Texas Code of Criminal Procedure 4.06(b)(1)** which reads as follows:

> ### Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE
>
> *(b)  A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under **Section 49.02**, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains:*

(1)  written notice of the time and place the person must appear before a magistrate;
(**49.02** is Public Intoxication)

When Plaintiff Bell hired counsel who appeared, as agreed, before City of Sunset Valley Municipal Judge, Kenton Johnson, the judge commenced to perform an arraignment as defined by **Texas Code of Criminal Procedure 26.02** which reads as follows:

> ### Art. 26.02. PURPOSE OF ARRAIGNMENT.  *An arraignment takes place for the purpose of fixing his identity and hearing his plea.*

Under Texas law, when Plaintiff Bell appeared before City of Sunset Valley Municipal Judge, Plaintiff Bell appeared before the judge in his capacity as a magistrate in and for the State of Texas.  As a magistrate, City of Sunset Valley Municipal Judge, Kenton Johnson was required to convene an examining court in accordance with **Chapter 16 Texas Code of Criminal Procedure**.

Instead, the magistrate held an arraignment in the case of a class C misdemeanor in violation of the restriction contained in **Texas Code of Criminal Procedure 26.01** which reads as follows:

> ### Art. 26.01. ARRAIGNMENT.  *In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.*

The Texas Legislature, for reasons of its own, restricted arraignment hearings to the above.  It was the Legislative intent that persons accused of a class C Misdemeanor not be subjected to an arraignment hearing.  In the instant case, Plaintiff Bell was denied an examining trail and subjected to an arraignment hearing instead.

By the failure of the magistrate to hold an examining trial, the magistrate failed to perform a duty he was commanded by law to perform, and in the process, denied Plaintiff Bell in the due course of the laws of the State of Texas in an act of **Official Oppression** as defined by **Texas Penal Code 39.03**, which reads as follows:

*Sec. 39.03.  OFFICIAL OPPRESSION. (a) A public servant acting under color of his office or employment commits an offense if he:*

*(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;*

*(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful;  or*

*(3) intentionally subjects another to sexual harassment.*

### 10.1.5.11  Shielding From Prosecution

On the 7th day of April 2021, Plaintiff Bell gave notice of crime to City of Sunset Velley police officers Eller and Gil in the form of a written statement.  On the 13th day of April 2021, City of Sunset Valley Chief of Police, Lynn Carter, stated that he dismissed the criminal charge filed by Plaintiff Bell against Defendant Fucci.

City of Sunset Valley Police Officers, Carter, Gill and Eller, after being presented with a criminal complaint against Defendant Fucci, had a duty to give notice to some magistrate in accordance with **Texas Code of Criminal Procedure 2.13(b)(3)** which reads in pertinent part as follows:

**Art. 2.13. DUTIES AND POWERS**.

(b) The officer shall:

> (3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;

Said failure to act had the effect of shielding the accused from prosecution in violation of **Texas Penal Code 38.05** which reads in pertinent part as follows:

*Sec. 38.05.  HINDERING APPREHENSION OR PROSECUTION. (a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:*

(1)  harbors or conceals the other;

(2)  provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (emphasis added)

(3)  warns the other of impending discovery or apprehension.

### 10.1.5.12  Impersonating a Judicial Officer

On or about the 13th day of April 2021, City of Sunset Valley Chief of Police Lynn Carter, dismissed the charge filed by Plaintiff Bell against Nordstrom Rack Loss Prevention Officer

Fucci.  In as much as a criminal complaint had been made before a police officer and the complaint was commanded by law to be presented to "some magistrate," (see **Texas Code of Criminal Procedure 2.13(b)(3) supra**, Chief of Police Lynn Carter  made a determination of no probable cause in impersonation of a magistrate in violation of **Texas Penal Code 37.11** which reads as follows:

> ### *Sec. 37.11.  IMPERSONATING PUBLIC SERVANT*.  *(a)  A person commits an offense if the person:*

(1)  impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts; or

(2)  knowingly purports to exercise, without legal authority, any function of a public servant or of a public office, including that of a judge and court.

> *(b) An offense under this section is a felony of the third degree.*

While Chief of Police Carter was a public servant, a determination of probable cause and subsequent dismissal of a criminal allegation may only be performed by some magistrate under **Texas Code of Criminal Procedure Chapter 16 supra**.

### 10.1.5.13  *Simulating a Legal Process*

Plaintiff Bell was arrested by City of Sunset Valley Police and given a citation for Failure to Identify and a Class C Misdemeanor Assault by Contact.  Plaintiff Bell was not allowed to sign the citation as a promise to appear.  Plaintiff Bell, through her counsel, appeared at the Sunset Valley Municipal Court on the 7th day of May 2021 in accordance with her citation.  At the hearing, the magistrate did not hold an examining trial as required by the statute, but rather, held an arraignment wherein the Judge allowed the prosecutor to attempt to solicit a plea from defense counsel.

Plaintiff Bell refused to plead guilty to a crime she did not commit, so the prosecutor summoned Plaintiff to court numerous additional times over an eighteen-month period.  Each time there was not a court hearing but rather, Plaintiff Bell, via her counsel, was forced to meet with the prosecuting attorney who repeatedly attempted to coerce Plaintiff Bell into a guilty plea.

### 10.1.6  Subject Matter Jurisdiction Challenge

Plaintiff Bell, on the 10th day of October 2022, filed two motions to dismiss with the trial court:

### 10.1.6.1    *Denial of Due Process*

Plaintiff Bell's pleadings included a Challenge to the Subject Matter Jurisdiction of the Court as the court never accrued jurisdiction as there was no order issued under **Texas Code of Criminal Procedure 16.17** and, therefore, the court was ordered to discharge the accused as follows:

> ***Art. 16.17. DECISION OF JUDGE***.  *After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper county, discharging him or admitting him to bail, as the law and facts of the case may require.  Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

### 10.1.6.2    *Speedy Trial Demand*

Included in the above filing was a motion to dismiss for denial of speedy trial.

## 10.1.7  Discharged for Lack of Evidence

Finally, on the 14th day of November 2022, the prosecution dismissed the case for lack of evidence.

## 10.1.8  Shyster Shenanigan

Plaintiff Bell was repeatedly summoned to court to meet with the prosecutor so that the prosecutor could attempt to coerce Plaintiff Bell to plead guilty to a crime for which there was no evidence of a crime and for which a subject matter jurisdiction challenge had been made but not heard.

### 10.1.8.1    *Denial of Redress*

The court had a duty to dismiss the case as a matter of law but instead dismissed for lack of evidence as a ploy to deny Plaintiff Bell in her right to sue and recover damages for wrongful prosecution.

### 10.1.8.2    *Simulating Legal Process*

Under Texas law, once subject matter jurisdiction was challenged the presumption of jurisdiction for the trial court was lost and the court was without jurisdiction.  When the court summoned Plaintiff Bell to a hearing that was not to hear the subject matter jurisdiction challenge, the court simulated a legal process in violation of **Texas Penal Code 32.48** which reads as follows:

> ***Sec. 32.48.  SIMULATING LEGAL PROCESS***.  *(a)  A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment, or other court process with the intent to:*

(1)  induce payment of a claim from another person;  or

(2)  cause another to:

> (A)  submit to the putative authority of the document;  or

> (B)  take any action or refrain from taking any action in response
> to the document, in compliance with the document, or on the basis
> of the document.

> *(b)  Proof that the document was mailed to any person with the intent that it be forwarded to the intended recipient is a sufficient showing that the document was delivered.*

> *(c)  It is not a defense to prosecution under this section that the simulating document:*

(1)  states that it is not legal process;  or

(2)  purports to have been issued or authorized by a person or entity who did not have lawful authority to issue or authorize the document.

> *(d)  If it is shown on the trial of an offense under this section that the simulating document was filed with, presented to, or delivered to a clerk of a court or an employee of a clerk of a court created or established under the constitution or laws of this state, there is a rebuttable presumption that the document was delivered with the intent described by Subsection (a).*

> *(e)  Except as provided by Subsection (f), an offense under this section is a Class A misdemeanor.*

> *(f)  If it is shown on the trial of an offense under this section that the defendant has previously been convicted of a violation of this section, the offense is a state jail felony.*

# 11 TORTS AND CAUSES OF ACTION

Plaintiffs include all the above as if incorporated directly herein.

Historically, assault was divided into two causes of action, assault, which involves "apprehension," or perception, of offensive contact and Battery, which involves the offensive contact itself.  In the Texas Penal Code, assault and battery are combined under the offense of "assault."  The elements for assault are the same in civil and criminal cases**. Loaisiga v. Cerda, 379 S.W.3d 248**.

## 11.1  PLAINTILFF KELTON

Plaintiff Kelton was subjected to denial of the due course of the laws by Travis County public officials.

### 11.1.1  1st Degree Felony Aggravated Assault

On or about the 12th day of October 2021, Plaintiff Kelton was assaulted by Sheriff Deputy Unknown at the Travis County District Court house entrance.  Sheriff Deputy Unknown denied Plaintiff Kelton entrance into the courthouse unless Plaintiff Kelton donned a medical device in

the form of a medical mask.  When asked if the pistol the deputy was prominently displaying on his hip was loaded, the deputy assured Plaintiff Kelton that it was.  When asked if he was prepared to use the weapon, if necessary, in order to prevent Plaintiff Kelton from entering the courthouse without a mask, the deputy assured Plaintiff Kelton that he would.

### 11.1.2  Interfering With 911 Call

When Plaintiff Kelton took out his cell phone to call 911, the officer placed his hand on his weapon and told Plaintiff Kelton that he could not use a cell phone in the courthouse.  At that point, the deputy came around the metal detector with his hand on his pistol and ordered Plaintiff Kelton from the building.  When Plaintiff Kelton asked the deputy if he was going to interfere with a 911 call another deputy came and physically restrained the deputy.

### 11.1.3  Special Conditions

Plaintiff Kelton is a combat veteran who believes in and is dedicated to the American form of government, to the point Plaintiff Kelton offered up his life to the protection of same.  Plaintiff Kelton paid for these rights and he paid heavy.  To have his life casually threatened by an arrogant, self-important, minor official was much more than a threat.

### 11.1.4  Proximate Cause

Governor Abbott, by his illegal executive orders, emboldened Sheriff Hernandez to add restrictions to the exercise of a public court and is the proximate cause of the harm inflicted on Plaintiff Kelton by Deputy Unknown.  In the instant case, Deputy Unknown, attempted to enforce an edict of the Governor of the State of Texas, an edict the Governor had no power to issue and which Sheriff Hernandez had no power to enforce.  Their arrogant disregard for the standing of citizens in this republic had the effect of denying Plaintiff Kelton access to a government building.

While assisting and participating with Governor Abbotts executive order, Unknown Deputy, aided Governor Abbott in achieving the intended outcome of his improper edict.  Unknown Deputy knew, or should have known that his action was wrongful

*It is said, however, that this construction of the Act will not save it from the infirmity of vagueness since neither a law enforcement official nor a trial judge can know with sufficient definiteness the range of rights that are constitutional. But that criticism is wide of the mark. For the specific intent required by the Act is an intent to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions*

*interpreting them. Take the case of a local officer who persists in enforcing a type of ordinance which the Court has held invalid as violative of the guarantees of free speech or freedom of worship. Or a local official continues to select juries in a manner which flies in the teeth of decisions of the Court. If those acts are done willfully, how can the officer possibly claim that he had no fair warning that his acts were prohibited by the statute? He violates the statute not merely because he has a bad purpose but because he acts in defiance of announced rules of law. He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did. Of course, willful conduct cannot make definite that which is undefined. But willful violators of constitutional requirements, which have been defined, certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment. When they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite. When they are convicted for so acting, they are not punished for violating an unknowable something.* **Screws v. United States, 325 U.S. 91, 104-5 (1945)**

### 11.1.5   Aggravated Assault 22.02(b)(2)(A)

Unknown Deputy, threatened Plaintiff Kelton with the use of deadly force while exhibiting a deadly weapon, in order to enforce the mask executive order.  By said act, Unknown Deputy committed an act of first degree felony aggravated assault as defined by **Texas Penal Code 22.02(b)(2)(A)** which reads as follows:

> ### *Sec. 22.02.   AGGRAVATED ASSAULT.*
>
> *(b)   An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:*

(2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

> > (A)  by a public servant acting under color of the servant's office or employment;

The laws of the State of Texas at **Texas Penal Code 22.02(b)(2)(A)** must be construed as a special statute as it specifies a special circumstance anticipated by the Texas Legislature.

### 11.1.6  Special Legislation

Unlike other states, when our Legislators put pistols on the hips of our public officials, they placed a horrible responsibility on them.  It was not the Legislative intent that officers take deadly weapons lightly.   **Texas Penal Code 22.02(b)(2)(A)** made Deputy Unknown's act a first degree felony act of aggravated assault to ensure no officer would do what Uknown Deputy did and risk the harm his actions could ultimately cause.

### 11.1.6.1    *Bigger Deal for Some Than Others*

Combat changes people.   Try as one may, being in theater where one knows every step, every movement can be your last, changes things.  We can't explain it.  If we try to tell people the things that happen, for the most part they think it is too outrageous so we tend to keep these things to ourselves.  Suppress it as we may, it has a way of oozing out through the cracks and the ordinary for some, become revivification for others.

Many may not consider being threatened with a pistol such a big deal but Plaintiff Kelton is a combat veteran and has spent time on the sharp end of those things.  Kelton has unloaded helicopters with blood pouring out the bottom like someone kicked a bucket over, pushed intestines back inside a living person while he is crying for his mother.  Unlike what you see on the screen, people are very hard to kill, and they mostly die horribly and slowly from the kinds of wounds inflicted by those pistols, Deputy Unknown so cavalierly placed his hand on.

### 11.1.6.2    *Not What I Risked My Life For*

I came home to the place I was prepared to give my life to preserve only to have to endure some arrogant little Sheriff's deputy threaten me with a weapon over something so petty as a mask.  This is not Nazi Germany or Communist Russia.  This is not what I offered up and my twin brother gave his life for.

### 11.1.6.3    *No Apologies*

That I am somewhat broken I have been forced to accept.  At eighteen, I didn't realize that some choices are more life altering than others and some debts never get fully paid.  I offer no apologies for who and what I am.  I am older and realize things were never the way I was led to believe but I must take things as I find them, as must Defendants.

> *It is well settled that a tortfeasor takes a plaintiff as he finds him.* **Driess v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 *753 (1889); Thompson v. Quarles, 297 S.W.2d 321, 330 (Tex.App.-Galveston 1956, writ ref'd n.r.e.)**. *as quoted from:* **Coates v. Whittington, 758 S.W.2d 749 (1988)**.

### 11.1.6.4    *Duty to Enforce and Abide by Law, not Policy*

The Travis County Sheriff's department, in training and directing their deputies stands as respondeat superior.  I am certain, if you ask the officer, he will genuinely decry any culpability as he was only following orders.

> *the "factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." Id. Engineering* **Corp. v. Clark,  668 S.W.2d at 308 at 309***, as quoted from* **Nabors Drilling v. Escoto, 288 S.W.3d 401, 405 (Tex. 2009)**

### 11.1.6.5    Aggravated Assault as a Matter of Policy

That citizens of Texas would be curtailed in their freedoms as a direct result of Governor Abbott's improper executive order would, for any reasonable person of ordinary prudence, be the intended and expected outcome of Defendant Unknown's action.  It is apparent from the actions of Bailiffs at the Travis County Courthouse, they were trained to use force to enforce the Governor's edicts.

### 11.1.7    Legal Duty

Defendant Hernandez had a legal duty as stipulated by the **oath of office** she was required to swear to as a condition of employment by the people of the State of Texas which reads as follows:

> **IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS**, *I, ,
> do solemnly swear (or affirm), that I will faithfully execute the duties of the **office** of of the State of **Texas**, and will to the best of my ability **preserve, protect, and defend the Constitution and laws of the United States and of this State**, so help me God.*

Plaintiff Kelton was subjected to being threatened by a man with a loaded pistol in order to prevent Plaintiff Kelton from doing something as simple as entering a courthouse without a mask.  It cannot be construed that Deputy Unknown was unaware of the impropriety of the mask order by the Governor as the Texas Constitution clearly limited the power of the governor to write law as stipulated by the United States Supreme Court in the **Screws v. United States, 325 U.S. 91 (1945)** which reads in pertinent part as follows:

> *Take the case of a local officer who persists in enforcing a type of ordinance which the Court has held invalid as violative of the guarantees of free speech or freedom of worship. Or a local official continues to select juries in manner which flies in the teeth of decisions of the Court. If those acts are done willfully, how can the officer possibly claim that he had no fair warning that his acts were prohibited by the statute? He violates the statute not merely because he has a bad purpose but because he acts in defiance of announced rules of law. He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did.* **Screws v. United States, 325 U.S. 91 (1945)**

### 11.1.8   Legal Reform Activist

Plaintiff Kelton is a long time legal activist.  This suit has been filed in an attempt to right some wrongs Plaintiff Kelton has been investigating these last 40+ years.  Over this period, Plaintiff Kelton has been threatened by public officials with guns more times than he cares to remember, physically thrown out of court houses on numerous occasions, suffered three broken ribs, two broken collar bones, a chipped elbow and only one tooth knocked out, and arrested numerous times.

An examination of Plaintiff Kelton's criminal history will show numerous arrests and criminal charges filed.  What the court will not find is an order under **Texas Code of Criminal Procedure 16.17 supra** in any of the cases against Plaintiff Kelton.

## 11.2   PLAINTIFF BELL

Plaintiff Bell intended to go to Nordstrom Rack to return a belt and do some shopping and was subjected to the following:

### 11.2.1  Nordstrom Assault

Prior to going to Nordstrom Rack to shop, Plaintiff Bell contacted Nordstrom corporate and inquired about shopping without a mask due to a medical exemption. Plaintiff Bell explained that she had a physical condition which rendered her very sensitive to lowered blood oxygen levels and needed to know if they honored medical exemptions. Plaintiff Bell was assured by Nordstrom's Corporate as well as store employees that Nordstrom Rack allowed for medical exemptions and that her exemption would be honored.

Plaintiff Bell then proceeded to Nordstrom Rack in Sunset Valley, Texas to return a belt bought a few weeks earlier and do some shopping.  After about 15 minutes Plaintiff Bell was approached by a man claiming to be the manager of the store and he asked Plaintiff Bell to put on a mask. Plaintiff Bell explained to the manager that she had a medical exemption and had already discussed this with Nordstrom Corporate, the manager said alright, told her she could shop and walked away. Plaintiff Bell selected clothes, tried on shoes and used the bathroom all without experiencing any problems.

After shopping for more than an hour without incident, Plaintiff Bell went to the dressing room to try on the clothes she had selected during that time.  Inside the women's dressing rooms,

Plaintiff Bell was confronted by a large, agitated woman (later learned to be Defendant Fucci) who ordered Plaintiff Bell to put on a mask. Plaintiff Bell had no idea who the woman was as she was not in any type of uniform and appeared to be just another shopper. Plaintiff Bell told the woman that she had a medical exemption and had already addressed the issue with Nordstrom Rack. Although it was none of her business Plaintiff Bell shared, she had a medical exemption and had discussed this with the store manager after her arrival.

The agitated woman learned to be Defendant Fucci did not like this, and Plaintiff Bell could see that this made her angry. Defendant Fucci was clearly agitated and wanted to enforce her personal agenda on Plaintiff Bell, she wanted Bell to wear a mask regardless of her medical condition or what she had previously stated. Defendant Fucci started acting very aggressive and Plaintiff Bell was very concerned that she may be dealing with an emotionally unstable person. To try and diffuse the situation Plaintiff Bell pointed behind Defendant Fucci and asked why the customer behind her was able to shop without a mask but Plaintiff Bell could not. Confused, Defendant Fucci turned to look behind her at the other unmasked woman. While Defendant Fucci turned around to look at the unmasked woman, Plaintiff Bell felt the need to get somewhere safe and made her way toward the first dressing room on the left which had an open door. At this moment, Defendant Fucci turned back toward Plaintiff Bell, saw her entering an empty dressing stall, and proceeded to hip-check Bell so hard that she fell back into the door frame of the dressing room. As Plaintiff Bell stumbled back into the dressing room, Defendant Fucci escalated her assault and battery and grabbed Plaintiff Bell's right arm trying to pull her out of the dressing room. Plaintiff Bell yelled for Fucci to stop touching her, said that she was hurting her arm and to stop assaulting her. Defendant Fucci had grabbed Plaintiff Bell's arm so tightly that Fucci left finger mark bruises on Bell's upper right arm. Extremely frightened, Bell dropped the clothes that she was holding in her left arm and had to physically use the door of the dressing room to pry herself of Defendant Fucci's tight grip on her right arm. After Plaintiff Bell was able to free herself from Defendant Fucci she closed and locked the door and called 911 for help.

At this point, Plaintiff Bell was in shock and her post-traumatic stress disorder had been triggered, severely impacting her current mental state. Bell was now medically disabled and put in an incredibly dire situation.

#### 11.2.1.1    PSTD Diagnosis

Plaintiff Bell had previously been diagnosed with Post Traumatic Stress Disorder (PTSD) and was triggered by the demanding and aggressive behavior of Defendant Fucci.   When Plaintiff Bell started to enter the changing room, the agitated woman grabbed Plaintiff Bell's arm so tightly that it left her finger marks in the form of bruises in Plaintiff Bell's arm.  Said grabbing amounted to offensive touching with bodily injury in violation of **Texas Penal Code 22.01** which reads in pertinent part as follows:

> ### Sec. 22.01.  ASSAULT.  (a)  A person commits an offense if the person:

(3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Consequent to Plaintiff Bell's PTSD condition Plaintiff Bell was terrified.  Plaintiff Bell jerked free, went into the dressing room, closed and locked the door, then called 911.

#### 11.2.1.2    Retaliation

Apparently, Nordstrom Rack employees heard Plaintiff Bell talking to the 911 officer then called 911 themselves.  When the police arrived, they took Plaintiff Bell into custody, refused to consider or investigate her complaints, escorted her from the building, attacked Plaintiff Bell by throwing her to the ground, handcuffed Plaintiff Bell and placed her in a hot automobile with the windows rolled up and the engine off, in 97-degree heat, almost killing Plaintiff Bell.

#### 11.2.1.3    Saved by Bystander

Plaintiff called for help but no one could hear her so she banged her head on the inside of the police car to get someone's attention.  While the police were illegally searching through Plaintiff Bell's purse looking for her car keys so they could access her car, a bystander observed Plaintiff Bell's distress and ordered the police to get Plaintiff Bell out of the car.  When the police finally removed Plaintiff Bell from the baking hot police car, she was faint from heat prostration, forcing the police to have paramedics dispatched.

#### 11.2.1.4    False Alarm

When Nordstrom Rack employees heard Plaintiff Bell talking to the 911 operator, the assailant immediately called 911 herself.  In Nordstrom Rack employee, Defendant Fucci's statement to the 911 operator she admitted that she did not believe Plaintiff Bell had committed a crime.  It is

the assertion and allegation of Plaintiff Bell that Nordstrom Rack employee Defendant Fucci made a false 911 call for the purpose of covering up her criminal behavior in violation of **Texas Penal Code 42.06** which reads as follows:

> ### *Sec. 42.06.  FALSE ALARM OR REPORT.* *(a)  A person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily:*

(1)  cause action by an official or volunteer agency organized to deal with emergencies;

(2)  place a person in fear of imminent serious bodily injury;  or

(3)  prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance.

> *(b)  An offense under this section is a Class A misdemeanor unless the false report is of an emergency involving a public or private institution of higher education or involving a public primary or secondary school, public communications, public transportation, public water, gas, or power supply or other public service, in which event the offense is a state jail felony.*

### 11.2.1.5   *Conspiracy to False Accusation*

Nordstrom Rack Loss Prevention Officer Fucci had told the 911 dispatcher that she did not believe Plaintiff Bell had committed any crime and only wanted her removed from the store. In the 911 call Defendant Fucci stated very clearly, "I am not pressing charges".

On the scene Officers Gill and Eller were informed by their supervisor that an uninvolved bystander called 911 to report that she witnessed "police officers brutally assaulting a woman", the woman was Plaintiff Bell, and the officers committing the brutal assault were Officers Eller and Gill. This uninvolved bystander was told she would be contacted by police, but surprisingly never was. The uninvolved bystander had to reach out two more times after the incdent in order for someone at Sunset Valley to respond to her regarding filing a complaint of "brutal assault, excessive force, and cruelty" by Sunset Valley Police Officers Eller and Gill.  In the written statement of the uninvolved bystander she states, "several individuals pulled out their phones to film what they also believed to be excessive force, as I was able to talk to them after the incident". No attempt was made on the scene or after the incident to talk with any of these witnesses. Plaintiff's faith in humanity was restored by this courageous bystander who refused to be ignored by the corrupt Sunset Valley Police Department, pressing them to take her report of police brutality.

When Sunset Valley Police Officer Eller and Gill realized that their act of "hotboxing" Plaintiff Bell nearly killed her, the Officers demeanor toward Plaintiff Bell changed instantly. After

Plaintiff Bell was stabilized and given some water, Officer Gill and Officer Eller asked Plaintiff Bell if she wanted to press charges against Defendant Fucci, and Plaintiff Bell indicated she did in fact want to press charges against Nordstrom Rack's Loss Prevention Officer Fucci for assault. At this time Officer Eller went back into Nordstrom Rack and conspired with Nordstrom Rack Loss Prevention Officer Fucci to retaliate against Plaintiff Bell by filing criminal charges against her, for a crime she did not commit, which was already admitted by Defendant Fucci.

### 11.2.1.5.1    Alternative Liability

Plaintiff Bell would not have had to endure eighteen years of official misconduct by the police and courts were it not for the adverse personal action of Defendant Fucci conspiring with the police toward the filing of false charges against Plaintiff Bell.

The arrest and prosecution of Plaintiff Bell was the proximate result of the concert of action between Defendant Fucci and Officer Eller, Officer Gil, Chief of Police Carter, Sunset Valley Prosecutor and Judge Kenton Johnson

> *A crucial element to alternative liability is that all possible wrongdoers must be brought before the court.* **https://casetext.com/case/abel-v-eli-lilly-co#p174** *cert. denied, 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984);* **Starling v. Seaboard Coast Line R.R.,533 F. Supp. 183, 188 (S.D.Ga. 1982)**. *(quoting from* **Gaulding v. Celotex Corp., 772 S.W.2d 66, 69 (Tex. 1989)***)*

### 11.2.1.6    False 911 Call as Proximate Cause

Plaintiff alleges and is prepared to prove in court, the injury Plaintiff Bell suffered at the hands of the Sunset Valley police only occurred as a proximate result of Nordstrom Rack employees making a false 911 call, then falsely alleging wrong-doing on the part of Plaintiff Bell, to cover up the assault by Loss Prevention Officer Fucci and the police, on Plaintiff Bell.

### 11.2.1.7    Reasonable Expectation of Excessive Force

With the current condition of policing in Texas, any reasonable person of ordinary prudence, would expect that, by calling the police and involving them, there was a high likelihood that further injury would come to Plaintiff Bell, and further injury did accrue as a proximate result of the improper 911 call by Nordstrom Rack employees.

### 11.2.1.8    Scope of Responsibility

Nordstrom Rack is responsible for the actions of its employee, Defendant Fucci, as, at the time of the alleged tort, Defendant Fucci was employed by Nordstrom Rack as a Loss Prevention Officer.  In as much as Nordstrom Rack employed Defendant Fucci as a Loss Prevention Officer, by such employment Nordstrom Rack authorized the use of force either expressly or indirectly, by placing Defendant Fucci in a position that involved the use of physical force.  (see **Green v. Jackson, 674 S.W.2d 395, 396 at 708 (Tex. App. 1984)**

> *In considering the question of exceptions to this general rule there appear to be two divergent lines of authority in Texas. The first line of cases employs the "rule of force." That rule provides before an employer could be held liable for the assault and battery of its servant, the employer must have authorized the act, either expressly or impliedly, by placing the individual in a position which involved the use of physical force itself. Under that rule, a plaintiff has to allege and prove that the servant's position was one that permitted the use of force and, if not, there can be no recovery. See Texas P. Ry. Co. v. Hagenloh, supra;* ***Dart v. Yellow Cab, Inc., 401 S.W.2d 874 (Tex.Civ.App.-Amarillo 1966, writ ref'd n.r.e.).  Green v. Jackson, 674 S.W.2d 395, 396 at 708 (Tex. App. 1984)***

### 11.2.1.9    Intentional Conduct

Plaintiff Bell was turning away from Defendant Fucci when Defendant Fucci hip-checked and then grabbed Plaintiff Bell.  The grip was surprising and immediately painful causing Plaintiff Bell to instinctively jerk away from the contact and go into the dressing room and lock the door for protection.  Defendant Fucci grabbed Plaintiff Bell, apparently, for the purpose of restraining her but the grip was so strong and painful, it triggered an instinctual reaction from Plaintiff.

> *A culpable mental state is almost always proven by circumstantial evidence. See* ***Hernandez v. State,819 S.W.2d 806, 810 (Tex.Crim.App.1991); Gant v. State,278 S.W.3d 836, 839 (Tex.App.-Houston [14th Dist.] 2009, no pet.); Pitonyak v. State,253 S.W.3d 834, 844 (Tex.App.-Austin 2008, pet. ref'd).*** *Proof of knowledge or intent may be inferred from both direct evidence and from evidence of the circumstances surrounding the act. See* ***Brown v. State,122 S.W.3d 794, 800 (Tex.Crim.App.2003), cert. denied,541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004); Wolfe v. State,917 S.W.2d 270, 275 (Tex.Crim.App.1996).  In re I.L., 389 S.W.3d 445, 456 (Tex. App. 2012)***

Plaintiff Bell alleges Defendant Fucci acted knowingly and intentionally when she grabbed Plaintiff Bell, causing injury to Plaintiff Bell.

### 11.2.1.10   Failure to Properly Train

Nordstrom Rack had a duty to properly train and supervise Defendant Fucci in the performance of her duty.  Nordstrom Rack employee Defendant Fucci violated Nordstrom Rack guidelines by

refusing medical accommodation to Plaintiff Bell and subsequently called 911 to falsely allege trespass.

At the time of the incident, Defendant Fucci was an employee of Nordstrom Rack,

> *There are but few situations in which one may be constituted a wrongdoer by ratification where such wrong consists of an assault and battery. In the case of Dillingham v. Anthony, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, Chief Justice Stayton quotes with approval the following language from Cooley on Torts:*
>
> *'In order to constitute one a wrongdoer by ratification the original act must have been done in his interest, or been intended to further some purpose of his own.'* ***Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984)***

### 11.2.1.11   Issue of Force

The testimony of Nordstrom Rack employees establish the facts in this matter as to the assault against Plaintiff Bell.

> *In summary judgment cases the judgment granted should be affirmed only if the record establishes a right thereto as a matter of law and the movant establishes that he is entitled to the judgment by reason of the matters set out in the motion. City of Houston v. Clear Creek Basin Authority,* ***589 S.W.2d 671*** *(Tex. 1979); Gibbs v. General Motors Corporation,* ***450 S.W.2d 827, 828*** *(Tex. 1970); Harrington v. Young Men's Christian Ass'n of Houston,* ***452 S.W.2d 423, 424*** *(Tex. 1970). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant and all doubts are resolved against him. Womack v. Allstate Insurance Company,* ***156 Tex. 467, 296 S.W.2d 233, 235*** *(1956); Durham v. Cannan Communications, Inc.,* ***645 S.W.2d 845, 852*** *(Tex.App.-Amarillo 1982, writ dism'd). It is in the light of this teaching that we examine the record in this case. Green v. Jackson, 674 S.W.2d 395, 396-97 (Tex. App. 1984)*

### 11.2.1.12   Intentional Assault

Defendant Fucci, acted with intent to commit assault when Defendant Fucci grabbed Plaintiff Bell in a grip tight enough to leave bruises on Plaintiff Bell's arm.  While it may not have been Defendant Fucci's conscious intent to cause bruising to Plaintiff Bell's arm, the bruising was the natural result of being grabbed by Defendant Fucci. See ***Traveler's Protective Assn. v. Weil, 40 Tex. Civ. App. 629, 631 (Tex. Civ. App. 1905)***

### 11.2.1.13   Injury Direct Result of Offensive Touching

It is the testimony of Defendant Fucci that she intentionally grabbed the arm of Plaintiff Bell in an attempt to remove her from the dressing room.  The resultant injury to Plaintiff Bell was the direct result of Defendant Fucci's action of grabbing.  See Pleasant Glad

> *At common law, actual damages are either "direct" or "consequential.".  In the case of intentional torts such as assault and battery and false imprisonment, the wrongdoer is responsible for the direct and immediate damages resulting from the tort regardless of whether those damages were contemplated, foreseen, or expected. See* ***Sitton v. Am. Title Co. of Dallas, 396 S.W.2d***

*899, 903-04 (Tex.Civ.App.-Dallas 1965, writ ref'd n.r.e.), cert. denied, 385 U.S. 975, 87 S.Ct. 501, 17 L.Ed.2d 437 (1966); Thompson v. Hodges, 237 S.W.2d 757, 759 (Tex.Civ.App.-San Antonio 1951*, writ ref'd n.r.e.). *Direct damages, also known as "general" damages, flow naturally and necessarily from the wrong and compensate the plaintiff for the loss that the defendant is conclusively presumed to have foreseen as a result of his wrongful act.*

### 11.2.1.13.1   Respondeat Superior

Nordstrom Rack is vicariously liable for the assault by Loss Prevention Officer Fucci under the doctrine of respondeat superior.  The applicable rule in the situation here is well stated in Gulf, C. S.F. Ry. Co. v. Cobb (Texas Civ. App.) 45 S.W.2d 323, 325, as follows:

> *"In practically all jurisdictions, the law is now settled that a master is liable for the willful and malicious acts of his servant when done within the scope of his employment. Such acts are imputable to the master, under the doctrine of respondeat superior, and in accordance with the general principles that the master is liable for any act of the servant done within the scope of his employment, as well as for any act of the servant which, if isolated would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as being one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act."*

There is no evidence to indicate that Defendant Fucci acted from some personal motive as Plaintiff Bell and Defendant Fucci were strangers to one another and had no previous interactions that would motivate any action by Defendant Fucci.   The only issue was the wearing of a mask.

### 11.2.1.13.2   Wrongdoer by Ratification

It should reasonably be expected that a "Loss Prevention Officer' would, at some point, be required to use force in the performance of their function.  Nordstrom Rack tacitly or directly authorized the use of force by its Loss Prevention Officers which included Defendant Kelsey Fucci, while failing to adequately train said employee in the proper use of force.  Plaintiff alleges, when Defendant Fucci used force against Plaintiff Bell, she was acting within the scope of her employment, therefore, Nordstrom Rack is a wrongdoer by ratification as construed by the courts in **Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984)** as follows:

> *There are but few situations in which one may be constituted a wrongdoer by ratification where such wrong consists of an assault and battery. In the case of Dillingham v. Anthony, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, Chief Justice Stayton quotes with approval the following language from Cooley on Torts:*

*'In order to constitute one a wrongdoer by ratification the original act must have been done in his interest, or been intended to further some purpose of his own.' **Green v. Jackson, 674 S.W.2d 395, 400 (Tex. App. 1984)***

### 11.2.1.14  Exemplary Damages

Plaintiff Bell had exercised due care by contacting Nordstrom Rack prior to shopping there. Plaintiff Bell has a right to the expectation that she would be treated with the dignity and respect any citizen has a right to expect from another.  In the instant case, Defendant Fucci acted with unconcealed malice prior to and when grabbing Plaintiff Bell which was the reason Plaintiff Bell tried to get into the changing room so that she could call for help.

*Punitive damages have an altogether different purpose. Cavnar, **696 S.W.2d at 555**; Smith v. Sherwood, 2 Tex. 460, 463-64 (1847). "The idea of punishment, or of discouraging other offenses usually does not enter into tort law. . . . In one rather anomalous respect, [punitive damages], the ideas underlying the criminal law have invaded the field of torts." PROSSER KEETON § 2. More than 100 years ago, in one of its first opinions addressing punitive damages, this court recognized the close connection between punitive damages and the criminal law:*

*Such indifference is morally criminal, and if it leads to actual injury may well be regarded as criminal in law. A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the border-line of a quasi-criminal act of commission or malfeasance.*

*"Southern Cotton Press Mfg. Co. v. Bradley, 52 Tex. 587, 600-601 (1880) (citations omitted)." Quoted from **Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 16 (Tex. 1994)**.*

There is nothing to indicate that Defendant Fucci acted from some personal motive by the above assault.  The facts indicate that Defendant Fucci was acting in what she believed to be the interest of her employer.

*Texas recognizes the rule that a master is liable for exemplary damages if the agent who caused actual damage by his tortious conduct was engaged in a managerial capacity and was acting in the scope of his employment. Fisher v. Carrousel Motor Hotel, Inc., **424 S.W.2d 627** (Tex. 1967). The landmark cases with regard to corporate liability for exemplary damages arising from acts of an employee were written by Chief Justice Cureton in Fort Worth Elevators Co. v. Russell, **123 Tex. 128, 70 S.W.2d 397** (1934); Morton Salt Co. v. Wells, **123 Tex. 151, 70 S.W.2d 409** (1934); Southwestern Gas Electric Co. v. Stanley, **123 Tex. 157, 70 S.W.2d 413** (1934). **Frito-Lay Inc. v. Ramos, 770 S.W.2d 887, 889 (Tex. App. 1989)**.*

### 11.2.1.15  Nordstrom Rack Severe Emotional Distress

Plaintiff Bell, while talking to police was attacked and thrown to the ground by two Sunset Valley police officers without cause or provocation.  Plaintiff Bell was talking to police officers and made no aggressive moves of any kind when the male officer walked behind Plaintiff then both officers tackled Plaintiff and threw her to the ground, causing her glasses and shoes to fly off, kneed her in the back and then handcuffed her.  As the officer's body cameras will show, Plaintiff did nothing that would warrant a physical attack and, therefore, the act of assault by said

police officers was an act taken without authority in violation of **Texas Penal Code 22.02(b)(2)(A)** which reads in pertinent part as follows:

### *Sec. 22.02.  AGGRAVATED ASSAULT.*

*(b)  An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:*

(2)  regardless of whether the offense is committed under Subsection (a)(1) or (a)(2), the offense is committed:

> (A)  by a public servant acting under color of the servant's office or employment;

### *11.2.1.16  Eggshell Rule*

Plaintiff Bell had previously been diagnosed with Post Traumatic Stress Disorder (PTSD) and was, due to Lyme disease and other auto immune disorders, in a weakened physical and emotional condition.  When Plaintiff Bell was physically attacked by Defendant Fucci, the attack caused severe emotional distress and triggered her PTSD.

> *It is well settled that a tortfeasor takes a plaintiff as he finds him.* ***Driess v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 *753 (1889)****; **Thompson v. Quarles, 297 S.W.2d 321, 330 (Tex.App.-Galveston 1956, writ ref'd n.r.e.),** *as quoted from:* ***Coates v. Whittington, 758 S.W.2d 749 (1988)***.

### 11.2.2  Public Official Abuse

City of Sunset Valley police officers Eller and Gill, Chief of Police Lynn Carter, City Prosecutors Jeff Ulmann and Barbara Boulware-Wells, and Judge Kenton Johnson, acted outside the scope of their authority when they subjected Plaintiff Bell to a set of practices and procedures which amount to an ongoing criminal conspiracy to deny Plaintiff in the due course of the laws of the state of Texas.

### *11.2.2.1    Ultra Vires*

Plaintiffs fully expect all named public official defendants will claim various forms of official immunity, however, the various doctrines of immunity do not apply to criminal acts as there is no grant of immunity in Texas intended to indemnify anyone from criminal acts committed under the color of official capacity or otherwise.  Therefore, it must be construed that, any act by any public official which is in violation of any criminal law is beyond the scope of their employment.

> *Heinrich, 284 S.W.3d at 369–372 (widow challenged retroactive reduction in benefits by pension fund); see also Chambers-Liberty Ctys. Nav. Dist. v. State, 575 S.W.3d 339, 348–355 (Tex. 2019)*

*(ultra-vires claims against commissioners of coastal-navigation district by State alleging district exceeded its legal authority by entering into lease of certain submerged land when right to enter that lease belonged to different state department); McRaven, 508 S.W.3d at 234, 235–37 (ultra-vires claim against chancellor alleging chancellor exceeded his granted authority in applying applicable laws and withholding records); Houston Belt & Terminal Ry. Co. v. City of Houston, 487 S.W.3d 154, 158–61 (Tex. 2016) (railroads alleged City's director of public works acted without legal authority in making determination of status of railroad's property with regard to drainage fees); Southwestern Bell Tel., L.P. v. Emmett, 459 S.W.3d 578, 588 (Tex. 2015) (utility company alleged that county commissioners acted ultra vires by refusing to accept responsibility for repayment of relocation costs in violation of statutory duty); Sawyer Trust, 354 S.W.3d at 393–94 (plaintiff sought declaratory judgment against State that streambed on its property was not navigable; however, while court dismissed claim as barred by sovereign immunity, it held plaintiff should have right to amend and assert ultra-vires claim against state actors claiming streambed to be navigable).*

### 11.2.2.2    Depraved Heart Assault

The above referenced officers intentionally subjected Plaintiff Bell to a life-threatening situation for the purpose of punishing Plaintiff Bell and rendering her more compliant with police who were in the process of violating her rights to the due course of the laws of the State of Texas.

### 11.2.2.3    Hot Boxing

Plaintiff Bell, after being arrested and double cuffed, was placed in the back seat of a patrol car with the windows up and the engine turned off.  At trial, Plaintiff will show that this has become a common practice of police as a way to punish citizens and render them compliant even when their rights are being violated.

Leaving a person in a car with blatant disregard for the person's safety is addressed specifically by **Texas Administrative Code 707.467** which reads in pertinent part as follows:

*(a) Neglect is defined in Texas Family Code (TFC) §261.001(4) as an act or failure to act by a person responsible for a child's care, custody, or welfare evidencing the person's blatant disregard for the consequences of the act or failure to act that results in harm to the child or that creates an immediate danger to the child's physical health or safety. Neglectful supervision is a subset of the statutory definition of neglect and involves the following acts or omissions by a person:*

(1) Placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or an immediate danger of harm to the child;

### 11.2.2.4    Helpless as a Child

Plaintiff Bell, in the instant case was rendered incapable of acting in her best interest as she was placed in the back seat of a patrol car that was designed to contain a person in such a way that they could not escape the vehicle.  In the instant case, Plaintiff Bell had no more control of her situation than a child would being placed in the back of a car with the windows up and the

engine off. No reasonable person of ordinary prudence would leave another human being in such a situation, much less, deliberately place the person at such risk.

Plaintiff Bell, in order to save her life had to bang her head on the inside of the car until a bystander approached the police and ordered them to assist Plaintiff Bell. The officers opened the door and found Plaintiff Bell in a state of heat prostration and called paramedics. When paramedics arrived, Plaintiff Bell had recovered somewhat but her temperature was still a 101 degrees and her blood pressure was, to quote the paramedics, "off the charts."

### 11.2.2.5    Life Saved by Citizen

Plaintiff Bell feels she owes her life to a brave bystander who, after watching the police deliberately put Plaintiff Bell in jeopardy of her life, had the courage to order them to get Plaintiff Bell out of that car. In the current policing environment, that citizen placed herself in grave jeopardy to help a stranger and has Plaintiff Bell's undying gratitude.

The experience left Plaintiff Bell terrified as she knew she would have died in the patrol car had it not been for a bystander who was willing to intercede in a police investigation and risk arrest herself.

### 11.2.2.6    Intentional Infliction of Bodily Injury

Plaintiff alleges, the above reference act was not simply an act of negligence, but rather, it was a deliberate act of first degree felony aggravated assault on the part of the officers with the intent of inflicting unadjudicated punishment on Plaintiff Bell, in violation of **Texas Penal Code 22.02(b)(2)(A) supra**.

### 11.2.3  False Imprisonment

Plaintiff Bell was falsely imprisoned by Sunset Valley police officers when there was no evidence to indicate Plaintiff Bell had committed a crime. The police reports indicate the Nordstrom Loss Prevention Officer told a 911 officer she did not have reason to believe Plaintiff Bell had committed any crime. The officers continued to hold Plaintiff Bell, physically attacked her and hot boxed her, almost killing her when there was no evidence before them that Plaintiff Bell had committed a crime in violation of **Texas Penal Code 22.04** which reads as follows:

> ### Sec. 20.04.  AGGRAVATED KIDNAPPING. *(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:*

(1) hold him for ransom or reward;

(2) use him as a shield or hostage;

(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

(4) inflict bodily injury on him or violate or abuse him sexually;

(5) terrorize him or a third person;  or

(6) interfere with the performance of any governmental or political function.

> *(b) A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.*
>
> *(c) Except as provided by Subsection (d), an offense under this section is a felony of the first degree.*
>
> *(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place.  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.*

After the police officers nearly killed Plaintiff Bell.

### 11.2.3.1    *Proximate Cause of Harm*

It is the assertion and allegation of Plaintiff Bell that Nordstrom Rack Loss Prevention Officer Fucci, knew, or should have known that Plaintiff Bell would be badly handled by the police. Defendant Fucci knew, or should have known, when she called the police that there was a high likelihood that the police would act badly, in as much as the Austin Police department had, for the first time in history, been defunded as a consequence of their bad behavior which included the abuse and even murder of citizens in custody.

### 11.2.3.2    *False 911 Call*

But for the false 911 call made by Defendant Fucci, the police would not have come and the resulting harm at the hands of the police would not have happened to Plaintiff Bell.

The **2010 edition of Texas Pattern Jury Charge 2.4** reads:

> *"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom."*

When the City of Sunset Valley police officer Eller solicited a criminal complaint from Defendant Fucci after she had told the police that she did not have reason to believe that Plaintiff Bell had committed a crime, prudence, and fair dealing on the part of Defendant Eller would have prevented the eighteen months of torture Plaintiff Bell suffered at the hands of the City of Sunset Valley police and courts.

### 11.2.4  Criminal Conspiracy

Defendant Police Officers Eller and Gil, falsely imprisoned Plaintiff Bell while they conspired with the Nordstrom Rack Loss Prevention Officer to shield said officer from prosecution and fabricate evidence to cover the bad behavior of said officers.

#### 11.2.4.1   Witness Tampering

It wasn't until after the police almost killed Plaintiff Bell that they asked her if she wanted to press charges against the Nordstrom Loss Prevention Officer.  When Plaintiff Bell indicated that she did want to press charges, Defendant Eller went back into Nordstrom Rack and pressured the Loss Prevention Officer to press charges against Plaintiff Bell as Defendant Eller informed Defendant Fucci that Plaintiff Bell intended to file a criminal complaint against her for assault. This act was committed in retaliation for Plaintiff Bell pressing charges against the Nordstrom employee and to cover up the fact that, at the time of the attack and hot boxing of Plaintiff Bell, there was no evidence of a crime that would justify the detention of Bell.  Plaintiff Bell alleges this act of pressuring the witness to file a criminal complaint against Plaintiff Bell was an act of **Witness Tampering** in violation of **Texas Penal Code 36.05**  which reads in pertinent part as follows:

> ***Sec. 36.05.  TAMPERING WITH WITNESS***.  *(a)  A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, or he  coerces a witness or a prospective witness in an official proceeding:*

(1)  to testify falsely;

(2)  to withhold any testimony, information, document, or thing;

(3)  to elude legal process summoning him to testify or supply evidence;

(4)  to absent himself from an official proceeding to which he has been legally summoned; or

(5)  to abstain from, discontinue, or delay the prosecution of another.

> *(b)  A witness or prospective witness in an official proceeding commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will do any of the things specified in Subsection (a).*

Plaintiffs allege, the above act of **Witness Tampering** in violation of **Texas Penal Code 36.05**. The body cameras of police officers clearly witness the conspiratorial acts of Police Officers and Nordstrom Rack Loss Prevention Officer.  The court will note that said Loss Prevention Officer was reluctant to file a complaint and only capitulated subject to pressure by the officer.

### *11.2.4.2    Conspire to False Allegation*

The above referenced officers, after realizing that they had almost killed Plaintiff, acted to secure evidence to give the appearance of justification for holding Plaintiff Bell after they had escorted Plaintiff Bell from Nordstrom Rack property.   The officer returned to the Loss Prevention Officer who had indicated that she did not have reason to believe Plaintiff Bell had committed any crime.  She only wanted Plaintiff Bell removed from the building for apparently not wearing a mask alleging this violated store policy.  The police, after almost killing Plaintiff Bell, then went into Nordstrom Rack and conspired with the Nordstrom Loss Prevention Officer and pressured her to change her testimony and file a complaint against Plaintiff Bell.

By the above, Sunset Valley Police Officer Eller  and Nordstrom Rack Loss Prevention Officer Fucci conspired, one with the other to false testimony as evidenced by the criminal complaint filed by said Nordstrom Rack Loss Prevention Officer, in violation **Texas Penal Code 15.02** which reads as follows:

> ### *Sec. 15.02.  CRIMINAL CONSPIRACY*. *(a) A person commits criminal conspiracy if, with intent that a felony be committed:*

(1)  he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense;  and

(2)  he or one or more of them performs an overt act in pursuance of the agreement.

> *(b)  An agreement constituting a conspiracy may be inferred from acts of the parties.*

> *(c)  It is no defense to prosecution for criminal conspiracy that:*

(1)  one or more of the coconspirators is not criminally responsible for the object offense;

(2)  one or more of the coconspirators has been acquitted, so long as two or more coconspirators have not been acquitted;

(3)  one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution;

(4)  the actor belongs to a class of persons that by definition of the object offense is legally incapable of committing the object offense in an individual capacity;  or

(5)  the object offense was actually committed.

> *(d)  An offense under this section is one category lower than the most serious felony that is the object of the conspiracy, and if the most serious felony that is the object of the conspiracy is a state jail felony, the offense is a Class A misdemeanor.*

### 11.2.4.3   *Obstruction of Justice*

Sunset Valley Police Officer Eller conspired with Nordstrom Rack Loss Prevention Officer Fucci toward the conscious intent of denying Plaintiff Bell in the due course of the laws by subjecting Plaintiff to a malicious prosecution for the purpose of covering up Officer Eller's bad behavior in an act intended to **Obstruct Justice** in violation of **Texas Penal Code 36.06** which reads in pertinent part as follows:

> **Sec. 36.06.   OBSTRUCTION OR RETALIATION**. *(a)  A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:*
>
> *(1)  in retaliation for or on account of the service or status of another as a:*

(A)  public servant, witness, prospective witness, or informant; or

(B)  person who has reported or who the actor knows intends to report the occurrence of a crime; or

> *(2)  to prevent or delay the service of another as a:*

(A)  public servant, witness, prospective witness, or informant; or

(B)  person who has reported or who the actor knows intends to report the occurrence of a crime.

The officers acted with mens rea for the purpose of fabricating evidence covering up their own bad behavior.

## 11.2.5  Denial of Due Process

After a citation was issued to Plaintiff Bell, Officer Gill signed "Covid-19" and informed Plaintiff Bell she needed to appear in court.  When Plaintiff Bell made her first court appearance, via her counsel, it was not before a magistrate, it was before a trial judge.  The problem was, there was no order under **Texas Code of Criminal Procedure 16.17 supra** in the court record which had been forwarded to the court by some magistrate after an examining trial in the matter.

Defendants can be expected to argue that Plaintiff Bell did not have a right to an examining trial as the accusation was a misdemeanor and Plaintiffs agree.  An examining trial was not required because it was a right Plaintiff Bell had, an examining trial should have been held because the Texas Constitution and Texas Code of Criminal Procedure commanded the courts to hold one as a condition of jurisdiction and a matter of the due course of the laws and, due course of the laws is a right Plaintiff Bell has.

Plaintiff Bell, by being denied an examining trial was made to suffer two years of court harassment with repeated appearances for no legitimate legal purpose in violation of **Texas Penal Code 32.48 supra**.

For almost two years the above referenced charge was held over Plaintiff Bell's head with repeated forced trips to the court for no purpose other than to give the prosecutor opportunity to harass Plaintiff Bell in an effort to force her to waive her rights and plead guilty to a crime she did not commit.

Plaintiff Bell had secured learned counsel who worked in concert and collusion with the prosecution to force Plaintiff Bell to take a plea bargain wherein she would be required to plead guilty to a crime she did not commit and for which there was no evidence.

### 11.2.6  Negligence

#### 11.2.6.1    *Nordstrom Rack Negligence*

Nordstrom Rack was negligent in that they imposed a mask requirement but failed to properly implement the policy such that they implemented the policy inconsistently and said failure led to harm suffered by Plaintiff Bell.  Plaintiff Bell was also subjected to a life threatening event subject to Nordstrom Rack calling the police and making false allegations against Plaintiff Bell.

##### 11.2.6.1.1    Employees Attacking Patrons

Plaintiff Bell was physically attacked by Nordstrom Rack Loss Prevention Officer Defendant Fucci then arrested by Sunset Valley Police officers Defendants Gill and Eller.

Plaintiff Bell was escorted outside the building then attacked again, this time by police where she was jumped by both police officers and thrown to the ground where she was handcuffed and put in the back of a hot patrol car with the windows up and the engine off.  But for the initiative of a bystander ordering the police to get Plaintiff Bell out of the car, Plaintiff Bell may well have died in the police car.

##### 11.2.6.1.2    Life Threatening Abuse

Subsequent to the life-threatening event, in an effort to cover up their bad behavior, Sunset Valley Police conspired with Nordstrom Rack employee Fucci, to prefer false charges against Plaintiff Bell for which she suffered two years of prosecutorial harassment before the charges

were dropped for lack of evidence.  Plaintiff suffered the harm addressed above as a proximate result of Nordstrom Rack's failure to properly train and supervise its employees in the implementation of its mask policy.

### 11.2.6.1.3    Legal Duty

When Nordstrom Rack implemented a policy which required its patrons to don a medical device, Nordstrom Rack had a legal duty to ensure that the implementation of the policy did not place the health or safety of its employees or the public at jeopardy.

> *Cf. **Buchanan v. Rose**, 138 Tex. 390, 159 S.W.2d 109, 110 (1942)* *("Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby."). As quoted from: **Nabors Drilling v. Escoto**, 288 S.W.3d 401, 405 n.1 (Tex. 2009)Medical Condition.*

Plaintiff Bell suffers from Lyme Disease/auto immune disorders and consequently is especially sensitive to oxygen reduction.  Medical masks significantly reduce the oxygen content of the blood and, therefore, Plaintiff Bell was physically unable to wear a mask without significant medical issues.  Acting with due caution, prior to shopping at Nordstrom Rack in Sunset Valley, Texas, Plaintiff Bell called Nordstrom Rack.  She explained her condition and was assured that Nordstrom Rack policy made provision for medical accommodation.

At Nordstrom Rack, Plaintiff Bell was physically attacked by a Nordstrom Rack Loss Prevention Officer for failing to wear a medical mask.

> ***Otis**, 668 S.W.2d at 311 (emphasis added). The Court held that Otis owed a duty to exercise reasonable care to control its employee. Id. "[In Otis,] [w]e imposed the duty upon the employer, not because of the mere knowledge of the intoxication, but because of the employer's negligent exercise of control over the employee. The defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others." **Phillips**, 801 S.W.2d at 526 (internal citations and emphasis omitted). In the present case, however, Nabors did not have the requisite knowledge of employee impairment, nor did it exercise the requisite control. **Otis**, 668 S.W.2d at 311 as quoted from: **Nabors Drilling v. Escoto**, 288 S.W.3d 401, 406 (Tex. 2009).*

In as much as the Nordstrom Rack Loss Prevention Officer was not in uniform nor showing any signs of a special position such that a reasonable person would recognize her as having some special authority, Nordstrom Rack had a duty to train said Loss Prevention Officers in practices and procedures that would not put the public at risk.

Nordstrom Rack, by failing to properly train and supervise Defendant Fucci, is the proximate cause of the harm to Plaintiff Bell.

> ***Tex. Civ. Prac. & Rem. Code § 33.011(6)*** (*" 'Responsible third party' means any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.").  **Pagayon v. Exxon Mobil Corp., 536 S.W.3d 499, 502 n.4 (Tex. 2017)**

### 11.2.6.1.4    Nordstrom Rack Liability

Prior to going to Nordstrom Rack to shop, Plaintiff Bell exercised due diligence by calling Nordstrom Rack corporate offices and spoke to John Doe, who assured Plaintiff Bell that Nordstrom Rack would honor her medical exemption.  Without addressing the legality of requiring a medical device and the legality of the executive orders of the governor, Plaintiff took care to ensure there would be no mask issue.  Nordstrom Rack's failure to properly train and direct its employees is the proximate cause of the harm to Plaintiff Bell at the hands of Nordstrom Rack employees and the police who were called and given a false claim against Plaintiff Bell.

> *To impute liability to an employer for its employee's tort, the employee's act usually must fall within the course and scope of the employee's general authority and must have been performed in furtherance of the employer's business. See* ***Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 493 (Tex.App.–Fort Worth 2002, no pet.)***. *Intentional torts are not ordinarily within the scope of a worker's employment.* ***Cowboys Concert Hall–Arlington, Inc. v. Jones, No. 02–12–00518–CV, 2014 WL 1713472, at \*9 (Tex.App.–Fort Worth May 1, 2014, pet. denied) (per curiam, mem. op.)***. *And as ExxonMobil points out, an employer ordinarily is not vicariously liable for the employee's intentional torts that are motivated by personal animosity. See* ***Wrenn, 73 S.W.3d at 494*** (*citing* ***Tex. & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 197, 247 S.W.2d 236, 239 (1952)*** ). ***ExxonMobil Corp. v. Pagayon, NO. 14–13–00456–CV***

### 11.2.6.2    *Police Officer Negligence*

Plaintiff Bell was tackled by two Sunset Valley police officers, knocked to the ground, handcuffed (double cuffed) and placed in the back of a patrol car while the police initiated an illegal search of Plaintiff Bell's purse and automobile.  While in the patrol car, Plaintiff Bell's body temperature rose dramatically as the outside temperature was in the upper 90's and the car engine was off and the patrol car was sealed so that heat could not escape.  It is Plaintiff Bell's belief that, had a passer-by not seen Plaintiff Bell flailing her body in distress and ordered the police to get Plaintiff out of there, Plaintiff Bell would have died in the patrol car.

##### 11.2.6.2.1   Harm Foreseeable

Once Defendant Police Officers took physical control of Plaintiff Bell, Defendants had a duty to ensure the safety of Plaintiff.

> *"Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission."* **El Chico Corp., 732 S.W.2d at 315**." **Nabors Drilling v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009)**

##### 11.2.6.2.2   Reasonable Person Standard

Any reasonable person of ordinary prudence would not put a dog in a hot car in the middle of the day in Austin.  In the instant case, it is the assertion of Plaintiff Bell that the officers knew full well that their actions would subject Plaintiff Bell to high temperatures in the back of their patrol car.

> *In Browning, an inmate named Graves was killed by other inmates in a jail who were in possession of deadly weapons. 152 S.W.2d at 519. The jury found that the sheriff and his deputies negligently caused Graves's death. Id. On appeal, the sheriff and the deputies argued that the trial court should have directed a verdict in their favor — a legal sufficiency challenge — because there was no evidence that the sheriff and his deputies knew or should have known that Graves would be injured if he was placed in the cell with the other inmates. Id. The court held that the duty required of a jailer in this type of case is to "exercise ordinary care to prevent those confined together from having in their possession weapons with which they might inflict serious injuries upon another prisoner." Id. The court held that the evidence was legally sufficient to show a breach of that duty because: (1) the inmates that killed Graves possessed deadly weapons; (2) the officer knew the weapons had been found among those prisoners during prior searches of the compartment; (3) it was not unreasonable to assume that the prisoners would again make and possess the weapons; and (4) the officer had not searched the compartment for a week or ten days prior to Graves's death. Id. The court held that "[i]f a jailer whose duty it was to care for and protect his prisoners from harm, would have, in the exercise of ordinary care, discovered the presence of these weapons and removed them, and thus prevent the tragedy that resulted in Graves' death, he, with his principal, the sheriff, would be responsible in damages for having failed." Id. We hold that equivalent evidence existed in this case, and that such evidence was legally and factually sufficient to support the judgment.* **Wackenhut Corrections Corp. v. de la Rosa, 305 S.W.3d 594, 625 (Tex. App. 2009)**

##### 11.2.6.2.3   Heightened Degree of Care

> *Defendant Police Officers took Plaintiff Bell into physical custody and placed her in a circumstance she would have never put herself in.  In as much as Defendant Police Officers had complete control over Plaintiff Bell and Plaintiff Bell was rendered incapable of caring for herself.* **Texas Administrative Code 707.467 supra**

##### 11.2.6.2.1   Nordstrom Rack Liability

Prior to going to Nordstrom Rack to shop, Plaintiff Bell exercised due diligence by contacting Nordstrom Rack corporate offices, who assured Plaintiff Bell that Nordstrom Rack would honor

her medical exemption.  Without addressing the legality of requiring a medical device and the legality of the executive orders of the governor, Plaintiff took care to ensure there would be no mask issue.  Nordstrom Rack's failure to properly train and direct its employees is the proximate cause of the harm to Plaintiff Bell at the hands of Nordstrom Rack employees and the police who were called and given a false claim against Plaintiff Bell.

> *To impute liability to an employer for its employee's tort, the employee's act usually must fall within the course and scope of the employee's general authority and must have been performed in furtherance of the employer's business. See **Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 493 (Tex.App.–Fort Worth 2002, no pet.)**. Intentional torts are not ordinarily within the scope of a worker's employment. **Cowboys Concert Hall–Arlington, Inc. v. Jones, No. 02–12–00518–CV, 2014 WL 1713472, at \*9 (Tex.App.–Fort Worth May 1, 2014, pet. denied) (per curiam, mem. op.)**. And as ExxonMobil points out, an employer ordinarily is not vicariously liable for the employee's intentional torts that are motivated by personal animosity. See **Wrenn, 73 S.W.3d at 494** (citing **Tex. & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 197, 247 S.W.2d 236, 239 (1952)** ). **ExxonMobil Corp. v. Pagayon, NO. 14–13–00456–CV***

### 11.2.6.1    Police Officer Negligence

Plaintiff Bell was tackled by two Sunset Valley police officers, knocked to the ground, handcuffed and placed in the back of a patrol car while the police initiated an illegal search of Plaintiff Bell's purse and automobile.  While in the patrol car, Plaintiff Bell's body temperature rose dramatically as the outside temperature was in the upper 90's and the car engine was off and the patrol car was sealed so that heat could not escape.  It is Plaintiff Bell's belief that, had a passer-by not seen Plaintiff Bell banging her head on the window and ordered the police to get Plaintiff out of there, Plaintiff Bell would have died in the patrol car.

#### 11.2.6.1.1    Harm Foreseeable

Once Defendant Police Officers took physical control of Plaintiff Bell, Defendants had a duty to ensure the safety of Plaintiff.

> *"Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." **El Chico Corp., 732 S.W.2d at 315**." **Nabors Drilling v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009)***

#### 11.2.6.1.2    Reasonable Person Standard

Any reasonable person of ordinary prudence would not put a dog in a hot car in the middle of the day in Austin, TX.  In the instant case, it is the assertion of Plaintiff Bell that the officers knew

full well that their actions would subject Plaintiff Bell to high temperatures in the back of their patrol car.

> *In Browning, an inmate named Graves was killed by other inmates in a jail who were in possession of deadly weapons. 152 S.W.2d at 519. The jury found that the sheriff and his deputies negligently caused Graves's death. Id. On appeal, the sheriff and the deputies argued that the trial court should have directed a verdict in their favor — a legal sufficiency challenge — because there was no evidence that the sheriff and his deputies knew or should have known that Graves would be injured if he was placed in the cell with the other inmates. Id. The court held that the duty required of a jailer in this type of case is to "exercise ordinary care to prevent those confined together from having in their possession weapons with which they might inflict serious injuries upon another prisoner." Id. The court held that the evidence was legally sufficient to show a breach of that duty because: (1) the inmates that killed Graves possessed deadly weapons; (2) the officer knew the weapons had been found among those prisoners during prior searches of the compartment; (3) it was not unreasonable to assume that the prisoners would again make and possess the weapons; and (4) the officer had not searched the compartment for a week or ten days prior to Graves's death. Id. The court held that "[i]f a jailer whose duty it was to care for and protect his prisoners from harm, would have, in the exercise of ordinary care, discovered the presence of these weapons and removed them, and thus prevent the tragedy that resulted in Graves' death, he, with his principal, the sheriff, would be responsible in damages for having failed." Id. We hold that equivalent evidence existed in this case, and that such evidence was legally and factually sufficient to support the judgment.* **_Wackenhut Corrections Corp. v. de la Rosa, 305 S.W.3d 594, 625 (Tex. App. 2009)_**

### 11.2.6.1.3    Heightened Degree of Care

Defendant Police Officers took Plaintiff Bell into physical custody and placed her in a circumstance she would have never put herself in.  In as much as Defendant Police Officers had complete control over Plaintiff Bell and Plaintiff Bell was rendered incapable of caring for herself.  **Texas Administrative Code 707.467 supra**

## 11.2.7  Negligence Per Se

In the instant case, **Texas Administrative Code 707.467 supra** should be construed to control and, therefore,

> *"Certain kinds of negligence may be classified as negligence per se. For an act to be deemed negligence per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that it is very clear that no careful person would have committed it. In the absence of a law characterizing the actor's conduct as negligent, the issue whether he ought to have foreseen and prevented the calamity or was negligent is one to be determined by the jury by reference to the facts." See the authorities cited therein.* **_Sheppard v. Judkins, 476 S.W.2d 102, 107 (Tex. Civ. App. 1971)_**

### 11.2.8  Denial of Due Process

Plaintiff Bell was subjected to an ongoing criminal conspiracy wherein the prosecuting attorney and Municipal judge acted in concert with an ongoing criminal enterprise wherein the Municipal Judge refused to perform his duty as a magistrate on Plaintiff Bell's first appearance at court. Under the due course of the laws of the State of Texas, at the first appearance, Plaintiff had a due course of law right to an examining trial in accordance with **Texas Code of Criminal Procedure Chapter 16 supra**.

#### 11.2.8.1.1    Unauthorized Arraignment

At the first hearing, the Municipal Judge simulated a legal process by holding an arraignment hearing in violation of the statutory restriction contained in **Texas Code of Criminal Procedure 26.01** which reads as follows:

> ***Art. 26.01. ARRAIGNMENT***. *In all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.*

The court will take judicial notice that the Texas Legislature took special care to exclude class C misdemeanor crimes from those instances where an arraignment hearing may be held.

#### 11.2.8.1.2    Simulating Legal Process

In as much as a public official may only do what s/he is specifically authorized to do, the act of the municipal judge holding an arraignment hearing was an act of **Simulating a Legal Process** in violation of Texas **Penal Code 32.48 supra**. By summoning Plaintiff Bell to an examining trial, the municipal judge denied Plaintiff Bell in the due course of the laws of the State of Texas.

#### 11.2.8.1.3    Ongoing Criminal Enterprise

Defendant Kenton Johnson, while acting in the capacity of municipal judge for the City of Sunset Valley, had an administrative duty to properly train the clerks and other members of the municipal court.  We are not alleging that Defendant Kenton Johnson failed to train the court employees, Plaintiffs allege that Defendant Kenton Johnson, intentionally trained the court employees using practices and procedures which were in furtherance of an ongoing criminal conspiracy designed and intended to force anyone charged with a crime in the City of Sunset Valley, Texas, to take a plea deal.

An examination of the records of the City of Sunset Valley Municipal Court will show that, if anyone was found "not guilty," the number will be so low as to be statistically insignificant.

At trial, Plaintiffs will show that all the funds collected by the City of Sunset Valley municipal court were collected in violation of the due course of the laws of the State of Texas and in furtherance of the above alleged ongoing criminal enterprise in violation of **Texas Penal Code 71.02 supra**.

### 11.2.8.1.4   Failure to Properly Train

Instead, Kenton Johnson, while acting in his administrative capacity, conspired with members of the Sunset Valley Municipal Court toward the furtherance of an ongoing criminal enterprise designed and intended to deny the citizens of the State of Texas in the due course of the laws.

At the first appearance of Plaintiff Bell before the municipal court, Kenton Johnson was required to act in the capacity of a magistrate in and for the State of Texas and hold an examination into the sufficiency of the charges against Plaintiff Bell.  Instead of performing his duty, Judge Kenton Johnson held an arraignment in the matter of a Class C misdemeanor in violation of Texas Code of Criminal Procedure 26.01 supra.

## 11.2.9  Continuing abuse

Plaintiff Bell, in the instant case, was forced into a continuing relationship with the Sunset Valley police and courts where she was subjected to eighteen months of continuing abuse in an effort to force Plaintiff Bell to enter a guilty plea in order to stop the abuse.

> *" When abusive conduct such as being assaulted, intimidated, and threatened becomes a regular pattern of behavior, it should not be accepted in a civilized society."* **Toles v. Toles, 45 S.W.3d 252, 262 (Tex. App. 2001)**

Plaintiff Bell is relatively certain that Defendants will argue that the treatment of Plaintiff Bell was not extreme and outrageous as she was subjected to the same treatment as everyone else accused of crime in the city of Sunset Valley.  Plaintiff Bell will agree that her treatment by the Sunset Valley Municipal Court was not unusual, simply because the treatment is metered out equally to everyone, however, that does not make it less extreme or outrageous.  That everyone is treated equally bad simply goes to willful intent to equally harm everyone.

**11.2.10 Intentional Infliction of Emotional Distress**

As a proximate result of Nordstrom Rack employees calling the police, Plaintiff Bell was subjected to physical assault and a life-threatening episode of "hot boxing," where Plaintiff Bell was handcuffed and placed in the back of a police patrol car that was specially designed so that no one could escape. The doors and windows were closed and the engine was off in 97 degree heat so that the temperature rose dramatically almost killing Plaintiff Bell.

Then, in order to cover their bad behavior, the police conspired with a Nordstrom Rack employee to false charges which subjected Plaintiff Bell to eighteen months of harassment by members of the City of Sunset Valley municipal court.

Plaintiff Bell, while locked in the steaming hot patrol car, knew full well because of her Lyme disease condition, her body could not stand high temperatures and that her life was at risk. Plaintiff Bell did not imagine the need to tell the officers before being locked in the patrol car as, no reasonable human being would lock a person in a car on such a hot day without the windows down or the air conditioner on. No reasonable person would do that to a dog, much less a person.

When the officers walked away without at least cracking a window or turning on the air conditioning, Plaintiff Bell knew immediately that her life was in peril. She screamed for help but no one could hear her outside the patrol car. The officers were well away from the patrol car executing an illegal search of Plaintiff's automobile. When a female bystander saw Plaintiff Bell in distress she went over and ordered the officers to get Plaintiff Bell out of the patrol car. Plaintiff Bell has no doubt, but for the bystander, Plaintiff Bell would have died in that patrol car. By the time the police got Plaintiff Bell out of the patrol car she was becoming faint from heat prostration.

> *In 1993, we recognized the independent tort of intentional infliction of emotional distress, adopting the elements of the RESTATEMENT (SECOND) OF TORTS § 46 (1965). See Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex. 1993). To recover under this tort, a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was "extreme and outrageous," 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe. See id. at 621. Only the first two elements are at issue in this case.* **Standard Fruit and Veg. Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998)**

Plaintiff Bell alleges, following the depraved heart assault against her, the actions of the Sunset Valley Municipal Court exacerbated the injury, where, acting in concert and collusion with the

above act of assault, the City of Sunset Valley prosecuted and colluded in an ongoing criminal conspiracy, designed and intended to force everyone accused of crime to take a plea bargain so that the court could avoid the cost and inconvenience of trial and preclude any claim against the Sunset Valley police officers who, by their intentional behavior, nearly killed Plaintiff Bell.

Plaintiffs allege and are prepared to prove at trial that the above practice is not an exception but that the same abusive treatment is given to citizens across the State of Texas in furtherance of training implemented by Defendants toward an ongoing criminal enterprise.

### 11.2.10.1  Intentional Act

The worst part of this incident was finding out it is common practice among police, so much so they have a colloquial name for it.  The police actually call it "Hot Boxing."  It is amazing and terrifying that an otherwise ordinary human can become so twisted that they would act with such extreme and callous disregard for human life, that they would intentionally and routinely, subject another human being to such an abominable practice.

### 11.2.10.2  PTSD

Plaintiff Bell had previously been diagnosed with PTSD and this horrifying experience greatly increased the severity of her condition.  Prior to this incident, Plaintiff Bell trusted the police and was confident that if she needed help, they were the place to go.  Now, it seems the police are more dangerous than the criminals.  Their utter disregard for human life is beyond comprehension.

### 11.2.10.3  Common Practice

After the incident, in studying the practice, it seems this was no mistake on the part of the police, it seems that "hot boxing" is a standard procedure for subduing or punishing someone who has been arrested.

### 11.2.10.4  Emotional Distress

What about our children?  If they will do this to an adult, what would they do to children who are not able to help themselves?  Plaintiff is now terrified that one of her children may be stopped or arrested by the police as the police have demonstrated themselves to be far more dangerous than criminals.  Plaintiff Bell is struck with terror when she imagines the mindset that must be trained into officers that they would feel at liberty to conduct themselves with such utter disregard for the lives of the very people they have been employed to protect.

### 11.2.10.5   Malicious Prosecution

Plaintiff Bell was maliciously prosecuted by the Sunset Valley Police Department and the Municipal Court in order to shield the arresting officers from their abominable behavior.

Defendant Fucci conspired with Officer Eller to promote a false prosecution.  It must be construed, based on the evidence of the 911 call made by Defendant Fucci, where she told the 911 operator that she did not believe Plaintiff Bell violated any law but that Defendant Fucci only wanted her out of the store for "being rude."

It should be noted, there were others in the store, in the changing area, with no masks on, at the time of the incident.  It was clear Plaintiff Bell had been singled out for special treatment. Defendant Fucci, upon making an emergency call then telling the 911 operator that she had no cause to believe Plaintiff Bell had committed a crime, was collaterally estopped from arbitrarily changing that testimony simply because a police officer needs a smoke screen to cover for his bad behavior.

Defendant Eller told Defendant Fucci that Plaintiff Bell was pressing charges against her and, because of that, Defendant Fucci acted with conscious malice toward Plaintiff Bell *when she changed her written statement* and was, thereby, proximately responsible for the unlawful prosecution of Plaintiff Bell.

### 11.2.10.6   Prosecution Dismissed

On the 14th day of November 2022, the criminal action against Plaintiff Bell was dismissed for lack of evidence.

### 11.2.10.7   Plaintiff Harmed

Before the above criminal prosecution was dismissed, Plaintiff Bell had to contend with approximately eighteen months of improper behavior on the part of the prosecutor, the municipal court judge, and Plaintiff Bell's own defense attorneys.  Plaintiff was subjected to harm as Plaintiff Bell's PTSD was triggered, she was harassed and defamed and was forced to stop campaigning for the local school board.  Plaintiff Bell had to pay a lawyer $6,000 and the lawyer did nothing to protect Plaintiff Bell from eighteen months of malicious prosecution and defamation.

### 11.2.10.8  Complicity After the Fact

Nordstrom Rack Loss Prevention Officer Fucci, acted in concert and collusion with the police by conspiring to false testimony when she agreed to file a criminal complaint even after telling the 911 operator she had no reason to believe Plaintiff Bell had committed any crime.  The false swearing of Defendant Fucci was the proximate cause which implemented the malignant calculus of the City of Sunset Valley to the detriment and subsequent harm to Plaintiff Bell.

## 11.2.11  Libel and Slander

While Plaintiff Bell was being held by the City of Sunset Valley Police, they searched Plaintiff Bell's purse and found a card which indicated she was running for a seat on the Lake Travis Independent School District school board.  The female officer, Officer Gill, while holding the card, smirked at Plaintiff and said:

> *"I see you are running for school board.  You are not going to want this to get out."*

### 11.2.11.1  Libel

After the arrest of Plaintiff Bell, the City of Sunset Valley Chief of Police Lynn Carter, issued a press release and told the press about the arrest of Plaintiff Bell.  When questioned by a citizen about the impropriety of the action Chief of Police Lynn Carter said that he was not going to have people coming into his city without wearing a mask.

It cannot be reasonably construed that Chief of Police Lynn Carter was somehow unaware that the charges against Plaintiff Bell were false as all the evidence to demonstrate the falsity of the claims was before the chief of police.  In furtherance of the abuse of Plaintiff Bell, Chief of Police Lynn Carter, took it upon himself to "void" the criminal charge filed by Plaintiff Bell in violation of **Texas Code of Criminal Procedure 2.13** which reads in pertinent part as follows:

> **_ARTICLE. 2.13. DUTIES AND POWERS._**  *(a)  It is the duty of every peace officer to preserve the peace within the officer's jurisdiction.  To effect this purpose, the officer shall use all lawful means.*
>
> *(b) The officer shall:*

(1) in every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime;

(2) execute all lawful process issued to the officer by any magistrate or court;

(3) give notice to some magistrate of all offenses committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law;  and

(4) arrest offenders without warrant in every case where the officer is authorized by law, in order that they may be taken before the proper magistrate or court and be tried.

Instead of addressing the criminal complaint stated and written by Plaintiff Bell, Chief Carter secreted said complaint from "some magistrate" and the press and failed to address the impropriety of the actions of his officers. Chief Lynn Carter advertised the false claims against Plaintiff Bell which had the effect of defaming her in the community.  The preceding is addressed by **Texas Practice and Remedies Code Section 73.001** which reads as follows:

> **_Sec. 73.001.  ELEMENTS OF LIBEL_**.  *A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.*

As a result of the arrest and the unwarranted publicity, Plaintiff Bell was subjected to ridicule and humiliation in the community and experienced significant emotional distress.

### 11.2.11.2  Deliberate Defamation

At the time of the incident, Plaintiff Bell was a highly respected member of the community and was running for the school board in the City of Lakeway, Texas.

The arresting officers, after almost killing Plaintiff Bell in an improper "hot boxing" incident needed a way to cover for their "police brutality" placing Plaintiff Bell in the patrol car in the first place in as much as it was Plaintiff Bell who had called 911 requesting assistance.  In an effort to shield the Nordstrom Rack employee from prosecution and shield themselves from the legal consequences of their reckless and negligent behavior, Defendant Eller and Defendant Gill conspired with Defendant Fucci to give false testimony and then commence malicious prosecution.

The Police Chief of the City of Sunset Valley, Texas made a special point to defame Plaintiff Bell by issuing a press release informing everyone of the arrest of Plaintiff Bell.  What he did not tell the press and everyone else was that the arrest was specifically contrived and executed to punish Plaintiff Bell and cover up the improper behavior of the police officers as there was never cause for the arrest in the first place.  Neither did he tell the press that his police officers nearly

killed Plaintiff Bell using a form of pre-trial punishment and that an innocent bystander had called 911 and reported police brutality against Defendants Eller and Gill.

### 11.2.11.2.1  Criminal affidavit as Liable

The false accusation of Nordstrom Rack employee Fucci stated that she had reason to believe and did believe that Plaintiff Bell committed the criminal act of misdemeanor assault even though Fucci had already admitted to the 911 operator that she did not have reason to believe Plaintiff Bell had committed a crime.

> The truth of a statement on which a defamation action is based is a defense to the action. **_Tex. Civ. Prac. Rem. Code Ann. § 73.005_** (Vernon 1997). A showing of substantial truth at a summary judgment hearing will defeat a defamation claim. McIlvain v. Jacobs, **_794 S.W.2d 14, 15_** (Tex. 1990); Dracos, **_922 S.W.2d at 249_**. Also, a conditional or qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. Lomas Bank USA v. Flatow, **_880 S.W.2d 52, 54_** (Tex.App. — San Antonio 1994, writ denied). Whether a conditional or qualified privilege exists is a question of law for the court. Calhoun v. Chase Manhattan Bank (U.S.A.), N.A., **_911 S.W.2d 403, 408_** (Tex.App. — Houston [1st Dist.] 1995, no writ). **_Rodriguez v. NBC Bank, 5 S.W.3d 756, 766 n.10 (Tex. App. 1999)_**

While the statement Chief Carter made to the press was facially accurate, it was substantially incorrect as Chief Carter well knew.  It is the assertion and allegation that the press release was issued by Chief Carter as a ruse to shield his officers behind that "thin blue line."  Plaintiff's assert and allege that there is no thin blue line between the public and the police.  There is a relationship wherein citizens are the masters of their public servants and the servants have a fiduciary duty to abide by all the statutory restrictions affecting the exercise of privilege and authority granted to them.

### 11.2.11.2.2  Half Truth as Slander

Chief Carter, noted in the press release that Plaintiff Bell had been arrested.  What he did not tell reporters was that Plaintiff Bell was the original victim who called the police for help and was subjected to depraved heart assault by the police and almost murdered by them.  While the words used had the appearance of truth, the facts lend falsity to the statements by omission.

The police videos were released to a local radio station and broadcast on local television in a way very defamatory to Plaintiff Bell.  As a result, Plaintiff Bell was forced to stop campaigning for elected office.

# 12 JURY DEMAND

Plaintiffs demand a jury trial.

# 13 PRAYER

Wherefore premises considered, Plaintiff's request relief as follows:

## 13.1  PLAINTIFF BELL

Plaintiff Bell moves the court to award damages as follows:

Nordstrom Rack, $5,000,000;

Defendant Fucci $1,000,000;

1.      City of Sunset Valley Municipal Judge, Kenton Johnson, $25,000,000;

2.      City of Sunset Valley prosecuting attorney, $25,000,000;

3.      City of Sunset Valley Chief of Police, Lenn Carter, $25,000,000;

4.      City of Sunset Valley Police Officer Robert Eller, $25,000,000;

5.      City of Sunset Valley Police Officer Crystal Gill, $25,000,000;

## 13.2  PLAINTIFF KELTON

Unknown Sheriff Deputy, _____, $25,000,000;

## 13.3  GENERAL PRAYER

Plaintiffs move the court to award damages against:

1. Nathan Hecht, in the amount of $20,000,000;
2. Sharon Keller, in the amount of $20,000,000;
3. Jose Garza, in the amount of $20,000,000;
4. Rob Stuart Drummond, in the amount of $20,000,000;
5. Barbara Hervey, in the amount of $20,000,000;
6. Bert Richardson, in the amount of $20,000,000;
7. Kevin Yeary, in the amount of $20,000,000;
8. David Newell, in the amount of $20,000,000;

9.  Mary Lou Keel, in the amount of $20,000,000;

10. Scott Walker, in the amount of $20,000,000;

11. Michelle Slaughter, in the amount of $20,000,000;

12. Jesse F. McClure III, in the amount of $20,000,000;

13. Megan LaVoie, in the amount of $20,000,000;

14. Thea Whalen, in the amount of $20,000,000;

15. Deadra Stark, in the amount of $10,000,000;

16. Kelly R. Damphousse, Ph.D., in the amount of $20,000,000;

17. Nathan Cradduck, in the amount of $20,000,000;

18. Gail Bel, in the amount of $20,000,000;

19. Nordstrom, Inc. (d.b.a. Nordstrom Rack), in the amount of $10,000,000;

20. Kelsie Fucci, in the amount of $100,000;

21. Sunset Valley Chief of Police Lenn Carter in the amount of $20,000,000;

22. Sunset Valley Police Officer Crystal Gill in the amount of $20,000,000;

23. Sunset Valley Police Officer Robert Eller in the amount of $20,000,000;

24. Sunset Valley Mayor Marc Bruner in the amount of $20,000,000;

25. Sunset Valley Municipal Judge Kenton Johnson in the amount of $20,000,000;

26. Sunset Valley Municipal prosecutor, Barbara Boulware-Wells in the amount of $10,000,000;

27. Sunset Valley Municipal prosecutor, Jeff Ulmann in the amount of $10,000,000;

28. Sunset Valley Municipal prosecutor, Audrey Guthrie in the amount of $10,000,000;

29. Sam Bassett in the amount of $10,000,000;

30. Sara Donovan in the amount of $10,000,000.

Respectfully submitted,

Randall Kelton, Plaintiff
PO Box 1
113 S. Allen ST.
Boyd, TX 76023
(940) 399-9922
randy@ruleoflawradio.com

Kara Bell, Plaintiff
P.O. Box 341703
Lakeway, TX 78734
(310) 606-9093
karabell@feduptexans.com

## VERIFICATION

I, Kara Bell, do swear and affirm that all statements made herein are true and accurate, in all respects.

Kara Bell

SWORN TO AND SUBSCRIBED BEFORE ME, _Austin DuBois_, by _Kara Bell_ on the 23rd day of June 2023, which witnesses my hand and seal of office.

NOTARY PUBLIC AND FOR
THE STATE OF TEXAS

AUSTIN DUBOIS
My Notary ID # 133789220
Expires June 1, 2026