FILED

2023 JUL 28 PM 4:18

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____CR_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Randall Kelton, Kara Bell<br>*Plaintiffs*<br><br>Vs.<br><br>Nordstrom Inc. (d.b.a. Nordstrom Rack), Kelsie Fucci, Nathan Hecht, Jose Garza, Rob Stuart Drummond, Sharon Keller, Barbara Hervey, Bert Richardson, Kevin Yeary, David Newell, Mary Lou Keel, Scott Walker, Michelle Slaughter, Jesse F. McClure III, Megan LaVoie, Thea Whalen, Deadra Stark, Kelly Damphouse, Nathan Cradduck, Gail Bell, Travis County Sheriff Deputy Name Unknown, Sally Hernandez, Lenn Carter, Robert Eller, Crystal, Gill, Marc Bruner, Kenton Johnson, Barbara Boulware-Wells, Jeff Ullmann, Sam Bassett, Sara Donovan<br>*Defendants* | §§§§§§§§§§§§§§§§§§§§§ | CIVIL ACTION 1:23-cv-00395 |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS LENN CARTER, ROBERT ELLER, CRYSTAL GILL, MARC
BRUNER, KENTON JOHNSON, BARBARA BOULWARE-WELLS, JEFF
ULLMAN, AND AUDREY GUTHRIE'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

1

Now comes Plaintiffs Randall Kelton and Kara Bell and moves the court to deny Defendants' *Motion to Dismiss Plaintiffs' Second Amended Complaint* [Dkt. 9] for cause as shown:

## 1   VIOLATION OF RULES

Defendants, as listed above, filed a motion to dismiss the instant case under Federal Rule 12. Said filing was 30 pages in length. Under Federal Rules of Civil Procedure as well as Local Court Rules[1], the maximum filing limit is 20 pages as stipulated by <u>Federal Rules of Civil Procedure Rule 7(c)(2)</u> which reads as follows:

> *(2) Page Limits. Unless otherwise authorized by the court, discovery and case management motions are limited to 10 pages, and other motions are limited to 20 pages. These page limits are exclusive of the caption, the signature block, any certificate, and any accompanying documents.*

In the instant case, Defendant's motion to dismiss is 30 pages in length and in clear violation of the Rules.

## 2   CLAIM CLEARLY STATED

Defendant's Rule 12 Motion to Dismiss reads more like an answer as Defendant attempts to adjudicate the case in the motion. Defendant spends 30 pages arguing the merits of the case and little time addressing the Rule 12 issue.

### 2.1   STANDARD OF REVIEW

A complaint must be dismissed if the court lacks subject matter jurisdiction over the plaintiff's claim, FED. R. CIV. P. 12(b)(1), or if the plaintiff fails to state a claim upon which relief may be granted, FED. R. CIV. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as under rule 12(b)(6). *See Home Builders Assoc. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). To avoid dismissal, a plaintiff must plead

---

[1] See Rule CV-7 of the "Local Court Rules of the United States District Court of the Western District of Texas".

sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The same standards hold true for when a motion to dismiss is based on an assertion of qualified immunity. *Terwilliger v. Reyna*, 4 F.4th 270, 279–80 (5th Cir. 2021). "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and [facts that] would overcome their qualified immunity defense." Id. at 280 (internal quotation marks and citation omitted).

## 2.2   RELEVANT FACTS PLEAD

In accordance with the conditions of a Rule 12 motion, Plaintiff alleged facts relevant to the case as follows:

**Warrantless Arrest**

Plaintiffs plead that Plaintiff Bell was arrested by Defendants Eller and Gill under the authority of Texas Code of Criminal Procedure 14.06(a) which reads as follows:

> *Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE.* (a) *Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.*

3

**Release on Promise to Appear**

Defendants Eller and Gill then released Plaintiff Bell on a promise to appear before a magistrate in accordance with Texas Code of Criminal Procedure 14.06(b)(1) which reads as follows:

> *(b) A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains:*
>
>> *(1) written notice of the time and place the person must appear before a magistrate;*

The court will take notice, while Defendants Eller and Gill had authority to release Plaintiff Bell on a promise to appear, the promise to appear was before a magistrate.

**Examining Court**

By the above, Plaintiff promised to appear before a magistrate. Under Texas law, when an accused appears before a magistrate relative to a criminal allegation, the magistrate only has authority to convene an examining court under Texas Code of Criminal Procedure 2.11 which reads as follows:

> *Art. 2.11. EXAMINING COURT. When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.*

**2.3   EXAMINING TRIAL**

Plaintiffs plead that Plaintiff Bell appeared at the time and place indicated on the promise to appear. At said appearance, the magistrate had a duty to convene an examining trial under Texas Code of Criminal Procedure Chapter 16.

At the conclusion of the above examining trial, the magistrate was commanded by Texas Code of Criminal Procedure 16.17 to issue an order as follows:

> *Art. 16.17. DECISION OF JUDGE. After the examining trial has been had, the judge shall make an order committing the defendant to the jail of the proper*

4

*county, discharging him or admitting him to bail, as the law and facts of the case may require. Failure of the judge to make or enter an order within 48 hours after the examining trial has been completed operates as a finding of no probable cause and the accused shall be discharged.*

**Forward to the Clerk**

The magistrate, in the above circumstances was ordered to seal all documents had in the hearing, cause his name to be written across the seal of the envelope and forward the envelope to the clerk in accordance with Texas Code of Criminal Procedure 17.30 which reads as follows:

> *Art. 17.30. SHALL CERTIFY PROCEEDINGS. The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope. The voluntary statement of the defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.*

**Duty of Clerk**

On receipt of the above, the clerk was commanded to forward the complaint to the Grand Jury in accordance with Texas Code of Criminal Procedure 17.31 which reads as follows:

> *Art. 17.31. DUTY OF CLERKS WHO RECEIVE SUCH PROCEEDINGS. If the proceedings be delivered to a district clerk, he shall keep them safely and deliver the same to the next grand jury. If the proceedings are delivered to a county clerk, he shall without delay deliver them to the district or county attorney of his county.*

**Grand Jury Proceedings**

The Grand Jury, in its turn was required to examine into all crimes brought before it in accordance with Texas Code of Criminal Procedure 20A.051 which reads as follows:

> *Art. 20A.051. DUTIES OF GRAND JURY. The grand jury shall inquire into all offenses subject to indictment of which any grand juror may have knowledge or of which the grand jury is informed by the attorney representing the state or by any other credible person.*

5

**Misdemeanor Indictments**

The Grand Jury is commanded to inquire into all misdemeanors by <u>Texas Constitution Article 5 Section 17</u> which reads as follows:

> <u>Sec. 17.  COUNTY COURT: TERMS, PROSECUTIONS, AND JURIES</u>.  The County Court shall hold terms as provided by law.  Prosecutions may be commenced in said court by information filed by the county attorney, or by affidavit, as may be provided by law.  Grand juries empaneled in the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial; and if such indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit.  A jury in the County Court shall consist of six persons; but no jury shall be empaneled to try a civil case unless demanded by one of the parties, who shall pay such jury fee therefor, in advance, as may be prescribed by law, unless the party makes affidavit that the party is unable to pay the jury fee. **(emphasis added)**

**2.4   INCONTROVERTIBLE FACTS**

An examination of the public records of the court will show that, neither an order issued under <u>Texas Code of Criminal Procedure 16.17</u> nor an indictment under <u>Texas Constitution Article 5 Section 17</u> appear in the records of the court.

**Pattern of Conduct**

Plaintiffs allege that police all across Texas, as a matter of well-established policy, regularly arrest citizens and take them directly to jail having made no effort to locate a magistrate.  Plaintiff further alleges that it cannot be reasonably construed that 254 individually elected Sheriffs in Texas and more than 2,800 magistrates as, according to the txcourts.gov there are that many courts.

**Ongoing Criminal Enterprise**

Plaintiff's plead, the Texas Office of Court Administration, in consultation with the Texas Court of Criminal Appeals was commanded by the Texas Legislature to develop curricula for the training of magistrates in the setting of bail and other duties by Texas Code of Criminal Procedure 17.024 which reads as follows:

6

> *Art. 17.024. TRAINING ON DUTIES REGARDING BAIL. (a) The Office of Court Administration of the Texas Judicial System shall, in consultation with the court of criminal appeals, develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases. The courses developed must include:*
>
>> *(1) an eight-hour initial training course that includes the content of the applicable training course described by Article 17.0501; and*
>>
>> *(2) a two-hour continuing education course.*
>
> *(b) The office shall provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to the office.*
>
> *(c) A magistrate is in compliance with the training requirements of this article if:*
>
>> *(1) not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);*
>>
>> *(2) the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and*
>>
>> *(3) the magistrate demonstrates competency as provided by Subsection (b).*
>
> *(c-1) Notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022. This subsection expires May 1, 2023.*
>
> *(d) Any course developed or approved by the office under this article may be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity.*

Plaintiff plead that the Texas Office of Court Administration, acting in concert and collusion with the Texas Court of Criminal Appeals, and the named public agencies charged with the training of magistrates and police, instead of properly training public officials, conspired, one said public officials, toward an ongoing criminal enterprise by developing curricula for the training of magistrates and others in practices and procedures which are in clear and direct violation of the specific Constitutional mandates and laws of the State of Texas.

**2.5   FAILURE TO STATE A CLAIM**

Under the standards for a Rule 12 motion, taking all allegations of Plaintiffs stated facts as true, Plaintiff sufficiently plead a claim against Defendants. Further, the Fifth Circuit has permitted Fourteenth Amendment section 1983 claims for criminal cases dismissed pretrial—like Plaintiff Bell's case here. The Fifth Circuit has thus observed that "there is a due process right not to have police deliberately bring false charges against a person." See *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020) (internal quotation marks and citation omitted).

**2.6   FACTUAL ATTACK BY DEFENDANTS**

"In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." Id. (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). A Rule 12(b)(1) motion may be facial or factual.

> Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Through their Motion to Dismiss, Defendants attempt factual attacks on the claims made by Plaintiff and include evidence in their attempt to do so.

The Court may examine documents and other evidence that is attached to a motion to dismiss as long as the evidence is referred to in the complaint and central to the plaintiff's claims. See *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th

8

Cir.2004); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000); see also *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014)("Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims.")(citing *Kaye v. Lone Star Fund v. (U.S.), L.P.*, 453 B.R. 645, 662 (N.D.Tex.2011).

When defendants attach to a Rule 12(b)(6) motion to dismiss video evidence that is referred to in the complaint and central to it, a court may consider that evidence. See *Inclusive Cmty. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Hartman v. Walker*, 685 F. App'x. 366, 368 (5th Cir. 2017) ("[O]n a motion to dismiss, the court is entitled to consider any exhibits attached to the complaint, including video evidence". The Court should consider the video and only discount the allegations in the Complaint when the video "blatantly contradict[s]" the plaintiffs' well-pleaded factual allegations. See *Ramirez v. Martinez*, 716 F.3d 369, 374–75 (5th Cir. 2013); *Griffin v. City of Sugar Land, Texas*, 2019 WL 175098, *6 (S.D. Tex. Jan. 11, 2019), aff'd, 787 F. App'x 244 (5th Cir. 2019); *Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 452 (S.D. Tex. 2021).

**Defamation By Defendant Carter's Press Release**

Defendants attached Defendant Carter's press release as "Exhibit A" to their Motion to Dismiss. Plaintiff notes the following language in the press release is factually incorrect and portends Plaintiff in a negative light via its inclusion.

> "Entering the fitting room without wearing a mask is against store policy."

Plaintiff spoke to multiple employees regarding Nordstrom Rack's store policy on masks and this statement is untrue. Plaintiff will give testimony to this fact at trial.

9

> "According to the store employee, the female shoved her when she tried to prevent her from entering the fitting area".

This is untrue and entirely inconsistent with multiple comments made by the store employee to the police officers and to Travis County 911 Dispatch including:

> "She is in our fitting room. Uhm…she forced her way past me shoving me on several different occasions…She was just being rude. I am not actually…she like… "pushed"…like, when I say "push", I mean…she like…tried to get past me but I am not injured." (Store Employee 911 call)

> "I, honestly, I couldn't tell you, uhm, like, I mean I have been in loss prevention for a few years. I know how to create space, I know how to keep distance. I know…I've done that for four years. She kept getting closer and closer and then I put my arm physically blocking the door4. (Store employee when asked by Defendant Eller what occurred in the fitting area).

Even the statements made between Defendants Eller and Gill while conducting their investigation at the scene corroborate there was no shoving. See Defendants' Exhibit B.  Defendant Carter also stated in the press release that "the woman refused to identify herself". Plaintiff Bell had already identified herself to Travis County Dispatch which Officer Gill later admitted to hearing while standing a few feet from Plaintiff. See Defendants' Exhibit B.

**The Take Down**

Defendants' claim in their *Motion to Dismiss* that "Plaintiff was never thrown to the ground". In the video included in Defendants Motion to Dismiss as "Exhibit B", one can clearly see the Defendants Eller and Gill took Plaintiff Bell to the ground. *See* Defendant's Exhibit B at 17:50. Further, attached to this pleading as Exhibit 1 is an email sent to Sunset Valley Police Department from a bystander who witnessed the event. Based on the detailed eye-witness account from this third-party bystander, she was clearly disturbed by the brutality she observed from

10

Defendants Eller and Gill. It should be noted that this bystander also placed a call to 911 to immediately report this incident involving police brutality. Also attached to this pleading as Exhibit 2 is the "Sunset Valley Police Department Use of Force Details" report which indicates a "take-down" occurred. Further, attached to this pleading as Exhibit 3 is page 5 of Defendant Gill's "Offense/Incident Report" wherein she states "we needed to put her on the ground for better control". It should be noted there is other video evidence[2] of the event that Sunset Valley Police Department refuses to produce. In this video from Defendant Gill's body camera, one can see the take-down was unjustified as Plaintiff Bell was not moving toward Officer Gill in a threatening manner but was merely repositioning herself. Sunset Valley Police Department refused to produce this video during discovery of Plaintiff Bell's previous case as defendant and would also refuse to produce the video upon receiving multiple Open Records Request from Plaintiff Bell. After the take down, Defendant Eller in a bit of rage says "We are not playing this game". See Defendant Exhibit B at 17:50. Needless to say, none of this was "professional" or "courteous".

**The "Mistakenly Written" Citation**

Defendants' *Motion to Dismiss* states "the Chief administratively disposed of a citation that had been mistakenly written to the Nordstrom employee" (¶27). This is untrue. As can be seen in the video provided by Defendants as Exhibit B to their *Motion to Dismiss*, Defendants Eller and Gill intentionally issued a citation to the store employee upon the conclusion of their collective investigation. See Exhibit B at 58:25, 59:16, 1:01:55, 1:02:18, 1:06:55. Defendant Gill clearly states in the

---

[2] A portion of Officer Gill's body worn camera video can be seen here: https://www.youtube.com/watch?v=-rlMxOcgQgI

11

video at 48:15 that Plaintiff Bell "has every right to file on her" (in reference to Plaintiff Bell pressing charges against the store employee).

**The Hot Boxing**

Defendants' claim in their *Motion to Dismiss* that Plaintiff Bell "was not 'hot boxed' but was placed in a running police car with air conditioning". When reviewing the video provided by Defendants (Exhibit B), one can see that Plaintiff Bell was placed in the patrol car with the windows rolled up at 23:37. Defendants' motion claims the car was running. This is disputable from viewing Defendant Eller's body-cam video. There is a lot of background noise and many other cars in the parking lot where the patrol car was located. Upon discovery, Defendant Gill's complete and un-edited body-cam video should be produced as well the dash cam videos from both Defendant Eller's and Defendant Gill's patrol vehicles as well as all associated meta data. It should be noted that Defendant Eller's patrol vehicle was parked directly behind Defendant Gill's patrol vehicle and will have relevant video as to what transpired in the vehicle parked immediately in front of it.

**Pressing Charges Due to Police Wrongdoing, Not Per the Results of the Police Officers' Investigation**

At one point in the investigation, the investigating police officers conclude that there was no assault by Plaintiff Bell. This can be seen in the body-cam video provided (Defendants' Exhibit B) at 47:20:

> "Yeah, there ain't no assault there. I don't, I don't, I wouldn't even feel comfortable pushing it. She held out her arm like this, and she went like this. Ok, no marks, no pain, no nothing." (Defendant Eller)

> "Yeah, cause I asked her like, did, are you hurt, like, is there pain? Well, no, not really." (Defendant Gill)

Also at 48:22, Defendant Eller states to Plaintiff Bell:

12

> "Alright, so we are not filing charges against you on her. I
> don't like what's going on that, the assault portion of it".

Despite these conclusions garnered from their on-scene investigation, Defendants Eller and Gill ultimately issued Plaintiff Bell a citation for Class C assault. Based on the facts presented, the issuance of the citation was driven by direction from police officers not at the scene. In the body-cam video, Defendant Gill can be seen speaking on her cell phone to Defendant Carter and Lieutenant Tyler Early. Relatedly, at 46:40 in Defendants' Exhibit B body-cam video, Defendant Eller states "Yeah, I think we need to cite her unfortunately because of the use of force". This was compounded by the fact that all police officers involved were aware of a 911 call placed during the incident wherein a third-party bystander witnessed and then reported excessive use of force by Defendants Eller and Gill.

### 3  MOTION TO DISMISS DEFENDANTS' MOTION TO ABATE DISCOVERY

We respectfully would like to give the Court judicial notice that there is an inherent imbalance here with respect to available evidence. The vast majority of available evidence is controlled by defendants. Sunset Valley Police Department and the named defendants control all of the police body-cam video as well as the patrol cars dash cam videos. The evidence provided as part of Exhibit B to Defendants' *Motion to Dismiss* is incomplete. Defendants' pleading went so far as to state "a true and correct copy of the body cam videos is attached as Exhibit B" (¶77). Where is the rest of Defendant Gill's body cam video? Why can it be located on YouTube but not provided to the Federal District Court? The Defendants' pleading further states "This video is unedited and shows the entire interaction between Officer Eller and Plaintiff" (¶81). Notably, this representation in absent from subsequent paragraph (¶82) addressing Defendant Gill's body-cam video. Further, where is the patrol car dash-cam videos? Where is the meta data

13

associated with all of the recordings and the patrol vehicles? See Exhibit 4 to this motion which includes page 10 of Defendant Eller's *Offense/Incident Report* wherein it is stated that "In car and BWC active entire event". It is highly suspicious that the following two things occurred: (i) Sunset Valley Police Department and the named Defendants will not release a full and complete copy of Officer Gill's body-cam video or patrol car dash cam videos and (ii) coincidentally, Officer Gill turns her body-cam video back on shortly after the point in which Plaintiff Bell was locked in the patrol vehicle with the car turned off and the windows rolled up (and while Defendant Eller was away from both Plaintiff Bell and Defendant Gill). Accordingly, we request the Court to dismiss Defendants' Motion to Abate Discovery.

## 4    CONCLUSION

Defendants complain about conclusory statements, but then, at some point conclusions must be drawn. In the instant case, the Mayor of Sunset Valley, the Municipal Judge, the prosecutors, and the police all had a duty to abide by their oaths of office and conduct themselves in accordance with well-established law. Instead, Defendants acted in accordance with their training, which amounted to participation in an ongoing criminal enterprise which is costing the counties in Texas on the order of $11.9 billion dollars a year and has degraded Texas Criminal Justice to the worst police state the world has ever seen. From the reasonable person of ordinary prudence standard, the only conclusion that can be drawn from Plaintiff's Petition is-- that, if all the facts plead by Plaintiffs are taken as true, Plaintiffs will have a claim against Defendants, all defenses of "just following orders" notwithstanding.

## 5    PRAYER

Plaintiffs move this court to deny Defendant's motion to dismiss in its entirety.

Respectfully submitted,

*/s/ Randall Kelton*

Randall Kelton, Plaintiff
PO Box 1
113 S. Allen St.
Boyd, TX 76023
(940) 399-9922
randy@ruleoflawradio.com


*/s/ Kara Bell*

Kara Bell, Plaintiff
PO Box 341703
Lakeway, TX 78734
310-606-9093
KaraBell@FedUpTexans.com

## **CERTIFICATE OF SERVICE**

I certify that on this 28th day of July, 2023 a copy of the above *Plaintiff's Opposition to Defendants Lenn Carter, Robert Eller, Crystal Gill, Marc Bruner, Kenton Johnson, Barbara Boulware-Wells, Jeff Ullman, and Audrey Guthrie's Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt.5]* was filed in person with the United States District Court, Western District of Texas, Austin Division and mailed by certified mail to:

    SCOTT M. TSCHIRHART
    ATTORNEYS FOR SUNSET VALLEY DEFENDANTS
    Denton Navarro Rocha Bernal & Zech, P.C.
    2500 W. William Cannon Drive, Suite 609
    Austin, Texas 78745
    *Via Certified Mail: 7016 0600 0000 3039 8034*

 

/s/ Kara Bell
Kara Bell
July 28, 2023