# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

FILE
2023 SEP 14  PM 2: 04
CLER... US DISTRICT COURT
WESTERN DISTRICT OF TEXA
BY___CK___

| | | |
|---|---|---|
| **Randall Kelton, Kara Bell** | § | |
| *Plaintiffs* | § | |
| **VERSUS** | § | |
| **Nordstrom Inc. (d.b.a.** | § | **CIVIL ACTION 1:23-cv-00395** |
| **Nordstrom Rack), Et Al** | § | |
| *Defendants* | § | |

## PLAINTIFF'S MOTION TO STRIKE RULE 12 MOTION

Now comes Plaintiffs Randall Kelton and Kara Bell and moves the court to deny Defendants' Motion to Dismiss for cause as shown:

## 1   MOTION TO STRIKE RULE 12 MOTIONS

Now come Plaintiffs and move this court to strike Defendant's Rule 12 Motions To Dismiss as improperly filed. Plaintiffs will show that the Rule 12 Motions to Dismiss filed by the Texas Attorney General on the behalf of defendants Nathan Hecht, Sharon Keller, Barbara Hervey, Bert Richardson, Kevin Yeary, David Newell, Mary Lou Keel, Scott Walker, Michelle Slaughter, Jesse F. McClure III, Megan LaVoie, Thea Whalen, Deidra Stark, Kelly Damphouse, Nathan Cradduck, Gail Bell, were filed improperly as the Attorney General lacked standing to represent persons sued in their private capacity.

Plaintiffs will further show that the Rule 12 Motions to Dismiss filed by the Travis County District Attorney, filed on behalf of defendants, Jose Garza and Rob Stuart Drummond were filed improperly as the County Attorney lacked standing to represent persons sued in their private capacity.

Plaintiffs will further show that the Rule 12 Motions to Dismiss filed by the Travis County District Attorney, filed on behalf of defendants, Lenn Carter, Robert Eller and

Crystal Gill, Marc Bruner, Kenton Johnson, Barbara Boulware-Wells, Jeff Ulmann, were filed improperly as Scott M. Tschirhart, State Bar No. 24013655, attorney for Sunset Valley Defendants, as outside counsel hired by the city of Sunset Valley to represent Sunset Valley defendants, lacked standing to represent persons sued in their private capacity.

2

## 2.1   SINGULAR/PLURAL

As there are a number of defendants who are all sued in the same capacity and who improperly used Texas Taxpayer funds toward their defense in the instant personal capacity suit, Plaintiffs will use the singular and plural interchangeably, to be inclusive, where it contributes to readability.

## 2.2   GOVERNMENT LAWYER

By the following, the term "Government Lawyer" will be used to designate the Texas Attorney General, the Travis County Attorney, and the attorney for Sunset Valley Defendants inclusive.

### 2.2.1   Readability Concessions

Plaintiff has numbered and labeled each paragraph to assist the reader in maintaining the thread of this complex presentation.  Plaintiff has also set our references to cases and statutes in a stylized format to assist the reader in mental flow.  All citations are hyperlinked as much for readability as for reference as it lends visual organization to the text.  This style of formatting somewhat increased the page count of the document without actually increasing the word count.  It was a sacrifice Plaintiffs made toward clarity.

## 3   PRIVATE CAPACITY SUIT

Plaintiffs sued Defendants in the Federal Court, in their private capacity. Plaintiffs alleged Defendants, while acting under the color of an official capacity, conspired, one with the other, toward an ongoing criminal enterprise designed and intended to:

- streamline the prosecutorial process,
- ease the prosecutorial burden, and
- lower the workload on prosecutors and courts.

### 3.1   BEST OR WORST OF INTENTS

Plaintiffs allege that, without regard to the good or bad intentions of Defendants, the above adjustments toward administrative convenience and adjudicative expediency, resulted in coerced plea deals being extracted from citizens who were systematically denied in the due course of the laws of the United States in violation of the United States Constitution.

#### 3.1.1   Height of Temerity

In the height of temerity, after being sued in their personal capacity for alleged crimes against the United States which cost the citizens billions of dollars every year, that Defendants conspired with the Texas Attorney General to further defraud said taxpayers by seeking representation at the cost of the very taxpayers they are accused of defrauding.

#### 3.1.2   Acts Outside Scope

In the instant case, Plaintiffs sued Defendants in Defendants' personal capacity as Plaintiffs alleged Defendants, while acting under the color of an official capacity, conspired to perpetrate an ongoing criminal enterprise wherein Defendants concocted training programs for public officials which directed said officials toward practices and procedures which had the effect of denying citizens in the due course of the United States Constitution and laws of the United States.

## 3.2   SPECIFICITY AND PARTICULARITY

Plaintiffs plead with specificity and particularity how the training developed by Defendants violated the specific mandates of the United States Constitution, Federal laws, the Texas Constitution, and laws of the State of Texas.  Plaintiffs plead with specificity how the violations of state law affected violations of the Federal Constitutional guarantee of the due course of the laws and right to a speedy trial.

### 3.2.1   Ultra Vires Exception

Before Defendants were allowed to take office, Defendants were required to swear on their oath that they would protect the Constitution and uphold the laws of the state. Subsequent to said swearing, Defendants received value from the State in the form of payment for services rendered.  Defendants then participated in an ongoing criminal enterprise which had the effect of denying citizens in constitutionally protected rights and violated specific laws against the peace and dignity of the State of Texas and the United States.

> *"To fall within this ultra vires exception, a suit . . . must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." Id. at 372.*

In the instant case, the above is precisely what Plaintiffs pleaded.

### 3.2.2   Constitutional Prohibition

Defendants are employed by the State of Texas and in said capacity are authorized payment for services rendered, but no more.  In the instant case, Defendants  used a government attorney to provide legal counsel in a suit against Defendants  in Defendant's private capacity instead of hiring private counsel.  The Attorney General lacked standing to represent individuals sued in their personal capacity.

## 3.3   DUTIES OF ATTORNEY GENERAL

Under the Texas Constitution Represent State Agencies

> *Article 4, Sec. 22.  ATTORNEY GENERAL.  The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary*

*to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.*

### 3.3.1  Texas Government Code 402

The only place Plaintiff can find where the Texas Attorney General may have standing to represent persons in a civil case in Texas is as follows:

*Sec. 402.010.  LEGAL CHALLENGES TO CONSTITUTIONALITY OF STATE STATUTES. (a)  In an action in which a party to the litigation files a petition, motion, or other pleading challenging the constitutionality of a statute of this state, the party shall file the form required by Subsection (a-1).  The court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general either by certified or registered mail or electronically to an e-mail address designated by the attorney general for the purposes of this section.*

Plaintiff can find nothing which authorizes the Texas Attorney General to function as counsel for any person sued in his/her personal capacity, public official or otherwise.

*In the instant case, the court will take judicial notice that the State of Texas is not a litigant in the instant action.  Defendants in the instant case have been charged with acting outside the scope of their employment and, consequently, it would be a violation of the Texas Constitution for the Texas Attorney General to provide legal representation at the expense of the taxpayers of the State of Texas.*

### 3.3.2  Travis County Attorney

In the instant case, the Travis County Attorney proposed to represent the District Attorney and Sheriff in suits filed against the defendants in their personal capacity.

### *3.3.2.1  Duties of County Attorney*

The duties of County Attorneys in Texas as specified by the <u>Texas Code of Criminal Procedure Article 2.02</u> as follows:

*Art. 2.02. DUTIES OF COUNTY ATTORNEYS.  The county attorney shall attend the terms of court in his county below the grade of district court, and shall represent the State in all criminal cases under examination or prosecution in said county;  and in the absence of the district attorney he shall represent the State alone and, when requested, shall aid the district attorney in the prosecution of any case in behalf of the State in the district court.  He shall represent the State in cases he has prosecuted which are appealed.*

### 3.3.2.2    County Official Representing State Official

The court will take judicial notice that the statute makes no reference to a county attorney in Texas representing a state official.  On its face, this appears to be a misappropriation of public funds.

### 3.3.2.3    Representation in Private Capacity Suit

The matter of representation by the county to an employee sued in their personal capacity has been addressed by the Attorney General in Attorney General Opinion KP-0031 which reads in pertinent part as follows:

> *TEX. Loe. Gov'T CODE ANN. § 157.901(a)-(b) ( 2008). A county's duty to provide private legal counsel is addressed in subsection (b). See id. § 157.901(b)v. Subsection (b) expressly refers to subsection (a) and, therefore, subsections (a) and (b) must be construed together. White v. Eastland Cnty., 12 S.W.3d 97, 101-02 (Tex. App.-Eastland 1999, no pet.).*

### 3.3.3  Can Counsel Be Provided By State or County?

In the instant case, Defendants are sued on allegations of violating federal law and prohibitions of the United States Constitution.  In order for a governmental agency to provide counsel for persons sued in their private capacity, the governmental entity would have to show that such governmental benefit was specifically authorized by law.

> *Moreover, a statute may not grant authority or impose a duty that the Texas Constitution prohibits. See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n, 74 S.W.3d 377, 381 (Tex. 2002). Attorney General Opinion KP-0031 pg 3.*

### 3.3.3.1    Texas Constitutional Prohibition

The above should be read in consideration of Texas Constitution Article 3 Section 52 which reads as follows:

> *Sec. 53.   PAYMENT OF EXTRA COMPENSATION OR UNAUTHORIZED CLAIMS PROHIBITED.  The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law.*

Motion to Strike Rule 12                                                            6 of 25

### 3.3.3.2   Delegation of Public Funds

Any delegation of public funds toward a private defense must be construed in light of any applicable constitutional limitations.

> Thus, <u>section 157.901</u> must be construed in light of any applicable constitutional limitations. <u>City of Pasadena v. Smith, 292 S.W.3d 14, 19 (Tex. 2009)</u>. <u>Article III, section 52(a) of the Texas Constitution</u> prohibits the Legislature from authorizing a county to gratuitously grant public funds for private purposes. <u>TEX. CONST. art. III, § 52(a)</u>. Prior opinions of this office explain that a county or other political entity cannot constitutionally pay to provide private legal representation of its officials or employees unless the entity's governing body determines that the payment serves a legitimate interest of the entity, not merely the private interest of the official or employee. See, e.g., <u>Tex. Att'y Gen. Op. Nos. GA-0104 (2003) at 3</u>; <u>JC-0294 (2000) at 2-3</u>; <u>DM-488 (1998) at 2-3</u>. Thus, <u>section 157.901</u>, when read in light of <u>article III, section 52(a)</u> of the Texas Constitution, does not require a commissioners court to pay for private legal representation of a county official or employee in a particular case when such payment does not serve a legitimate interest of the county. Whether paying public funds to provide a county official or employee with private legal representation will serve the legitimate interests of the county "is always a question of fact that must await the good faith determination of the governing body of the county ... in light of all relevant facts." <u>Tex. Att'y Gen. Op. No. JM-1276 (1990) at 11</u>v.

### 3.3.3.3   Legal Defense of Employees

> <u>Sec. 157.901</u>. LEGAL DEFENSE OF EMPLOYEES. (a) A county official or employee sued by any entity, other than the county with which the official or employee serves, for an action arising from the performance of public duty is entitled to be represented by the district attorney of the district in which the county is located, the county attorney, or both.

> (b) If additional counsel is necessary or proper in the case of an official or employee provided legal counsel under Subsection (a) or if it reasonably appears that the act complained of may form the basis for the filing of a criminal charge against the official or employee, the official or employee is entitled to have the commissioners court of the county employ and pay private counsel.

### 3.3.3.4   Adverse to State

In the instant case, Defendants are accused of an ongoing criminal enterprise adverse to the state.

> <u>Art. 2.08. DISQUALIFIED</u>. (a) District and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State.

> (b) A judge of a court in which a district or county attorney represents the State shall declare the district or county attorney disqualified for purposes of Article <u>2.07</u> on a showing that the attorney is the subject of a criminal investigation by a law enforcement agency if that investigation is based on credible evidence of criminal misconduct for an offense that is within the attorney's authority to prosecute. A disqualification under this subsection applies only to

*the attorney's access to the criminal investigation pending against the attorney and to any prosecution of a criminal charge resulting from that investigation.*

Plaintiffs argue that Texas Code of Criminal Procedure should be read to include, not only the county and district attorney, but also the Texas Attorney General when the AG is called upon to represent certain public officials accused of acts adverse to the state as in the case of the instant action.

### 3.3.4   Ultra Vires

Plaintiffs allege defendants acted outside the scope of their authority by engaging in a criminal conspiracy to violate well-established law.  Without regard to the offices or positions Defendants hold, in the instant case, they are sued for acting in their individual capacity.

> *"In the ultra vires context, we have noted that "extending immunity to officials using state resources in violation of the law would not be an efficient way of ensuring those resources are spent as intended." City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex.2009)." Wasson Interests, Ltd. v. City of Jacksonville, 489 S.W.3d 427, 437 (Tex. 2016)*

#### 3.3.4.1   *Breach of Contract*

Plaintiffs, in their petition, allege Defendants acted outside the scope of their contract in breach of the covenants thereof.  The governmental entity known as the Texas Court of Criminal Appeals entered into a contract with the individual judges of said court.  The above case alleges said judges breached the covenants of said contract by committing acts outside the scope of their authority.

> *Section 271.152 provides:  A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.  Wasson Interests, Ltd. v. City of Jacksonville, 489 S.W.3d 427, 437 (Tex. 2016)*

#### 3.3.4.2   *No Right to Compensation*

Thecannotct between Defendants and the State of Texas, in the instant case, does not, as it cannot, provide for private counsel.  Defendants were not sued in their official capacity. They were sued alleging they violated the public trust in violation of the covenants of

their contracts with the State of Texas and, thereby, do not enjoy a right to compensation not included in their contract.

> *Texas Constitution Article 3, Sec. 44.   COMPENSATION OF PUBLIC OFFICIALS AND CONTRACTORS;   EXTRA   COMPENSATION;   UNAUTHORIZED   CLAIMS; UNAUTHORIZED EMPLOYMENT.   The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law.*

### 3.3.4.3   Clearly Established Law

Plaintiffs, in their petition, stipulated specific violations of clearly established law including Texas Constitution Article 1, Section 10, Article 5, Section 17, Texas Code of Criminal Procedure 2.11, 2.13, 14.06, 15.16, 16.04, 16.17, 17.30, 17.3, to include assertions of the violations of the Texas Penal Code.

In a series of cases, the Supreme Court sketched out the approach to be taken. <u>Anderson v. Creighton</u> refined the meaning of "clearly established law" in a law enforcement officer's qualified immunity defense against a claim that he conducted a warrantless search without probable cause or exigent circumstances.

> *"When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." Harlow v. Fitzgerald, <u>457 U.S., at 814</u>, as quoted from <u>Anderson v. Creighton, 483 U.S. 635, 638 (1987)</u>*

### 3.3.4.4   Reasonable Belief Standard

Plaintiffs recognize, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  With that said, public officials should fear the criminal and financial consequences of acts beyond the scope of their sworn duties.

Cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them

from civil damages liability as long as their actions could reasonably have been construed consistent with the rights they are alleged to have violated. See, *e.g.,* <u>Malley v. Briggs, 475 U.S. 335, 341 (1986)</u> (qualified immunity

> *"As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."* <u>*Malley v. Briggs, 475 U.S. 335, 341 (1986)*</u>

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow*, <u>457 U.S., at 819</u>,

> *Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.* <u>*Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)*</u>

### 3.3.5  Knowledge of Established Law

Perhaps a municipal clerk or newly trained police office may reasonably plead ignorance of clearly established law, however, we are not dealing with new hires here.  We are dealing with the heads of agencies and the highest level of criminal judges in Texas.

> *If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.* <u>*Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)*</u>

### 3.3.6  Clearly Established Law

Defendants, in the instant case, are alleged to have violated long standing and well-established law and Constitutional provisions dating back a quarter century.

> *If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.* <u>*Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)*</u>

A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that her conduct is unlawful and violates the right in question. Wernecke v. Garcia, 591 F.3d 386, 392–93 (5th Cir. 2009).

Defendants are accused of concocting, preparing and presenting course and curriculum, designed and intended to train and direct public officials in a set of practices and procedures which had the effect of denying every person living in or simply passing through the State of Texas in their Federally Protected right to the due course of the laws.

### 3.3.7  Unwarranted Pre-supposition

Even to the casual observer, under the reasonable person of ordinary prudence standard, a question as to the propriety of the Attorney General representing persons accused of acting outside the scope of their official capacity in violation of Constitution and law.

*The qualified immunity inquiry asks whether, based on the then current state of the law, the officer reasonably might have misappraised the law's application even when all facts are perceived correctly. Anderson v. Creighton, 483 U.S. 635, 638 (1987)*

### 3.3.8  Wrong on So Many Levels

Invoking the services of the Texas Attorney General to defend Defendants in a personal capacity suit filed in the federal court is wrong on a number of levels.  As stated above, it is wrong on a moral and ethical level.  It is also wrong on a constitutional level.

*Texas Constitution Article 3, Sec. 51.  GRANTS OF PUBLIC MONEY PROHIBITED.  The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever;  provided that the provisions of this Section shall not be construed so as to prevent the grant of aid in cases of public calamity.*

### 3.3.9  Illegitimate Public Purpose

Where there is a calamity caused by fire, flood, Armageddon, or some other disaster, the expenditure of public funds  to private benefit may be appropriate, but the only calamity here is one of Defendants making.

*The Constitution does not, however, invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose. Byrd v. City of Dallas, supra; Barrington v. Cokinos, 161 Tex. 136, 338 S.W.2d 133, 140 (1960). Brazoria County v. Perry, 537 S.W.2d 89, 90-91 (Tex. Civ. App. 1976)*

Indemnifying someone from the legal consequences of criminal behavior can hardly be construed a "legitimate public purpose."  While public officials need to be able to perform their duties without constant fear of civil litigation, that protection must be closely bound by the limits of penal laws.

## 3.4   NO SPECIAL IMOULMENTS

Any ordinary citizen, sued in their personal capacity, would be required to secure counsel at their cost.  Where a person is brought before the civil or criminal court, if financially able, must secure counsel at their own cost.

> *Without discussing in detail these provisions of the Constitution, it is sufficient to say each of them is intended to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual, corporation, or purpose whatsoever. This limitation upon the power of the Legislature is a wholesome one and is plainly stated in unequivocal terms. It is academic to say the Legislature has power to pass any law which its wisdom suggests that is not forbidden by some provision of the Constitution (Federal or State).* <u>*Byrd v. City of Dallas, 118 Tex. 28, 35-36 (Tex. 1928)*</u>

Defendants now operate subject to a contract with the state and nothing in said contract purports to provide state funds for private litigation.

## 3.5   ADMINISTRATIVE CAPACITY

Defendants, upon preparing and presenting training for public officials, were, at best, acting in a purely administrative capacity.  The Office of Court Administration, under Texas Code of Criminal Procedure 17.020 was required to seek counsel from the Texas Court of Criminal Appeals and develop training for magistrates in the setting of bail and other duties.  The above acts did not require judicial discretion on the part of the Court of Criminal Appeals or any subsequent actors.  The acts were solely administrative.

### 3.5.1  Qualified Immunity

Had Defendants been acting within their discretionary authority, they would have rightly been shielded from liability, however, Plaintiffs alleged Defendants  acted outside the scope of Defendants 's official capacity on teaching practices and procedures contrary to the United States Constitution and laws of the United States.

*Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).*

### 3.5.2  Knowing Violation of Law

It cannot be construed that Defendants were somehow ignorant of the fact that the training provided by Defendants directed public officials to deny citizens within the jurisdiction of the State of Texas to the denial of the clearly stated letter of Texas Law and laws of the United States:

> *It is said, however, that this construction of the Act will not save it from the infirmity of vagueness since neither a law enforcement official nor a trial judge can know with sufficient definiteness the range of rights that are constitutional. But that criticism is wide of the mark. For the specific intent required by the Act is an intent to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them. Take the case of a local officer who persists in enforcing a type of ordinance which the Court has held invalid as violative of the guarantees of free speech or freedom of worship. Or a local official continues to select juries in a manner which flies in the teeth of decisions of the Court. If those acts are done willfully, how can the officer possibly claim that he had no fair warning that his acts were prohibited by the statute? He violates the statute not merely because he has a bad purpose but because he acts in defiance of announced rules of law. **He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did.** Of course, willful conduct cannot make definite that which is undefined. But willful violators of constitutional requirements, which have been defined, certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment. When they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite. When they are convicted for so acting, they are not punished for violating an unknowable something. Screws v. United States, 325 U.S. 91, 104-5 (1945)  **Emphasis Added***

By the above, it cannot be construed that Defendants were somehow unaware of the state of the law and due process requirements in the United States.

> *"Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation omitted).*

### 3.5.3  Clearly Established Law

Plaintiffs, in their petition, demonstrated the clearly established law as it applies to the instant matter.  Plaintiffs are not learned counsel, judges or college professors with Juris Doctorate Degrees.  Plaintiffs are simply citizens of this republic who cannot claim

ignorance of the law as a defense to prosecution. Every citizen who has had any dealings with the legal system has had that crammed down their throats more than once.

### 3.5.4  Particularized Facts

Plaintiffs, in their petition to this court, alleged with specificity and particularity the law as it stands and the procedures presented by Defendants.

> "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly, 137 S. Ct. 548, 552 (2017)*.

### 3.5.5  Good Faith and Scope

While Defendants  had some discretion in developing the curriculum provided to public officials, said discretion did not extend to clear and direct violation of long standing law.

> "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994)*.

### 3.5.6  Criminal Indemnity

Public officials, when they act in good faith, within the scope of their authority, should be able to do so with the confidence of knowing they will be protected by the laws.

> Official immunity is necessary for public servants "to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 427 (Tex. 2004)*.

However, when they take it upon themselves to act outside the limits placed on them, they should be afraid.  They should be very afraid.  They should be afraid that, as in any other situation where someone violates a law, state or federal, they will be required to answer for said crime with no expectation of protection by the authority against whom they are accused of transgressing.

### 3.5.7  Administrative Capacity Suit

Had Defendants been acting in a purely administrative capacity, immunity may have been available if Defendants s were able to show that representation was in the best interests of the State:

*The authority of a county commissioners court to employ counsel to represent county interests in suits, even when nominally against individuals, has been recognized in judicial decisions and the opinions of this office.  Attorney General Opinion H-544 (1975) at 8; see Guerra v. Weatherly, 291 S.W.2d 493 (Tex. Civ. App.-- Waco 1956, no writ); City Nat'l Bank v. Presidio County, 26 S.W. 775 (Tex. Civ. App. 1894, no writ); Attorney General Opinions JM-824 (1987) at 2, JM-755 (1987) at 1-2, MW-252 (1980) at 1, H-887 (1976) at 2, H-70 (1973) at 5; Letter Opinion No. 97-065 (1997); see also City of Corsicana v. Babb, 290 S.W. 736 (Tex. Comm'n App. 1927, judgm't adopted); Attorney General Opinion M-726 (1970).*

*The opinions of this office have stated this rule as follows:*

> *Where a Texas governing body believes in good faith that the public interest is at stake, even though an officer is sued individually, it is permissible for the body to employ attorneys to defend the action. . . . The propriety of such a step is not made dependent upon the outcome of the litigation, but upon the bona fides of the governing body's motive.  Attorney General Opinions JM-824 (1987) at 2, JM-755 (1987) at 1-2, MW-252 (1980) at 1, H-887 (1976) at 2, H-70 (1973) at 5; Letter Opinion No. 97-065 (1997); see also Attorney General Opinion M-726 (1970).*

*This common-law rule is partially codified in section 157.901 of the Local Government Code, which provides that a county official or employee sued by a third party for an action arising from that person's performance of public duty may be represented by the district attorney, the county attorney, or both. If additional counsel is necessary or proper, or if it reasonably appears that the act complained of may form the basis for filing a criminal charge against the official or employee, the official or employee is entitled to have the commissioners court of the county employ and pay private counsel.  Local Gov't Code § 157.901(b).*

*Thus, under the common-law rule or under section 157.901 of the Local Government Code the county may employ attorneys to defend county officers and employees where the commissioners court determines that the legitimate interest of the county, and not just the personal interest of the officer or employee, is at stake (Attorney General Opinion JM-824 (1987) at 2).   This is a question of fact, to be resolved by the commissioners court in the exercise of good faith judgment. As this office stated in Attorney General Opinion JM-824, "[s]uch a decision does not have to conclude that the county officer must have been right, or that the suit ultimately must be defeated. The county need only determine that the public servant of the county acted in good faith within the scope of an official duty." Letter Opinion No. 98-103*

### 3.5.7.1   Duty to Properly Train

Defendants, in the instant case, have been alleged to have had an administrative duty to train public officials in the proper administration of law.

*Public officials, whether governors, mayors or police, legislators or judges, who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity — absolute or qualified — for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all. In Barr v. Matteo, 360 U.S. 564, 572-573 (1959), the Court observed, in the somewhat parallel context of the privilege of public officers from defamation actions:*

> *"The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government." See also Spalding v. Vilas, 161 U.S., at 498-499.*

*For present purposes we need determine only whether there is an absolute immunity, as the Court of Appeals determined, governing the specific allegations of the complaint against the chief executive officer of a State, the senior and subordinate officers and enlisted personnel of that State's National Guard, and the president of a state-controlled university. If the immunity is qualified, not absolute, the scope of that immunity will necessarily be related to facts as yet not established either by affidavits, admissions, or a trial record. Final resolution of this question must take into account the functions and responsibilities of these particular Defendants s in their capacities as officers of the state government, as well as the purposes of 42 U.S.C. § 1983.*

*In neither of these inquiries do we write on a clean slate. It can hardly be argued, at this late date, that under no circumstances can the officers of state government be subject to liability under this statute. In Monroe v. Pape, supra, MR. JUSTICE DOUGLAS, writing for the Court, held that the section in question was meant "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." 365 U.S., at 172. Through the Civil Rights statutes, Congress intended "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Id., at 171-172.*

> *There can be no doubt at least since Ex parte Virginia, 100 U.S. 339, 346-347, that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. See Home Tel. Tel. Co. v. Los Angeles, 227 U.S. 278, 287-296. The question with which we now deal is the narrower one of whether Congress, in enacting § 1979, meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. Cf. Williams v. United States, 341 U.S. 97; Screws v. United States, 325 U.S. 91; United States v. Classic, 313 U.S. 299. We conclude that it did so intend. Monroe v. Pape, 365 U.S. 167, 171-72 (1961)*

*Since the statute relied on thus included within its scope the*

> *"'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,'" id., at 184 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).*

*government officials, as a class, could not be totally exempt, by virtue of some absolute immunity, from liability under its terms.*

## 3.6    EX PARTE YOUNG

The Texas Tort Claims Act and Texas Constitution notwithstanding, in the instant case, the State of Texas has no power to grant immunity or gratuity to public officials accused of violating federal law.  The Legislature, had it chosen to do so, could have provided for

the provision of counsel in matters where a public official is sued in their private capacity.

> *Appellant urges that the Texas Tort Claims Act to the extent that it authorizes the use of public funds to reimburse individuals injured by the negligence of governmental employees, contravenes the Texas Constitution, because such use constitutes: (1) a grant of public monies to corporations and individuals in violation of Art. III, Sec. 51 of the Texas Constitution; (2) an authorization for the County to lend its credit and grant public money to individuals and corporations in violation of Art. III, Sec. 52 of the constitution; and (3) an appropriation for private or individual purposes in violation of Art. XVI, Sec. 6 of the Texas Constitution.* <u>*Harris County v. Dowlearn, 489 S.W.2d 140, 144 (Tex.Civ.App. — Houston (14th) 1972, writ ref'd n.r.e.).*</u>

For Defendants accused of abusing their official capacity, while being paid by the public to then hold out an expectation that the citizens should then pay for Defendant's defense is the height of hubris.

## 3.7   FEES AND COMPENSATION

Plaintiff can find no Texas law or precedence which would accord a defendant a government paid attorney unless the defendant could demonstrate they were indigent. Plaintiffs feel certain if they, or any other citizen appealed a criminal prosecution where the defendant was denied court appointed counsel while not indigent, the Court of Criminal Appeals would rule quickly that, while defendant has a right to court appointed counsel, defendant did not have a right to have their counsel paid from taxpayer funds.

> *Texas Constitution article III, section 52(a) if (1) the expenditure's predominant purpose does not accomplish a public purpose, but instead benefits private parties; (2) sufficient control over the expenditure is not retained to ensure that the public purpose is accomplished; (3) the school district does not receive a return benefit; and (4) the expenditure fails to provide a clear public benefit in return.* <u>*Texas Attorney General Opinion KP-0099*</u>

### 3.7.1.1   No Count Commissioners Court Approval

Whether the County Commissioners Court would have standing to authorize the County Attorney to represent either the County Sheriff, Unknown Deputy, or Travis County District Attorney is moot at this point as, there is no evidence to show that the Travis County Commissioner's Court has met, considered, and approved representation of the Travis County District Attorney by the Travis County Attorney.

> *Prior opinions of this office explain that a county or other political entity cannot constitutionally pay to provide private legal representation of its officials or employees unless the entity's governing body determines that the payment serves a legitimate interest of the entity, not merely the private interest of the official or employee. See, e.g., Tex. Att'y Gen. Op. Nos. GA-0104 (2003) at 3; JC-0294(2000) at 2-3; DM-488 (1998) at 2-3.*

The above demonstrates the problem with playing fast and loose with the rules.

> *You ask generally whether an appraisal district's board of directors may reimburse attorney fees the district's chief appraiser incurred in defending a criminal action for official misconduct. We conclude that the district may do so under the common law if the board makes certain preliminary determinations. Because a governmental body must determine its authority to reimburse an officer's or employee's attorney fees on a case-by-case basis, our conclusion is necessarily limited to the situation you describe. This conclusion overrules, to the extent of inconsistency, several attorney general opinions written since 1990. Opinion No. DM-488, Opinion No. DM-488, (Ops. Tex. Atty. Gen. Nov. 13, 1998)*

## 3.8   EXTRA COMPENSATION

It appears the Texas Attorney General, the Travis County Attorney, and Scott M. Tschirhart, provided legal representation for numerous individuals who were sued in their individual capacity.   The above representation amounted to a miss-appropriation of public funds.

# 4   THE EX PARTE YOUNG DOCTRINE

Plaintiffs, in their 2nd Amended Petition alleged that Defendants acted in clear and direct violation of federal law by conspiring to deny Plaintiffs and all others similarly situated in the due course of the laws of the United States in violation of 18 U.S.C. 1983.

> *"The State has no power to impart to its officer immunity from responsibility to the supreme authority of the United States." Ex Parte Young, 209 U.S. 123, 124 (1908).*

## 4.1   MINISTERIAL ACTS

In the instant case, Plaintiffs alleged acts on the part of Defendants s which were purely ministerial in their nature.

> *But this is not intended in any way to impinge upon the principle which justifies suits against individual Defendants s, who, under color of the authority of unconstitutional legislation by the State, are guilty of personal trespasses and wrongs, nor to forbid suits against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest. In respect to the*

latter class of cases, we repeat what was said by this court in <u>Board of Liquidation v. McComb, 92 U.S. 531, 541</u>:

> "A State, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled, that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases, the writs of mandamus and injunction are somewhat correlative to each other. In either case, if the officer plead the authority of an unconstitutional law for the non-performance or violation of his duty, it will not prevent the issuing of the writ. An unconstitutional law will be treated by the courts as null and void."

An example and illustration of this class will be found in <u>Seibert v. Lewis, 122 U.S. 284</u>. Nor need it be apprehended that the construction of the 11th Amendment, applied in this case, will in anywise embarrass or obstruct the execution of the laws of the United States, in cases where officers of a State are guilty of acting in violation of them under color of its authority. The government of the United States, in the enforcement of its laws, deals with all persons within its territorial jurisdiction, as individuals owing obedience to its authority. The penalties of disobedience may be visited upon them, without regard to the character in which they assume to act, or the nature of the exemption they may plead in justification. Nothing can be interposed between the individual and the obligation he owes to the Constitution and laws of the United States, which can shield or defend him from their just authority, and the extent and limits of that authority the government of the United States, by means of its judicial power, interprets and applies for itself. If, therefore, an individual, acting under the assumed authority of a State, as one of its officers, and under color of its laws, comes into conflict with the superior authority of a valid law of the United States, he is stripped of his representative character, and subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. Quoted from <u>In re Ayers, 123 U.S. 443, 506 (1887)</u>

## 4.2   NO AUTHORITY TO VIOLATE LAW

See also, where Plaintiffs plead acts in violation of Legislative mandates, it cannot be construed that the actors were acting in an official capacity.

> "Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct."" <u>Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 102 (1984)</u>

2.4.4  Examining Trial (Preliminary Hearing) As Due Process

<u>Texas Code of Criminal Procedure 14.06(a)supra</u> and <u>Texas Code of Criminal Procedure 15.16 supra</u> are clear in that an arrested person is to be immediately taken to a magistrate.

## 4.3   PRELIMINARY HEARING

An accused who has been arrested has a due process right to a preliminary hearing under the <u>Federal Rules of Procedure Rule 5.1</u> which reads as follows:

*<u>Rule 5.1 Preliminary Hearing</u>*

*(a) IN GENERAL. If a Defendants is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless:*

> *(1) the Defendants waives the hearing;*
>
> *(2) the Defendants is indicted;*
>
> *(3) the government files an information under <u>Rule 7(b)</u> charging the Defendants with a felony;*
>
> *(4) the government files an information charging the Defendants   with a misdemeanor; or*
>
> *(5) the Defendants is charged with a misdemeanor and consents to trial before a magistrate judge.*

*(b) SELECTING A DISTRICT. A Defendants arrested in a district other than where the offense was allegedly committed may elect to have the preliminary hearing conducted in the district where the prosecution is pending.*

*(c) SCHEDULING. The magistrate judge must hold the preliminary hearing within a reasonable time, but no later than 14 days after the initial appearance if the Defendants is in custody and no later than 21 days if not in custody.*

*(d) EXTENDING THE TIME. With the Defendants's consent and upon a showing of good cause— taking into account the public interest in the prompt disposition of criminal cases—a magistrate judge may extend the time limits in <u>Rule 5.1(c)</u> one or more times. If the Defendants does not consent, the magistrate judge may extend the time limits only on a showing that extraordinary circumstances exist and justice requires the delay.*

*(e) HEARING AND FINDING. At the preliminary hearing, the Defendants   may cross-examine adverse witnesses and may introduce evidence but may not object to evidence on the ground that it was unlawfully acquired. If the magistrate judge finds probable cause to believe an offense has been committed and the Defendants   committed it, the magistrate judge must promptly require the Defendants   to appear for further proceedings.*

*(f) DISCHARGING THE DEFENDANTS . If the magistrate judge finds no probable cause to believe an offense has been committed or the Defendants   committed it, the magistrate judge must dismiss the complaint and discharge the Defendants . A discharge does not preclude the government from later prosecuting the Defendants   for the same offense.*

*(g) RECORDING THE PROCEEDINGS. The preliminary hearing must be recorded by a court reporter or by a suitable recording device. A recording of the proceeding may be made available to any party upon request. A copy of the recording and a transcript may be provided to any party upon request and upon any payment required by applicable Judicial Conference regulations.*

(h) PRODUCING A STATEMENT.

> (1) In General. *Rule 26.2(a)–(d) and (f) applies at any hearing under this rule, unless the magistrate judge for good cause rules otherwise in a particular case.*

> (2) Sanctions for Not Producing a Statement. *If a party disobeys a Rule 26.2 order to deliver a statement to the moving party, the magistrate judge must not consider the testimony of a witness whose statement is withheld.*

## 4.4   PRELIMINARY HEARING GOES TO DUE PROCESS

Defendants have a right to a proper determination of probable cause by a neutral magistrate in accordance with the 5th Amendment to the United States Constitution which reads as follows:

> *No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

The Federal Courts held that the states must provide a preliminary hearing in GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602, which reads in pertinent part as follows:

> *Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, at 96;*

>> *An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. "Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Wong Sun v. United States, 371 U.S. 471, 479-482 (1963).*

> *Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases*

*significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See <u>R. Goldfarb, Ransom 32-91 (1965)</u>; L. Katz, Justice Is the Crime 51-62 (1972.*

*Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., 18 U. S. C. 3146 (a)(2)(5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish Defendants meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. <u>GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602</u>*

## 4.5    ONGOING CRIMINAL CONSPIRACY

Plaintiffs alleged that Defendants conspired, one with the other, toward training for police and magistrates in practices and procedures which were intended to violate specific statutory requirements in order to deny Plaintiffs and others similarly situated in the right addressed above.  See also <u>Edelman v. Jordan, 415 U.S. 651, 680 (1974)</u>.

*a state official seeking to enforce in the name of a State an unconstitutional act "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequence of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." Id., at 159-160. <u>Edelman v. Jordan, 415 U.S. 651, 680 (1974)</u>.*

In as much as the court must take the alleged facts of Plaintiffs as true, the above is sufficient to make a viable claim against Defendants.

## 5    CONCLUSION

Defendants argue that they are immune from suit for their acts under color of their official capacity.  In the instant case, Plaintiffs alleged violations of law with specificity and particularity and that said violations had the effect of denying Plaintiffs, and all others similarly situated, in the due course of the laws as  guaranteed by the United States Constitution and laws of the United States.  Plaintiffs also addressed Ex Parte Young which specifically denies immunity to state officials when alleged to have violated Federal law.  Therefore, Plaintiffs have met the burden of stating a claim against Defendants.

## 6   PRAYER

Plaintiffs prays of this court orders ruling as follows:

1. The Texas Attorney General, the Travis County Attorney, nor any attorney paid by a city, has no authority to represent persons sued in their personal capacity, be they public officials or otherwise.

2. The provision of government paid attorneys for persons sued in their individual capacity would be in violation of the Texas Constitutional provisions of Article 3, sections 44, 50, or 52.

3. Government paid attorneys, to include the Attorney General, the Travis County Attorney, and the law firm representing the City of Sunset Valley litigants lacked standing to file a Rule 12 Motion with this court.

4. The Rule 12 motions filed with this court by government paid lawyers have been improperly filed and, therefore, said motions are not properly before the court.

5. The improperly filed Rule 12 motions did not toll the time to file an answer.

6. In as much as Defendants failed to timely file an answer to the instant case, Plaintiffs are hereby granted default judgment.

7. All funds expended by any governmental entity toward the defends of persons sued in their individual capacity amounts to a misappropriation of public funds and Defendants are ordered to reimburse the state, county, or city for expenses incurred in the defense of defendants sued in their personal capacity.

Respectfully Submitted

*Randall Kelton*

Randall Kelton

*Kara Bell*

Kara Bell

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **Randall Kelton, Kara Bell** | § | |
| *Plaintiffs* | § | |
| **VERSUS** | § | |
| **Nordstrom Inc. (d.b.a.** | § | **CIVIL ACTION 1:23-cv-00395** |
| **Nordstrom Rack), Et Al** | § | |
| *Defendants* | § | |

## ORDER

It is hereby ordered that:

1. The Texas Attorney General, the Travis County Attorney, nor any attorney paid by a city, has no authority to represent persons sued in their personal capacity, be they public officials or otherwise.

   Granted ____          Denied____

2. The provision of government paid attorneys for persons sued in their individual capacity would be in violation of the Texas Constitutional provisions of Article 3, sections 44, 50, or 52.

   Granted ____          Denied____

3. Government paid attorneys, to include the Attorney General, the Travis County Attorney, and the law firm representing the City of Sunset Valley litigants lacked standing to file a Rule 12 Motion with this court.

   Granted ____          Denied____

4. The Rule 12 motions filed with this court by government paid lawyers have been improperly filed and, therefore, said motions are not properly before the court.

5. The improperly filed Rule 12 motions did not toll the time to file an answer.

   Granted ____          Denied____

Motion to Strike Rule 12                                                                24 of 25

6. In as much as Defendants failed to timely file an answer to the instant case, Plaintiffs are hereby granted default judgment.

   Granted ____          Denied____

7. All funds expended by any governmental entity toward the defends of persons sued in their individual capacity amounts to a misappropriation of public funds and Defendants are ordered to reimburse the state, county, or city for expenses incurred in the defense of defendants sued in their personal capacity.

   Granted ____          Denied____


_____

**_Presiding Judge_**