# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **RANDALL KELTON and KARA BELL,** *Plaintiffs* | § § § § | |
| **v.** | § § | **Case No. 1:23-CV-00395-DII-SH** |
| **NORDSTROM, INC. d/b/a Nordstrom Rack, et al.,** *Defendants* | § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:     THE HONORABLE UNITED STATES DISTRICT JUDGE**

Before the Court are: Defendant Gail Bell's Motion to Dismiss (Dkt. 8); Defendants Lenn Carter, Robert Eller, Crystal Gill, Marc Bruner, Kenton Johnson, Barbara Boulware-Wells, Jeff Ullman and Audrey Guthrie's ("Sunset Valley Defendants") Motion to Dismiss (Dkt. 9); Defendant Deadra Stark's Motion to Dismiss (Dkt. 11); Defendants Nordstrom, Inc. and Kelsie Fucci's Motion to Dismiss (Dkt. 12); Defendant Travis County District Attorney José Garza's ("DA Garza") Motion to Dismiss (Dkt. 13); Dr. Kelly R. Damphousse's Motion to Dismiss (Dkt. 14); Presiding Judge Keller's Motion to Dismiss (Dkt. 15); Defendants Sam Bassett and Sara Donovan's Motion to Dismiss (Dkt. 17); Thea Whalen's Motion to Dismiss (Dkt. 18); Defendant Travis County Assistant District Attorney Rob Drummond's ("ADA Drummond") Motion to Dismiss (Dkt. 19); Defendant Travis County Sheriff Sally Hernandez's ("Sheriff Hernandez") (Corrected) Motion to Dismiss (Dkt. 20); Megan LaVoie's Motion to Dismiss (Dkt. 21); Defendants Nathan Cradduck and Texas Association of Counties' Motion to Dismiss (Dkt. 22);[1]

---

[1] Although Texas Association of Counties moves to dismiss, Plaintiffs did not name Texas Association of Counties as a defendant.

Motion to Dismiss for the Judges of the Texas Court of Criminal Appeals (Dkt. 23); Chief Justice Hecht's Motion to Dismiss (Dkt. 24); and the corresponding response and reply briefs. Also before the Court are Plaintiffs' Motion to Strike (Dkt. 56), Plaintiffs' Motion for Sanctions (Dkt. 57), and Plaintiffs' Motion to Designate Defendant Hecht's Motion to Dismiss as a Rule 56 Motion for Summary Judgment (Dkt. 69).[2]

## I.   Background

*Pro se* Plaintiffs Randall Kelton and Kara Bell sue various Texas public officials, judicial officers, and private individuals, alleging a decades-long "ongoing criminal conspiracy" to "obstruct justice" and deny Plaintiffs their constitutional rights in violation of a host of federal and state criminal statutes. Second Amended Complaint (Dkt. 5) at 2. Plaintiffs' grievances stem from face mask mandates issued by Texas Governor Greg Abbott and private businesses ("Mask Mandates") during the Covid-19 pandemic, and Texas judges' refusal to act on "criminal complaints" Kelton personally drafted against Texas judges and public officials. *Id.* ¶ 4.1.1.

### A.   Kelton's Allegations

In October 2021, during the COVID-19 pandemic, the Travis County Courthouse required all visitors to wear face coverings to enter, pursuant to state and county Mask Mandates then in effect. Kelton, a resident of Boyd, Texas, alleges that on October 12, 2021, he was "assaulted" by a Travis County Sheriff's Office ("TCSO") Deputy "Name Unknown" who denied him entry into the Courthouse because he was not wearing a face mask. *Id.* ¶ 10.1.1. Kelton alleges that the Deputy, "when asked, told Plaintiff Kelton that the pistol he was prominently displaying on his hip was loaded and he was prepared to use the pistol if necessary to prevent Plaintiff Kelton from entering

---

[2] On August 17, 2023, the District Court referred all nondispositive and dispositive motions in this case to this Magistrate Judge for disposition and report and recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt. 51.

the building without a mask." *Id.* Kelton alleges that the Deputy's actions constituted "1st Degree Felony Aggravated Assault." *Id.* ¶ 4.2. Kelton alleges that he then asked the Deputy to go to the clerk's office for Kelton, but the Deputy refused. Kelton alleges that he then "took out his cell phone with the intent of calling 911" to report the Deputy's alleged assault, but the Deputy "told Plaintiff that he could not use a cellphone in the courthouse." *Id.* ¶ 4.2. Kelton alleges that "another deputy came and pulled the [Deputy] away," and Kelton promptly called 911. *Id.* Kelton complains that "the 911 operator refused to dispatch an officer" and contends that he was "denied access to the courthouse at constructive gunpoint." *Id.*

Kelton further alleges that on October 15, 2020, he "filed criminal complaints" with Chief Justice of the Supreme Court of Texas Nathan Hecht against Governor Abbott regarding Mask Mandates. ¶ 4.1.1. Kelton complains that Chief Justice Hecht failed to issue an arrest warrant against Governor Abbott and therefore "failed to perform his duty as a magistrate in Texas stipulated by Texas Code of Criminal Procedure [Article] 15.09."[3] *Id.* ¶ 4.1.1. Kelton alleges that he then "filed a criminal complaint against Justice Hecht with the presiding judge of the Texas Court of Criminal Appeals, Sharon Keller," but "Judge Keller also refused to perform her duty" as a magistrate and issue an arrest warrant. *Id.* ¶ 6.5.6.

Kelton alleges that on October 14, 2021, he "filed a set of criminal complaints with the Travis County Grand Jury" against DA Garza and others "alleging that [DA Garza] impersonated a magistrate judge," but DA Garza failed to present these criminal complaints to the grand jury, denying Kelton's First Amendment right to petition the court for redress of grievances. *Id.* ¶ 4.1.2. Kelton further alleges that on November 30, 2021, he "sent a set of criminal complaints against

---

[3] Article 15.09 provides: "A complaint . . . may be forwarded . . . to any magistrate in the State; and the magistrate who receives the same shall forthwith issue a warrant for the arrest of the accused." TEX. CODE CRIM. PROC. ANN. art. 15.09.

[DA Garza] to every District Judge in Travis County," but "not one District Judge . . . issued a warrant against [DA Garza]," which "has left this republic in shambles." *Id.* ¶ 4.3.

### B. Bell's Allegations

Bell, a resident of Lakeway, Texas, alleges that "during the panic of the Covid 19 pandemic" she was unable to "safely wear a mask" due to "some auto immune disorders issues that affected her ability to withstand a lowered oxygen level." *Id.* ¶ 5. In April 2021, the Nordstrom Rack store located in Sunset Valley, Texas had a policy that all visitors to the store had to wear facial coverings due to the COVID-19 pandemic. Bell alleges that on April 7, 2021, she visited the store without wearing a mask. Bell alleges that when she entered the dressing room, Kelsie Fucci, a Nordstrom Rack loss prevention officer, "aggressively confronted" her "and demanded that she don a mask." *Id.* ¶ 5.1.1. Bell alleges as she tried to enter an empty dressing room, Fucci "proceeded to hip-check Bell so hard that she fell back into the door frame of the dressing room." *Id.* ¶ 5.1.2. Bell alleges that Fucci then "escalated her assault and battery and grabbed Bell's right arm and tried to pull her out of the dressing room." *Id.* ¶ 5.1.3. Bell alleges that she closed the dressing room door and "called 911 for help." *Id.* ¶ 11.2.1.

Bell alleges that when City of Sunset Valley Police Officers Robert Eller and Crystal Gill arrived on the scene, they ignored her claims of assault and instead

> took Plaintiff Bell into custody, refused to consider or investigate her complaints, escorted her from the building, attacked Plaintiff Bell by throwing her to the ground, handcuffed Plaintiff Bell and placed her in a hot automobile with the windows rolled up and the engine off, in 97-degree heat, almost killing Plaintiff Bell.

*Id.* ¶ 11.2.1.2. Bell claims that putting her in the patrol vehicle constituted "hot boxing," a practice she contends police use "to force otherwise 'difficult' people into submission." *Id.* ¶ 5.1.5.1. Bell alleges that she was rendered helpless and "could only signal for help by banging her head on the

side of the patrol vehicle." *Id.* Bell alleges that while she was in the patrol car, the officers illegally searched her purse.

Bell alleges that she was issued a citation for Failure to Identify and Assault by Contact—misdemeanor offenses under the Texas Penal Code. *Id.* ¶ 10.1.5.10. She alleges that the officers lacked probable cause to detain her. Bell also contends that their actions constituted aggravated assault, kidnapping, attempted murder, obstruction of justice, and official oppression, in violation of the Texas Penal Code. Bell further contends that the officers "conspired with Defendant Fucci to give false testimony and then commence malicious prosecution." *Id.* ¶ 11.2.11.2. She also alleges that Sunset Valley Police Chief Lenn Carter "made a special point to defame Plaintiff Bell by issuing a press release informing every one of the arrest of Plaintiff Bell." *Id.*

Bell complains that when she appeared before Sunset Valley Municipal Court Judge Kenton Johnson on May 7, 2021, as ordered in her citation, Judge Johnson held "an arraignment" instead of an "examining trial," which Bell claims was required under Texas Code of Criminal Procedure Article 16.01.[4] *Id.* ¶ 5.1.14.1. Bell claims that Judge Johnson's failure to hold an examining trial deprived the court of jurisdiction, constituted "an act of Official Oppression as defined by the Texas Penal Code [§] 39.03," and "simulated a legal process in violation of Texas Penal Code [§] 32.48." *Id.* ¶¶ 10.1.5.13.-10.1.8.2. Bell alleges that she "refused to plead guilty," but Judge Johnson "forced" her to meet with the prosecutor, "who repeatedly attempted to coerce Plaintiff Bell into a guilty plea." *Id.* ¶ 10.1.5.13.

Bell alleges that Judge Johnson dismissed her case on November 14, 2022 "for lack of evidence." *Id.* ¶ 10.1.7. She argues that Judge Johnson should have dismissed her case "as a matter

---

[4] Article 16.01 provides, in relevant part, that: "The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case." TEX. CODE CRIM. PROC. ANN. art. 16.01.

of law" based on lack of jurisdiction for failing to hold an examining trial and denial of her speedy

trial rights. *Id.* ¶ 10.1.8.1. Bell further alleges that her criminal defense attorneys, Sam Bassett and

Sara Donovan, failed to provide her with effective assistance of counsel. *Id.* ¶ 5.1.13.

### C. Alleged Criminal Conspiracy

Plaintiffs allege that they "will show that Plaintiffs were not singled out for special persecution

but worse, Plaintiffs were treated just like everyone else accused of crime in Texas." *Id.* ¶ 2.

Plaintiffs allege that:

> The Texas Court of Criminal Appeals, acting in concert and
> collusion with the Texas Office of Court Administration, acting in
> their administrative capacity as commanded by Texas Code of
> Criminal Procedure 17.24 and developed training for magistrates
> and others in Texas that was then implemented by Texas Office of
> Court Administration, Megan LaVoie, the Texas Justice Court
> Training Center, Thea Whalen, the Texas Municipal Courts
> Education Center, Deadra Stark, Texas State University, the Texas
> Association of Counties, Mr. Nathan Cradduck, the Texas Center
> for the Judiciary, Gail Bell, and similar entities to be named
> subsequent to discovery. Plaintiffs will show how practices and
> procedures taught to magistrates, police, and others around Texas
> had the effect of circumventing the Constitutions and laws of the
> United States and the State of Texas, having the effect of an ongoing
> criminal enterprise which annually extracts billions of dollars from
> taxpayers in violation of the clear dictate of law.

*Id.* ¶ 1. Plaintiffs also allege that:

> Every judge in Texas who has presided over a criminal case, or acted
> as a prosecutor or defense counsel, in the last 40 years, where the
> accused was arrested, taken to jail, subjected to a magistration
> hearing, then prosecuted in accordance with the training given to the
> police, prosecutors, magistrates and judges, developed by the Texas
> Court of Criminal Appeals, is directly implicated as part of a street
> gang.

*Id.* ¶ 9.5.2.

### D.  Plaintiffs' Lawsuit

Plaintiffs filed this action under 42 U.S.C. § 1983, on behalf of themselves and all others similarly situated, against Defendants Chief Justice Hecht; Presiding Judge of the Texas Court of Criminal Appeals ("TCCA") Sharon Keller and TCCA Judges Barbara Hervey, Bert Richardson, Kevin Yeary, David Newell, Mary Lou Keel, Scott Walker, Michelle Slaughter, and Jesse F. McClure, III ("TCCA Judges"); DA Garza; ADA Drummond; the Sunset Valley Defendants; Sheriff Hernandez; the TCSO Deputy; Nordstrom, Inc.; Fucci; Basset and Donovan; Megan LaVoie, Director of the Texas Office of Court Administration; Dr. Kelly R. Damphousse, President of Texas State University; Nathan Cradduck, President of the Texas Association of Counties Board of Directors; Gail Bell, Conference Director of the Texas Center for the Judiciary; Deadra Stark, Administrative Director of Texas Municipal Courts Education Center; and Thea Whalen, Executive Director of the Texas Justice Court Training Center.

In their 153-page Second Amended Complaint, Plaintiffs allege that Defendants "acted in concert and collusion, one with the other toward furtherance of an ongoing criminal conspiracy to obstruct justice and deny Plaintiffs in the due course of the laws of the State of Texas." *Id.* Plaintiffs allege that Defendants' "criminal enterprise" constituted a criminal and civil conspiracy that denied Plaintiffs their constitutional rights and violated numerous federal and Texas criminal statutes and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Plaintiffs also assert several Texas tort claims against Defendants involved in Bell's arrest, including negligence, intentional infliction of emotional distress, libel, and slander. Plaintiffs seek only monetary damages for relief: $5 million from Nordstrom, Inc., $1 million from Fucci, and $100,000 to $25 million from each of the other Defendants.

### E.  Defendants' Response

In response to Plaintiffs' suit, Defendants have filed fifteen motions to dismiss under Rules 12(b)(1) and 12(b)(6), seeking dismissal of Plaintiffs' claims based on lack of standing, judicial immunity, prosecutorial immunity, qualified immunity, statutes of limitations, and failure to state a plausible claim for relief. While Defendants do not dispute that Kelton was denied entry to the Travis County Courthouse for failing to wear a mask and that Bell was asked to leave the Nordstrom Rack store for the same reason, Defendants deny that they violated Plaintiffs' constitutional rights or any other rights under the law.

In response, Plaintiffs move to strike Defendants' motions to dismiss under Rule 12(f); sanction Chief Justice Hecht under Rule 11; and designate Chief Justice Hecht's motion to dismiss as a motion for summary judgment.

## II.    Legal Standards

### A.  Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the court. "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021).

In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). The

burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* The court's dismissal of a plaintiff's case for lack of subject matter jurisdiction is not a determination of the merits and does not prevent plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.* When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.*

## B. Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts

set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Inclusive Comty. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). But when a defendant attaches exhibits to its motion to dismiss, including video evidence, that are referenced in the complaint and central to the plaintiff's claims, the court can properly consider those documents. "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.*; *see also Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 452 (S.D. Tex. 2021) ("When defendants attach to a Rule 12(b)(6) motion to dismiss video evidence that is referred to in the complaint and central to it, a court may consider that evidence."). The district court should not discount a plaintiff's story unless the video evidence "blatantly contradicts" the plaintiff's factual allegations. *Rivera*, 555 F. Supp. 3d at 452.

While courts construe *pro se* pleadings liberally, *pro se* litigants, like all other parties, must "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 485 (5th Cir. 2014) (citation omitted). Thus, *pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief. *Id.*

### C.  42 U.S.C. § 1983 and Qualified Immunity

To state a claim under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A § 1983 suit may be brought against a person in his or her individual or official capacity as well as against governmental entities." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). In an individual-capacity suit, a defendant may raise the defense of qualified immunity. *Id.*

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Once a defendant raises a qualified immunity defense, the burden shifts to plaintiff to successfully allege that (1) defendant violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236.

### III.    Plaintiffs' Motions

Plaintiffs argue that the Court should strike Defendants' motions to dismiss under Rule 12(f) because they "were filed improperly," as the Texas Attorney General, the Travis County District Attorney, and the Sunset Valley Defendants' attorney "lacked standing to represent persons sued in their private capacity." Dkt. 56 at 1.

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice," and a motion to strike "should be granted only when the pleading to be stricken has no possible relation

to the controversy." *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (quotation omitted); *see also Encore Bank, N.A. v. Bank of Am., N.A.*, 918 F.Supp.2d 633, 642 (S.D. Tex. 2013) ("Motions to strike are usually viewed with disfavor and rarely granted since they seek a drastic remedy and are frequently sought merely to delay."). The trial court has "ample" discretion when considering a Rule 12(f) motion. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979).

Plaintiffs' conclusory arguments for disqualification of Defendants' counsel lack merit. Plaintiffs cite no relevant authority that would support their frivolous disqualification claims. Because they fail to show that Defendants' Motions have "no possible relation to the controversy" or contain "impertinent or scandalous matters," Plaintiffs' Motion to Strike (Dkt. 56) is **DENIED**.

Plaintiffs also move for Rule 11 sanctions against Chief Justice Hecht, contending that he moved to dismiss "solely for the purpose of harassing, causing unnecessary delay, and needlessly increasing the cost of litigation." Dkt. 57 at 2. Rule 11(c)(1) gives the Court discretion to impose sanctions when a pleading or motion lacks evidentiary support, is unwarranted by existing law, or is filed for an improper purpose. But "Rule 11 sanctions against a party are a rare and extraordinary remedy that should only be invoked where an action is clearly frivolous and constitutes an abuse of the judicial process." *Yadav v. Frost Bank*, No. SA-20-CV-05-FB, 2020 WL 7385842, at *8 (W.D. Tex. Dec. 16, 2020), *aff'd*, 851 F. App'x 509 (5th Cir. 2021). Because Chief Justice Hecht's motion to dismiss does not violate Rule 11 in any way and Plaintiffs' motion is frivolous, Plaintiffs' Motion for Sanctions (Dkt. 57) is **DENIED**.

Plaintiffs also bring a 49-page motion to Designate Chief Justice Hecht's motion to dismiss as a motion for summary judgment. Besides violating Local Rule CV-7(C)(2)'s page limit, Plaintiffs

present no legal basis for conversion. Accordingly, Plaintiffs' Motion to Designate Chief Justice Hecht's Motion to Dismiss as a Motion for Summary Judgment (Dkt. 69) is **DENIED**.

### IV.   Defendants' Motions to Dismiss

Defendants seek dismissal of Plaintiffs' claims due to judicial, prosecutorial, and qualified immunity, lack of standing, limitations, and failure to state a plausible claim for relief. The Court addresses Defendants' jurisdictional arguments first. *Ramming*, 281 F.3d at 161.

### A.  Article III Standing

The United States Constitution limits the jurisdiction of federal courts to deciding "Cases" and "Controversies." Art. III, § 2. A fundamental element of the case-or-controversy requirement is that the plaintiff, based on her complaint, must establish that she has "standing" to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing implicates the court's jurisdiction and must be addressed before determining whether the plaintiff has adequately stated claims against defendants. *Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023). In addition, "[t]he court must assess the plaintiff's standing to bring each of its claims against each defendant." *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008), *aff'd*, 385 F. App'x 358 (5th Cir. 2010).

To show standing, a plaintiff must prove three elements: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

### 1. Sunset City Mayor Mark Bruner

Plaintiffs' 153-page Second Amended Complaint contains no allegation against Mayor Bruner or how he has anything to do with this case. Plaintiffs neither plausibly allege that their alleged injuries are fairly traceable to any action by Mayor Bruner nor that they have standing to sue him. *See Jones v. Sicking*, Civ. No. 6:23-CV-392-ADA, 2023 WL 7006802, at *3 (W.D. Tex. Oct. 12, 2023) (finding that plaintiff failed to establish standing to sue Governor Abbott where petition "[did] not contain a single allegation that Governor Abbott did anything in the underlying adoption case"), *R. & R. adopted*, 2023 WL 7005000 (W.D. Tex. Oct. 24, 2023).

### 2. Defendants LaVoie, Whalen, Stark, Damphousse, Cradduck, and Bell

In their Second Amended Complaint, Plaintiffs allege that they "were subjected to an ongoing criminal enterprise" designed and implemented by the Texas Court of Criminal Appeals "in conjunction with" Defendants LaVoie, Whalen, Stark, Damphousse, Cradduck, and Bell. Dkt. 5 ¶ 2. Plaintiffs make a conclusory allegation that the "ongoing criminal enterprise" consisted of training "magistrates, the police, prosecutors, and trial judges in a set of practices and procedures which had the effect of denying every person accused of crime in the due course of the laws and converted Texas into the worst police state the world has ever seen." *Id.*

Plaintiffs make no specific factual allegations explaining how these defendants trained judges, police, prosecutors, and judges to violate individuals' constitutional rights. They allege no other factual allegations connecting these Defendants to their alleged injuries. Plaintiffs thus fail to allege sufficient facts to meet the second element of standing—that the injury was "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560; *see also Daniels v. Jackson*,

No. 3:20-CV-00842-M, 2021 WL 4142398, at *3 (N.D. Tex. Aug. 26, 2021) (concluding that plaintiff did not have standing where he failed to connect defendants' actions to his alleged injury), *R. & R. adopted*, 2021 WL 4133700 (N.D. Tex. Sept. 10, 2021). Plaintiffs do not show that they have standing to sue Defendants LaVoie, Whalen, Stark, Cradduck, Bell, and Damphousse.

### B. Statutory Standing

"Although statutory standing involves an inquiry into alleged injury, it is not synonymous with Article III standing. Instead, a motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021).

Plaintiffs assert various claims against all Defendants under federal criminal statutes and the Texas Penal Code.[5] As private citizens, Plaintiffs lack standing to bring claims under these criminal statutes. *See Bogard v. Lowe*, No. SA-21-CV-21-FB, 2022 WL 1050332, at *3 (W.D. Tex. Apr. 6, 2022) (recommending dismissing claims under "a variety of criminal statutes, both federal and state" because they failed to provide for a private right of action); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635 (N.D. Tex. 2007) ("Plaintiff clearly has not stated a claim with respect to the criminal charges alleged against these Defendants because a private party may not enforce criminal statutes through a civil action."), *appeal dismissed*, 258 F. App'x 702 (5th Cir. 2007); *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex. 1997) (dismissing criminal conspiracy claims under 18 U.S.C. § 241 because there is no private right of action under the statute). Plaintiffs fail to state a claim under these criminal statutes.

---

[5] Plaintiffs allege that Defendants violated 18 U.S.C. §§ 4 (misprision of a felony), 1512 (witness tampering), and 1951 (interference with commerce by threats or violence); and Texas Penal Code §§ 15.01 (criminal attempt), 15.02 (criminal conspiracy), 19.02(b)(2) (attempted murder), 20.03 (kidnapping), 20.04 (aggravated kidnapping), 22.01 (assault), 22.02 (aggravated assault), 32.48 (simulating legal process), 36.05 (witness tampering), 36.06 (obstruction or retaliation), 37.11 (impersonating public servant), 38.05 (hindering prosecution), 38.171 (failure to report felony), 39.03 (official oppression), 42.062 (interference with emergency request for assistance), 42.06 (false alarm or report), 71.02 (engaging in organized criminal activity), and 71.023 (directing activities of criminal street gang).

Plaintiffs also assert a claim against all Defendants under RICO's civil enforcement provision, 18 U.S.C. § 1964(c). Dkt. 5 ¶ 1.4. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The civil enforcement provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). To prevail in a RICO suit, a plaintiff must demonstrate an injury to business or property. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."). The phrase "injury to business or property" excludes personal injuries. *Hughes*, 278 F.3d at 422. Because Plaintiffs do not allege an injury to their business or property and only seek damages for personal injuries, they do not allege a plausible claim for relief under RICO. *See Hughes*, 278 F.3d at 422 (affirming dismissal of RICO claim when plaintiff alleged only personal injuries).

Plaintiffs also assert a civil conspiracy claim under 42 U.S.C. § 1983 that all Defendants conspired to violate their constitutional rights. "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (internal citation and quotations omitted). As explained below, Plaintiffs do not allege a violation of a constitutional right, so their civil conspiracy claim fails to state a plausible claim for relief.

### C.  Judicial Immunity

Plaintiffs sue Chief Justice Hecht, Texas Court of Criminal Appeals Presiding Judge Keller, and the TCCA Judges. All these Defendants are entitled to absolute immunity from lawsuit.

"A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any act performed in a judicial role." *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983); *accord Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial or "taken in the complete absence of all jurisdiction." *Id.* at 11-12. A judge's acts are judicial if they are normally performed by a judge and the parties dealt with the judge in his or her judicial capacity. *Id.* at 12.[6] A judge acts in "the complete absence of all jurisdiction" if he lacked "jurisdiction over the subject matter before him" when he took the challenged action. *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978). Because judicial immunity does not present a jurisdictional question, the Court analyzes Defendants' arguments for judicial immunity under Rule 12(b)(6). *See Ballard v. Wall*, 413 F.3d 510, 514–15 (5th Cir. 2005) (deciding motion to dismiss raising judicial immunity under Rule 12(b)(6)).

---

[6] The Fifth Circuit has adopted a four-factor test to determine whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces, such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 222-23 (5th Cir. 2009). These factors "are broadly construed in favor of immunity." *Id.*

1.   **Chief Justice Hecht and Presiding Judge Keller**

Plaintiffs argue that Chief Justice Hecht's failure to issue an arrest warrant against Governor Abbott and Texas Court of Criminal Appeals Presiding Judge Keller's failure to issue an arrest warrant against Chief Justice Hecht (1) violated Texas Code of Criminal Procedure Article 15.09; (2) violated Keller's due process rights; (3) constituted obstruction of justice, hindering of prosecution, misprision of a felony, and witness tampering, in violation of the Texas Penal Code; and (4) violated criminal conspiracy provisions under RICO and the Texas Penal Code.

All Plaintiffs' claims against Chief Justice Hecht and Presiding Judge Keller involve actions normally performed by a judge. *See Ammons*, 705 F.2d at 1447 (finding that issuing arrest warrant was a judicial act); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980) ("[T]he issuance of an arrest warrant is a common judicial function."); *Nyabwa v. Keller*, No. A-15-CV-0735-SS-ML, 2015 WL 5716863, at *2 (W.D. Tex. Sept. 29, 2015) (stating that Texas Court of Criminal Appeals judges' refusal to rule on state habeas petition was a judicial act), *aff'd*, 687 F. App'x 426 (5th Cir. 2017).

Nor do Plaintiffs show that Chief Justice Hecht and Presiding Judge Keller acted in "the complete absence of  jurisdiction." *Mireles*, 502 U.S. at 12. The Texas Constitution vests the "judicial power" of Texas "in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law." TEX. CONST. art. V, § 1; *see also id.* at art. V, § 3 ("The Supreme Court shall exercise the judicial power of the state except as otherwise provided in this Constitution."); *id.* at art. V, § 5 ("The Court of Criminal Appeals shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatever grade, with such exceptions and under such regulations

as may be provided in this Constitution or as prescribed by law."). Therefore, Chief Justice Hecht and Presiding Judge Keller did not lack jurisdiction.

> The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity. The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.

*Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) (cleaned up). This Magistrate Judge finds that Chief Justice Hecht and Presiding Judge Keller are entitled to absolute immunity from Plaintiffs' claims.

### 2. Judge Johnson

Plaintiffs allege that Judge Johnson (1) failed to hold an examining trial, in violation of Texas Code of Criminal Procedure Article 16.01, the Texas Penal Code, and Bell's due process rights; (2) participated in a criminal conspiracy with the Sunset Valley Police Department and prosecutors to deny Bell her rights, in violation of RICO and the Texas Penal Code; (3) violated Bell's right to a speedy trial under the Constitution; (4) held too many hearings; and (5) erroneously dismissed Bell's case for lack of evidence instead of for lack of jurisdiction. All of Plaintiffs' allegations against Judge Johnson involve acts normally performed by a judge.[7] Plaintiffs do not show that Judge Johnson lacked jurisdiction to adjudicate Bell's case.

---

[7] *See Mireles*, 502 U.S. at 12 (ordering a defendant to appear before him is a "function normally performed by a judge"); *Mitchell*, 944 F.2d at 230 (a judge acts within his judicial capacity when making rulings); *Caldarera v. Alsbrooks*, No. 4:21-CV-01569, 2021 WL 4228610, at *2 (S.D. Tex. July 28, 2021) (presiding over a guilty plea hearing or ruling on requests for speedy trial are normal judicial functions), *appeal dismissed*, 2021 WL 7502322 (5th Cir. Dec. 9, 2021); *Bowling v. Evans*, No. 4:18-CV-610-ALM, 2019 WL 5395564, at *11 (E.D. Tex. Mar. 8, 2019) (denying defendant's request for hearing was a judicial act); *Bailey v. Willis*, No. 4:17-CV-276-ALM, 2018 WL 3321461, at *10 (E.D. Tex. Jan. 11, 2018) ("[I]ssuing orders and/or deciding whether to grant a hearing on certain matters—constitute judicial acts"), *R. & R. adopted*, 2018 WL 2126476 (E.D. Tex. May 8, 2018).

Plaintiffs argue that Judge Johnson lacked subject matter jurisdiction over Bell because he failed to hold an examining trial under Texas Code of Criminal Procedure Article 16.01. Judge Johnson was not required to hold an examining trial in Bell's case because she was charged with a misdemeanor. *See* TEX. CODE CRIM. PRO. art. 16.01 ("The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense . . . ."); *Clark v. State*, 417 S.W.2d 402, 403 (Tex. Crim. App. 1967) ("We do not construe Art. 16.01 . . . as guaranteeing to an accused the right to an examining trial in a misdemeanor case."); *Richardson v. Motteram*, No. 3:17-CV-2746-M-BK, 2018 WL 3406934, at *4 (N.D. Tex. June 18, 2018) ("Under Texas law, an examining trial is not required in misdemeanor cases."), *R. & R. adopted*, 2018 WL 3392202 (N.D. Tex. July 11, 2018). The Texas Legislature has vested municipal courts with criminal jurisdiction over certain misdemeanor offenses punishable only by fines, such as Bell's case. *See* TEX. GOV'T CODE § 29.003. Plaintiffs do not show that Judge Johnson acted without any jurisdiction, and he is entitled to absolute judicial immunity.

### 3. Texas Court of Criminal Appeals Judges

Plaintiffs allege that the TCCA Judges engaged in a criminal conspiracy to obstruct justice and deny Plaintiffs' due process rights. Although not clear, it appears that Plaintiffs accuse all the TCCA Judges and "every District Judge in Travis County" of failing to perform their duties in acting on criminal complaints drafted by Kelton. Dkt. 5 ¶4.3. For the same reasons that Chief Justice Hecht and Presiding TCCA Judge Keller were entitled to judicial immunity, the TCCA Judges are entitled to absolute judicial immunity as to these claims.

Plaintiffs also argue that the TCCA Judges "developed training for magistrates and others in Texas" that "had the effect of circumventing the Constitution and laws of the United States and the State of Texas." Dkt. 5 ¶ 1. Plaintiffs appear to be referring to the TCCA's role in administering

grants for providing continuing legal education courses and programs to judges, court personnel, prosecutors, and criminal defense attorneys. *See* TEX. GOV'T CODE § 56.001 (TCCA oversees judicial and court personnel training fund). Any claims related to the TCCA's role in educating judges are barred by legislative immunity. *See Supreme Court of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 734 (1980) (finding that Supreme Court of Virginia and its chief justice were absolutely immune from liability for attorneys' fees under Section 1983 when they acted in their legislative capacity in promulgating code of professional responsibility).

This Magistrate Judge recommends that the claims against all of the judicial defendants should be dismissed on immunity grounds.

### D. Prosecutors

The Court also finds that DA Garza, ADA Drummond, and Sunset Valley prosecutors Barbara Boulware-Wells, Jeff Ullman, and Audrey Guthrie are entitled to absolute immunity. Prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43 (2009). Prosecutorial immunity is based on the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976). Actions to which prosecutorial immunity applies include "professional evaluation of the evidence, initiation of prosecution, interviewing witnesses in preparation for trial, and other actions taken throughout the judicial process." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 739 (5th Cir. 2019). A prosecutor is entitled to absolute immunity "even if he or she acted maliciously, wantonly, or negligently." *Id.*.

Plaintiffs allege that DA Garza and ADA Drummond refused to present criminal complaints Kelton drafted against Governor Abbott and DA Garza to the Travis County Grand Jury. Plaintiffs allege that the Sunset Valley Prosecutors "conspired with Plaintiff's defense counsel and the trial judge to force a false plea from Plaintiff Bell, leaving her with pending criminal charges for eighteen months," in violation of her constitutional right to a speedy trial. Dkt. 5 ¶ 8.

Because all of Plaintiffs' allegations involve conduct that "is intimately associated with the judicial phase of the criminal process," these Defendants are entitled to prosecutorial immunity. *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) ("A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process."); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) ("The decision to file or not file criminal charges" is protected by prosecutorial immunity); *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) ("The decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function.").

Plaintiffs' conspiracy, speedy trial, and malicious prosecution claims do not pierce Defendants' immunity. *See Boyd*, 31 F.3d at 279 ("[A] conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors.") (quoting *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986)); *Brummett v. Camble,* 946 F.2d 1178, 1181 (5th Cir. 1991) (concluding that state prosecutors were absolutely immune from a § 1983 action predicated on malicious prosecution). The Court finds that Defendants DA Garza, ADA Drummond, Boulware-Wells, Ullman, and Guthrie are absolutely immune from Plaintiffs' suit.

### E.  Sheriff Hernandez

Plaintiffs allege that the TCSO Deputy violated Kelton's constitutional rights by denying him access to the Travis County Courthouse for failing to wear a face mask, criminally assaulting him by carrying a weapon, and asking him to leave the courthouse. Plaintiffs argue that Governor Abbott's "illegal executive orders" regarding Mask Mandates and Sheriff Hernandez's enforcement of those orders which she "had no power to enforce" was the "proximate cause of the harm inflicted on Plaintiff Kelton by Deputy Unknown." Dkt. 5 ¶ 11.1.4. Plaintiffs argue that Sheriff Hernandez should be liable for the alleged constitutional violations under the doctrine of "respondeat superior." *Id.* ¶ 11.1.6.4.

Sheriff Hernandez argues that she is entitled to qualified immunity from Plaintiffs' claims because they allege no violation of a constitutional right, let alone a clearly established one. The Court agrees. "There is no vicarious or *respondeat superior* liability of supervisors under section 1983. Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (cleaned up). In addition, there can be no supervisory liability "if there is no underlying constitutional violation." *Id.*

#### 1.  Legal Denial of Entry

Under Texas law, "[t]he county sheriff shall have charge and control of the county courthouse, subject to the regulations of the commissioners court." TEX. LOC. GOV'T CODE § 291.003. Sheriff Hernandez and the TCSO deputies had legal authority to control entry into the Travis County Courthouse and enforce rules for maintaining the safety and decorum of the Courthouse. *See Kerr v. Weikert*, No. 4:13-CV-4102-SLD, 2016 WL 5660383, at *4 (C.D. Ill. Sept. 29, 2016) ("When a

sheriff is tasked with 'custody and care of the courthouse,' he has the 'authority to issue reasonable rules for maintaining the safety and decorum of the building.'") (quoting *Ryan v. Cnty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995)); *State v. Kurth*, 981 S.W.2d 410, 414 (Tex. App.—San Antonio 1998, no pet.) (stating that court security officer acting as agent of sheriff had authority to conduct warrantless x-ray search of plaintiff's briefcase before entering courthouse).

Courts have uniformly found that police officers or court security officers, who are authorized to control entry into a courthouse, do not violate the Constitution by enforcing safety rules such as requiring visitors to pass through security screening before being allowed to enter the building. *See Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) ("It is not clearly established that the officers were required to allow plaintiffs to pass through security screening; nor is it clearly established that the officers were not allowed to ask them to leave once they refused and then arrest them once they would not leave after being told to do so."), *cert. denied*, 143 S. Ct. 1783 (2023); *McMorris v. Alioto*, 567 F.2d 897, 901 (9th Cir. 1978) (holding that limited searches conducted as condition of entering state courthouse did not violate constitutional prohibition against unreasonable searches and seizures); *Wooldridge v. Sayasith*, No. 2:17-CV-233-D, 2018 WL 3321248, at *3 (N.D. Tex. June 13, 2018) (holding that courthouse security officer's search of plaintiff at entry of courthouse was constitutionally permissible administrative search in the context of maintaining courthouse security), *R. & R. adopted*, 2018 WL 3302748 (N.D. Tex. July 5, 2018); *Kerr*, 2016 WL 5660383, at *4 (holding that plaintiff had no right to enter courthouse wearing a hat because rule against wearing hats in the courthouse was a reasonable safety rule).

Many courts also have held that orders requiring courthouse visitors and criminal defendants to wear face masks during the COVID-19 pandemic are not unconstitutional. *See Krivolenkov v. Yandell*, No. 3:22-CV-498-SB, 2023 WL 6160778, at *1 (D. Or. Sept. 21, 2023) (holding that

plaintiff "had no unfettered constitutional right to remain on Courthouse property to film police officers after being told to leave" for violating judicial order requiring face masks); *U.S. v. Berglund*, No. 20-CR-200-SRN, 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights.") (collecting cases); *U.S. v. Trimarco*, No. 17-CR-583 (JMA), 2020 WL 5211051, at *3 (E.D.N.Y. Sept. 1, 2020) (holding that the Eastern District of New York's orders, including requiring visitors to wear a mask, "pass[ed] constitutional muster").[8] This Magistrate Judge finds that the Deputy and Sheriff Hernandez's enforcement of the Mask Mandates was constitutional. *See Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) ("Police are charged to enforce laws until and unless they are declared unconstitutional."); *U.S. v. Carden*, 529 F.2d 443, 445 (5th Cir. 1976) ("an arrest made in good faith reliance on a statute not yet declared unconstitutional is valid regardless of the actual constitutionality of the ordinance"); *Krivolenkov*, 2023 WL 6160778, at *5 (finding that sheriff's officers were entitled to qualified immunity from plaintiff's constitutional claims arising out of their enforcement of mask mandate at county courthouse).

Plaintiffs cite no case law showing Kelton had a clearly established constitutional right to enter the Travis County Courthouse without wearing a mask during the COVID-19 pandemic. Accordingly, the Deputy and Sheriff Hernandez are entitled to qualified immunity for their enforcement of the Mask Mandates. *See Rios*, 444 F.3d at 425 (stating that supervisor cannot be

---

[8] Similarly, "[n]umerous courts have held that there is no fundamental constitutional right not to wear a mask, and a mask mandate does not run afoul of the Constitution." *Pete v. Dunn*, No. 1:21-CV-546, 2022 WL 2032306, at *4 (E.D. Tex. May 11, 2022) (collecting cases), *R. & R. adopted*, 2022 WL 2001779 (E.D. Tex. June 3, 2022), *appeal dismissed*, 2022 WL 17591504 (5th Cir. Sept. 13, 2022); *see also Miranda ex rel. M.M. v. Alexander*, No. 21-535-JWD, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021) ("[T]here is no fundamental constitutional right to not wear a mask."); *Whitfield v. Cuyahoga Cnty. Pub. Libr. Found.*, No. 1:21 CV 0031, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places.").

liable under § 1983 if there is no underlying constitutional violation); *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000) ("[T]he fact that Plaintiffs' First Amendment rights were not actually infringed exonerates [city manager] from supervisory liability").

### 2.  No Excessive Force

Plaintiffs also do not allege a plausible excessive force claim under the Fourth Amendment against Sheriff Hernandez. "The Fourth Amendment prohibits police from using more force than is reasonably necessary to effect an arrest." *Buehler v. Dear*, 27 F.4th 969, 980 (5th Cir. 2022). To plead a claim of excessive force, the plaintiff must establish "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Smith v. Heap*, 31 F.4th 905, 912 (5th Cir. 2022).

Plaintiffs do not show that TCSO Deputy Name Unknown used *any* force against Kelton, let alone force that was excessive or unreasonable. *See Colone v. Woods*, No. 1:16-CV-113, 2021 WL 1146201, at *14 (E.D. Tex. Feb. 23, 2021) (holding that security officer did not use excessive force by pointing a Taser gun at plaintiff where plaintiff suffered no injuries and the threat to use the Taser was an effort to temper or prevent the need for use of force), *R. & R. adopted*, 2021 WL 1134241 (E.D. Tex. Mar. 23, 2021); *Kerr*, 2016 WL 5660383, at *4 (finding that courthouse security officer did not use unreasonable excessive force when he physically blocked plaintiff from entering the courthouse and shoved plaintiff's own cane into his chest). Plaintiffs do not show that Kelton's Fourth Amendment rights were violated.

Because Plaintiffs fail to show that Sheriff Hernandez violated any constitutional right, she is entitled to qualified immunity from this suit.[9]

---

[9] Although Plaintiffs have yet to identify TCSO Deputy Name Unknown and so he has not filed a motion to dismiss, he should be dismissed because Plaintiffs have failed to allege he violated a constitutional right.

### F.  Officers Eller and Gill

Plaintiffs allege that City of Sunset Valley Police Officers Crystal Gill and Robert Eller ("Officers") violated Bell's constitutional rights and numerous Texas criminal statutes[10] and committed various torts by (1) using "deadly force" when they seized and detained Bell, Dkt. 5 ¶ 10.1.5.2; (2) falsely arresting and searching Bell without probable cause; (3) failing to prosecute and investigate Fucci; (5) issuing Bell a citation rather than taking her before a magistrate; and (6) conspiring with Fucci and other Defendants to maliciously prosecute Bell and violate her constitutional rights.

The Sunset Valley Defendants argue that the Officers are entitled to qualified immunity from Plaintiffs' constitutional claims, and that Plaintiffs' state claims fail to state a plausible claim for relief. In support of their Motion to Dismiss, the Sunset Valley Defendants attach a video recording from Officer Eller's body camera that captured the Officers' interactions with Bell on April 7, 2021. Dkt. 9-2, at B-1 ("Video"). Plaintiffs refer to the Video in their Second Amended Complaint[11] and it is central to their claims. The Court considers the Video in analyzing Plaintiffs' claims to the extent it "blatantly contradicts" Bell's allegations. *See Rivera*, 555 F. Supp. 3d at 452 (considering video evidence on motion to dismiss where videos "blatantly contradict[ed]" plaintiff's allegations of false arrest and excessive force); *Griffin v. City of Sugar Land, Tex.*, 2019 WL 175098, *6 (S.D. Tex. Jan. 11, 2019), *aff'd*, 787 F. App'x 244 (5th Cir. 2019) (adopting video evidence over complaint allegations when the video contradicted plaintiff's allegations that the arresting officers lacked probable cause to arrest him).

---

[10] As stated above, Plaintiffs lack standing to assert claims under criminal statutes.

[11] *See* Dkt. 5 ¶ 11.2.1.15 ("As the officer's body cameras will show, Plaintiff did nothing that would warrant a physical attack and, therefore, the act of assault by said police officers was an act taken without authority in violation of Texas Penal Code 22.02(b)(2)(A)."); *id.* ¶ 11.2.4.1 ("The body cameras of police officers clearly witness the conspiratorial acts of Police Officers.").

### 1. False Imprisonment Claim

Plaintiffs argue that the Officers falsely imprisoned Bell without probable cause because "the officers had no cause to believe that Plaintiff Bell had committed, or was about to commit a crime." *Id.* ¶ 10.1.5.8.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and "applies to seizures of the person, including brief investigatory stops."[12] *U.S. v. Cortez*, 449 U.S. 411, 417 (1981). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). It is clearly established that law enforcement may effect a warrantless arrest based on probable cause. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

The Officers had reasonable suspicion to perform a *Terry* stop of Bell and probable cause to handcuff and detain her. As stated, the Officers were summoned to the Nordstrom Rack store when employees called 911 to complain that Bell had refused to leave the store after getting into a confrontation with a Nordstrom Rack employee regarding her failure to wear a face mask, as required by store policy. Dkt. 5 ¶ 11.2.1.2, 11.2.1.5. When the Officers arrived at the store, the Video shows the following interaction between Bell and the Officers:

---

[12] Such investigatory stops are commonly referred to as "*Terry* stops" because the rule derives from the case of that name. *See Terry v. Ohio*, 392 U.S. 1 (1968).

- Fucci tells the Officers that Nordstrom wants to file a criminal complaint against Bell for criminal trespass for failing to leave the store after she was asked to do so for violating the store's mask policy.

- The Officers follow Fucci to the fitting room where Bell was located. Officer Gill knocks on the door, identifies herself as a police officer, and asks Bell to come out. Bell responds that she is "naked" and Gill tells her to "put your clothes on and come out." Dkt. 9-2, B-1 at 01:38.

- About two minutes later, Bell opens the fitting room door, smiling, wearing a Nordstrom Rack dress. Gill tells Bell that she needs to put her own clothes on and leave the store because management asked her to leave for failing to comply with the store's mask policy and shoving an employee (Fucci).

- Bell tells Gill that Fucci shoved Bell and that she wants to file a complaint against Fucci. Gill tells Bell again to put her clothes on and take off the Nordstrom clothes so that she can exit the Store. Bell says "okay." *Id.* at 04:12. But instead of following Gill's directions, Bell closes the door and spends the next ten minutes inside her fitting room on the phone with a 911 operator, during which she accuses Fucci of assault.

- After Bell comes out of the fitting room, the Officers escort Bell outside the Store.

- While outside, Gill asks Bell for identification and tells her she is being detained so the Officers can investigate Nordstrom Rack's allegations of assault and criminal trespass against her.

- Bell refuses to identify herself, accuses the Officers of lying, and angrily shouts: "I don't need an identification"; "I am a woman of God"; "This is my God-given right"; "I was born here"; and "You are infringing on my rights." *Id.* at 12:11-25.

- Over the next few minutes, the Officers repeatedly ask Bell to identify herself and talk to them so they can investigate the accusations. Bell continues to refuse to identify herself or talk to the Officers, repeating that she is a "Christian Woman of God" with a "God-given right" to be at the store. *Id.* at 17:28-38.

- As Bell takes a step towards Gill, while gesturing aggressively at Gill and shouting, "I am a Christian woman of God and you are not going to put your disgusting rules on me that are false and not true. Do you understand that? I will not have it," Officer Eller grabs Bell's left arm, tells her to turn around, and attempts to handcuff her. *Id.* at 17:46.

- Gill then grabs Bell's right arm and the Officers attempt to handcuff her. Bell resists being handcuffed, screams "this is disgusting" and "stop it," and tries to

pull her arms away from the Officers. *Id.* at 17:48-18:06. During her struggle
to avoid being handcuffed, Bell falls to the ground. *Id.* at 18:08. While on the
ground, the Officers handcuff her, tell her to "calm down," and help her up. *Id.*
at 18:38.

Based on this video evidence, the Officers had reasonable suspicion to stop Bell to investigate

the allegations of assault and criminal trespass.[13] *See U.S. v. Rose*, 48 F.4th 297, 302 (5th Cir.

2022) ("[A] law enforcement officer acts with reasonable suspicion if, based on the totality of the

circumstances, he has 'a particularized and objective basis for suspecting the particular person

stopped of criminal activity.'") (quoting *U.S. v. Cortez*, 449 U.S. 411, 417 (1981)); *Bodzin v. City

of Dallas*, 768 F.2d 722, 725-26 (5th Cir. 1985) (finding that warrantless arrest for criminal

trespass was lawful where store manager told officers plaintiff was on private property and refused

to leave); *Conner v. Shreveport City Prosecutor,* No. 17-CV-0839, 2017 WL 4510588, at *3 (W.D.

La. July 14, 2017) (finding that officers had reasonable suspicion to justify a *Terry* stop and request

identification from plaintiff where casino manager told officer that plaintiff had been banned from

the property, giving the officer reasonable grounds to suspect that plaintiff may have been

criminally trespassing), *R. & R. adopted*, 2017 WL 4510589 (W.D. La. Aug. 7, 2017).

The Court also finds that the Officers had probable cause to detain Bell after she approached

Gill closely, while yelling angrily and aggressively moving her hands toward Gill's face. The

Officers also had probable cause to detain Bell for resisting arrest. As stated, probable cause exists

when the totality of facts and circumstances within a police officer's knowledge at the moment of

arrest are sufficient for a reasonable person to conclude that the suspect had committed or was

---

[13] *See* TEX. PENAL CODE § 22.01(a)(3) (West 2023) ("A person commits an offense if the person . . .
intentionally or knowingly causes physical contact with another when the person knows or should
reasonably believe that the other will regard the contact as offensive or provocative."); *State v. Meru*, 414
S.W.3d 159, 163 (Tex. Crim. App. 2013) ("A person commits criminal trespass if he 'enters or remains on
or in property of another . . . without effective consent and the person: (1) had notice that the entry was
forbidden; or (2) received notice to depart but failed to do so.'") (quoting TEX. PENAL CODE § 30.05(a)(2)).

committing an offense. *Flores*, 381 F.3d 402. "If an officer reasonably but mistakenly believes that probable cause exists, he is entitled to qualified immunity." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013).

While Bell claims that she "made no aggressive movement"[14] toward the Officers before she was handcuffed, the Video shows otherwise. Dkt. 9-2, B-1 at 17:46. A reasonable officer at the time of the incident and under the totality of circumstances could have believed that Bell was (1) attempting to assault a public servant (Officer Gill), in violation of Texas Penal Code § 22.02; (2) interfering with public duties, in violation of Texas Penal Code § 38.15(a)(1); and (3) resisting arrest, in violation of Texas Penal Code § 38.03. *See Ramirez*, 716 F.3d at 376 (finding that police officer had probable cause to arrest plaintiff for resisting arrest when plaintiff "pulled his arm out of [the officer's] grasp"). Because Bell's detainment was legal, any related claims of bad faith, conspiracy, false imprisonment, and malicious prosecution also fail. *See Bodzin*, 768 F.2d at 726 (stating that the '[t]he lawfulness of the arrest is . . . a complete defense" to bad faith, conspiracy false imprisonment and malicious prosecution claims).

### 2. Excessive Force Claim

As stated above, to plead a claim of excessive force, the plaintiff must establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Smith*, 31 F.4th at 912. Courts measure the excessiveness and unreasonableness of the force "from the perspective of a reasonable officer on the scene." *Id.* The test for reasonableness is not capable of "mechanical application," but instead "requires careful attention" to each case's facts. *Buehler*, 27 F.4th at 981. Among the considerations informing the need for force are: (1) the severity of the crime at issue, (2) whether

---

[14] Dkt. 5 ¶ 10.1.5.2.

the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting or attempting to evade arrest. *Id*.

Plaintiffs allege that the Officers used "deadly force" against Bell when they (1) "violently threw Plaintiff Bell to the ground" and handcuffed her, and (2) "placed her in the back of a baking hot patrol car with the windows rolled up and the engine off" in "an act of attempted murder." Dkt. 5 ¶¶ 5.1.4, 10.1.5.2-3. Plaintiffs also claim that Bell "started banging her head on the side of the car" when she was in the backseat of the patrol car. *Id.* ¶ 10.1.5.3.

The Video directly contradicts these allegations. The Video shows that the Officers did not throw Bell to the ground; she fell to the ground when she resisted being handcuffed. Dkt. 9-2, B-1 at 17:48-18:08. The Video also shows that the Officers handcuffed Bell in a calm manner while she was on the ground and then helped her up. The Video shows that the Officers did not use excessive force when they handcuffed Bell. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

The Video also shows that the Officers did not use excessive force at any other time during Bell's detainment. The Video shows that after Bell was handcuffed, the Officers escorted her to Officer Gill's car and put her in the backseat. Officer Eller again asked Bell to identify herself and told her why she was being detained (for putting her hands too close to Gill's face and failing to cooperate with their investigation). Bell then began to cry, apologized, declared that she has "PTSD and Lyme Disease and can't breathe," and asked for water. *Id.* at 27:54-28:50. Eller told Bell to calm down and that he would bring her some water and help. EMS arrived, evaluated Bell, and determined that she was fine. Eller then brought Bell water and asked her if she can feel the air conditioning in the car (which appeared to be running the whole time she was in the backseat).

The backseat passenger window also was rolled down. Eller told Bell that she was not being arrested and that the Officers were simply there to respond to the 911 call and to find out what happened. Bell explained her version of the events to Eller and filled out a police report. After completing the police report, Bell thanked the Officers while smiling and left. *Id.* ¶ 1:54. These actions do not constitute excessive force. *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (finding that it was not excessive force for the deputies to leave arrestee in patrol car without air conditioning or ventilation for 30 to 45 minutes); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that seizure was not made unreasonable by leaving plaintiff in unventilated vehicle for about 30 minutes, despite plaintiff's allegation that "her multiple sclerosis was exacerbated by the heat"). Plaintiffs do not allege a violation of Bell's Fourth Amendment right to be free from excessive force.

### 3. Search of Purse

Plaintiffs also complain that Gill illegally searched Bell's purse when she was detained. The Video shows that Gill quickly looked through Bell's purse in search of a driver's license or other identification after Bell refused to identify herself. Dkt. 9-2, B-1 at 23:16-25:00. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested." *Chimel v. Ca.*, 395 U.S. 752, 762-63 (1969). Plaintiffs fail to show that the search was unreasonable.

### 4. Failure to Prosecute Fucci

Next, Plaintiffs allege that the Officers did not properly investigate Fucci and prosecute her for assault. These claims fail because private individuals do not have a constitutional right to have someone criminally prosecuted. *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021) (stating that crime victims "do not have standing based on whether *other* people—including their perpetrators—are investigated or prosecuted"), *cert. denied*, 142 S. Ct. 2732 (2022); *Oliver v.*

*Collins*, 914 F.2d 56, 60 (5th Cir. 1990) ("Contrary to Oliver's contention, he does not have a constitutional right to have someone criminally prosecuted."). In addition, "[t]here is no due process right to an investigation . . . much less an adequate one." *Melton v. Waxahachie Police Dep't*, No. 3:21-CV-2854-K-BH, 2022 WL 3636616, at *20 (N.D. Tex. Aug. 8, 2022), *R. & R. adopted*, 2022 WL 3639506 (N.D. Tex. Aug. 23, 2022), *aff'd*, 2023 WL 3051898 (5th Cir. Apr. 24, 2023).

### 5. Texas Code of Criminal Procedure Article 14.06

Plaintiffs allege that the Officers issued Bell a citation rather than taking her "before a magistrate" in accordance with Texas Code of Criminal Procedure Article 14.06. But Article 14.06 does not require a police officer to take an individual charged with a misdemeanor before a magistrate. *See id.* ("A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person . . . .").

Because Plaintiffs fail to allege a violation of a constitutional right or that the Officers violated the law, the Officers are entitled to qualified immunity from Plaintiffs' claims.

### G. Police Chief Carter

Plaintiffs allege that Sunset Valley Chief of Police Lenn Carter violated Bell's rights by failing to prosecute Fucci for assault, and that Carter defamed Bell by issuing a press release about her arrest and releasing body camera footage of her arrest to the media. As stated, Plaintiffs' first claim fails because they have no constitutional right to prosecute an individual for a criminal violation. Plaintiffs also do not allege a plausible defamation claim against Police Chief Carter.

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be

sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Plaintiffs' defamation, libel, and slander claims are not cognizable under Section 1983. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 277 (5th Cir. 2001) (finding that plaintiff's claims she "was publicly humiliated and subjected to scorn and ridicule during the investigative phase of the prosecution" failed to state a claim under § 1983); *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) ("Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries.").

Plaintiffs' defamation claims under Texas law also would fail because they are barred by the one-year statute of limitations, and Plaintiffs do not show that Carter published false statements about Bell. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a) (one-year limitations period for claims of malicious prosecution, libel, and slander); *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) ("Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages"). This Magistrate Judge recommends that Police Chief Carter should be dismissed.

## H. Defendants Bassett and Donavan

To succeed on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Plaintiffs allege that Defendants Bassett and Donovan provided Bell with ineffective assistance of counsel during her criminal misdemeanor proceeding because they "pressured Plaintiff Bell to enter a no contest plea" and "repeatedly refused to petition to set the motions and pleadings filed by Plaintiff Bell for a hearing." Dkt. 5 ¶ 5.1.13. Plaintiffs do not show that Bell was denied effective assistance of counsel because she does not show that her attorneys were deficient or that she was prejudiced by their actions. As discussed above, the Municipal Court had jurisdiction over her case, so her attorneys could not be deficient for failing to argue that the court lacked jurisdiction. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Nor does Bell show that the result of her proceeding would have been different. Plaintiffs fail to state a plausible claim against Defendants Bassett and Donovan.

## I.   Defendants Nordstrom and Fucci

In addition to the claims addressed above, Plaintiffs assert civil claims under Texas law for assault, negligence, defamation, and intentional infliction of emotional distress against Defendants Nordstrom and Fucci. All these claims are time-barred by one- or two-year statutes of limitations. *See* Tex. Civ. Prac. & Rem. Code §§ 16.002(a), § 16.003(a).

Even if these state-law claims were timely, the Court would recommend that the District Court decline to exercise supplemental jurisdiction over them. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims

are eliminated before trial. *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). If the District Court accepts these recommendations and dismisses all federal claims, this Magistrate Judge recommends that the Court decline to exercise its jurisdiction over any state-law claims.

### J.  Futility of Amendment

A court may appropriately dismiss an action without giving an opportunity to amend when the plaintiff had the opportunity to cure and failed, did not exercise diligence, or where leave to amend would be futile. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021).

Plaintiffs have had an opportunity to amend their complaint, filing a 153-page Second Amended Complaint. Plaintiffs have had fifteen opportunities to support their claims in responding to the fifteen motions to dismiss. At some point, a plaintiff "has pled his best case." *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011); *see also Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) ("Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'"). "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967). Accordingly, the Court recommends that the District Court deny leave to amend if sought.

### V.      Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss (Dkt. 8, 9, 11-15, 17-24) and **DISMISS** Plaintiffs' Second Amended Complaint in its entirety. The Court recommends that Plaintiffs' claims against Defendants Bruner, LaVoie, Whalen, Stark, Damphousse, Cradduck, and Bell should be dismissed without prejudice for lack of standing under Rule 12(b)(1), and Plaintiffs' claims against the rest of the Defendants should be dismissed with prejudice under Rule 12(b)(1).

The Court **FURTHER RECOMMENDS** that the District Court **DENY** any motion to amend Plaintiffs' Second Amended Complaint.

## VI.    Order

This Magistrate Judge **DENIES** Plaintiffs' Motion to Strike (Dkt. 56), Plaintiffs' Motion for Sanctions (Dkt. 57), and Plaintiffs' Motion to Designate Defendant Hecht's Motion to Dismiss as a Rule 56 Motion for Summary Judgment (Dkt. 69).

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable District Court.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 21, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE